**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION | MDL No. 2842<br>No. 18 C 6785<br><br>Hon. Virginia M. Kendall<br><br>This Document Relates to All Cases |

**JOINT APPLICATION, PURSUANT TO FED. R. CIV. P. 23(g), TO APPOINT
DiCELLO LEVITT & CASEY LLC AND LABATON SUCHAROW LLP
<u>AS INTERIM CO-LEAD CLASS COUNSEL</u>**

**Dated:** November 16, 2018

Plaintiff The Bon-Ton Stores, Inc. ("Bon-Ton") respectfully moves the Court to enter an order appointing DiCello Levitt & Casey LLC ("DLC") and Labaton Sucharow LLP ("Labaton Sucharow") as interim co-lead class counsel in this litigation, pursuant to Fed. R. Civ. P. 23(g).

This case concerns a conspiracy between various local television station owners, including Sinclair Broadcast Group, Tribune Media, and others, to manipulate prices for local television advertising spots in violation of the federal antitrust laws. Significantly, the Department of Justice just this week filed a complaint and proposed consent decrees against Sinclair, Tribune, and four other companies, charging them with anticompetitive conduct in violation of the Sherman Act.

Sinclair and Tribune are two of the largest media companies in the United States, owning well over 200 television stations combined. Bon-Ton, with over 270 stores nationwide, is by far the largest company to step forward to challenge this anticompetitive conduct. To lead their litigation against these massive media conglomerates, Bon-Ton has selected two law firms with significant experience litigating some of the largest multidistrict litigations in the country, achieving billions of dollars of relief for our clients and class members and who readily satisfy the Rule 23(g) requirements.

## PRELIMINARY STATEMENT

DLC and Labaton Sucharow are best suited to serve as interim co-lead class counsel in this litigation and represent the class' interests. Not only do we satisfy Rule 23(g)'s criteria regarding relevant experience, knowledge of applicable law, and willingness to commit resources, the DLC/Labaton Sucharow team also has additional plus factors that set us apart from the other applicants. In brief:

- We have the most significant client in the litigation, a major national department store chain and online retailer with tens of millions of dollars spent in local

advertising across the United States, and whose extensive business dealings with Defendants will be of tremendous value to the litigation.

- We conducted an extensive pre-complaint investigation, including interviewing dozens of industry insiders and individuals formerly employed by Defendants, plus working with an economist.

- We have decades of experience investigating and litigating complex antitrust class actions and have been routinely appointed lead or co-class counsel in some of the largest antitrust and other multidistrict litigations to date. Our expertise is not only recognized by courts throughout the United States but also by our peers, adversaries, and clients who place us among the leaders in the class action and antitrust fields, earning us premier rankings in *Chambers*, *Legal 500*, *National Law Journal*, and *Benchmark*.

- We have proposed an appropriately lean leadership structure to efficiently litigate the case and avoid wasteful, duplicative efforts, and we have not made side deals or promises of work to other firms in exchange for their support.

- We value diversity, and our leadership proposal here reflects our commitment to ensuring that individuals with different backgrounds and points of view have a say in litigating this case.

- We have extensive experience leading and litigating cases in this district, and DLC is headquartered here.

## **ARGUMENT**

Rule 23(g)'s criteria include counsel's work in identifying or investigating claims, relevant experience, knowledge of applicable law, and willingness to commit resources. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. 23(g)(1)(B). With contested leadership, such as here, a court must appoint "the applicant best able to represent the interests of the class." Fed. R. Civ. 23(g)(2). Bon-Ton respectfully requests the appointment of DLC and Labaton Sucharow as interim co-lead class counsel.

### A. Bon-Ton Is the Most Significant Client in the MDL and the Most Appropriate Choice to Be a Class Representative.

Bon-Ton is a large, corporate client with a significant interest in the outcome of this litigation, given its massive advertising budget during the relevant time period.[1] Bon-Ton operated approximately 270 retail stores across the United States, including many stores in the DMAs[2] most relevant to this case. And, in just over four years, Bon-Ton purchased more than $89.4 million in local television advertising time, in good part from Defendants.

Courts have routinely emphasized that "sophisticated plaintiffs with large losses or sizeable claims" are in the best position to lead class actions. *See Manual for Complex Litigation (Fourth) § 21.272 (2004)* (discussing approaches to selecting counsel and stating that Private Securities Litigation Reform Act of 1995 ("PSLRA")—under which plaintiffs with largest financial interest in securities litigation, among other things, chooses lead counsel—"provides a useful analogy for similar class actions brought by sophisticated plaintiffs with large losses or sizeable claims"). That is why the Southern District of New York chose a leadership structure for the *LIBOR* antitrust class action litigation that had the support of a "plaintiff with by far the greatest economic interest." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2011 WL 5980198, at *3 (S.D.N.Y. Nov. 29, 2011). In *LIBOR*, the court noted that, even though the case was not governed by the PSLRA, the "magnitude of a plaintiff's economic interest" was "highly relevant" to its decision. *Id.*; *see also In re Plasma Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2010 WL 1433316, at *6 (N.D. Ill. Apr. 7, 2010) (where Judge Gottschall appointed as co-lead counsel a firm that "enjoys the support of Mayo Clinic, a sophisticated non-profit healthcare organization with a substantial stake in the outcome

---

[1] Bon-Ton is not merely a large, institutional client. Rather, Bon-Ton intends on being an active and participating plaintiff in this litigation, as it is in the other matters on which it is working with DLC.

[2] DMAs, or "Designated Market Areas, are geographic television viewing areas across the United States.

of this litigation and a strong candidate for lead consolidated plaintiff"). This method has clear benefits, given that the "plaintiff with the largest stake in the litigation will be more likely to monitor and control its [preferred] counsel, and be more likely to demand that counsel seek only reasonable fees in connection with any settlement or award in this matter."[3] *In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988203, at *2 (N.D. Ohio Aug. 5, 2002).

Here, Bon-Ton is the most sophisticated client in this litigation with the largest economic interest and the most at stake. Bon-Ton not only has the benefit of a national perspective on advertising (with its far-ranging network of approximately 270 retail stores across the country), but it also spent millions of dollars *in the relevant DMAs* during the class period. Its geographic scope and financial stake make Bon-Ton the clear favorite to serve as a named plaintiff. The Court should put significant weight in Bon-Ton's choice: the DLC/Labaton team.

**B.      Our Team Performed the Most Substantial Investigation—Which Is Ongoing—Prior to Filing Its Complaint**

Time and resources spent investigating claims are also substantial factors to be considered in appointing class leadership. *See* Fed. R. Civ. P. 23(g); *see also In re Shop-Vac Mktg. and Sales Practices Litig.*, No. 12-md-2380, 2013 WL 183855, at *2 (M.D. Pa. Jan. 17, 2013) (appointing firms who "conducted more significant work in investigating and identifying potential claims"). Indeed, courts value the cultivation of confidential witnesses and industry insiders in appointing class leadership. *See, e.g.*, *In re Treasury Sec. Auction Antitrust Litig.*, No. 15-MD-2673, ECF No. 186, Order at 4-5 (S.D.N.Y. Aug. 23, 2017) (selecting co-lead counsel, including Labaton Sucharow, in part because they "interviewed confidential witnesses and industry insiders"); *In re Interest Rate Swaps Antitrust Litig.*, No. 16-MC-2704, 2016 WL

---

[3] To that end, the DLC/Labaton team fully intends to efficiently manage this litigation if selected as interim co-lead counsel. We are committed to avoiding duplication and carefully monitoring all time and expenses, so as to maximize any class recovery.

4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (appointing firms that "interviewed dozens of market participants and confidential witnesses").

It is likely that no other firm, or group of firms, has done more to advance this case than the DLC/Labaton team. Following the July reports that the U.S. Department of Justice was investigating Defendants for violations of federal antitrust laws, and prior to filing our complaint, our investigators and attorneys spent nearly *375 hours* researching and contacting more than *70* of Defendants' former employees and industry insiders. *See* Declaration of Karin E. Garvey ("Garvey Decl.") ¶ 3. Labaton Sucharow attorneys were able to confer with industry experts with decades of local advertising industry experience—experience that gave our team significant perspective into this complex marketplace. They did this while DLC attorneys spent more than 30 additional hours investigating the case prior to filing the complaint, reviewing and analyzing Bon-Ton's potential damages and injuries related to Defendants' wrongful conduct, gaining a deep understanding of clients' needs in the advertising industry. Together, we were able to develop a complex understanding of the case well before putting pen to paper to draft Bon-Ton's class action complaint.

As part of our team's significant investigation, we explored every possible avenue to glean additional facts and allegations for inclusion in our complaint. We filed a Freedom of Information Act ("FOIA") request with the Department of Justice, conducted a full analysis of the relevant DMAs and markets for local advertising, worked with an expert on damages and class certification issues, and conducted significant background research into Sinclair, Tribune, and other potential defendants in this litigation.

This hard work paid off. Bon-Ton's complaint was the first to recognize the unique nature of this case by highlighting the regionalized nature of television advertising. *See, e.g.,* Dkt. No. 1 in Case No. 18-cv-06758 ("Compl.") ¶¶ 17-25, 36-62. Bon-Ton's complaint goes into

great depth about the importance of Designated Market Areas (geographic television viewing areas across the country also referred to as "DMAs"), detailing how Sinclair and Tribune operated stations in 14 overlapping DMAs. *Id.* ¶¶ 26-30. Significantly, DOJ, just this week, confirmed that the anticompetitive conduct had occurred in certain regionalized DMAs.[4] Bon-Ton's complaint had previewed our expectation that the scope of the conduct would expand beyond the two Defendants and 14 overlapping DMAs that we had identified. *Id.* ¶ 78. And, indeed, as set forth in DOJ's Complaint, at least six companies were involved in the conduct[5]— bringing the number of overlapping DMAs to 38.

This work took time.[6] Other complaints in this MDL ignore the significance of the overlapping DMAs. These complaints—most of which were filed quickly after initial news reports (including several within a few days)—simply allege that Defendants engaged in illegal conduct on a nationwide basis, and that clients located anywhere could assert claims, regardless of where the illegal conduct occurred. In this regard, "[s]peed is a poor surrogate for determining the best counsel to prosecute the particular class action." Third Circuit Task Force Report: Selection of Class Counsel, 208 F.R.D. 340, 418 (2001) ("*Third Circuit Task Force Report*"). *See also Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006) ("Whether someone was 'first to file' by itself has little to do with who is the best qualified to lead the case, and does not satisfy the requirements of Rule 23(g). To hold otherwise would further encourage a 'rush to

---

[4] *See United States v. Sinclair Broadcast Group, Inc., et al.*, Case No. 1:18-cv-2609, Complaint ¶¶ 16, 19 (D.D.C.) ("DOJ Complaint") (filing consent complaint against Sinclair, Tribune, and others for violating Section 1 of Sherman Act "*in certain DMAs*," and highlighting that Defendants exchanged certain competitively sensitive information "*in some DMAs*" (emphasis added)).

[5] DOJ named the following defendants: Sinclair, Tribune, Raycom Media, Inc., Meredith Corporation, Griffin Communications, LLC, and Dreamcatcher Broadcasting, LLC.

[6] And significant resources. DLC and Labaton Sucharow routinely advance millions of dollars to finance litigation costs and will commit the needed funds and personnel to effectively prosecute this case.

6

the courthouse' . . . ."). *Cf. Third Circuit Task Force Report* at 418-19 ("The filing of a skeletal complaint should be a negative rather than a positive factor . . . [and] is no 'work' at all.").

### C. Our Firms Are Eminently Qualified to Serve as Interim Co-Lead Class Counsel.

#### 1. Labaton Sucharow

Labaton Sucharow is one of the nation's premier firms dedicated to protecting the rights of those harmed by anticompetitive business practices. The firm's antitrust practice is co-chaired by Greg Asciolla, a former trial attorney in the U.S. Department of Justice's Antitrust Division, and Jay Himes, who served for nearly eight years as the Antitrust Bureau Chief in the New York Attorney General's Office. The Labaton Sucharow team will be led by Karin Garvey, who has more than 20 years' litigation experience, and Mr. Asciolla.[7]

Ms. Garvey is eminently qualified to lead this action. A graduate of Northwestern University Pritzker School of Law, she spent nearly two decades practicing at a top defense firm prior to joining Labaton Sucharow. Indeed, Ms. Garvey has significant experience running MDLs—on "both sides of the v." She is the firm's lead lawyer in *In re Opana ER Antitrust Litigation* (N.D. Ill.), a currently pending pharmaceutical "pay for delay" class action MDL in which the firm is co-lead counsel for the end-payer class. In her role, she is responsible for all aspects of the case—from discovery to briefing to managing class counsel. At her prior firm, Ms. Garvey led the defense of a major pharmaceutical company in another class action MDL, *In re Skelaxin (Metaxalone) Antitrust Litigation*, (E.D. Tenn.). There, in addition to being responsible for all pre-trial aspects of the case, Ms. Garvey also examined all but one witness at a jury trial.

Given her experience, Ms. Garvey is uniquely positioned to deploy the knowledge she gained as a defense counsel to the strategic advantage of her clients on the plaintiffs' side.

---

[7] The firm's resume and biographies for Antitrust Practice Group attorneys are attached as Exhibit 1 to the Garvey Declaration.

Plaintiffs' lawyers can sometimes lack an appreciation for defense counsel's perspectives and motives. Ms. Garvey is able to work much more efficiently, cooperatively and, thus, productively with defense counsel both throughout litigations and in connection with settling cases—something with which she also has significant experience. *The Legal 500* recently recommended Ms. Garvey in the Antitrust Civil Litigation/Class Action category.[8]

Mr. Asciolla is a seasoned antitrust practitioner with over two decades of wide-ranging experience, including with the Department of Justice's Antitrust Division and a top defense firm. Since joining Labaton in 2007, Mr. Asciolla has obtained many significant victories in antitrust class actions. He was appointed recently to the PSC in *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* a massive MDL litigation alleging price-fixing of over 30 generic drugs by dozens of drug manufacturers. Mr. Asciolla was recently named "Titan of the Plaintiffs Bar" by *Law 360* and named a Next Generation Lawyer by *The Legal 500*. He was also recommended by *The Legal 500* for being "very effective plaintiffs' counsel" and for "always act[ing] with a good degree of professionalism." In 2016, he was elected to the Executive Committee of the New York State Bar Association Antitrust Law Section. He also currently serves as the Co-Chairman of the Antitrust and Trade Regulation Committee of the New York County Lawyers' Association. Mr. Asciolla also represents pro bono clients in matters involving the arts and LGBT asylum seekers.

Labaton's experience and reputation are particularly well-suited for this litigation in that experience working in government (and with government lawyers while in private practice) is relevant here because it likely will be necessary to work with DOJ attorneys in prosecuting the

---

[8] Ms. Garvey is a leader in other ways as well. At both her prior firm and at Labaton Sucharow, she has been active in the firms' women's initiatives, recruiting efforts and mentoring programs. She is also a member of the Executive Committee of WIN—The Women's Initiative of Northwestern and a member of Northwestern's Law School Fund Board.

Class's claims. Mr. Asciolla, a former DOJ trial attorney, and Mr. Himes, former Chief of the Antitrust Bureau of the New York Attorney General's Office (the State's top antitrust enforcement position)—along with Ms. Garvey, who has worked on behalf of clients with both DOJ and the Federal Trade Commission—have the requisite experience.

Mr. Asciolla and Ms. Garvey will have the support of a top-tier antitrust firm. Labaton Sucharow's substantial experience leading complex antitrust MDL class actions and depth of knowledge of antitrust law is proven by our record of success. For instance, we served as co-lead counsel in *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y.), in which more than $1.2 billion in recoveries was secured from over 30 global airlines for price-fixing air cargo shipping services worldwide. The firm also served as lead counsel in *In re Aftermarket Automotive Lighting Products Antitrust Litigation* (C.D. Cal.), a global price-fixing conspiracy, where the firm secured a settlement of more than $50 million on the eve of trial. In addition to those matters mentioned above, another current leadership appointment is being co-lead counsel in *In re Treasury Securities Auction Antitrust Litigation* (S.D.N.Y.), a complex antitrust action alleging price-fixing by the major dealer banks of U.S. Treasury securities.

Labaton Sucharow's antitrust practice has been recognized by our peers, adversaries, and clients as among the leaders in the class action and antitrust fields, earning premier rankings in *Chambers USA*, *Benchmark Plaintiff*, and *The Legal 500*, as well as in *Law360* (Most Feared Plaintiffs' Firms; Practice Group of the Year–Class Action) and *Global Competition Review* (Leading Firms and Lawyers for Antitrust Plaintiffs' Work). *The National Law Journal* has recognized Labaton Sucharow as a leading plaintiffs' class action firm for the past 11 years.

In addition, in just the past couple of months, two federal judges have commended Labaton Sucharow's team. In a case in which Greg Asciolla was co-lead counsel with DLC

partner Adam Levitt,[9] The Honorable Gene E.K. Pratter of the United States District Court for the Eastern District of Pennsylvania complimented Labaton and DLC's "high level of professional skills, acumen and collegial relationships." Garvey Decl. Ex. 2. Judge Pratter further stated, "It was a pleasure to be the presiding judge, and I look forward to future opportunities to work with you." *Id.* In addition, the Honorable William H. Orrick of the Northern District of California called the work of Jay Himes "diligent[] and effective[]" and noted that he worked with "obvious skill and sensitivity." Garvey Decl. Ex. 3.

### 2. DiCello Levitt & Casey

Recognized as an "Elite Boutique Trailblazer" by *The National Law Journal*, DLC's roster of seventeen attorneys are among some of the most diligent and creative class and mass action attorneys in the United States, obtaining billions of dollars of relief for class members. Our team, comprised of former prosecutors and corporate defense attorneys, as well as individuals who have been litigating class actions for decades, is routinely on the forefront of new litigation—creating new law, positively influencing the class action litigation landscape, and developing novel theories of damages and liability against sophisticated actors. The firm's strong appellate practice developed Ninth Circuit precedent on the ascertainability, *Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), *cert. denied* 138 S. Ct. 313 (2017), and advanced Seventh Circuit jurisprudence on class certification in antitrust cases, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012). Our tireless advocacy most recently led Mike Bowers, Georgia's former Attorney General, to characterize a $52 million settlement obtained by Adam Levitt and Amy Keller a "work of art," and "one of the best pieces of legal work I have ever observed." *Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, No. 16-cv-0012 (N.D. Ga.).

---

[9] *In re: Imprelis Herbicide Mktg., Sales Practices and Prods. Liab. Litig.*, No. 11-md-02284 (E.D. Pa.).

DLC's approach to cases ensures that they are "trial-ready and trial-focused" from day one, using our in-house focus group and mock jury practice to focus lawsuits on issues that matter to the Court and the jury and developing discovery plans and case theories around those results. This approach, which few plaintiffs' law firms take—ensures efficiencies in litigating complex cases and that these complex cases can reach resolution or trial at a faster pace. *See* Fed. R. Civ. P. 1 ("just, speedy and inexpensive determination of every action and proceeding").

Leading this case for DLC will be Adam Levitt, one of the firm's founding partners. Mr. Levitt, a graduate of the Northwestern University Pritzker School of Law, is President of the Class Action Trial Lawyers division of the National Trial Lawyers, is an elected member of the American Law Institute and the Economic Club of Chicago, and an appointed member of the Advisory Council of the Bolch Judicial Institute, Duke Law School and the Institute for Consumer Antitrust Studies. He has close to 25 years of experience, with a substantial focus on financial law, and has recovered billions of dollars in pre- and post-verdict settlements for his clients and class members. Mr. Levitt has been appointed lead counsel or to other leadership positions in dozens of other matters, including more than 15 MDLs, in several of the largest pending class action cases in the United States.[10] Other cases Mr. Levitt has led have resulted in recoveries valued in excess of $2 billion, including *In re Genetically Modified Rice Litigation*, No. 4:06-md-01811 (E.D. Mo.) (aggregate $1.1 billion settlement); *In re StarLink Corn Products Liability Litigation*, No. 1:01-cv-04927 (N.D. Ill.) ($110 million settlement); and *In re Imprelis*

---

[10] *See, e.g., Volkswagen "Clean Diesel"* (over $10 billion settlement); *In re General Motors LLC Ignition Switch Litigation*, No. 1:14-md-02543 (S.D.N.Y); *In re Navistar 6.0 L Diesel Engine Products Liability Litigation*, No. 1:11-cv-02496 (N.D. Ill.); *Whalen v. Ford Motor Co.*, No. 3:13-cv-03072-EMC (N.D. Cal.); and the previously-mentioned *Champs Sports Bar & Grill Co. v. Mercury Payment Systems* (recent $52 million settlement for merchants and small businesses). Mr. Levitt has also been entrusted to represent states and other public clients in various litigations, including the State of New Mexico in actions against Volkswagen, Porsche, and Audi relating to the emissions scandal, and against Takata and various other OEMs relating to the defective airbags.

*Herbicide Marketing, Sales Practices, & Products Liability Litigation*, No. 2:11-md-02284 (E.D. Pa.) ($550 million settlement). In *StarLink*, Mr. Levitt, combining his securities, commodities, and biotechnology litigation experience, created a totally unique model for valuing the damages resulting from crop contamination, now the benchmark damages model used in similar cases.[11]

DLC partner, John Tangren—who will be co-leading DLC's efforts here with Mr. Levitt—has substantial experience of his own, having significantly led and coordinated DLC's efforts in three nationwide class cases.[12] Mr. Tangren also brings a wealth of experience in managing antitrust litigation in this District. Most notably, he led the briefing efforts in two impactful antitrust class action decisions in the Seventh Circuit: *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012), which reversed the district court's denial of class certification and has been cited in over 400 cases since then for its guidance regarding antitrust class certification; and *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010), which upheld the plaintiffs' complaint and helped to clarify antitrust pleading standards. Mr. Tangren also spent a combined eight years managing the day-to-day prosecution of those large class cases, acquiring experience that he would apply to the efficient prosecution of this case.

Also assisting in the prosecution of this action will be firm partner Amy Keller and associate Adam Prom. Although only practicing for 10 years, Ms. Keller's MDL experience will significantly advance the litigation. As the youngest female ever appointed to lead a nationwide

---

[11] Mr. Levitt has also published numerous law review and other articles on a wide variety of law-related topics, including, most recently in the Adam J. Levitt & Nicole E. Negowetti, *Agricultural "Market Touching": Modernizing Trespass to Chattels in Crop Contamination Cases*, 38 U. Haw. L. Rev. 409 (2016), for which he received the Burton Award, an annual award bestowed on the top twenty law review articles written by practicing lawyers.

[12] *Sloan v. General Motors LLC*, No. 16-7244 (N.D. Cal.); *In re Polaris Marketing, Sales Practices, and Products Liability Litigation*, No. 18-939 (D. Minn.), and a Fourth Circuit appeal in *Belville v. Ford Motor Co.*, No. 18-1470 (4th Cir.).

MDL,[13] and as a member of Plaintiffs' Executive Committee and Co-Chair of Law and Briefing in another case,[14] Ms. Keller understands the important strategic decisions that must be made in litigating large MDL cases. For his part, Mr. Prom—like Ms. Keller—also has extensive experience despite his young age (including in successfully arguing against a motion to dismiss in a large *qui tam* action, *State ex rel. Gilman v. FieldTurf USA, Inc.*, No. 2017-L-6277 (Cir. Ct. Cook County), and conducting depositions in the *Navistar* litigation)).

DLC places a high value on ensuring that young, diverse attorneys play significant roles in MDLs, satisfying both district court directives to provide young attorneys with the opportunity to lead, and also ensure that class members benefit from diverse viewpoints and experiences.

Moreover, in MDL cases, courts routinely appoint local law firms to leadership positions. *See, e.g.*, *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.*, No. 1:14-cv-10318 (MDL No. 2590) (N.D. Ill.) (appointing Adam Levitt as co-lead counsel). This MDL litigation should be no different, particularly when DLC—a strong, Chicago-based litigation firm[15]—fits that bill. As more fully set forth in its firm resume, DLC has led, or is currently leading, some of the largest MDL and other litigations across the United States, including pending MDLs in this District (*Navistar*) and elsewhere (*Equifax*), and has advanced the ball in this Circuit on crucial aspects of antitrust law (as discussed below). *See* Declaration of Adam Levitt ("Levitt Decl."), Ex. A. DLC is thus the right pick for co-lead counsel here.

---

[13] *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-02800 (N.D. Ga.) (148 million putative class members).

[14] *In re Apple Inc. Device Performance Litig.*, No. 18-md-02827 (N.D. Cal.) (billions of putative class members).

[15] Because DLC is a Chicago-based firm (with additional offices in Cleveland and New York), its appointment would obviate the need for liaison counsel here.

### D. Our Lean Leadership Structure Is Appropriate and Does Not Involve Promises to Other Firms

Courts routinely appoint just one or two firms to lead complex antitrust cases.[16] Such an efficient structure only benefits the class. We propose a two-firm interim co-lead class counsel structure.

Relatedly, the Court should be wary of so-called "consensus proposals"; garnering support for a leadership position is irrelevant and can raise a red flag.[17] We have not sought the "support" of others for our application. In our experience, such support comes with strings attached—*i.e.*, promises of work. While we would be happy to work with other firms, including if the Court should choose to appoint an executive or steering committee, we respectfully submit that such a structure is unnecessary in a case of this size, and it would be more efficient to allow interim co-lead class counsel to draw upon other firms' resources on an as-needed basis. Should we be appointed to lead this case, the team will dedicate as much time, funding, energy, and effort as the case demands to ensure the best outcome.

### E. Our Team Reflects Diversity

Both DLC and Labaton Sucharow focus on ensuring that their litigation teams are diverse. We strongly believe in the importance of the different perspectives that diverse attorneys

---

[16] *See, e.g.*, *In re Remicade Antitrust Litig.*, No. 17-cv-4326, 2018 WL 514501 (E.D. Pa. Jan. 23, 2018) (appointing one firm as lead counsel); *In re Opana ER Antitrust Litig.*, 14cv10150 (N.D. Ill. Apr. 2, 2015), ECF No. 78 (appointing Labaton Sucharow and one other firm as co-lead counsel); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789, ECF No. 103 Hr'g Tr. at 43, (S.D.N.Y. Feb. 13, 2014) (rejecting four-firm leadership structure in favor of a two-firm structure because of efficiency concerns).

[17] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) ("[T]he number of attorneys supporting a given candidacy is not included among the factors set forth in Rule 23(g)."); *Third Circuit Task Force Report* at 348 ("[V]oluntary agreements among lawyers may create cartel-like groupings . . . . [T]o reach a 'deal,' lead counsel may have to 'cut in' so many lawyers that the representation of the class becomes inefficient and the ultimate fee request becomes inflated.").

impart. As discussed above and as set forth in our firm resumes attached hereto, we are pleased to have assembled a team here that has gender, racial, and sexual orientation diversity.

### F.    Our Firms Have Significant Experience Litigating in this District

Both our firms have significant experience handling complex matters in this District that would prove beneficial to the class here. As is demonstrated in our firm resume, in addition to serving as co-lead counsel in the *Navistar* litigation, DLC, which is headquartered in this district, is litigating or previously litigated many cases in this district.  DLC is proud of the reputation its partners have built in Chicago over the past several decades.

Meanwhile, Labaton Sucharow is presently litigating several significant matters in this District as well—including a recently-filed class action before Your Honor. The firm is currently serving as co-lead counsel in *In re Opana ER Antitrust Litigation*, MDL No. 2580 (N.D. Ill.) (Leinenweber, J.), in which the court selected our two-firm leadership proposal over a much larger group. And separately, Labaton Sucharow recently filed a motion for appointment of lead plaintiff (and to be selected as lead counsel) in a securities class action pending before Your Honor.[18] *See Plumbers & Steamfitters Local 60 Pension Trust v. Nielsen Holdings PLC, et al.*, Case No. 1:18-cv-06459 (N.D. Ill.) (Kendall, J.).

### CONCLUSION

For the foregoing reasons, we respectfully request that the Court appoint DiCello, Levitt & Casey LLC and Labaton Sucharow LLP as interim co-lead class counsel.

---

[18] Labaton Sucharow has also been appointed to other leadership positions and successfully litigated class cases in this district. *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-4883 (N.D. Ill.) (Gettleman, J.) (co-lead counsel; nearly $18 million in settlements); *Hughes v. Huron Consulting Grp., Inc.*, No. 09-CV-4734 (N.D. Ill.) (Bucklo, J.) (securities class action; settled for $27 million); *Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*, No. 16-CV-5198 (N.D. Ill.) (Alonso, J.) (ongoing securities class action).

Dated: November 16, 2018          Respectfully submitted,

**DiCELLO LEVITT & CASEY LLC**

By: _/s/ Adam J. Levitt_
Adam J. Levitt
John E. Tangren
Amy E. Keller
Adam Prom
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
akeller@dlcfirm.com
aprom@dlcfirm.com

**LABATON SUCHAROW LLP**

By: _/s/ Karin E. Garvey_
Gregory S. Asciolla*
Karin E. Garvey*
Robin A. van der Meulen*
Brian Morrison*
Jonathan Crevier*
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
rvandermeulen@labaton.com
bmorrison@labaton.com
jcrevier@labaton.com

*(_pro hac vice_ pending)

_**Counsel for The Bon-Ton Stores and Proposed Interim
Co-Lead Class Counsel**_

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2018, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Adam J. Levitt*
Adam J. Levitt
