**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document applies to all actions.* | Master Docket No. 18-06785<br><br>MDL No. 2867<br><br>The Honorable Judge Virginia M. Kendall |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION
TO QUASH AND/OR FOR PROTECTIVE ORDER REGARDING
<u>SUBPOENAS ISSUED TO ABSENT CLASS MEMBERS</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION........................................................................................................... 1

II.   FACTUAL BACKGROUND.......................................................................................... 2

III.  ARGUMENT ................................................................................................................... 4

    A.  Discovery From Absent Class Members Is Strongly Disfavored .......................... 4

    B.  The Absent Class Members Are True Absent Class Members................................ 6

    C.  Defendants Cannot Satisfy The Exceedingly High Burden for Obtaining Discovery From The Absent Class Members ............................................................ 8

        1.  Defendants Have Not Demonstrated A Particularized Need For The Discovery They Seek .................................................................................................................. 8

        2.  The Subpoenas Seek Information Defendants Already Have ....................................... 12

        3.  The Subpoenas Appear Designed To Harass The Absent Class Members.................. 13

        4.  The Subpoenas Require Extensive Legal Assistance to Respond................................ 15

IV.  CONCLUSION ............................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Mid-Am. Growers, Inc.*,
    141 F.R.D. 466 (N.D. Ill. 1992) ........................................................................15

*In re Aftermarket Filters*,
    No. 08 C 4883, 2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) .....................................8

*In re Automotive Refinishing*,
    No. MDL 1426, 2006 WL 1479819 (E.D. Pa. May 26, 2006) ..........................11, 14

*Barham v. Ramsay*,
    246 F.R.D. 60 (D.D.C. 2007) ...........................................................................12

*Bell v. Woodward Governor Co.*,
    No. 03 CV 50190, 2005 WL 8179364 (N.D. Ill. Nov. 7, 2005) ...............................6

*Brennan v. Midwestern United Life Insurance Co.*,
    450 F.2d 999 (7th Cir. 1971), *cert. denied*, 405 U.S. 921 (1972) .........................1, 4

*In re Broiler Chicken Antitrust Litig.*,
    No. 16 C 8637, 2018 WL 3398141 (N.D. Ill. July 12, 2018) ......................... *passim*

*In re Carbon Dioxide Indus. Antitrust Litig.*,
    155 F.R.D. 209 (M.D. Fla. 1993) .......................................................................5

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*,
    No. 10-4372, 2012 WL 12898811 (D. Minn. July 27, 2012) ...................................6

*Clark v. Universal Builders, Inc.*,
    501 F.2d 324 (7th Cir. 1974) ........................................................................ *passim*

*Dellums v. Powell*,
    566 F.2d 167 (D.D.C. 1977) ...........................................................................13

*Dennis v. Greatland Home Health Servs, Inc.*,
    No. 19-cv-5427, 2020 WL 11563081 (N.D. Ill. Nov. 10, 2020) ..........................4, 5

*Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*,
    Civ. A. No. 04-498, 2006 WL 2588710 (D.D.C. Sept. 7, 2006) ..............................5

*Feldman v. Motorola, Inc.*,
    No. 90 C 5887, 1992 WL 415382 (N.D. Ill. Nov. 5, 1992) ..................................6, 8

*Flannery v. Recording Indus. Assoc. of Am.*,
354 F.3d 632 (7th Cir. 2004) ...................................................................................7

*Garden City Emps' Ret. Sys. v. Psychiatric Sols., Inc.*,
No. 3:09-00882, 2012 WL 4829802 (M.D. Tenn. Oct. 10, 2012) .............................6

*Groth v. Robert Bosch Corp.*,
No. 1:07-cv-962, 2008 WL 2704709 (W.D. Mich. July 9, 2008) .............................5

*Levinson v. Westport Nat'l Bank*,
No. 3:09-CV-0269 (PCD), 2011 WL 13237887 (D. Conn. May 10, 2011) .......................6, 11

*Massey v. Helman*,
196 F.3d 727 (7th Cir. 1999) ...................................................................................7

*Mendez v. Avis Budget Grp., Inc.*,
No. 11-6537 (JLL), 2019 WL 1487258 (D.N.J. Apr. 3, 2019) .................................6

*Mostajo v. Nationwide Mut. Ins. Co.*,
No. 2:17-cv-0350 JAM AC, 2020 WL 5658329 (E.D. Cal. Sept. 23, 2020) ...........6

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .................................................................................................4

*In re Plasma Derivative Protein Therapies Antitrust Litig.*,
Nos. 09 C 7666, 11 C 1468, 2012 WL 1533221 (N.D. Ill. Apr. 27, 2012) .............8

*In re Publ'n Paper Antitrust Litig.*,
No. 3:04 MD 1631 (SRU), 2005 WL 1629633 (D. Conn. July 5, 2005) ...................... *passim*

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
283 F.R.D. 623 (D. Colo. 2005) ...............................................................................7

*Rogers v. Baxter Int'l Inc.*,
No. 04 C 6476, 2007 WL 2908829 (N.D. Ill. Oct. 4, 2007) .................................5, 6

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) .................................................................................................7

*Tchrs' Ret. Sys. of La. v. ACLN Ltd.*,
No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...............6

*In re Urethane Antitrust Litig.*,
No. 04-MD-1616-JWL-DJW, 2006 WL 8096533 (D. Kan. June 9, 2006) ...............8

*Zollicoffer v. Gold Standard Baking, Inc.*,
No. 13 CV 1524, 2020 WL 6825688 (N.D. Ill. Nov. 20, 2020) ...................... *passim*

**Other Authorities**

Fed. R. Civ. P. 45(c)(3)(A)(iv) ..........................................................................................6

## I.    INTRODUCTION

Notwithstanding Rule 23's longstanding "general policy of permitting absent class members to remain outside the principal action," *Brennan v. Midwestern United Life Insurance Co.*, 450 F.2d 999, 1004-05 (7th Cir. 1971), *cert. denied*, 405 U.S. 921 (1972), Defendants have attempted to serve document subpoenas on twenty absent class members (the "Absent Class Members"), none of whom are named as class representatives or have otherwise participated in the litigation since the Consolidated Amended Complaint was filed nearly three years ago.[1] While courts may permit absent class member discovery on rare occasions, they do so in circumstances very different  from those here and only after defendants make a "strong showing" that: "(1) the discovery is necessary; (2) the discovery seeks information that the proponent does not already have; (3) the request is not designed to whittle down the class or take unfair advantage of absent members; and (4) a full response will not require absent class members to seek the assistance of counsel." *Zollicoffer v. Gold Standard Baking, Inc.*, No. 13 CV 1524, 2020 WL 6825688, at *2 (N.D. Ill. Nov. 20, 2020) (citing *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 & n.24 (7th Cir. 1974)). Here, Defendants fall far short of satisfying this standard.

First, Defendants' purported need for the requested documents—to respond to Plaintiffs' class certification and merits arguments—is speculative and no different from that of any other antitrust defendant. Second, Defendants' expansive and overly broad requests seek information that is duplicative of information Defendants already have or can acquire through less burdensome

---

[1]    The Absent Class Members are: (1) Bon Ton Stores; (2) Cellino & Barnes, P.C.; (3) Clay, Massey & Associates, P.C.; (4) Crowley Webb & Associates, Inc.; (5) Curb Appeal Madison LLC; (6) Dozier Law Firm LLC; (7) Gibbons Ford, LP; (8) Hoglund, Chwialkowski & Mrozik, P.L.L.C.; (9) Holmen Locker & Meat Market; (10) John O'Neil Johnson Toyota; (11) Kevin Forbes; (12) Law Offices of Peter Miller; (13) LM SAC, LLC d/b/a Jaguar Little Rock and Land Rover Little Rock and Owens Murphy Jaguar Land Rover VW; (14) Massey Jewelers; (15) My Philly Lawyer; (16) Northtown Automotive Companies, Inc.; (17) Randal S. Ford d/b/a Ford Firm; (18) Southern Chevrolet Cadillac, Inc.; (19) The Barnes Firm L.C.; and (20) Walley's Auto Sales, Inc. d/b/a Walley's Marine & Auto Sales.

means, information protected by the attorney-client and work product privileges, and information wholly irrelevant to the issues in the case. Third, responding to the requests would require significant involvement of counsel at a cost of hundreds of thousands of dollars of attorney time to identify, gather, and produce the requested documents. Finally, the fact that Defendants subpoenaed only Absent Class Members that previously filed individual complaints raises concerns that the proposed discovery is designed to harass. *In re Publ'n Paper Antitrust Litig*., No. 3:04 MD 1631 (SRU), 2005 WL 1629633, at *2 (D. Conn. July 5, 2005).

Because Defendants cannot satisfy the strong showing required to warrant departure from the general prohibition on discovery of absent class members, Plaintiffs request that the Court quash the subpoenas and/or enter a protective order preventing Defendants from seeking the requested discovery.

## II. FACTUAL BACKGROUND

Beginning in the late summer of 2018, plaintiffs, including the Absent Class Members, filed individual complaints in jurisdictions across the United States alleging an anticompetitive scheme by television broadcasting companies and their sales representative firms to artificially inflate the price of broadcast television spot advertisements. The cases were subsequently transferred and consolidated before this Court, and Megan Jones of Hausfeld LLP was appointed lead counsel. ECF Nos. 170, 356, 437. As is common in antitrust and other types of class actions, lead counsel filed a Consolidated Amended Complaint ("CAC") that identified the class representatives selected to lead the litigation on behalf of the class—Thoughtworx, Inc. d/b/a MCM Services Group and One Source Heating & Cooling, LLC (collectively, "Plaintiffs" or "Class Representatives"). ECF No. 223. Since the filing of the CAC nearly three years ago, none

of the twenty Absent Class Members have had any role in the litigation.[2]

Fact discovery commenced shortly after the denial of Defendants' motions to dismiss on November 6, 2020, and on February 12, 2021, Defendants served Plaintiffs with their First Set of Coordinated Requests for Productions to All Plaintiffs ("Plaintiff RFPs"). The Plaintiff RFPs sought broad categories of documents about all aspects of the Plaintiffs' businesses, their advertising purchases, including broadcast television and other types of advertising, competitive conditions in the advertising market, their reasons for purchasing broadcast television advertising versus other forms of advertising, and documents that relate to the subject matter of the litigation, such as exchanges of competitive information between and among Defendants.[3] Plaintiffs completed their productions, which totaled nearly 11,000 documents, on October 1, 2021.

As Plaintiffs were completing their productions, Defendants began serving (and attempting to serve) document subpoenas on the Absent Class Members.[4] *See, e.g.,* Exhibit A.[5] The subpoenas, which each contain 17 to 19 expansive requests, seek much of what was sought from

---

[2] One of the Absent Class Members, the Barnes Firm, voluntarily dismissed its complaint prior to the filing of the CAC. ECF No. 219. Others have done the same since the filing of the CAC. ECF Nos. 470, 501, 509.

[3] The parties engaged in extensive meet and confers regarding the scope of the Plaintiff RFPs and search terms. Plaintiffs' agreement to produce documents in any particular category should not be construed as a concession that such documents are relevant.

[4] Defendants attempted to serve subpoenas by emailing attorneys they apparently believed represented each of the Absent Class Members but emailed the incorrect attorneys in a number of instances. To date, fifteen of the Absent Class Members have agreed to accept service of the subpoenas: (1) Bon Ton Stores; (2) Celling & Barnes PC; (3) Clay, Massey & Associates, P.C.; (4) Curb Appeal Madison LLC; (5) Dozier Law Firm LLC; (6) Gibbons Ford, LP; (7) Hoglund, Chwialkowski & Mrozik, P.L.L.C.; (8) Holmen Locker & Meat Market; (9) John O'Neil Johnson Toyota; (10) LM SAC, LLC d/b/a Jaguar Little Rock and Land Rover Little Rock and Owens Murphy Jaguar Land Rover VW; (11) Massey Jewelers; (12) My Philly Lawyer; (13) Randal S. Ford d/b/a Ford Firm; (14) Southern Chevrolet Cadillac, Inc.; and (15) Walley's Auto Sales, Inc. d/b/a Walley's Marine & Auto Sales. The remaining five Absent Class Members have not been served.

[5] Plaintiffs are submitting one of the subpoenas as an exemplar as all of the subpoenas are identical, with the exception of one or two document requests individualized for each the respective Absent Class Member. Plaintiffs are more than happy to provide the other 19 subpoenas at the Courts' request.

and produced by Plaintiffs, as well as other categories of documents not relevant to the litigation or protected by the attorney-client and work product privileges. Following the exchange of correspondence and a meet and confer, Defendants agreed to narrow four requests (Nos. 1, 3, 4, and 5) and withdraw five requests (Nos. 8, 9, 11, 12, and 16), but they continued to insist that they were entitled to documents responsive to the remaining requests. *See* Exhibit B. The parties again met and conferred and exchanged correspondence, but it became apparent that they have a fundamental disagreement regarding the permissibility of such broad absent class member discovery, particularly at this stage of the litigation. On January 21, 2022, the parties declared impasse and this motion followed.

## III.   ARGUMENT

### A.   Discovery From Absent Class Members Is Strongly Disfavored

Rule 23 creates a "general policy of permitting absent class members to remain outside the principal action." *Brennan*, 450 F.2d at 1004-05; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything."). Because of this policy, discovery from absent class members is not warranted "as a matter of course." *Brennan*, 450 F.2d at 1005; *see also Dennis v. Greatland Home Health Servs, Inc.*, No. 19-cv-5427, 2020 WL 11563081, *3 (N.D. Ill. Nov. 10, 2020) ("Discovery from absent members of the *putative* class is not the norm.") (quoting 1 McLaughlin on Class Actions § 3:9 (17th ed. 2020)).

The general prohibition on absent class member discovery stems in large part from concerns that defendants may use such devices "as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants." *Brennan*, 450 F.2d at 1005. Moreover, as courts and commentators have reasoned, Rule 23 would have little purpose if all

class members were subjected to discovery as a matter of course because all class actions would be converted into massive joinders. *E.g., Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2007 WL 2908829, at *1 (N.D. Ill. Oct. 4, 2007) ("One of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subject to discovery.") (quoting Manual for Complex Litigation, Fourth, § 21.41), *objections overruled*, No. 04 C 6476, 2008 WL 11517166 (N.D. Ill. May 29, 2008).[6]

Courts permit defendants to obtain discovery from absent class members only after making a "strong showing" that: (1) the discovery is necessary; (2) the discovery seeks information that the proponent does not already have; (3) the request is not designed to whittle down the class or take unfair advantage of absent members; and (4) a full response will not require absent class members to seek the assistance of counsel. *Zollicoffer*, 2020 WL 6825688, at *2 (citing *Clark*, 501 F.2d at 340 & n.24).[7] Even where these criteria are met, the proposed discovery "must be carefully limited to protect absent class members from harassment, and to ensure that the advantage of streamlined discovery in a class action lawsuit is not lost." *Zollicoffer*, 2020 WL 6825688, at *2 (quoting *Bell v. Woodward Governor Co.*, No. 03 CV 50190, 2005 WL 8179364, at *1 (N.D. Ill. Nov. 7, 2005)); *see also Clark*, 501 F.2d at 340 & n.24 (noting that discovery of absent class

---

[6]     *See also Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) ("one of the principal advantages of class actions would be lost if all class members were routinely subject to discovery." (internal quotation omitted)); *Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, Civ. A. No. 04-498, 2006 WL 2588710, at *1 (D.D.C. Sept. 7, 2006) ("[O]ne of the principal advantages of class over massive joinder or consolidation would be lost if all class members were routinely subject to discovery." (quotation omitted)); *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993) ("The efficiencies of a class action would be thwarted if routine discovery of absent class members is permitted."); 3 Newberg on Class Actions § 9:11 (5th ed.) (noting that avoidance of a multiplicity of actions, one of the goals of Rule 23, would be frustrated by saddling class members with discovery obligations) (collecting cases).

[7]     *See also Dennis*, 2020 WL 11563081, *3 (discovery from absent class members "requires a demonstration of need") (quoting Manual for Complex Litigation § 21.14 (4th ed. 2020)); *Groth*, 2008 WL 2704709, at *1("The court should only allow discovery of absent class members upon a showing of 'particularized need.").

members may only be permitted if the information requested is necessary for trial preparation and not designed "as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants" (internal quotations omitted)).[8] Courts in the Seventh Circuit rarely find this exceedingly high burden satisfied.[9] The Seventh Circuit's position on absent class member discovery is in line with similar rulings outside of this Circuit.[10]

### B. The Absent Class Members Are True Absent Class Members

---

[8]     Although the present situation is slightly atypical because Defendants are seeking third-party discovery under Rule 45 as opposed to party discovery governed by Rule 26, courts have not found the procedural difference to have a practical effect. *See, e.g., Publ'n Paper*, 2005 WL 1629633, *2. Rule 45(c)(3)(A)(iv) requires a court to quash or modify a subpoena if it "subjects a person to undue burden." *Id.* Similarly, Rule 26(c) allows a court to impose a protective order if necessary to protect any person from "undue burden." *Id.* As the court reasoned in *Publication Paper*, "[T]hese rules impose on parties seeking third-party discovery from absent class members at least the same obligations as would apply were the discovery sought under the party discovery rules. Any other holding would allow Rule 45 to be used to end-run around Rule 23. Consequently, although the defendants here have sought discovery by subpoena, the standard that guides my decision whether to permit such discovery is the same as the standard that applies had this discovery been sought in the form of party discovery requests." 2005 WL 1629633, at *2. *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3398141, at *1 (N.D. Ill. July 12, 2018), for example, addressed the defendants' subpoenas in the context of a motion for a protective order under Rule 26 as opposed to a motion to quash under Rule 45.

[9]     *See e.g., Zollicoffer*, 2020 WL 6825688, at *2 (denying individual discovery into identities of absent class members and noting that such discovery is warranted in only limited circumstances); *Rogers*, 2007 WL 2908829, at *4-8 (denying individualized discovery into size, composition, and allocation decisions regarding absent class members' investment portfolios); *Bell*, 2005 WL 8179364, at *1–2 (same); *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1992 WL 415382, at *5-6 (N.D. Ill. Nov. 5, 1992) (denying request for documents and depositions from absent class members that defendants argued were relevant to class certification and the merits).

[10]     *Tchrs' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *10 (S.D.N.Y. Dec. 27, 2004) (recognizing that courts are "extremely reluctant to permit discovery of absent class members."); *see, e.g., Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-0350 JAM AC, 2020 WL 5658329, at *2-3 (E.D. Cal. Sept. 23, 2020) (granting named plaintiffs request for protective order to prohibit discovery from 118 absent class members); *Mendez v. Avis Budget Grp., Inc.*, No. 11-6537 (JLL), 2019 WL 1487258, at *3 (D.N.J. Apr. 3, 2019) (denying defendant's request to serve thousands of interrogatories on absent class members); *Garden City Emps' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-00882, 2012 WL 4829802, at *4 (M.D. Tenn. Oct. 10, 2012) (denying leave for defendants to conduct discovery of 10 absent class members); *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, No. 10-4372 (DWF/JJG), 2012 WL 12898811, at *1, *5-6 (D. Minn. July 27, 2012) (denying written discovery to 137 absent class members and limiting discovery to a 2-page optional questionnaire); *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-0269 (PCD), 2011 WL 13237887, at *2-3 (D. Conn. May 10, 2011) (granting motion to quash subpoenas served on five absent class members); *Publ'n Paper*, 2005 WL 1629633, at *2 (granting motion to quash subpoenas issued to absent class members).

None of the Absent Class Members are named as class representatives in the CAC, nor have they had any role in the litigation since the CAC was filed nearly three years ago. Thus, there should be no dispute that they are absent class members. However, seeking to avoid the heightened standard necessary for the discovery they seek, Defendants erroneously insist that the Absent Class Members are not truly absent class members because: (1) the Court has not yet certified a class in this action and putative class members are subject to discovery without any heightened showing by Defendants; and (2) plaintiffs that file complaints are subject to discovery, even if they are not named as lead plaintiffs or class representatives. These arguments are simply without merit.

As an initial matter, Defendants' arguments are wholly inconsistent with the purpose of Rule 23 discussed above and would turn every class action into a mass action prior to class certification.[11] Moreover, Defendants' arguments ignore the fact that an amended complaint supersedes the original complaint, rendering it void. *Flannery v. Recording Indus. Assoc. of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004).; *see also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (noting that a plaintiff's new complaint wipes away prior pleadings). Thus, the CAC effectively nullified the individual complaints and the Absent Class Members' status as parties in this litigation.

Courts acknowledge that the general prohibition on absent class discovery applies prior to class certification as well as to plaintiffs that filed complaints.[12] Indeed, courts have found that

---

[11]     The Supreme Court recognized that putative class members are not parties to the litigation prior to class certification. *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (characterizing proposition that a "nonnamed class member is a party to the class-action litigation *before the class is certified*" as "novel and surely erroneous") (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (Scalia, J. dissenting)).

[12]     *E.g., Publ'n Paper*, 2005 WL 1629633, at *2 (finding, prior to class certification, that plaintiffs that filed individual actions but were not named as class representatives should be considered absent class members); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 283 F.R.D. 623, 625 (D. Colo. 2005) ("Non-lead plaintiffs tend to have only a "passive role" in the litigation, rendering them "akin to 'absent class members' as to whom special rules of discovery apply.").

7

plaintiffs may be deemed absent class members and exempt from discovery even when they have taken a much more active role in the litigation than the Absent Class Members have here.[13] Thus, Defendants cannot escape the need to satisfy the heightened requirement for absent class discovery.[14]

### C. Defendants Cannot Satisfy The Exceedingly High Burden for Obtaining Discovery From The Absent Class Members

Nor can Defendants satisfy the exceedingly high burden necessary to show that discovery of the Absent Class Members is warranted. They have not demonstrated a particularized need for the discovery, already have much of the requested information, the subpoenas appear designed to harass, and the overly-broad subpoenas would impose significant resource burdens on the Absent Class Members, including the need to retain counsel.

#### 1. Defendants Fail To Demonstrate A Particularized Need For The Discovery They Seek

---

[13]    *E.g., Feldman*, 1992 WL 415382, at *5-6 (granting motion for protective order to prevent discovery from plaintiffs that sought to withdraw as class representatives on grounds that defendant had not satisfied high bar for absent class member discovery); *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL-DJW, 2006 WL 8096533, at *2 (D. Kan. June 9, 2006) (denying request to depose plaintiff that sought to withdraw as a class representative)..

[14]    Defendants' reliance on three cases from this District for the proposition that they need not satisfy the heightened showing applicable to absent class members is misplaced. *See In re Aftermarket Filters*, No. 08 C 4883, 2010 WL 3909502, at *1 (N.D. Ill. Oct. 1, 2010) and *In re Plasma Derivative Protein Therapies Antitrust Litig.*, Nos. 09 C 7666, 11 C 1468, 2012 WL 1533221, at *5 (N.D. Ill. Apr. 27, 2012). While the court in *Plasma* characterized a plaintiff that had filed a complaint as "not your garden variety absent class member," the court nevertheless granted the requested discovery only after the heightened showing for absent class member discovery was satisfied: "[T]he Court is assured that the requested information is actually needed in preparation for trial, and that the discovery devises are not used to take unfair advantage of Mayo as an absent class member[] or as a stratagem to reduce the number of claimants." 2012 WL 1533221, at *6. Similarly in *Filters*, the court acknowledged that there must be a demonstrated need for the requested discovery and implied that a desire to obtain discovery related to the merits of direct purchaser claims would not satisfy that need. 2010 WL 3909502, at *1. The court's decision granting the requested discovery turned on the fact that the discovery was needed to address issues related to certification of the proposed indirect purchaser class and that the indirect purchasers had similarly subpoenaed the same absent class members and the direct purchaser plaintiffs had not opposed. *Id.* Thus, contrary to Defendants' assertions during the meet and confers, discovery was not granted in these cases simply because the absent class members had filed their own complaints or were members of an uncertified class.

Defendants have not demonstrated a particularized need for the discovery they seek nor shown that the proposed discovery is necessary to the fair adjudication of this matter. During the parties' meet and confers, Defendants generally averred that they "need" the requested discovery to respond to Plaintiffs' class certification arguments, such as typicality and preponderance, and merits arguments, such as market definition. But this purported "need" is not only speculative, as Plaintiffs have not yet filed their motion, it is no different from the need of any antitrust class action defendant. Such a generalized "need" for expansive information is not sufficient to overcome the high standard imposed on defendants seeking discovery from absent class members. *See, e.g., Clark*, 501 F.2d at 340-41; *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3398141, at *4 (N.D. Ill. July 12, 2018); *Publ'n Paper*, 2005 WL 1629633, at *2 (D. Conn. July 5, 2005).

### a. Defendants Do Not Need The Requested Discovery For Class Certification

Defendants' argument that the class representatives are not typical of large advertising purchasers is entirely premature and does not necessitate discovery of the Absent Class Members at this time.[15] It will be Plaintiffs' burden to demonstrate that the class representatives are typical of the other class members and that common issues predominate. Defendants do not have any obligation of proof on these issues. Once a motion for class certification is filed, if Defendants believe Plaintiffs have not satisfied their burden, they can raise the issue then. At this stage of the case, Defendants have not demonstrated that discovery from the Absent Class Members will allow them to refute whatever evidence Plaintiffs provide. *See, e.g., Broiler Chicken*, 2018 WL 3398141,

---

[15] During the parties' meet and confer, it became clear that Defendants seek discovery into why the Absent Class Members were not chosen to become class representatives. Defendants are not entitled to engage in a fishing expedition into Plaintiffs' legal strategy, nor are such decisions relevant in any fashion.

at *4 (denying defendants' request for documents from direct purchaser absent class members to refute class certification in indirect purchaser case prior to submission of the plaintiffs' class certification paper).

In *Broiler Chicken*, for example, the defendants similarly sought extensive information from absent class members, arguing that it was needed to respond to class certification arguments. 2018 WL 3398141, at *2. The court found that such discovery was not warranted prior to the filing of class certification papers because defendants already had much of the requested information in the form of their own transactional data and would receive additional data from the plaintiffs' experts in connection with their class certification reports. *Id.* at *3. The court also noted that publicly available information might be as helpful as the information the defendants sought from the absent class members, reasoning, "[The absent class members], many of whom are relatively smaller players in the universe of Broiler direct purchasers, may not be the primary, or the only or even the best, sources for the kind of information that Defendants might need to develop arguments." *Id.* In denying the defendants' request, the court reasoned,

> If the question comes down to whether to open up discovery now into areas that may or may not be relevant, with the attendant burden and delay even if incremental, or to wait until it is clear or at least clearer that discovery is necessary, then the Court would rather wait even if that means some delay later down the road if some of the discovery Defendants now say they need is allowed to proceed and even if that causes some delay in the expert phase of discovery or the ultimate resolution of the case.

*Id.* Similarly, in *Publication Paper*, the court quashed subpoenas on two plaintiffs that, like the Absent Class Members here, had filed individual lawsuits but were not named as class representatives. 2005 WL 1629633, at *2. The court rejected the defendants' arguments that discovery of the absent class members was necessary for class certification, reasoning:

> First, the defendants have given only the vaguest of indications why such discovery is necessary, citing to issues of commonality and typicality that would appear to

10

apply to all class members in every class action. Second, the defendants have apparently only sought such discovery from two absent class members, and those absent class members happen to be the two plaintiffs in the individual lawsuit, a fact that raises a concern that the proposed discovery is being sought to gain a tactical advantage rather than needed information.

*Id.* at *2; *see also Levinson v. Westport Nat'l Bank*, No. 3:09-CV-0269, 2011 WL 13237887, at *2-3 (D. Conn. May 10, 2011) (rejecting defendants' arguments that absent class member discovery was necessary to determine which class members satisfy the requirements of typicality, adequacy of representation, and predominance of common issues over individual issues). As in *Broiler Chicken* and *Publication Paper*, Defendants' argument that the requested information is "needed" for class certification is unpersuasive and premature.

> ### b. Defendants Do Not Need The Requested Discovery For Merits Arguments

Defendants' argument that the requested information is "needed" to respond to Plaintiffs' arguments about market definition is similarly unpersuasive. As discussed in more detail below, Defendants' already have much of the information they are seeking. Additionally, much of the information Defendants claim is relevant to the issue of market definition in fact relates to the Absent Class Members' internal workings and activities, such as their advertising budgets, their reasons for purchasing broadcast television advertising versus other forms of advertising, and the information to which they had access, such as Nielsen and Kantar ratings. But it is Defendants' conduct, not that of the Absent Class Members (or even the class representatives), that is relevant to the litigation. *See, e.g., In re Automotive Refinishing*, No. MDL 1426, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) ("Plaintiffs' activities are almost wholly irrelevant in proving or disproving the underlying charges.").

As with class certification, Plaintiffs have the burden of demonstrating liability, including, if necessary, market definition (which is only an element of Plaintiffs' rule of reason claim, not their

*per se* claim). If Plaintiffs produce merits expert reports regarding market definition and Defendants do not think Plaintiffs have satisfied their burden, Defendants may raise the issue with the Court at that time. It makes little sense to burden the Absent Class Members with overly broad document productions that may ultimately be unnecessary. *Broiler Chicken*, 2018 WL 3398141, at *2-3; *Publ'n Paper*, 2005 WL 1629633, at *2.

### 2. The Subpoenas Seek Information Defendants Already Have

Absent class member discovery is inappropriate if the information sought is information that the requesting party already has or could be obtained from a less burdensome source. *Clark*, 501 F.2d at 340; *Zollicoffer*, 2020 WL 6825688 at, *2; *see, e.g., Broiler Chicken*, 2018 WL 3398141, at *1 (denying request for absent class members' documents regarding pricing where defendants had their own data to show the prices at which they sold allegedly price-fixed products); *Barham v. Ramsay*, 246 F.R.D. 60, 64 (D.D.C. 2007) (denying discovery of absent class members because the relevant "information is not unavailable from other sources such that only the absent class members can provide it."). Here, Defendants already have much of the information requested from the Absent Class Members in the form of their own documents and data.[16] Similarly, Defendants requested much of the same information from the Class Representatives that they now seek from the Absent Class Members, and Defendants have not identified any category of documents not already received from the Class Representatives.[17] Finally, much of the information

---

[16]     Specifically, Request No. 2 seeks documents sufficient to identify each advertising agency that each Absent Class Member purportedly used to purchase broadcast television advertising. Request No. 4 seeks, among other things, documents concerning the total amount each Absent Class Member spent on broadcast television advertising for each quarter. And Request No. 6 seeks all documents and communications concerning pricing and price negotiations for broadcast television advertising. As the entities selling broadcast television advertising to the Absent Class Members, information responsive to these requests is already within Defendants' possession, custody, and control.

[17]     For example, Defendants requested: documents and communications concerning their purchases of advertising, including advertising budgets, documents reflecting their purchases of broadcast television advertising, and documents concerning their decision to purchase broadcast television advertising, which

Defendants seek could be obtained from less burdensome sources, such as publicly available sources or industry experts. *Broiler Chicken*, 2018 WL 3398141, at *3.

### 3. The Subpoenas Appear Designed To Harass The Absent Class Members

Discovery directed to absent class members "must be carefully limited to protect absent class members from harassment." *Zollicoffer*, 2020 WL 6825688, at *2; *see also Clark*, 501 F.2d at 340 (discovery of absent class members may only be permitted if the information requested is not designed "as a tactic to take undue advantage of the class members"); *Dellums v. Powell*, 566 F.2d 167, 187 (D.D.C. 1977) (discovery directed to absent class members must be "tendered in good faith" and "not unduly burdensome."). Rather than protect the Absent Class Members, the subpoenas here appear designed to harass and burden them.

First, despite Defendants' claims that the class representatives are atypical of large advertisers, Defendants only subpoenaed the Absent Class Members that filed individual complaints, a fact that the court in *Publication Paper* found to raise a concern that the proposed discovery was being sought to gain a tactical advantage rather than needed information. 2005 WL 1629633, at *2. Second, Defendants seek documents that clearly invade the attorney-client and work product privileges, such as documents relating to whether each Absent Class Member intends to continue prosecuting the action (Request No. 14) and documents concerning litigation funding,

---

Defendants now seek from the Absent Class Members in Request No. 4; documents reflecting the factors they considered in purchasing broadcast television advertising, which Defendants now seek from the Absent Class Members in Request No. 5; analyses of pricing and spending for broadcast television advertising, which Defendants now seek from the Absent Class Members in Request No. 6; documents concerning pricing and price negotiations for broadcast television advertising, which Defendants now seek from the Absent Class Members in Request No. 7; documents reflecting the use, solicitation, receipt, or exchange of pacing, pricing, inventory, market share, or other competitive information, which Defendants now seek from the Absent Class Members in Request No. 10; and documents and communications discussing, comparing, evaluating, or analyzing potential marketing strategies and advertising mediums, which Defendants now seek from the Absent Class Members in Request No. 13.

fee arrangements, responsibility for litigation costs, and share of recovery (Request No. 16).

Third, Defendants seek documents that are wholly irrelevant to the issues in the case. For example, Request No. 1 seeks organizational charts.[18] Request No. 3 seeks documents reflecting the nature of Absent Class Members' respective businesses.[19] Request No. 14 seeks non-privileged documents concerning why the Absent Class Members were not named as plaintiffs in the action. And Request No. 18 seeks information related to allegations in the original complaints filed by each of the Absent Class Members, notwithstanding the fact that such complaints have been superseded by the Consolidated Amended Complaint. ECF No. 292. As discussed above, Defendants also seek documents regarding the Absent Class Members' internal workings and conduct, which courts deem outside the scope of discovery in antitrust cases such as this. *E.g., In re Automotive Refinishing*, 2006 WL 1479819, at *8.

Finally, the overly-broad, untailored nature of Defendants' requests for information—much of which Defendants already have—further illustrates the harassing nature of the subpoenas.[20] Faced with document requests such as these, there can be little question that Defendants' subpoenas are aimed at dissuading the Absent Class Members from continuing to

---

[18]    Defendants have withdrawn their request for other categories of documents sought by Request No. 1, as described below and in Exhibit B, but are still seeking organizational charts.

[19]    Defendants have similarly withdrawn their request for other categories of documents sought by Request No. 1, as described below and in Exhibit B, but are still seeking documents reflecting the nature of Absent Class Members' respective businesses.

[20]    Although Defendants agreed to withdraw their requests for articles of incorporation or other corporate structure documents and certificates of good standing from the states in which the Absent Class Members conduct business (Request No. 1), detailed financial statements, including profit and loss statements (Request No. 3), documents reflecting all purchases of broadcast television advertising from Defendants (Request No. 8), documents relating to Plaintiffs' or Defendants' access to, receipt of , or use of Kantar or Nielson information (Request No. 9), documents concerning purchases of advertising being altered, moved, rescheduled, or cancelled (Request No. 11), documents concerning market conditions or the competitive landscape in the purchase or sale of broadcast television advertising (Request No. 12), and documents concerning any loan or financing agreement entered by the Absent Class Members related to the litigation (Request No. 16), these requests nevertheless demonstrate the harassing and burdensome nature of the subpoenas.

proceed as members of the putative class. *See Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992).

### 4. The Subpoenas Require Extensive Legal Assistance to Respond

Courts will deny discovery of absent class members when the discovery requires the assistance of counsel. *Clark*, 501 F.2d at 340-42. Here, each subpoena contains more than <u>seven</u> pages of instructions and definitions that most people without legal training would be unable to respond to without advice from lawyers. In addition, the broad, untailored document requests implicate questions of privilege that most laypersons would not be able to navigate without the assistance of counsel. Defendants' enormously broad subpoenas would require significant expenditure of time, effort, and expense just to analyze the discovery requests and negotiate the scope of production, *even before* any collection, review, and production of documents. And if document production is undertaken, the Absent Class Members will be required to produce voluminous information documenting practically all aspects of their business pertaining to their advertising purchases over a period of nearly six years. Given that discovery from absent class members is strongly disfavored and these subpoenas are excessively broad in scope, the Court should quash the subpoenas in their entirety.

## IV. CONCLUSION

Defendants have not satisfied the exceedingly high burden necessary to permit discovery of absent class members. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

15

Dated: January 28, 2022

Respectfully submitted,

_/s/ Megan E. Jones_
Megan E. Jones*
**HAUSFELD LLP**
600 Montgomery St., #3200
San Francisco, CA 94111
(415) 633-1908
mjones@hausfeld.com

Michael D. Hausfeld*
Hilary K. Scherrer*
Nathaniel C. Giddings*
Farhad Mirzadeh*
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
hscherrer@hausfeld.com
mcoolidge@hausfeld.com
fmirzadeh@hausfeld.com

Gary I. Smith, Jr.*
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
gsmith@hausfeld.com
tfreilich@hausfeld.com

_Lead Counsel_

Meegan Hollywood*
Matthew J. Geyer*
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-740
Fax: (212) 980-7499
mhollywood@robinskaplan.com
mgeyer@robinskaplan.com

Kimberly A. Justice

**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
Fax: (224) 632-4521
kjustice@fklmlaw.com

*Plaintiffs' Steering Committee*

Robert J. Wozniak
Steven A. Kanner
Michael J. Freed
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
skanner@fklmlaw.com
mfreed@fklmlaw.com
rwozniak@fklmlaw.com

*Liaison Counsel*

Stephanie A. Scharf
**SCHARF BANKS MARMOR LLC**
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Tel: (312) 726-6000
sscharf@scharfbanks.com

*Counsel for Plaintiffs and the Proposed Class*

*\*Admitted Pro Hac Vice.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court sing the CM/ECF system, which sent notification to all counsel of record.

/s/ Megan E. Jones
Megan E. Jones