**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br>LOCAL TV ADVERTISING ANTITRUST LITIGATION | MDL No. 2867<br>No. 18 C 6785<br><br>Honorable Virginia M. Kendall<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITON TO PLAINTIFFS' MOTION TO QUASH SUBPOENAS ISSUED TO ABSENT CLASS MEMBERS** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

III. ARGUMENT ..................................................................................................... 6

    A. Defendants Are Entitled to Discovery From the Subpoenaed Plaintiffs Because They Remain Parties to This Litigation and Are Putative, Not Absent, Class Members ......................................................................... 6

    B. Even If the Court Applies the Heightened Standard for Discovery of Absent Class Members, Plaintiffs' Motion to Quash Should Still Be Denied. ................................................................................................. 10

        1. Discovery from the Subpoenaed Plaintiffs Is Necessary. ........................ 10

        2. Defendants Do Not Already Possess the Information Sought from the Subpoenaed Plaintiffs. ...................................................... 13

        3. The Subpoenas Are Not Designed to Harass or Unduly Burden the Subpoenaed Plaintiffs. ......................................................... 13

        4. A Full Response Would Not Require the Subpoenaed Plaintiffs to Seek the Assistance of Counsel, Nor Would They Suffer Prejudice if They Chose to Seek Assistance from Their Existing Counsel. ............ 15

IV. CONCLUSION ................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aftermarket Filters*,
No. 08 C 4883, 2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) ...............................................7, 8, 9

*Brennan v. Midwestern United Life Ins. Co.*,
450 F.2d 999 (7th Cir. 1971) .................................................................................................10

*Bonutti v. Lehman Bros.*, No.
05 C 4409, 2005 WL 28484413 (N.D. Ill. Oct. 27, 2005) ......................................................2

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2018 WL 3398141 (N.D. Ill. July 12, 2018) .................................................12

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2019 WL 2764260 (N.D. Ill. May 6, 2019) ..................................................14

*City of Farmington Hills Emples. Ret. Sys. v. Wells Fargo Bank, N.A.*,
No. 10-4372, 2012 WL 4357433 (D. Minn. Sep. 24, 2012)....................................................8

*Cty. of San Mateo v. CSL Ltd. (In re Plasma-Derivative Protein Therapies
Antitrust Litig.) ("Plasma")*,
No. 09 C 7666, 2012 WL 1533221 (N.D. Ill. Apr. 27, 2012).............................7, 9, 10, 13, 15

*Dennis v. Greatland Home Health Servs, Inc.*,
No. 19-cv-5427, 2020 WL 11563081, at *3-4 (N.D. Ill. Nov. 10, 2020 ..................................8

*Feldman v. Motorola, Inc.*,
No. 90 C 5887, 1992 WL 415382 (N.D. Ill. Nov. 5, 1992).....................................................9

*Fishon v. Peloton Interactive, Inc.*,
336 F.R.D. 67 (S.D.N.Y. 2020) ............................................................................................13

*In re Folding Carton Antitrust Litig.*,
83 F.R.D. 260 (N.D. Ill. 1979)........................................................................................6, 7, 9

*Johnson v. Ford Motor Co.*,
No. 3:13-cv-06529, 2015 WL 3540802 (S.D. W.Va. June 4, 2015) ........................................7

*Jubinville v. Hill's Pet Nutrition, Inc.*,
No. 19-74WES, 2019 WL 1584679 (D.R.I. Apr. 12, 2019)...................................................10

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
571 F.3d 672 (7th Cir. 2009) ................................................................................................11

*In re Publ'n Paper Antitrust Litig.*,
 No. 3:04 MD 1631, 2005 WL 1629633 (D. Conn., July 5, 2005) ......................................8, 12

*St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs.*,
 No. 2:08 cv 176, 2010 WL 2629485 (N.D. Ind. June 28, 2010) ................................................2

*United States v. Cardinal Growth, L.P.*,
 No. 11 C 4071, 2015 WL 850230 (N.D. Ill. Feb. 23, 2015) ......................................................2

**Rules**

Rule 23 .................................................................................................................................4, 5, 8, 9

Rule 45 ......................................................................................................................................10

**Other Authorities**

1 McLaughlin on Class Actions § 3:9 (18th ed. 2021) ....................................................................8

## I.      INTRODUCTION

After months of delay tactics, the two Class Representatives in this action now attempt to quash Defendants' subpoenas ("the Subpoenas") to avoid discovery of putative class members that filed complaints against Defendants in this action (the "Subpoenaed Plaintiffs").[1]   Class Representatives mischaracterize the Subpoenaed Plaintiffs as "absent class members" in an attempt to impose a heightened standard for discovery on them.   However, the Subpoenaed Plaintiffs all opted to file lawsuits that were consolidated into this multidistrict action, have not dismissed their claims, and remain parties to the litigation.   Moreover, because the Court has not yet certified a class, the Subpoenaed Plaintiffs are putative class members, and thus subject to a lower standard for discovery than absent class members post-certification.   Defendants meet the standard for discovery of parties and putative class members and are not required to meet the heightened standard for discovery of absent class members on which Plaintiffs rely in their Motion to Quash.

Even if the Court were to apply the heightened standard for discovery of absent class members, Defendants satisfy each of the four elements for such discovery.   First, the Subpoenas seek necessary, particularized information about the Subpoenaed Plaintiffs' advertising practices, budgets, analyses, strategies and negotiations, all of which are directly relevant to both class certification and the merits of the two antitrust claims at issue.   Second, Defendants cannot obtain

---

[1] The Subpoenaed Plaintiffs are (1) The Bon-Ton Stores, Inc.; (2) Cellino & Barnes, P.C.; (3) Clay, Massey & Associates, P.C.; (4) Curb Appeal Madison LLC; (5) Dozier Law Firm LLC; (6) Gibbons Ford, LP; (7) Holmen Locker & Meat Market; (8) John O'Neil Johnson Toyota, LLC; (9) Kevin Forbes; (10) Law Offices of Peter Miller, P.A.; (11) LM SAC, LLC d/b/a Jaguar Little Rock, Land Rover Little Rock, and Owens Murphy Jaguar Land Rover VW; (12) Masseys Jewelers; (13) Northtown Automotive Companies, Inc.; (14) Randal S. Ford d/b/a Ford Firm; (15) Southern Chevrolet Cadillac, Inc.; (16) Walley's Auto Sales, Inc. d/b/a Walley's Marine & Auto Sales.

Defendants withdraw the subpoenas previously served on the plaintiffs who have since voluntarily dismissed their respective complaints: Crowley Webb and Associates, Inc.; Hoglund, Chwialkowski & Mrozik, P.L.L.C.; My Philly Lawyer; and The Barnes Firm, L.C.   See ECF Nos. 219, 470, 501, 509.

this information from the Class Representatives, Defendants' own data or publicly available sources. Third, the Subpoenas do not harass or unduly burden the Subpoenaed Plaintiffs. In fact, Defendants have agreed to substantially narrow the Subpoenas to minimize the burden on the Subpoenaed Plaintiffs, a fact the Class Representatives relegate to a footnote in their Motion to Quash.[2] Fourth, Class Representatives cannot credibly claim that the Subpoenaed Plaintiffs would suffer any prejudice or undue burden if they were required to obtain counsel because they have already chosen to engage counsel to file lawsuits in this action.

Plaintiffs' Motion to Quash is an improper attempt to deprive Defendants of discovery needed to defend against the claims in this large nationwide antitrust class action and should thus be denied.[3]

## II.    BACKGROUND

Between July and October 2018, more than 20 plaintiffs, including the 15 Subpoenaed Plaintiffs, filed individual complaints against Defendants alleging a multi-year, nationwide conspiracy to fix, raise, maintain or stabilize the price of broadcast television spot advertisements. On October 9, 2018, the United States Judicial Panel on Multidistrict Litigation consolidated those

---

[2] Class Representatives only begrudgingly acknowledge Defendants' agreement to narrow or withdraw **half** of their requests so as not to unduly burden the Subpoenaed Plaintiffs in a footnote to their Motion to Quash. (*See* ECF No. 523 at 14, n. 20.)

[3] The Court should deny Cellino & Barnes, P.C.'s ("C&B") and John O'Neil Johnson Toyota LLC's ("Johnson") joinders. (ECF Nos. 538, 539.) If these parties no longer wanted to participate in this action, then they could have dismissed their cases. They have not. C&B and Johnson have counsel that filed the joinders, so needing counsel to respond to the Subpoenas would not cause them any prejudice or undue burden. Further, a dissolved corporation is required to comply with its discovery obligations. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs.,* No. 2:08 cv 176, 2010 WL 2629485, at *9 (N.D. Ind. June 28, 2010). Finally, C&B's cost shifting request should be denied. *See United States v. Cardinal Growth, L.P.,* No. 11 C 4071, 2015 WL 850230, at *3 (N.D. Ill. Feb. 23, 2015) (refusing to shift costs where the subpoena recipient was "not a typical disinterested non-party"); *Bonutti v. Lehman Bros.,* No. 05 C 4409, 2005 WL 2848441, at *3 (N.D. Ill. Oct. 27, 2005) (refusing to shift costs for subpoenas issued to non-parties after requests were narrowed).

complaints into this Multidistrict Litigation. (ECF No. 1.) After the actions were consolidated, some plaintiffs voluntarily dismissed their actions. The Subpoenaed Plaintiffs did not.

Plaintiffs seek to certify a putative class of *all* persons and entities that purchased broadcast television spot ads from *any* of the Defendants across 127 different designated market areas ("DMAs") during the alleged multiyear class period—a class that Plaintiffs allege, "likely includes hundreds if not thousands of members."[4] (ECF No. 292 at 220–21.) This putative class purports to include not only advertisers that purchased spot ads directly from Defendants, but also advertising agencies that purchased spot ads on behalf of their clients.

The Consolidated Second Amended Antitrust Class Action Complaint (the "Complaint") was filed by only two named plaintiffs seeking to represent this large nationwide class of advertisers and advertising agencies: Thoughtworx, Inc., d/b/a MCM Services Group ("MCM") and One Source Heating & Cooling, LLP ("One Source") (together, the "Class Representatives"). (ECF No. 292 at 18–19.)

MCM is an advertising agency that predominantly purchases low-cost spot ads on behalf of its clients, many of which are small, local law firms.[5] MCM is not representative of all other advertising agencies included in the putative class, which includes large national and multinational ad agencies earning billions of dollars purchasing expensive, primetime spot ads for large, national advertisers.

One Source is a "heating, cooling, and HVAC services provider headquartered in Alabama." (*Id.* at 19.) It too is not representative of the wide range of advertisers in the putative

---

[4] In fact, as Plaintiffs presumably know from the significant discovery they have taken from Defendants, the putative class likely includes tens of thousands of class members nationwide.

[5] *See* MCM Services Group, About Us, *available at* https://www.linkedin.com/company/mcm-services-group/about/ (last accessed 2/8/2022).

class, which includes not only other small businesses in markets around the country, but also large and multinational companies, such as Ford, Toyota, Comcast and McDonalds. The buying practices and strategies of a small local advertiser in Birmingham, Alabama, are necessarily different from that of a much larger advertiser in New York City.

Discovery in the consolidated action is ongoing. Defendants have collectively produced nearly 14 million documents from over 600 custodians. (Declaration of Bonnie Lau ("Lau Decl.") at ¶ 4.) The Class Representatives have produced less than 11,000 documents from only five custodians.[6] (Lau Decl. at ¶ 5; ECF No. 523 at 3.)

The Subpoenas here are narrowly targeted to seek information relevant to opposing the motion for class certification that Class Representatives are due to file shortly after the fact discovery period ends in December 2022. (ECF No. 510.) The Subpoenas seek information about where and how the Subpoenaed Plaintiffs buy spot advertising, how they negotiate prices for spot ads, whether they do so directly or through an ad agency like MCM, and what forms of advertising each views as close substitutes to spot ads on broadcast TV. This information is critical to testing whether the alleged putative class action satisfies the typicality requirement of Federal Rules of Civil Procedure Rule 23(a) and the predominance requirement of Federal Rules of Civil Procedure Rule 23(b)(3), as well as merits issues such as market definition and nationwide impact and injury.

Plaintiffs allege in their Complaint that each DMA in the country is a separate local geographical market for TV advertising. Appendix A to the Complaint lists 127 DMAs in which two or more Defendants own or operate broadcast TV stations, in each of which they allege the pacing exchanges at issue were evidence of a per se unlawful price-fixing agreement or violated

---

[6] Plaintiffs agreed to produce documents from six custodians, two from One Source and four from MCM. Plaintiffs, however, produced no documents whatsoever for one MCM custodian. (Lau Decl. at ¶ 5.)

the antitrust laws under the rule of reason. In each of these DMAs, hundreds, if not thousands, of advertisers purchased airtime for spot ads over the course of each year, often at prices that were individually negotiated. The outcome of these negotiations usually depended on a host of different factors. These include, among others: the demand for advertising in that DMA, both at the time the ad was purchased and the time it was scheduled to run; the volume of spot ads that a particular advertiser purchased; the demographics of the audience the advertiser was seeking to reach; and relative bargaining power and negotiating skills of the advertiser or its ad agency and the TV station with which it was dealing. Defendants expect documents from the Subpoenaed Plaintiffs, who represent a small sample of different advertisers in different local markets, to demonstrate regional and advertiser-specific distinctions in the market for spot ads, the individualized nature of negotiations for spot advertising and the wide variance in prices that each advertiser paid because of those factors. These documents will demonstrate that Plaintiffs cannot show antitrust injury to all members of the class using common evidence, without the need for individualized inquiries as to each DMA and, within each DMA, as to each individual advertiser. There is no way for Defendants to obtain evidence to show this without discovery from the Subpoenaed Plaintiffs and potentially from other putative class members.

Since Defendants served the Subpoenas in late August and early September 2021, Plaintiffs delayed for months to prevent Defendants from obtaining discovery from the Subpoenaed Plaintiffs.[7] For example, after the parties had met and conferred and exchanged several emails regarding the Subpoenas, on October 5, 2021, Defendants offered to withdraw or significantly narrow the scope of half the Subpoena requests in the spirit of compromise. (Lau Decl. at ¶ 8, Ex.

---

[7] Notably absent from Plaintiffs' recitation of events are any dates demonstrating the nearly five-month delay between the date they received the Subpoenas and any substantive responses from Plaintiffs.

5

A.)  After numerous emails from Defendants, the Class Representatives finally rejected Defendants' proposed compromise at a meet and confer on November 22, 2021.  (*Id*. at ¶ 10.)  On December 14, 2021, Defendants offered to withdraw the Subpoenas to the majority of the Subpoenaed Plaintiffs and move forward with Subpoenas to only four Subpoenaed Plaintiffs, each of which represented a distinct type of advertiser.  (*Id*. at ¶ 11, Ex. B.)  After another lengthy delay, Plaintiffs finally met and conferred with Defendants on the Subpoenas on January 21, 2022, and refused to produce *any* documents.  (*Id*. at ¶ 12.)

## III.  ARGUMENT

### A.  Defendants Are Entitled to Discovery From the Subpoenaed Plaintiffs Because They Remain Parties to This Litigation and Are Putative, Not Absent, Class Members.

The Class Representatives wrongly claim that the Subpoenaed Plaintiffs are "absent class members."  The Subpoenaed Plaintiffs affirmatively elected to file individual suits, decided not to dismiss them, and thus remain parties to this action.  In *Folding Carton*, the court rejected the plaintiffs' attempt to distinguish between the "active class representatives" and the "other class plaintiffs who [previously] brought and remain[ed] as parties."  *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979).  The court held that "those plaintiffs who have brought actions that were consolidated in [the multidistrict litigation] as a class action are properly subject to discovery as parties to this litigation without any showing of special circumstances.  **Plaintiffs bringing actions will not be allowed to self-select the active class representatives and then leave discovery limited to the portion of the plaintiffs selected**."  *Id.* (emphasis added).  The court held that the higher discovery standard for absent class members did not apply to the non-class representative plaintiffs.  *Id*.  *Folding Carton* makes clear that, contrary to Plaintiffs' claim, the Complaint did not "effectively nullif[y]" the Subpoenaed Plaintiffs' "status as parties in this litigation."  (*See* ECF No. 523 at 7.)

6

Even where, unlike here, a former plaintiff has voluntarily dismissed an individual action after it is consolidated into a multidistrict litigation, a subpoena recipient's status as a prior named plaintiff is "instrumental in determining the appropriate limits that the Court will set regarding its discovery" because a former plaintiff is "not your garden variety absent class member." *Cty. of San Mateo v. CSL Ltd. (In re Plasma-Derivative Protein Therapies Antitrust Litig.) ("Plasma"), No. 09 C 7666, 2012 WL 1533221, at *5 (N.D. Ill. Apr. 27, 2012)*; *see also Johnson v. Ford Motor Co.*, No. 3:13-cv-06529, 2015 WL 3540802, at *3 (S.D. W.Va. June 4, 2015) (permitting discovery because putative class members were "previously named parties, who affirmatively interjected themselves into the prosecution of the claims and maintained their respective roles until opting for voluntary dismissal"). Discovery is even more justified here than in *Plasma* and *Johnson* because the Subpoenaed Plaintiffs have not voluntarily dismissed their actions and remain parties to this case.

Moreover, because a class has not yet been certified, the Subpoenaed Plaintiffs are not "absent class members," but instead are putative class members to whom a lower standard for discovery applies. Courts in the Seventh Circuit draw a distinction between "pre-certification communications" with putative class members versus "[d]iscovery directed to unnamed members of a **certified** class." *In re Aftermarket Filters*, No. 08 C 4883, 2010 WL 3909502, *1 (N.D. Ill. Oct. 1, 2010) (emphasis in original); *see also In re Folding Carton*, 83 F.R.D. at 264 ("Only when a defendant seeks discovery from **absent class members** must a strong showing of necessity, the absence of an improper motive, and a demonstration that the information sought is not available from the representative parties be made.") (emphasis added). In *Aftermarket Filters*, the court emphasized that the "subpoena recipients [were] not actually 'class members' because no class [had] yet been certified. The subpoena recipients [were] more accurately characterized as **putative**

class members." *In re Aftermarket Filters*, 2010 WL 3909502, at *1 (emphasis in original) (denying motion to quash subpoenas). Similarly, the Court here has not yet certified a class, so the Subpoenaed Plaintiffs remain putative class members, not absent class members.[8]

The Class Representatives claim that the heightened requirements for absent class discovery apply to putative class members, including former named plaintiffs, but their cited cases are inapposite. Plaintiffs cite several out-of-circuit cases, but none of those cases are instructive because "the authority on this issue is wide ranging." *City of Farmington Hills Emples. Ret. Sys. v. Wells Fargo Bank, N.A.*, No. 10-4372 (DWF/JJG), 2012 WL 4357433, at *4 (D. Minn. Sep. 24, 2012) (collecting cases). Indeed, the Class Representatives cite *Publication Paper* from the District of Connecticut, but in *Aftermarket Filters*, the Northern District of Illinois expressly acknowledged and declined to follow that case. *See In re Aftermarket Filters*, 2010 WL 3909502, at *1 ("Although some courts have required a showing before permitting discovery directed to putative class members (*see, e.g.*, *In re Publ'n Paper Antitrust Litigation*, No. 3:04 MD 1631, 2005 WL 1629633 (D. Conn. July 5, 2005)), limitations on pre-certification communications 'must be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'") (internal citations omitted).[9]

---

[8] Plaintiffs selectively quote *Dennis v. Greatland Home Health Servs, Inc.*, but there, the putative class members had **already** responded to defendants' interrogatory request, and the court merely declined to compel them to "provide a more detailed response." No. 19-cv-5427, 2020 WL 11563081, at *3-4 (N.D. Ill. Nov. 10, 2020). The court noted that pre-certification discovery of putative class members should generally pertain to the requirements of Rule 23, but the defendants had failed to demonstrate a clear need for the detailed pre-certification discovery they sought. *Id.* The *Dennis* court also quoted McLaughlin on Class Actions, but the treatise specifically notes that "[p]re-certification discovery may be needed to assist the judge in distinguishing the individual from the common elements of the claims, issues, and defenses, and in deciding the extent to which the need for individual proof outweighs the economy of receiving common proof." 1 McLaughlin on Class Actions § 3:9 (18th ed. 2021) (internal quotations omitted). Unlike in *Dennis*, the discovery Defendants seek from the Subpoenaed Plaintiffs relates directly to class certification issues, and the Subpoenaed Plaintiffs have not responded to Defendants' requests **at all**.

[9] Plaintiffs cite only one in-circuit case, *Feldman*, which is distinguishable. There, the defendants sought to depose named plaintiffs who were withdrawing as class representatives in order to prove that class counsel filed the lawsuit without adequate pre-filing consultation with their clients. *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1992 WL 415382, at *5-6 (N.D. Ill. Nov. 5, 1992). The court declined to compel the requested deposition testimony and related

Defendants easily meet the lower standard for discovery from parties to the litigation and putative class members prior to class certification. In *Folding Carton*, the court overruled objections to discovery requests directed to plaintiffs that previously filed lawsuits because the information defendants sought was "relevant to proof of conspiracy, impact, and class certification." *In re Folding Carton*, 83 F.R.D. at 265. The court noted that "[b]ecause the interrogatories themselves [were] relevant, the fact that answers to them [would] be burdensome and expensive [was] not in itself a reason for refusing to order discovery which [was] otherwise appropriate." *Id.* (internal quotations omitted). Here, as in *Folding Carton*, discovery is warranted because the Subpoenas seek information that is directly relevant to Federal Rule of Civil Procedure Rule 23's typicality and predominance requirements. In *Aftermarket Filters*, the court likewise allowed discovery from the putative class members because they possessed evidence "relevant to the issue of certification of the proposed indirect purchaser class, in particular, whether there is common proof that the alleged conspiracy had an impact on the prices charged to the indirect purchasers." *Id.* Similarly, Defendants here seek information from the Subpoenaed Plaintiffs that is essential to test whether Plaintiffs can use common evidence to prove antitrust injury to all members of their putative class without the need for individualized inquires that would defeat predominance and render a class action unmanageable, as required by Federal Rule of Civil Procedure Rule 23(b)(3). (*See* Section II, *supra*.)

---

documentation because the "circumstances of [the former class representatives'] withdrawal [was not] relevant to class certification," since the suspected impropriety on the part of class counsel would not compel denial of class certification. *Id.* at *6. The court also found that defendants would have "full opportunity to challenge the adequacy of the remaining class representatives." *Id.* at *7. In contrast, here, Defendants seek information that is directly relevant to merits and class certification issues, which cannot otherwise be obtained from the Class Representatives. Further, unlike in *Feldman*, Defendants here seek only documents from the Subpoenaed Plaintiffs, and "a subpoena solely for documents requires even less justification" than written interrogatories or "deposing absent class members." *In re Plasma*, 2012 WL 1533221, at *5.

Defendants are entitled to discovery from the Subpoenaed Plaintiffs, who remain parties to this litigation and are putative, rather than absent, class members.  Accordingly, the Court should decline to impose the heightened standard for discovery of absent class members and should deny Plaintiffs' Motion.

### B.   Even If the Court Applies the Heightened Standard for Discovery of Absent Class Members, Plaintiffs' Motion to Quash Should Still Be Denied.

Even if the Subpoenaed Plaintiffs were somehow deemed to be absent class members, the Court should still enforce the Subpoenas here.  The case on which the Class Representatives principally rely makes clear that "absent class members may be required to submit to discovery" if it is "necessary or helpful to the proper presentation and correct adjudication of the principal suit" and "adequate precautionary measures are taken to insure that the absent member is not misled or confused." *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971) (holding that requirements for absent class discovery had been met); *see also In re Plasma*, 2012 WL 1533221, at *6 (discovery of absent class members is appropriate where the requested information is "actually needed in preparation for trial" and "the discovery devices are not used to take unfair advantage of [the] absent class member").  Defendants satisfy this heightened standard.

### 1.   Discovery from the Subpoenaed Plaintiffs Is Necessary.

The case law is clear that Defendants are entitled to precertification discovery from absent class members.  *See In re Plasma*, 2012 WL 1533221, at *4, *6 (allowing precertification discovery from "absent class member" that was "actually needed in preparation for trial" because Rule 45 permits a party to "'subpoena a third party to produce materials'"); *Jubinville v. Hill's Pet Nutrition, Inc.*, No. 19-74WES, 2019 WL 1584679, at *10 (D.R.I. Apr. 12, 2019) ("[P]re-certification, courts readily recognize that '[b]oth parties need to be able to communicate

with putative class members — if only to engage in discovery regarding issues relevant to class certification — from the earliest stages of class litigation.'") (collecting cases)).

Here, Defendants require discovery from absent class members related to both merits and class certification issues. The two Class Representatives have produced only minimal information about even their own purchases of airtime for spot ads. They obviously cannot provide the discovery Defendants need about the buying practices of all members of the enormous putative class. They claim to represent a putative class that includes not only small advertisers and ad agencies like the two Class Representatives, but also large national and multinational advertisers. These advertisers and ad agencies vary enormously in terms of their buying power, sophistication and negotiating leverage and strategies. In circumstances like these, the Seventh Circuit has recognized that defendants may sometimes need to "depose a random sample of class members" in order to test whether plaintiffs will be able to use common evidence to show that the members of a putative class suffered antitrust injury. *See Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 679 (7th Cir. 2009) (Posner, J.).

Plaintiffs wrongly claim that the Court should postpone Defendants' ability to take discovery related to class certification until *after* Plaintiffs file their motion for class certification. (ECF No. 523 at 9.) None of the cases Plaintiffs cite supports this novel claim, nor would it make sense to delay discovery until after the fact discovery phase of this case ends. Under the Court's schedule, Defendants have only two months to respond to Plaintiffs' motion for class certification, during which they will have to depose Plaintiffs' experts, as well as prepare defense expert reports. (*See* ECF No. 510 (opposition brief due two months after motion for class certification is filed).) This is precisely why the Court ordered fact discovery to be completed before that motion is filed. Likewise, Plaintiffs incorrectly assert that Defendants are not entitled to merits discovery until

after Plaintiffs produce merits expert reports. (ECF No. 523 at 12.) But again, this argument is inconsistent with the way the Court structured this litigation. The very purpose of fact discovery is to enable Defendants to develop evidence to support their merits defenses.

Plaintiffs' reliance on *Broiler Chicken* is misplaced. There, defendants issued subpoenas to direct purchaser plaintiffs as third parties to the indirect purchaser plaintiff cases claiming that it "***may*** be helpful to defend against [pass-through] arguments they anticipate[d] ***may*** be made by the IPPs." *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3398141, at *2 (N.D. Ill. July 12, 2018) (emphasis added). The court rejected that argument because it was not yet certain that the indirect purchaser plaintiffs would (or could) make any such pass-through arguments, and because the discovery was not relevant to the claims of those direct purchasers, against which no pass-through defense was available. *Id.* at *2-3. In contrast, Defendants here seek information from the Subpoenaed Plaintiffs, who are parties in ***this*** action, that is directly relevant to the claims Plaintiffs have asserted in this action.

Plaintiffs' reliance on *Publication Paper*, an out-of-circuit case, is likewise unavailing. The defendants there sought discovery relevant to class certification from individual plaintiffs in a separate, related lawsuit. *In re Publ'n Paper Antitrust Litig.*, 2005 WL 1629633, at *2. The court quashed the subpoenas because merits discovery had been stayed in both lawsuits, and the defendants offered no basis as to why class certification discovery was needed from these two individual plaintiffs. *Id.* Here, however, merits discovery and class discovery is ongoing, and Defendants have articulated a specific need for the information requested from the Subpoenaed Plaintiffs. Moreover, unlike in *Publication Paper*, Defendants have "attempted to narrow their requests" to minimize any purported burden on the Subpoenaed Plaintiffs. *Id.*

2. **Defendants Do Not Already Possess the Information Sought from the Subpoenaed Plaintiffs.**

Contrary to Plaintiffs' claim, Defendants do not "already have much of the information requested" from the Subpoenaed Plaintiffs. (ECF No. 523, at 12.) Defendants obviously do not possess information regarding the Subpoenaed Plaintiffs' relationships with advertising agencies, advertising purchases made from non-Defendants, advertising budgets, marketing strategies or internal market analyses. (*See* ECF 523-1, Ex. A.) In addition, Plaintiffs offer no support for their claim that Defendants can obtain the information sought in the Subpoenas from "publicly available sources or industry experts." (ECF No. 523, at 12-13.)

Further, the Subpoenas specifically seek information about the Subpoenaed Plaintiffs that is different from the limited information received from the two Class Representatives. It is irrelevant whether certain categories of documents Defendants seek from the Subpoenaed Plaintiffs are the same as certain categories of documents produced by the Class Representatives. *See In re Plasma*, 2012 WL 1533221, at \*4 (holding that documents produced by named plaintiffs were "not at all relevant to [defendants'] motion to compel [documents from absent class member] specifically").

3. **The Subpoenas Are Not Designed to Harass or Unduly Burden the Subpoenaed Plaintiffs.**

Plaintiffs offer no support for their claim that the Subpoenas are designed to harass or burden the Subpoenaed Plaintiffs. First, Defendants seek documents from the Subpoenaed Plaintiffs who voluntarily became parties in this litigation. *See In re Plasma*, 2012 WL 1533221, at \*4 (holding that there is a lower standard for discovery from class members that previously filed complaints.)[10] Second, the Class Representatives misleadingly claim that the Subpoenas invade

---

[10] *See also Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 72 (S.D.N.Y. 2020) ("[T]his is not a case in which discovery is sought of true strangers to the litigation—persons who had no knowledge of the lawsuit, no access to a

the attorney-client and work product privileges, but fail to disclose that Defendants agreed to withdraw Requests 14 and 15 if Plaintiffs confirmed that there were no responsive, non-privileged documents, and have already withdrawn Request 16. (ECF No. 523-2, at 7.) Third, as explained above, the Subpoena requests are squarely relevant to both class certification and the merits of this case and Defendants do not otherwise have access to this information. Fourth, Defendants agreed to withdraw or narrow numerous requests in order to confine the scope of the Subpoenas, which contradicts Plaintiffs' claim that the Subpoenas are "overly-broad," "untailored" and thus "harassing." (ECF No. 523 at 14, n. 20.)[11] The Class Representatives' assertion that the Subpoenas are unduly burdensome is insufficient, particularly in light of Defendants' offer to withdraw or narrow half of their requests, and the Subpoenaed Plaintiffs' refusal to date to produce *any* responsive documents. *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 2764260, at *2-3 (N.D. Ill. May 6, 2019) (refusing to quash plaintiffs' subpoenas to non-party "without more specifics" alleged regarding burden and hardship, and because non-party did not "engage[] seriously" with the plaintiffs to "right-size the information being sought by the subpoenas").

---

lawyer, and even no idea that a potential claim existed. Each of the 21 individuals has already brought a claim against [the defendant] in arbitration based on the same allegations asserted here.")

[11] To demonstrate the purportedly "harassing and burdensome nature of the subpoenas," Plaintiffs point to Request Nos. 1, 3, 8, 9, 11, 12 and 16. (ECF No. 523 at 14, n. 20), But Defendants have already agreed to narrow Request Nos. 1 and 3, and withdraw completely Requests 8, 9, 11, 12 and 16. Plaintiffs do not and cannot claim that the *remaining requests* are unduly burdensome, let alone harassing.

**4.** **A Full Response Would Not Require the Subpoenaed Plaintiffs to Seek the Assistance of Counsel, Nor Would They Suffer Prejudice if They Chose to Seek Assistance from Their Existing Counsel.**

While a court should consider "whether the proposed discovery will require class members to obtain personal legal counsel," "a court's flexibility in this arena is wide-ranging." *In re Plasma,* 2012 WL 1533221, at *5. The Subpoenaed Plaintiffs' decision to affirmatively join this litigation is "instrumental in determining the appropriate limits that the Court [should] set regarding [their] discovery." *Id.* Here, the Subpoenas seek straightforward internal business records and documentation. If the Subpoenaed Plaintiffs need the assistance of counsel, at least four of the Subpoenaed Plaintiffs *are* law firms, and all of the Subpoenaed Plaintiffs already have counsel that filed their individual complaints, so this factor should not weigh against permitting discovery.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Quash in its entirety.

Dated: February 11, 2022

*/s/ Eliot A. Adelson*

MORRISON & FOERSTER LLP
Eliot Adelson (admitted *pro hac vice*)
Bonnie Lau (admitted *pro hac vice*)
Margaret A. Webb (admitted *pro hac vice*)
425 Market Street
San Francisco, CA 94105
(415) 268-7000
eadelson@mofo.com
blau@mofo.com
mwebb@mofo.com

David D. Cross (admitted *pro hac vice*)
Megan E. Gerking (admitted *pro hac vice*)
Mary G. Kaiser (admitted *pro hac vice*)
2100 L Street NW
Washington, D.C. 20037
(202) 887-1500
dcross@mofo.com
mgerking@mofo.com
mkaiser@mofo.com

MOLOLAMKEN LLP
Gerald P. Meyer
300 N. LaSalle St.
Chicago, IL 60654
(312) 450-6700
gmeyer@mololamken.com

*Counsel for Defendants Dreamcatcher Broadcasting LLC, Nexstar Media Group, Inc., Tribune Broadcasting Company, LLC, and Tribune Media Group, Inc.*

*/s/ Jennifer L. Giordano*

LATHAM & WATKINS LLP
Jennifer L. Giordano (admitted *pro hac vice*)
Allyson M. Maltas (admitted *pro hac vice*)
555 11th Street NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
Jennifer.Giordano@lw.com
Allyson.Maltas@lw.com

Nicholas J. Siciliano (Bar No. 6287387)

*/s/ Gregory J. Commins Jr.*

BAKER & HOSTETLER LLP
Gregory J. Commins, Jr. (admitted *pro hac vice*)
1050 Connecticut Avenue, NW
Suite 11000
Washington, D.C. 20036-5304
(202) 861-1500
gcommins@bakerlaw.com

Bridget S. McCabe (CA 272545)

16

330 North Wabash Ave., Suite 2800
Chicago, IL 60611
(312) 876-7700
Nicholas.Siciliano@lw.com

Elyse M. Greenwald (admitted *pro hac vice*)
10250 Consellation Blvd. Suite 1100
Los Angeles, CA 90067
(424) 653-5695
Elyse.Greenwald@lw.com

*Counsel for Defendant Cox Media Group
LLC*

11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
(310) 820-8800
bmccabe@bakerlaw.com

John M. Touhy s(Bar No. 3128400)
One North Wacker Drive, Suite 4500
Chicago, IL 60606-1901
(312) 416-6200
jtouhy@bakerlaw.com

*Counsel for Defendant the E.W. Scripps
Company*

/s/ Matthew L. Kutcher
COOLEY LLP
Matthew L. Kutcher (IL Bar No. 6275320)
444 W. Lake Street
Suite 1700
Chicago, IL 60606
Telephone: (312) 881-6500
mkutcher@cooley.com

David E. Mills (admitted *pro hac vice*)
Deepti Bansal (admitted *pro hac vice*)
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 842-7800
dmills@cooley.com
dbansal@cooley.com

Mazda K. Antia (admitted *pro hac vice*)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
mantia@cooley.com

Beatriz Mejia (admitted *pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
mejiab@cooley.com

Alexander G. Galicki

/s/ David A. Ettinger
HONIGMAN LLP
David A. Ettinger (admitted *pro hac vice*)
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7368
dettinger@honigman.com

MCAFEE & TAFT
Mark Richard Mullins (admitted *pro hac vice*)
211 N. Robinson Ave., 10th Floor
Two Leadership Square
Oklahoma City, OK 73102
(405) 552-2263
rick.mullins@mcafeetaft.com

*Counsel for Defendant Griffin
Communications, LLC*

17

(admitted *pro hac vice*)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
agalicki@cooley.com

*Counsel for Defendant Gray Media Group,
Inc.*

| | |
|---|---|
| */s/ William J. Kolasky* | */s/ Ross B. Bricker* |
| William J. Kolasky (admitted *pro hac vice*) | JENNER & BLOCK LLP |
| Philip A. Giordano (admitted *pro hac vice*) | Ross B. Bricker (Ill. Bar No. 3126882) |
| HUGHES HUBBARD & REED LLP | John F. Ward, Jr. (Ill. Bar No. 6208004) |
| 1775 I Street, N.W. | Andrew F. Merrick (Ill. Bar No. 6290213) |
| Washington, D.C. 20006 | Shaun M. Van Horn (Ill. Bar No. 6297822) |
| Tel: (202) 721-4600 | 353 N. Clark Street |
| william.kolasky@hugheshubbard.com | Chicago, IL 60654-5474 |
| philip.giordano@hugheshubbard.com | (312) 222-9350 |
| | rbricker@jenner.com |
| Fara Tabatabai (admitted *pro hac vice*) | jward@jenner.com |
| HUGHES HUBBARD & REED LLP | amerrick@jenner.com |
| One Battery Park Plaza | svanhorn@jenner.com |
| New York, NY 10004 | *Counsel for TEGNA Inc.* |
| Tel: (212) 837-6000 | |
| fara.tabatabai@hugheshubbard.com | |
| | |
| Gregory J. Scandaglia | |
| SCANDAGLIA RYAN LLP | |
| 55 E. Monroe Street, Suite 3440 | |
| Chicago, IL 60603 | |
| Tel: (312) 580-2020 | |
| gscandaglia@scandagliaryan.com | |
| | |
| *Attorneys for Defendant Sinclair Broadcast* | |
| *Group, Inc.* | |

## CERTIFICATE OF SERVICE

I, Eliot A. Adelson, certify that on February 11, 2022, I electronically caused the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion to Quash Subpoenas Issued to Absent Class Members to be filed with the Clerk of the Court through the CM/ECF system, which will automatically send notifications of the filing to all counsel of record.


*/s/ Eliot A. Adelson*
Eliot A. Adelson

19