**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: <br> LOCAL TV ADVERTISING ANTITRUST LITIGATION <br><br> *This Document Relates to All Actions* | MDL No. 2867 <br> No. 18 C 6785 <br><br> Honorable Virginia M. Kendall <br><br> **ORAL ARGUMENT REQUESTED** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHAREBUILDERS, INC.'S MOTION TO DISMISS CONSOLIDATED THIRD AMENDED ANTITRUST CLASS ACTION COMPLAINT**</u>

### HEPLERBROOM LLC

Glenn E. Davis (Lead Counsel)     #6184597
Charles N. Insler                 #6291652
HeplerBroom LLC
One Metropolitan Square
211 N. Broadway, Suite 2700
St. Louis, MO  63102
Phone: (314) 241-6160
Fax: (314) 241-6116
glenn.davis@heplerbroom.com
charles.insler@heplerbroom.com

*Counsel for ShareBuilders, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

PROCEDURAL POSTURE ........................................................................................... 2

FACTUAL BACKGROUD .............................................................................................. 3

APPLICABLE LEGAL STANDARDS .......................................................................... 5

ARGUMENT .................................................................................................................. 7

I.      PLAINTIFFS PRICE-FIXING CONSPIRACY CLAIM (COUNT I)
        FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH ANY  UNLAWFUL
        AGREEMENT INVOLVING SHAREBUILDERS

        A.      No Direct Evidence of Any-Conspiracy ...................................................... 7

        B.      No Circumstantial Evidence Sufficient to State A Claim ........................... 8

                1.   No Communications Among ShareBuilders and Defendants ............. 8

                2.   There are No "Plus Factors" Applicable to ShareBuilders ................. 9

                3.   Plaintiffs Fail to Allege Any Motive or Opportunity .......................... 12

II.     PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE
        A RULE OF REASON INFORMATION EXCHANGE VIOLATION
        AS TO SHAREBUILDERS IN COUNT II

CONCLUSION .............................................................................................................. 15

## **TABLE OF AUTHORITIES**

## <u>CASES</u>                                                        **Pages(s)**

*Agnew v. National Collegiate Athletic Ass'n,*
   683 F.3d. 328, 334 (7th Cir. 2012) ...................................................................... 5

Airborne *Beepers & Video, Inc. AT & T Mobility LLC.,*
   499 F.3d 663, 667 (7th Cir. 2007) ...................................................................... 7

*Always Towing & Recovery, Inc. v. City of Milwaukee,*
   2 F.4th 695, 707 (7th Cir. 2021) ........................................................................ 2

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................... 6

*Ass'n of Am. Physicians & Surgeions, Inc. v. A.m Bd. Of Med. Specialties,*
   15 F.4th 831, 833 (7th Cir. 2021) ....................................................................... 5

*Bank of America, N.A. v. Knight,*
   725 F.3d 815, 818 (7th Cir. 2013) ...................................................................... 9

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544, 570 (2007) ................................................................................... 5

*Brand Name Prescription Drugs Antitrust Litig.,*
   No. 94-CV-897, 1999 WL 33889, at *16 (N.D. Ill. Jan. 19, 1999) ..................... 12

*Broiler Chicken Antitrust Litigation,*
   290 F. Supp. 3d 772, 779 (N.D. Ill. 2017) ......................................................... 6

*Broiler Chicken Antitrust Litigation,*
   No. 16-CV-8637, 2021 WL 2207142, *2 (N.D. Ill. June 1, 2021) ..................... 10

*Chocolate Confectionary Antitrust Litigation,*
   801 F.3d 383, 398 (3rd Cir. 2015) ..................................................................... 13

*High Fructose Corn Syrup Antitrust Litig.,*
   295 F.3d 651, 654 (7th Cir. 2002) ...................................................................... 8

*Int'l Union of Operating Eng'rs v. Daly,*
   983 F.3d 287, 296 (7th Cir. 2020) ...................................................................... 2

*Kleen Prods. LLC v. Int'l Paper*
   276 F.Supp 3d 811, 841 (N.D. Ill. 2017) ........................................................... 12

*Local TV Advertising Antitrust Litigation,*
   2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) ....................................................... 3

*Marion Diagnostic Center, LLC v. Beckton Dickinson & Co.*,
    No. 21-1513, 2022 WL 818751, *8 (7th Cir. March 18, 2022) ............................................ 5

*Marian Healthcare, LLC v. Becton Dickinson & Co.*,
    952 F.3d 832, 841 (7th Cir. 2020) ...................................................................................... 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752, 768 (1984) ..................................................................................................... 6

*Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc.*,
    No. 19-CV-8318, 2021 WL 1561852 (N.D. Ill. April 21, 2021) ........................................ 9

*Omnicare, Inc. v. UnitedHealth Group, Inc.*,
    629 F.3d 697, 706 (7th Cir. 2011) ...................................................................................... 7

*Plasma-Derivative Protein Therapies Antitrust Litig.*,
    764 F. Supp. 2d 991, 1000 (N.D. Ill. 2011) ...................................................................... 12

*Text Messaging Antitrust Litigation*,
    630 F.3d 622, 625 (7th Cir. 2010) ...................................................................................... 6

*Text Messaging Antitrust Litig.*,
    782 F.3d 867, 879 (7th Cir. 2015) ...................................................................................... 9

*United States v. Citizens & S. Nat'l Bank*,
    422 U.S. 86, 113 (1975) ..................................................................................................... 14

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422, 441 n.16 (1978) ........................................................................................... 14

*U.S. v. Sinclair Broadcast Group, Inc., et al.*,
    1:18-cv-2609 (D.D.C) ......................................................................................................... 3

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429, 454 (7th Cir. 2020) ...................................................................................... 5

*Weit v. Cont'l Ill. Nat'l Bank & Tr. Co.*,
    641 F.2d 457, 462 (7th Cir. 1981) ...................................................................................... 13

## INTRODUCTION

Plaintiffs allege an unlawful price fixing cartel among "certain major television station owners and sales representative firms" facilitated by an information exchange. After nearly four years of this MDL litigation, Plaintiffs now join ShareBuilders, Inc. ("ShareBuilders"), apparently at the deadline for joinder of new parties. Yet, in their concise summary of the conspiracy and its participants in the Third Amended Complaint ("TAC"), there is no express or implied reference to ShareBuilders. (Filing No. 556, at CM/ECF p. 1 & 2). TAC, at ¶¶ 1 & 2. While fully aware the Court has denied most prior motions to dismiss, ShareBuilders is in a fundamentally different position and consequently its motion is dissimilar.

Plaintiffs, with the benefit of a significant volume of subpoenaed documents from ShareBuilders, as well as the existing Defendants' discovery responses, largely confine their allegations against ShareBuilders to one benign section of the 324-paragraph, 104-page TAC, which does nothing to link ShareBuilders with any conspiracy. (Filing No. 555, at CM/ECF p. 32 - 42) TAC ¶¶ 99-123.[1] Those circumstantial allegations, whether examined in isolation or in conjunction with the entirety of the TAC, are completely inadequate to state any claim as to ShareBuilders or tie it to any concerted action among the Defendants to do anything. Plaintiffs offer no specific allegations that ShareBuilders facilitated communications or performed any communicative function between the Defendants involving competitively sensitive information.

---

[1] Apart from this new section (3.a.) in the TAC, there are a smattering of other conclusory but innocuous references to ShareBuilders: (Filing No. 556, at CM/ECF p. 5) TAC ¶¶ 11 (ShareBuilders provided rate cards to some of its clients), (Filing No. 556, at CM/ECF p. 5) ¶ 14 (alleged purpose of lawsuit to "enjoin Defendants and ShareBuilders' anticompetitive conduct"), (Filing No. 556, at CM/ECF p. 6) ¶ 17 (ShareBuilders provides services throughout the U.S.), (Filing No. 556, at CM/ECF p. 6) ¶ 18 (interstate commerce allegation), (Filing No. 556, at CM/ECF p. 18) ¶ 45 (general party description), (Filing No. 556, at CM/ECF p. 21) ¶ 59 (Defendants' reciprocal exchange included "information exchanged through ShareBuilders"), and (Filing No. 555, at CM/ECF p. 44) ¶ 135 (internal communication of a ShareBuilders' report between Raycom executives).

1

The best they can allege (with any arguable good faith basis) is that broadcast stations "used" ShareBuilders to share pricing and holding capacity information. (Filing No. 556, at CM/ECF p. 11) TAC, at 32 (subtitle 3.a.).

Being "used" is not enough, and ShareBuilders' involvement in this case is an afterthought. It is a small privately-held company that provides certain information and consulting services for individual TV advertiser clients. Again, it does not operate as an information exchange or do anything to facilitate exchange of any competitively sensitive information among the Defendants. Plaintiffs accuse the station owners of sharing pacing data about revenue to determine competitors' inventory, in order to coordinate management of spot advertising output and prices. Prior iterations of the complaint and the TAC focus on Sales Representatives as the mechanism for communication among the Advertising Defendants. But Plaintiffs fail to offer any plausible allegations of ShareBuilders' participation in any such conspiracy. Based on the TAC's allegations, ShareBuilders is not the axle or suspension or bolts for any hub and spoke conspiracy. Accordingly, the Court should dismiss ShareBuilders with prejudice.[2]

## PROCEDURAL POSTURE

This multi-district litigation commenced with transfer of various pending cases to this District in October of 2018. (Filing No. 1, at CM/ECF). On September 9, 2019, the Plaintiffs filed a Consolidated Second Amended Antitrust Class Action Complaint. (Filing Nos. 291 & 292, at CM/ECF). In October of 2019 the Defendants filed initial motions to dismiss. (Filing Nos. 328,

---

[2] As noted, this is the Third Amended Complaint and the matter has been under investigation for years. There is no justification for further amendments to their pleading and the Court should decline any request to replead Plaintiffs' allegations. "Although Federal Rule of Civil Procedure 15(a)(2) directs courts to 'freely give leave [to amend] when justice so requires,' courts may deny a proposed amended pleading if the amendment would be futile." *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) quoting *Int'l Union of Operating Eng'rs v. Daly*, 983 F.3d 287, 296 (7th Cir. 2020) (alteration in original).

330 & 346, at CM/ECF).  The Court conducted oral argument on the motions to dismiss on July 30, 2020 (Filing No. 389, at CM/ECF) and thereafter entered its Memorandum and Order denying all motions to dismiss, except for defendant Gray TV's separate motion.  (Filing No. 392, at CM/ECF).  *In re: Local TV Advertising Antitrust Litigation*, 2020 WL 6557665 (N.D. Ill. Nov. 6, 2020).  Thereafter, the parties proceeded with written discovery.

On March 1, 2022, Plaintiffs filed a motion to extend the deadline for filing of a third amended complaint (Filing No. 545, at CM/ECF), which resulted in a stipulated revised deadline.  (Filing No. 552, at CM/ECF).  On March 16, 2022, Plaintiffs filed the TAC. (Filing Nos. 555 & 556, at CM/ECF.  ShareBuilders promptly provided a waiver of service on March 17, 2022, which Plaintiffs filed on March 2, 2022.  (Filing No. 560, at CM/ECF).

## **FACTUAL BACKGROUND**

Plaintiffs seek to represent a putative class that directly purchased broadcast television spot advertising time from one or more Defendants in certain DMAs in which two or more Defendants operate broadcast television stations, since January 1, 2014. (Filing No. 556, at CM/ECF p. 77) ¶ 220. Plaintiffs are various advertisers or advertising companies. (*Id.* Filing No. 556, at CM/ECF p. 7-8) ¶¶ 19-22.  The named Defendants remain the same, with the exception of the addition of ShareBuilders as a Defendant. (*Id.* Filing No. 556, at CM/ECF p. 18) ¶ 45.  Beginning in 2018, the Antitrust Division of the United States Department of Justice ("DOJ") civilly investigated the Defendants, except Gray Media Group, resulting in simultaneous civil complaint and consent decree filings providing injunctive relief. *U.S. v. Sinclair Broadcast Group, Inc., et al.,* 1:18-cv-2609 (D.D.C). *Id.* ¶ 24. ShareBuilders provided substantial documents to the DOJ in response to an investigative subpoena,[3] but the DOJ did not name ShareBuilders in the enforcement action.

---

[3] ShareBuilders produced the documents, including relevant emails, to the Plaintiffs pursuant to their subpoena in August of 2021.

The Defendants may now be categorized as the "Broadcaster Defendants," the "Sales Rep Firms," and ShareBuilders.[4]

ShareBuilders is a small privately-held company with about forty employees located in Washington, Illinois. Plaintiffs allege ShareBuilders is a "national media company" that provides consulting and yield management information in the "broadcast media sales industry," which includes the Broadcaster Defendants and over three hundred local television stations affiliated with them. (*Id.* (Filing No. 556, at CM/ECF p. 32) ¶ 99). Notably, there are over 1,000 local television stations in the United States[5] and Sharebuilders has relationships with less than a third of them. ShareBuilders' clients among the defendants have included: Sinclair, Tribune, Scripps, Cox, Raycom, and TEGNA. (*Id.* (Filing No. 555, at CM/ECF p. 32) ¶ 100).

Plaintiffs state "ShareBuilders *shared information among* Defendant Broadcast stations, including Custom Station Reports, rate cards, and 'Holding Capacity'" and provided "weekly bottom" prices to several stations. (*Id.* (Filing No. 555, at CM/ECF p. 33 &35) ¶¶ 101 & 108) (emphasis added).[6] ShareBuilders offered yield management software to permit clients to manage their own forecasting and pricing. (*Id.* (Filing No. 556, at CM/ECF p. 35) ¶ 110). And ShareBuilders offered clients Holding Capacity Reports and Custom Station Reports, and rate

---

[4] ShareBuilders follows the Court's categorization in its Memorandum Opinion & Order entered November 6, 2020. 2020 WL 6557665 *1 n. 4; (Doc. # 392 at 3717). The TAC refers to another provider of market data to Broadcaster Defendants, Kantar, which Plaintiffs did not join as a defendant.

[5] According to the Federal Communications Commission ("FCC"), as of March 22, 2022 there are 1,373 UHF/VHF Commercial TV stations in the United States. *See* Exh. "A" attached. Source: https://www.fcc.gov/document/broadcast-station-totals-march-31-2022 last visited 4/7/22.

[6] Emphasis is added to direct the Court's attention to the conclusory and ambiguous (now italicized) allegation that implies ShareBuilders "shared" information between or among the Defendants, which is not supported by any specific example or facts throughout the prolix complaint. The TAC also uses the passive tense at times to mask who, if anyone, actually shared any information.

cards,[7] with individual consulting on each client's pricing forecasts and targets if requested. (*Id.* (Filing No. 555, at CM/ECF p. 36 – 37 & 41) ¶¶ 111-113, 115 & 118). There is, however, no specific allegation that ShareBuilders shared any forward-looking information "among" the Defendants.[8] The examples of communications in the TAC consist of internal communications within defendant broadcast companies (*Id.* (Filing No. 555, at CM/ECF p. 41) ¶ 121) or ShareBuilder communications solely with each client individually. ShareBuilders is not mentioned in connection with any other alleged communications among Defendants in the TAC.

## APPLICABLE LEGAL STANDARDS

To state a Section 1 claim, a plaintiff must allege that the defendant "(1) entered into an agreement that (2) unreasonably restrains trade in the relevant market and (3) caused the plaintiff an antitrust injury." *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties,* 15 F.4th 831, 833 (7th Cir. 2021). To withstand an attack on the complaint's sufficiency, it must "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Marion Diagnostic Center, LLC v. Beckton Dickinson & Co.,* No. 21-1513, 2022 WL 818751, *8 (7th Cir. March 18, 2022) (*Marion II*); *see* Fed. R. Civ. P. 8(a)(2), with the factual allegations and permissible inferences drawn in favor of the plaintiff, *Viamedia, Inc. v. Comcast Corp.,* 951 F.3d 429, 454 (7th Cir. 2020). A pleader's legal conclusions, however, are not worthy of consideration. *Agnew v. National Collegiate Athletic Ass'n,* 683 F.3d 328, 334 (7th Cir. 2012)

---

[7] Plaintiffs allege that Cox Media Group, Dreamcatcher, Griffin, Meredith, Nextar, Raycom, Scripps, Sinclair, TEGNA, and Tribune "received" "weekly bottom rate cards" from ShareBuilders. Plaintiffs have no good faith basis to allege ShareBuilders shared competitors' rate cards among or with other competitors.

[8] Plaintiffs allege that Cox Media Group, Griffin, Meredith, Nextar, Raycom, Scripps, Sinclair, TEGNA, and Tribune "received" Custom Station Reports" from ShareBuilders. Plantiffs have no good faith basis to allege ShareBuilders shared competitors' Custom Station Reports among or with other competitors.

(quoting *Twombly*) (factual allegations must be accepted as true, legal conclusions may not be considered.).

Section one of the Sherman Act does not enjoin independent action. *Twombly*, 550 U.S. at 553-54. "*Twombly,* even more clearly than its successor, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand." *In re Text Messaging Antitrust Litigation,* 630 F.3d 622, 625 (7th Cir. 2010).

The plaintiff must also plead and ultimately prove a defendant "'and others had a *conscious commitment to common scheme* designed to achieve an unlawful objective.'" *Marian Healthcare, LLC v. Becton Dickinson & Co.,* 952 F.3d 832, 841 (7th Cir. 2020) (*Marion I*) (emphasis added) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)). In *Marian I and II*, the Seventh Circuit (effectively twice) clarified the antitrust conspiracy pleading standard. The court found that plaintiffs failed to allege that certain distributors, either in coordination with each other or with GPO's and manufacturers, had entered into a conspiracy. As Judge St. Eve in *Marian II* most recently stated:

> To participate in a conspiracy, agents of a defendant must have "knowledge of the principal's unlawful objective" and "an intent to restrain trade." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1474c (last updated Sept. 2021); *see also id.* ("The broker who merely earns its commission ... does not share a 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" (quoting *Monsanto*, 465 U.S. at 764)). The SAC is silent on whether the Distributors' sales representatives knew of any conspiracy, much less shared an intent to participate in one.

*Marian II,* 2022 WL 818751, *9.  Stated another way, "the circumstances of the case must reveal a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."  *Omnicare, Inc. v. UnitedHealth Group, Inc.,* 629 F.3d 697, 706 (7th Cir. 2011).

Unadorned labels and conclusions do not suffice.  *In re Broiler Chicken Antitrust Litigation*, 290 F. Supp. 3d 772, 779 (N.D. Ill. 2017).  Here, the complaint is "'so sketchy that [it] does not provide the type of notice of the claim to which [ShareBuilders] is entitled under [the Federal Rules of Civil Procedure],'" and dismissal of the complaint is proper.  *Agnew,* 683 F.3d at 334 (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 667 (7th Cir. 2007)).

## **ARGUMENT**

I.     PLAINTIFFS PRICE-FIXING CONSPIRACY CLAIM (COUNT I)
       FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH ANY
       UNLAWFUL AGREEMENT INVOLVING SHAREBUILDERS

### A.  *No Direct Evidence of Any Conspiracy*

As this Court correctly observed, to sustain a section 1 claim a plaintiff must allege direct or circumstantial evidence of an illegal agreement.  2020 WL 6557665, *7.  This motion does not require interpretation of fact allegations.  It is clear the TAC offers *no allegations* of explicit, direct evidence of any illicit agreement involving ShareBuilders: no incriminating documents, emails, admissions, attendance at meetings, or other direct evidence. The TAC fails to plead direct evidence of any conspiracy among the Broadcaster Defendants themselves, or between them and the Sales Rep Firms.  Even more telling, is the TAC's complete omission of any direct evidence, of any kind, suggesting ShareBuilders knowledge of, let alone joinder and participation in, any conspiracy among the Defendants.  The Court has already observed that Plaintiffs do not aver any direct evidence of conspiracy; the TAC only reinforces this concession.  *Id.* Accordingly, the TAC

7

is unsustainable on a direct evidence theory of collusion. *Omnicare*, 629 F.3d at 706; *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002).

### B. No Circumstantial Evidence Sufficient to State A Claim

Even with the benefit of every doubt construed in their favor, Plaintiffs do not allege that ShareBuilders knowingly joined any agreement involving the other defendants to do anything. "To participate in a conspiracy, agents of the defendant must have 'knowledge of the principal's unlawful objective' and 'an intent to restrain trade." *Marian II,* 2022 WL 818751, *9 (quoting Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and their Application* ¶ 1474c (last updated Sept. 2021)). In order for the TAC to state a claim, it must allege ShareBuilders consciously joined an illegal scheme, but it does not. Even an overly solicitous reading of paragraphs 99-123 does not yield any reasonable inference that ShareBuilders entered into a conscious commitment to participate in or facilitate an illegal price fixing or information sharing scheme or plan with the Broadcaster Defendants or Sales Rep. Firms. *Omnicare,* 629 F.3d at 706.

#### 1. No Communications Among ShareBuilders and Defendants

To provide its services, ShareBuilders obviously communicated with each of its clients. The allegations of the TAC, however, do not plead any communication with multiple defendants simultaneously or sequentially, or any communications to ShareBuilders that its work-product provided to one client would be directly or indirectly shared with another client.[9]  Moreover, there

---

[9] The Court should not be distracted by conclusory, misleading phrases: "ShareBuilders shared detailed holding capacity information with some Defendants…across should-be competitor stations within a particular DMA." (Filing No. 555, at CM/ECF p. 35) ¶ 108) and "ShareBuilders also circulated weekly rate cards to some of its clients that contained recommended pricing for each time slot…. ShareBuilders circulated so-called "weekly bottom" prices…." (Filing No. 555, at CM/ECF p. 41) ¶ 119). These intentionally ambiguous statements cannot be construed to infer wrongful communications with multiple parties. They obviously reflect individual communications between ShareBuilders and its clients, with no suggestion of cooperation or coordination among them.

is no allegation that ShareBuilders published aggregated or disaggregated information to the market. The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *In re Text Messaging Antitrust Litig.*, 630 F.3d at 629. Absent some allegations of communications involving ShareBuilders entering into an agreement to disseminate competitively sensitive information, there can be no inference of collusion, let alone behavior inconsistent with independent action. *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015). While evidentiary detail is not required, the TAC must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Agnew*, 683 F.3d at 334 (quoting *Iqbal*, 556 U.S. at 678 and quoting *Twombly,* 550 U.S. at 570). "'[I]t remains essential to show that a particular defendant joined the conspiracy and knew of its scope.'" *In re Broiler Chicken Antitrust Litigation*, 290 F. Supp.3d at 803 (class plaintiffs plausibly alleged that an industry analyst acted as a co-conspirator by being a conduit of information and communication among chicken producers) (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

### 2. There Are No "Plus Factors" Applicable to ShareBuilders

Plaintiffs purport to allege "plus factors" in support of their effort to infer a conspiracy as to the Defendants generally. In this regard, although lacking comparable allegations, the Plaintiffs will liken ShareBuilders to Agri Stats, a controversial agricultural industry analyst which provides detailed pricing and other competitive information to over ninety percent of the sellers in certain markets. This effort to portray ShareBuilders as part of such an agreement falls flat.

This Court is familiar with Agri Stats in connection with the *Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc.* case. No. 19-CV-8318, 2021 WL 1561852 (N.D. Ill. April 21, 2021); 2020 WL 6134982 (N.D. Ill. Oct. 19, 2020). In an extensive Memorandum Opinion and

Order, the Court detailed the market conditions conducive to collusion, and Agri Stats' detailed reports and presentations replete with current and forward-looking data that permitted the small number of market participants to identify their competitors' information, with all listed as participants in the studies. 2020 WL 6134982, *6. The reports provided "information specific to each turkey producer as to profits, prices, costs, and production levels." *Id.*, *1. The Court found this sufficient to infer a hub and spoke conspiracy among the Turkey Defendants and Agri Stats. The combination of the forward-looking data in information exchange reports detailing the participation of ninety-five percent of the turkey producers, showed an "exchange of competitively sensitive information with one another *through* Agri Stats." *Id.*, *6 (emphasis added).

Agri Stats has been alleged to be a part of conspiracies in other agricultural sectors as well. Even when not named as a co-conspirator, allegations linking them to alleged collusive behavior were made. As another division of this court put it:

> If allegations plausibly demonstrate that a banker, lender, accountant, lawyer, or other service provider facilitated an unlawful conspiracy among their clients, the Court does not perceive any precedential danger in holding that person accountable for their conduct. The force of the allegations controls the analysis, not the title of the potential defendant.

*In re Broiler Chicken Antitrust Litigation,* No. 16-CV-8637, 2021 WL 2207142, *2 (N.D. Ill. June 1, 2021). Yet, the only thing ShareBuilders and Agri Stats have in common is their title; both may be characterized as industry consultants. Any well-pled allegations on similarities end there.

In the initial *Broiler Chicken* case, the court denied Agri Stats' motion to dismiss, reasoning in the circumstances of that case "[i]t is at least plausible (if not likely) that a person who *facilitates* a conspiracy knows about the conspiracy and *engages in the facilitation* knowing of its consequences." *Id.* at *2 (emphasis added). Plaintiffs later added Rabobank as a defendant, but the court dismissed the action as to Rabobank because the allegations as to Agri Stats "were much

more concrete" and there were "too many inferences in that chain of reasoning for [the complaint] to retain plausibility." *Id*.

Compared to Agri Stats, the "force of the allegations" here do not support an inference of conspiracy implicating ShareBuilders. This conclusion follows not from weighing inferences from what is alleged, but from what is not alleged coupled with the TAC's wholly conclusory accusations. There is no allegation of ShareBuilders facilitating communications among or coordinating economic decisions of the Defendants. While Agri Stats works with 95% of the poultry sellers, Plaintiffs do not allege anything approaching that level of involvement by ShareBuilders, which works with, at most, only 36% of the U.S. television stations. And Plaintiffs make no effort to identify ShareBuilders working with multiple ownership groups in the same DMA or market to facilitate any collusion. ShareBuilders is in 114 of 210 (54%) of local TV markets today, and are involved with Broadcaster Defendants with competing stations in 47 of those 210 DMAs. More importantly, Plaintiffs allegations of what datapoints ShareBuilders creates for its clients (setting aside it does not communicate customer confidential data beyond individual customers) pales in comparison to the Agri Stats pricing and output statistics (down to the number of chicks) and forward-looking information distributed in inadequately aggregated form to virtually all industry sellers.

The language on "facilitation" and "engages in facilitation" is suggestive of affirmative action or conduct, not bystander liability with no allegations permitting a reasonable inference the defendant knew about or communicated with the Defendants about the alleged conspiracy. ShareBuilders is exactly that, a service provider with no knowledge or participation in any alleged concerted action—and no allegations to that effect. Suggesting possibilities is not enough. The

TAC's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### 3. Plaintiffs Fail to Allege Any Motive or Opportunity

Beyond the foregoing, there are no allegations of fact that offer any inference of a motive for ShareBuilders to join the alleged conspiracy of spot advertising sellers. It is not a seller (alleged to be part of a horizontal conspiracy) and there is no economic motive to facilitate the conspiracy alleged. For example, there is no tie alleged between increased prices or reduced capacity for advertising and how ShareBuilders is compensated for its services or any communications broadly disseminating its reports. ShareBuilders is not in a position to act in a parallel or interdependent fashion with the sellers in the market. "It would be difficult for a court to conclude that a conspiracy has been plausibly alleged without facts demonstrating 'that the defendants had a motive to conspire or … that their behavior is interdependent.'" *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1000 (N.D. Ill. 2011) (quoting Areeda & Hovenkamp ¶1425b, at 184).

Nor do Plaintiffs even hypothesize any particular opportunity for ShareBuilders to consciously join and participate. Once again, the TAC offers no communications, no change in conduct, no presentations at trade shows, private meetings, or anything of the sort. While Plaintiffs characterize vertical communications between ShareBuilders and its customers, any opportunities for ShareBuilders to participate knowingly are left to the imagination. Even if ShareBuilders recommended lowering or raising prices or lowering or raising output to individual clients in a given time period (setting aside locale), that conduct creates no inference of conspiracy. *Broiler Chicken*, 2021 WL 2207142, *2 (citing Kleen Prods. LLC v. Int'l Paper, 276 F. Supp. 3d 811, 841 (N.D. Ill. 2017) )("[T]here is a trade-off between price and volume. If firms want to raise prices,

they have to produce less, sell less, and thereby say 'no' to customers. It should not be a mark of conspiracy to say what is true, already known by the audience, and articulated by countless third-party analysts, academicians, and jurists alike.").

Motive and opportunity are not enough, standing alone, to support an inference of conspiracy. *Kleen Products LLC v. International Paper Co.*, 276 F. Supp. 3d 811, 823 (N.D. Ill. 2017) (citing *In re Chocolate Confectionary Antitrust Litigation*, 801 F.3d 383, 398 (3rd Cir. 2015) ("evidence of motive without more does not create a reasonable inference of concerted action"); *Weit v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 641 F.2d 457, 462 (7th Cir. 1981) ("the mere opportunity to conspire, even in the context of parallel business conduct, is not necessarily probative evidence."); *see also*, *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-CV-897, 1999 WL 33889, at *16 (N.D. Ill. Jan. 19, 1999) ("[E]vidence of the opportunity to conspire, alone, is not sufficient to sustain a Section 1 Sherman Act claim.") *aff'd in part, rev'd in part, on other grounds*, 186 F.3d 781 (7th Cir. 1999). The complete lack of pleading of any allegation of motive and opportunity emphatically supports the corollary (and only reasonable) inference that the target defendant did not participate in any such conspiracy if it existed.

II.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE
      A RULE OF REASON INFORMATION EXCHANGE VIOLATION
      AS TO SHAREBUILDERS IN COUNT II

Even with the benefit of every doubt construed in their favor, there is no allegation that ShareBuilders' basic business functions are inherently improper, let alone illegal under the Sherman Act.   There is nothing inherently illegal about acting as an aggregator of industry information and providing consulting.   Information exchanges themselves are not illegal *per se*. The enforcement agencies and courts routinely recognize the pro-competitive function they can serve.  Holding ShareBuilders in this case and subjecting it to the expense of multi-district antitrust

class litigation on the thin-reed allegations in the TAC, risks a false positive and projects an enormous negative for any legitimate information sharing body.

This Court has experience with and written on antitrust-information exchange principles:

> Courts evaluate § 1 information-exchange claims under the "rule of reason." *See* United States v. U.S. Gypsum Co., 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive. For this reason, we have held that such exchanges of information do not constitute a *per se* violation of the Sherman Act."); United States v. Citizens & S. Nat'l Bank, 422 U.S. 86, 113 (1975) (explaining that "the dissemination of price information is not itself a *per se* violation of the Sherman Act"); Kenneth Khoo & Jerold Soh, *The Inefficiency of Quasi-Per Se Rules: Regulating Information Exchange in EU and U.S. Antitrust Law*, 57 Am. Bus. L.J. 45, 47 (2020) ("[U]nder the U.S. antitrust regime, most forms of information exchange are subject to a "rule of reason" analysis that places the burden of establishing anticompetitive effects on the party alleging illegality.").

*Olean Wholesale Grocery,* 2020 WL 6134982, *5.  This reasoning applies to Count II in this case, which is a rule of reason claim.  2020 WL 6557665, *7; Mem. & Order at 22.

Here, the Court has recognized the prior complaint included an information exchange among the Defendants, which could serve as a "plus factor." *Id.*, at 19.  Specifically, the Court said that "Plaintiffs have pleaded that a third-party called Kantar facilitated the Broadcaster Defendants' ability to exchange competitively sensitive information with one another and that the Sales Rep Firms also facilitate such exchanges."  *Id.*  The information exchange, with other plus factors, is said to support inference of a conspiracy to raise prices despite declining demand.

The Court's prior findings on the pleading of an information exchange claim does not address whether the TAC states a claim as to ShareBuilders on Count II.  The TAC refers to Kantar, a non-party media consultant, which provided the Broadcaster Defendants with "average price

data…available at a granular level broken down by DMA and inventory type (e.g., early news, late news, prime time)."  ([Filing No. 556, at CM/ECF](#) p. 21) ¶ 59.  Plaintiffs allege the detail Kantar provided to all Broadcaster Defendants permitted them to stabilize prices at anticompetitive levels. ([Filing No. 556, at CM/ECF](#) p. 23 - 24) ¶¶ 71-74.  The TAC further alleges that the exchange was accomplished through direct inter-seller exchanges and exchanges through the Sales Rep firms. ([Filing No. 556, at CM/ECF](#) p. 24 & 28) ¶¶ 75 & 87.

As noted, ShareBuilders provided pacing information, holding capacity reports, rate cards, and custom station reports as requested by individual customers—some but not all of the Broadcaster Defendants—whose use of ShareBuilders varied over time. (**Filing No. 555, at CM/ECF p. 33**) ¶ 101. It does not require close parsing of language to see that all communications from or to ShareBuilders, as alleged in the TAC, are not joint communications or dissemination of competitors' data by ShareBuilders.  Plaintiffs correctly allege that ShareBuilders' purpose is to help the Broadcaster Defendants increase their profitability and revenue through yield management concepts and software and, if requested, assistance with pricing, projections, and budgeting.  TAC ¶ 102.  There is nothing alleged to be illegal about that business model. Notably absent from Plaintiffs' allegations is any allusion to ShareBuilders' involvement with any conspiracy among the Broadcaster Defendants or communications with Sales Reps, the alleged conduits.

<u>**CONCLUSION**</u>

Dismissal of the TAC as to ShareBuilders is entirely warranted as it does not plausibly allege that ShareBuilders participated in any conspiracy. Accordingly, the Court should dismiss ShareBuilders from this case with prejudice.

April 15, 2022

Respectfully submitted,

HEPLERBROOM LLC

/s/ *Glenn E. Davis*

Glenn E. Davis  (Lead Counsel)     #6184597
Charles N. Insler     #6291652
HeplerBroom LLC
One Metropolitan Square
211 N. Broadway, Suite 2700
St. Louis, MO  63102
Phone: (314) 241-6160
Fax: (314) 241-6116
glenn.davis@heplerbroom.com
charles.insler@heplerbroom.com

*Counsel for ShareBuilders, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       I, Glenn E. Davis, certify that on April 15, 2022, I caused the foregoing Memorandum in Support of Motion to Dismiss to be filed and served on all counsel of record via Court's ECF system.


                                                                           */s/ Glenn E. Davis*