IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document relates to all actions.* | Master Docket No. 18 C 06785<br><br>MDL No. 2867<br><br>Honorable Virginia M. Kendall |

**PLAINTIFFS' MOTION FOR AN EXTENSION OF THE FACT DISCOVERY
AND CLASS CERTIFICATION DEADLINES**

Pursuant to Federal Rule of Civil Procedure 16(b)(4), Plaintiffs respectfully move to extend the fact discovery and class certification briefing deadlines, as well as interim deadlines in the current Scheduling Order, ECF No. 510. The parties conferred and Defendants oppose the motion.

I.      **INTRODUCTION**

Discovery in this case opened in November 2020, and Plaintiffs have worked diligently since then to move the case forward. Following months of negotiations regarding the scope of production, custodians, and search terms, Defendants completed their productions in response to Plaintiffs' first set of requests in January 2022. All told, approximately ***14 million documents*** have been produced, which does not include additional documents to be produced from recently-added Defendant ShareBuilders. While Plaintiffs have assembled teams and are expeditiously reviewing the productions, this is time-consuming process given the volume. Moreover, Plaintiffs' efforts to pursue additional relevant information have been protracted by Defendants. For example, Defendants placed over 50,000 documents on facially deficient privilege logs and entered into a secret agreement with Nielsen to hamper Plaintiffs' ability to obtain television ratings data for use in this litigation.

Notwithstanding these issues, discovery to date has borne fruit. For example, Plaintiffs discovered that Defendants' executives were emailing each other, that code words and personal email addresses were used to hide collusive activity, and that thousands of inter-Defendant phone calls, including among executives, took place during the conspiracy period. And remarkably, in the context of this antitrust conspiracy case, Defendants themselves identified over a million documents in response to interrogatories regarding exchanges of competitively sensitive information. But Plaintiffs are reluctant to commence depositions until they have had adequate time to review Defendants' productions, including forthcoming ShareBuilders documents, and to

1

seek resolution of many outstanding discovery issues, including documents improperly withheld as privileged and the Nielsen data. Additional time will enable Plaintiffs to further develop the record before commencing substantive depositions.

When originally ordering a 24-month fact discovery period, the Court explained, "I generally give the tight schedule up front. And then when you have that issue where there's some discovery complication, there's some ESI issue, or there's some privilege issue or something that, you know, throws a wrench in the works, then we extend it." 2/22/19 Hrg. Tr. at 9:22-10:1; *see also* ECF No. 218 (the "March 2019 Scheduling Order"). Plaintiffs respectfully submit that each of these enumerated issues are present here. And given Plaintiffs' diligence in moving the case forward, including multiple settlements, as well as the volume of documents produced, the forthcoming ShareBuilders production, and the ongoing discovery issues that require resolution, good cause exists to extend the current schedule by six months.[1]

## II. FACTUAL BACKGROUND

### A. To Date, Plaintiffs Have Obtained Over 14 Million Documents From Defendants and Third-Parties

Promptly after discovery opened in November 2020, Plaintiffs served their first set of requests for production of documents, which included a request for the documents Defendants produced to the DOJ.[2] Plaintiffs encountered their first hurdle when Defendants refused to produce the documents they had produced to the DOJ without *first* running agreed to search terms

---

[1] A comparison of the current and proposed deadlines is attached hereto as Exhibit A.
[2] Around the same time, the parties agreed to an amendment to the March 2019 Scheduling Order which added interim discovery deadlines, such as deadlines for the completion of meet and confers on data and documents, deadlines for document productions to begin and end, and deadlines for privilege logs. The amendment also moved class certification briefing to after the close of fact discovery. Because the amendment kept the combined amount of time for discovery and class certification period to the same length as in the March 2019 Scheduling Order, it had the effect of reducing the fact discovery period to 20 months. ECF No. 436.

over them and then conducting a responsiveness review.[3] Thus, rather than getting an immediate copy of the DOJ documents, Plaintiffs were forced to engage in protracted negotiations regarding the scope of documents to be produced, custodians, and search terms without the benefit of having first reviewed the DOJ documents, which would have enabled Plaintiffs to pursue more targeted discovery. Some of these negotiations were also complicated by certain Defendants' initial disclosures, which identified an unusually large number of individuals and/or broad categories of unnamed individuals.[4] Additionally, some Defendants refused to produce hit reports for search terms they claimed were overly burdensome, thereby prolonging the negotiations. Despite these hurdles, the parties ultimately reached agreements without the need for Court intervention.[5]

Because of the length of these negotiations, the substantial majority of Defendants' documents were produced between August 2021 and January 2022.[6] In October 2021, the parties agreed to a six-month extension of the fact discovery and class certification briefing deadlines.[7] ECF No. 510.[8] The parties also agreed to extend the deadline for the so-called wildcard

---

[3] During this period, the parties also negotiated various case protocols, including: a Stipulation and Order Governing Discovery (ECF No. 440); a Stipulation and Order Regarding Expert Discovery (ECF No. 441); a Stipulation and Order Regarding the Production of Documents and Electronically Stored Information (ECF No. 442); and a Stipulation and Federal Rule of Evidence 502(d) Order (ECF No. 443). Plaintiffs also engaged in extensive negotiations with Defendants regarding transactional data, which are still ongoing with certain Defendants regarding questions about the data.

[4] For example, Sinclair identified approximately 175 individuals, Nexstar identified 169 and TEGNA identified 110. ECF No. 647-1. Nexstar, on the other hand, identified only categories of people, such as, "Certain Nexstar General Managers with pricing responsibilities" Dec. 7, 2020 Nexstar Rule 26(a)(1) Initial Disclosures.

[5] Plaintiffs filed motions to compel against two Defendants—Griffin and Nexstar—that were ultimately resolved by the parties and withdrawn before the Court ruled. *See* ECF Nos. 475, 479.

[6] Specifically, as of August 5, 2021, Plaintiffs received approximately 4.8 million documents. ECF 467 at 4. By October 22, 2021, the document productions totaled approximately 12 million documents. ECF No. 503.

[7] Defendants were unwilling to agree to anything more at the time and Plaintiffs were optimistic that a six-month extension would be sufficient. However, the significant privilege log issues that arose and the additional two million documents produced thereafter, among other things, necessitate the current extension request.

[8] This extension brought the fact discovery period back to 24 months, consistent with what Plaintiffs

productions[9] from October 1, 2021 to January 18, 2022 and the deadline to serve privilege logs from October 22, 2021 to January 31, 2022. *Id*.[10] The wildcard productions brought the total volume to **over 14 million documents (not pages)**.[11] Many of the documents are multi-paged, detailed, and complex, relating to the distribution, buying or selling of television advertising. Plaintiffs request this extension to provide sufficient to review the documents for use at depositions. Plaintiffs have assembled teams and have been expeditiously reviewing case documents for many months.[12]

Plaintiffs also received and are reviewing thousands of pages of third-party documents in response to subpoenas for documents served on third-parties iHeartMedia, CoxReps, Media Rating Council, National Association of Broadcasters, Television Bureau of Advertising, ShareBuilders, AT&T, and Verizon. Most notably, Plaintiffs served 68 subpoenas on AT&T and Verizon, seeking telephone records for over 1,200 individuals associated with Defendants, and have received nearly 1.4 million pages of telephone records in response. As part of that effort, Plaintiffs had to synthesize these phone records, which has enabled them to identify which Defendants' employees and stations were speaking with each other.[13]

---

proposed at the outset of the case.

[9] During the custodian negotiations, certain Defendants agreed that Plaintiffs could designate a set number of additional custodians within 30 days after Defendants substantially completed their productions.

[10] Notwithstanding the January 18, 2022 deadline for document productions, some Defendants continued to make productions for certain custodians well into March 2022.

[11] Notably, Nexstar recently informed Plaintiffs that it may have additional documents to produce.

[12] While Plaintiffs are not conducting a linear review and are instead employing search terms and TAR to assist in the review and prioritization of the documents, it is nevertheless a daunting task.

[13] Plaintiffs further undertook extensive efforts to authenticate these phone records. On July 12 and July 14, 2022, Plaintiffs deposed 30(b)(6) representative witnesses from AT&T and Verizon, respectively, to authenticate the telephone carrier records. Additionally, on December 31, 2021 and January 6, 2022, Plaintiffs served interrogatories on Defendants seeking confirmation of historic and present telephone number usage by each Defendant's employees and stations. Over the last several months, certain Defendants provided complete responses to this Interrogatory, while others have not. Plaintiffs have engaged in good faith efforts to reach a compromise with the remaining Defendants. However, it appears

### B. Plaintiffs Are Continuing To Seek Additional Relevant Information

#### 1. Plaintiffs are Seeking Additional Custodians' Documents and Documents Related to ShareBuilders

Plaintiffs are continuing to meet and confer with certain Defendants regarding additional relevant custodians. For example, in late March, Plaintiffs requested that Defendant Raycom add its CEO, Pat LaPlatney, as a custodian after Plaintiffs found evidence that Mr. LaPlatney communicated with Larry Wert, CEO of Tribune (TAC ¶ 125), in addition to other evidence of his involvement in the exchange of competitively sensitive information (TAC ¶ 136).[14] Similarly, Plaintiffs are in discussions with Sinclair regarding the addition of Barry Faber, a former Executive VP and General Counsel, as a custodian.[15]

More troubling, some Defendants agreed to produce documents from certain custodians, but then did not do so. Defendant Griffin, for example, agreed to make Lex Sehl, Local Sales Manager, a document custodian during the parties' negotiations in the spring of 2021. When Plaintiffs discovered in March 2022 that Griffin had produced no documents for Mr. Sehl, Griffin informed Plaintiffs—for the first time—that Mr. Sehl's documents had been deleted between August 2017 and 2018. Plaintiffs are continuing to investigate the circumstances of Mr. Sehl's file deletion and are working with Griffin to identify a replacement custodian.

In addition to the new custodian documents, Plaintiffs are seeking additional documents

---

that the parties are at impasse. Assuming that is the case, Plaintiffs will move to compel in the near future.

[14] It was not until *June* 2022 that Raycom finally responded to Plaintiffs' request. Raycom claims that producing Mr. LaPlatney's documents would be too burdensome, but it refuses to produce any information, such as document database hit reports, to substantiate that claim. Accordingly, Plaintiffs anticipate filing a motion to compel shortly.

[15] Plaintiffs initially proposed Mr. Faber as a custodian in March 2021, but Sinclair did not agree. Plaintiffs then proposed adding him as a "wildcard custodian" in October 2021, but Sinclair again refused on the basis that he served as general counsel, and notwithstanding the fact that he served dual roles—as VP and then later President of Distribution and Network Relations—while serving as general counsel. Plaintiffs are currently working on a search term proposal for Sinclair's consideration.

related to ShareBuilders. In response to a third-party subpoena served in July 2021, ShareBuilders produced the documents it had previously produced to the DOJ with severe production limitations.[16] In March 2022, following review of those and other documents, Plaintiffs amended their complaint to add ShareBuilders. Plaintiffs now allege that ShareBuilders enabled Defendants to set list prices for the industry. ECF 555 at ¶¶ 11, 99-123. Thereafter, Plaintiffs served document requests on both ShareBuilders and the other Defendants relating to ShareBuilders' participation in the alleged conspiracy. Defendants have thus far refused to produce responsive documents, citing ShareBuilders' pending motion to dismiss (ECF No. 588).[17] While ShareBuilders' initially objected to producing documents beyond those it produced to the DOJ, it ultimately agreed to negotiate a supplemental production.[18] Plaintiffs continue to negotiate with ShareBuilders regarding the scope of that production.[19]

### 2. Issues With Defendants' Privilege Logs Must Be Resolved

Defendants' privilege logs collectively contain over 50,000 entries.[20] Plaintiffs' review of these substantial logs has taken considerable resources and been further complicated by

---

[16] The ShareBuilders' documents produced to date were produced without unitization, meaning emails were separated from their attachments.

[17] Based upon a review of ShareBuilders' DOJ documents as well as Defendants' documents, it appears that certain Defendants continued to exchange competitively sensitive information after the October 2018 production cut-off, notwithstanding Defendants' agreements with the DOJ to cease any such conduct. Thus, Plaintiffs are now seeking additional documents related to their post October 2018 relationships and interactions with ShareBuilders.

[18] ShareBuilders produced its DOJ documents to Plaintiffs in August 2021, but that production is far from complete and suffers from many technical flaws making it inadequate.

[19] One further basis for this request for a discovery extension is that Defendants recently sought to reopen search term negotiations long after Plaintiffs completed the productions of the two original class representatives. In addition, Defendants are seeking broad discovery of the two new class representatives and have disputed the sufficiency of Plaintiffs' interrogatory responses. Responding to Defendants' objections and requests has and will continue to require significant time and effort.

[20] Sinclair's privilege log contains over 38,000 entries, Nexstar's multiple logs contain over 10,000 entries, Meredith's log contains approximately 800 entries, Raycom's log contains approximately 770 entries, TEGNA's log contains over 500 entries, and Scripps' log contains almost 200 entries.

Defendants' general delay in responding to Plaintiffs' requests for corrections.[21] Plaintiffs identified significant systemic deficiencies for the majority of Defendants' privilege logs, which failed to meet the basic requirements of Section 9 of the ESI Order (ECF No. 442) or the requirements of Federal Rule of Civil Procedure 26(b)(5). For example, five Defendants failed to either separately log each email within an email chain or provide a single log entry and a redacted version of the email chain. ESI Order § 9.6. Other logging deficiencies include that many entries failed to: identify the specific lawyer involved in a claimed privilege communication; disclose email recipients on distribution lists; list the date an email attachment was created; describe the subject matter of the claimed legal advice beyond generic terms such as advice regarding "regulatory compliance issues" or "station operation issues"; substantiate common interest claims; and explain why the presence of third parties on communications does not constitute waiver of any claimed privilege. .

For several months, Plaintiffs expended considerable efforts negotiating with Defendants to receive amended logs and production of improperly withheld documents, sending multiple detailed letters to each non-compliant Defendant identifying deficiencies, providing supporting legal authority, and identifying the specific log entries with each type of deficiency.[22] Nexstar withdrew some of its privilege designations and made two related productions in June, and another two productions in July, along with an amended privilege log served on July 8. With

---

[21] Nexstar, for example, took almost four months to comply with the ESI Order's requirements for privileged email chains and provide the required redacted email chains. As a result, Plaintiffs' will have to re-review Nexstar's log entries pertaining to email chains alongside the redacted chains themselves to fully evaluate Nexstar's privilege claims, including whether there is waiver due to the presence of third parties on the earlier-in-time email messages within each chain. Plaintiffs posit that waiver by third party disclosure is not merely a hypothetical concern. For all of the identified Defendants, Plaintiffs have identified withheld or redacted documents disclosed to third-parties.

[22] Plaintiffs first raised these issues with Sinclair in December 2021 after receiving its initial privilege log in November 2021, and with Nexstar, Meredith, Raycom, TEGNA, and Scripps after they served their logs at the end of January 2021.

7

respect to the other identified Defendants, Plaintiffs received: an amended log and productions from Meredith on June 17; an "updated" privilege log on May 15, a further amended log on June 6, and production from TEGNA on June 22; an amended log and productions from Raycom on July 1; and anticipate an amended log and production from Scripps this month. Plaintiffs also have received amended privilege logs from Sinclair and continue to await a further amended privilege log and associated production.

Once Plaintiffs receive final amended logs and productions from Defendants, they will have to assess further challenges to any of Defendants' privilege designations and possibly bring motions to compel.

### 3. Defendants' Secret Agreement with Nielsen Must Be Disclosed and Nielsen Data Produced

Plaintiffs have diligently pursued production of Nielsen television ratings data from both Defendants and Nielsen. Defendants claimed they were unable to produce such data under their licensing agreements with Nielsen. In May 2022, after months spent exploring alternative means of procuring television ratings data, Plaintiffs served a subpoena on Nielsen. After two months of negotiations, involving multiple phone conversations and the exchange of dozens of emails, Nielsen led Plaintiffs to believe that the company was willing to sell a limited license to access and use in litigation the ratings data covered by the subpoena. Recently, Nielsen suddenly changed course, advising that it had instead brokered a deal with Defendants that allows *only Defendants* to use the Nielsen ratings data in litigation. Nielsen also disclosed that the deal with Defendants had been in the works for nine months and now maintains that it is not required to comply with the subpoena because Plaintiffs can simply request from Defendants whatever ratings data the Defendants choose to use. That suggestion is of course absurd and will unfortunately require

Plaintiffs to pursue a motion to compel on this issue.[23]

## III. ARGUMENT

### A. There Is Good Cause To Extend The Discovery Schedule

"The proper method to seek an extension of discovery deadlines is to *timely* file a 16(b)(4) motion with the Court." *Naud v. City of Rockford*, No. 09 CV 50074, 2013 WL 4447028, at *5 (N.D. Ill. Aug. 16, 2013) (emphasis in original). Rule 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* Local Rule 16.1(3)(c) (providing that courts may modify the scheduling order upon a showing of good cause). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); *see also Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (finding that good cause requires a showing of diligence by the party seeking the amendment).[24]

Plaintiffs more than satisfy the good cause standard. They have diligently moved discovery forward in this multi-defendant case, notwithstanding the hurdles they have encountered. Without

---

[23] In addition to pursing documents improperly designated as privileged and the Neilsen data, Plaintiffs have been engaged in extensive discussions with Defendants regarding their insufficient responses to interrogatories. Specifically, rather that providing narrative responses, Defendants responded to Plaintiffs' third set of interrogatories, which only consisted of two interrogatories altogether, pursuant to Rule 33(d), and collectively identified over a million documents, improperly shifting the burden or review to Plaintiffs. With the motion to compel deadline less than eight weeks away, Defendants continue to hold open the possibility that they may find common ground and urge Plaintiffs that they are not yet at impasse.

[24] Beyond diligence, some courts also consider prejudice to the non-movant as part of the "good cause" analysis; the Seventh Circuit, however, has not yet decided whether prejudice ought to be part of the good-cause determination. *In re NorthShore Univ. Health Sys. Antitrust Litig.*, No. 07-CV-04446, 2016 WL 11430714, at *2 (N.D. Ill. Mar. 29, 2016); *McCann v. Cullinan*, 2015 WL 4254226, at *12 (N.D. Ill. July 14, 2015) ("[T]he Seventh Circuit has never held that prejudice is a proper consideration under [Rule 16(b)(4) ]."). Out of an abundance of caution, Plaintiffs included arguments below addressing the prejudice to Plaintiffs if an extension is not granted and the lack of prejudice to Defendants if an extension is granted.

the requested extension, Plaintiffs will be prejudiced in their ability to prosecute their claims on the merits, whereas Defendants will suffer no prejudice, other than the passage of time, from the proposed extension.

### 1. Plaintiffs Have Diligently Pursued Discovery

Plaintiffs have diligently pursued discovery in this case.[25] After fact discovery opened, they promptly served requests for documents. The parties then spent months negotiating the scope of productions, custodians, and search terms, and ultimately reached agreements without the need for Court involvement. Defendants have produced over ***14 million documents***, the substantial majority of which were produced between August of 2021 and January of 2022. Plaintiffs also pursued and obtained discovery from multiple third parties. Plaintiffs have dedicated dozens of attorneys to reviewing the productions and preparing for depositions. Based on information learned in discovery Plaintiffs amended their complaint to add Defendant ShareBuilders and are now awaiting the production of additional documents from it. Plaintiffs have also diligently pursued the production of documents withheld as privileged, engaging in extensive negotiations with Defendants that led several Defendants to amend their privilege logs and withdraw claims of privilege. Based upon these productions, it appears that there are thousands of inter-Defendant phone calls. And Plaintiffs are continuing to pursue additional discovery, including additional custodian documents, Nielsen data, and supplemental interrogatory responses.

Plaintiffs timely filed this motion after it became apparent that, without an extension, they would not have time to review of the voluminous document productions, obtain documents from a newly added defendant, could not resolve discovery disputes in the near term due to ongoing

---

[25] It should be noted that the majority of the discovery period, which started in November 2020, took place during the height of the pandemic, with members of Plaintiffs' team working remotely, among other challenges.

negotiations, and as such, could not proceed with the depositions in a meaningful way.

Plaintiffs' demonstrated diligence provides good cause to modify the Scheduling Order. *See*, *e.g.*, *In re Domestic Airline Travel Antitrust Litg.*, No. 15-1404 (CKK), 2018 WL 4441507, at *8 (D.D.C. Sept. 13, 2018) (finding plaintiffs had been diligent where they assisted the court in developing a workable scheduling order and compliance with the scheduling order was hindered by matters that were unforeseen, e.g., defendants' voluminous document productions); *Abraham v. WPX Prods., LLC*, No. 12-cv-0917, 2016 WL 548251, at *12 (D.N.M. Jan. 25, 2016) ("Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request."); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 594 (D. Minn. 1986) (granting extension where the case schedule had been tight to keep the parties attentive to the need to proceed expeditiously, time had been well utilized, and considerable work had been accomplished, and remaining time was insufficient to complete discovery).

### 2. Plaintiffs Would Be Prejudiced Without a Schedule Extension

At this time, Plaintiffs anticipate over a hundred depositions in this case. In order to complete those depositions by the December 30, 2022 fact discovery deadline, Plaintiffs would need to commence those depositions imminently.[26] Yet, Plaintiffs are reluctant to do so given that the review of Defendants' voluminous productions is ongoing, they have yet to receive the supplemental ShareBuilders production, and the unresolved disputes with respect to privileged documents and additional custodians that may result in additional documents productions. Review of these document as well as resolution of all of the outstanding discovery disputes will likely affect who Plaintiffs depose. Thus, extending discovery will likely lead to fewer party and third-

---

[26] As noted above, Plaintiffs commenced certain depositions that are not be affected by the upcoming productions of documents.

party depositions.

In addition to the fact discovery deadline, Plaintiffs are seeking a six-month extension of the interim discovery deadlines, including the impending August 1, 2022 deadline to issue additional written discovery without good cause and the September 1, 2022 deadline to file motions to compel without good cause. ECF No. 510. Given Plaintiffs' diligence in moving discovery forward and that the possibility that resolution of the ongoing discovery issues may necessitate additional discovery, an extension of these deadlines is similarly appropriate.

Courts have long recognized the purpose of discovery is to permit actions to be decided on the merits rather than on incomplete facts. *See, e.g., Coleman v. Blockbuster, Inc.*, 238 F.R.D. 167, 172 (E.D. Pa. 2006) (granting discovery extension despite prior extensions to permit the case to be decided on the merits); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 526 (D. Md. 2010) ("The civil justice system is designed for courts to decide cases on their merits, and to do so, the fact-finder must review the facts to discern the truth."); *Goodman v. Los Angeles Police Dep't*, CV 13–5959 GAF (MANx), 2014 WL 12614428, at *2 (C.D. Cal., Oct. 31, 2014) (good cause exists to modify scheduling order in order for parties to develop facts that will be useful to the Court in deciding the parties' motions for summary judgment). Absent a schedule extension, Plaintiffs will be forced to prematurely proceed with depositions, without the benefit of a sufficient review of the documents or resolution of other outstanding discovery issues. Proceeding with depositions now in order to meet the current fact discovery deadline may also result in inefficiencies if Plaintiffs need to recall already deposed witnesses because of subsequently produced documents.

### 3. Defendants Would Not Be Prejudiced by the Proposed Schedule Extension

Plaintiffs' proposal creates no prejudice for Defendants that would warrant denying the

requested extension. Defendants in this Action have not noticed a single deposition, and just recently jointly submitted a deposition protocol to this Court, the resolution of which will govern future depositions. Extending the schedule by six months will not prejudice Defendants, and given their position on privilege logs and producing additional ShareBuilders' documents (tied to this Court's ruling on a motion to dismiss), it will permit all parties sufficient time to resolve discovery issues. Where, as here, the only possible prejudice is the passage of time, courts are reluctant to reject an extension where the other factors weigh in favor of one. *See, e.g.*, *In re Christou*, No. 06-68251, 2008 WL 7880888, at *1 (Bankr. N.D. Ga. Nov. 30, 2008) (granting discovery extension where opposing party had "presented no specific evidence of prejudice except the mere passage of time"); *Equal Rights Ctr.*, No. 06-cv-1991, 2008 WL 11391642, at *2 (D.D.C. May 27, 2008) (finding prejudice minimal where trial and summary judgment deadlines were still distant); *Cf Summers v. Electro-Motive Diesel, Inc.*, No. 13 C 1312, 2014 WL 5100606, at *9-10 (N.D. Ill. Oct. 10, 2014) (denying discovery extension request made after close of discovery).

### B. The Requested Extension Is Consistent With Schedules In Complex MDLs

In large multi-district antitrust actions such as this, where document productions are often voluminous and the facts are complex, extensions of the fact discovery deadlines are frequently granted, and discovery periods far longer than those sought here are common. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196 (N.D. Ohio) (discovery proceeded from April 27, 2011 (ECF No. 112) to February 28, 2014 (ECF 1033), with four interim fact discovery extensions (ECF Nos. 354, 417, 814, 1033); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-cv-20000 (N.D. Ala.) (discovery began in 2014 (ECF No. 229) and proceeded until December 1, 2017 (ECF No. 1567), with three interim fact discovery extensions (ECF Nos. 575, 989, 1567)); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.) (discovery proceeded from November 12, 2009 (ECF No. 1030) until December 31, 2013 (ECF No. 1729), with the fact discovery

13

deadline extended three times (ECF Nos. 1335, 1513, 1729).[27] *See also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 648–49 (N.D. Ill. 2006) (the court granted an extension that Plaintiffs sought on March 15, 2005, when discovery closed April 29, 2005). Accordingly, the discovery period sought by Plaintiffs' motion is consistent with the orderly management of complex antitrust multidistrict litigation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' request for a six-month extension of the fact discovery period. Plaintiffs also request a monthly discovery conference with the Court or the Magistrate to address the multiple discovery issues facing the parties and keep discovery moving forward expeditiously.

---

[27] *See also In re Domestic Airline Travel Litig.*, No. 15-1404 (CKK) (D.D.C. 2018) (lifting a stay on discovery on January 1, 2017 (ECF No. 152) and granting an extension until July 31, 2019 (ECF No. 286)); *In re National Football League's "Sunday Ticket" Antitrust Litig.*, 2:15-ml-02668-PSG (C.D. Cal.) (establishing scheduling order for discovery to complete in March 2022 (ECF No. 294), and granting an extensions for fact discovery (ECF Nos. 363 and 434) and noting the "complexity of this case and the voluminous document productions to date," (ECF No. 434)); *In re Thalomid and Revlimid Antitrust Litig.*, No. 14-cv-6997 (D.N.J.) (discovery proceeded from July 6, 2015 (ECF No. 49) to May 17, 2018 (ECF No. 173), with three interim fact discovery extensions (ECF Nos. 118, 137, 173)); *In re NCAA Student-Athlete Name and Likeness Litig.*, No. 09-cv-1967 (N.D. Cal.) (discovery proceeded from July 6, 2010 (ECF No. 224) to January 15, 2013, with three interim fact discovery extensions (ECF Nos. 439, 600, 632)); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa.) (negotiations regarding scope and form of production and discovery protocols began April 21, 2010 during a discovery stay (ECF 320), with discovery and document production later proceeding from April 25, 2012 (ECF 656) to April 30, 2014 (ECF 869), with one interim extension of the fact discovery deadline (ECF 869).

Dated: July 19, 2022                    Respectfully submitted,

   */s/ Robert J. Wozniak*
Robert J. Wozniak
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
rwozniak@fklmlaw.com

*Liaison Counsel*

Megan E. Jones*
**HAUSFELD LLP**
600 Montgomery St. #3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mjones@hausfeld.com

Michael D. Hausfeld*
Hilary K. Scherrer*
Nathaniel C. Giddings*
Farhad Mirzadeh*
Jane Shin*
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeld.com
hscherrer@hausfeld.com
ngiddings@hausfeld.com
fmirzadeh@hausfeld.com
jshin@hausfeld.com

*Lead Counsel*

Meegan Hollywood*
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2600
New York, NY 10019
Tel: (212) 980-740
Fax: (212) 980-7499
mhollywood@robinskaplan.com

Kimberly A. Justice
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
Fax: (224) 632-4521
kjustice@fklmlaw.com

*Plaintiffs' Steering Committee*

Stephanie A. Scharf
**SCHARF BANKS MARMOR LLC**
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Tel: (312) 726-6000
sscharf@scharfbanks.com

*Additional Counsel for Plaintiffs and the Proposed Class*

\*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court sing the CM/ECF system, which sent notification to all counsel of record.

<u>*/s/ Robert J. Wozniak*</u>
Robert J. Wozniak

# EXHIBIT A

| Filing | Current Deadline | Parties' Proposal |
|---|---|---|
| Completion of discovery productions | January 18, 2022 | N/A |
| Completion of all privilege logs | January 31, 2022 | N/A |
| Deadline for submission of interrogatory responses | February 4, 2022 | N/A |
| Deadline to amend the complaint without further leave of court | March 2, 2022 | N/A |
| Deadline to serve written discovery requests without a showing of good cause (excluding Requests for Admissions) | August 1, 2022 | February 1, 2023 |
| Deadline to file any motions to compel without a showing of good cause | September 1, 2022 | March 1, 2023 |
| Fact discovery complete | December 30, 2022 | June 30, 2023 |
| Class certification motion (including expert reports) | January 13, 2023 | July 13, 2023 |
| Plaintiffs to present class certification experts for depositions | February 8, 2023 | August 8, 2023 |
| Response to motion for class certification (including rebuttal expert reports) | March 13, 2023 | September 13, 2023 |
| Defendants to present class certification experts for depositions | May 1, 2023 | November 1, 2023 |
| Reply in support of motion for class certification (including reply expert reports) | May 15, 2023 | November 15, 2023 |