## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE:<br>LOCAL TV ADVERTISING ANTITRUST LITIGATION | MDL No. 2867<br>No. 18 C 6785<br><br>Honorable Virginia M. Kendall |

**OPPOSITION OF DEFENDANTS NEXSTAR, SCRIPPS, RAYCOM, AND TEGNA TO PLAINTIFFS' DISCOVERY MOTION NO. 5: MOTION TO COMPEL NEXSTAR, SCRIPPS, RAYCOM, AND TEGNA TO PRODUCE ANTITRUST/BUSINESS COMPLIANCE DOCUMENTS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

   I.   The Antitrust Compliance Documents That Defendants Withheld Are Protected By Attorney-Client Privilege. ............................................................................................................................ 3

   II.   The Antitrust Compliance Documents That Defendants Disseminated Internally To Directly Concerned Employees Fall Within Attorney-Client Privilege Protection. ......................................... 4

   III.  The Disputed Documents Convey Legal Advice Protected By The Attorney-Client Privilege and Should Not Be Produced. .......................................................................................................... 5

      A.   Nexstar ........................................................................................................................ 5

      B.   Raycom ....................................................................................................................... 8

      C.   Scripps ...................................................................................................................... 10

      D.   TEGNA ..................................................................................................................... 13

CONCLUSION ............................................................................................................................ 15

## Table of Authorities

*Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401 (N.D. Ill. 2007)...................... 10

*Certain Underwriters at Lloyds v. Fid. & Cas. Co. of New York*, No. 89 C 0876, 1997 WL 769467 (N.D. Ill. Dec. 9, 1997). .......................................................................................... 2, 3

*Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706, 2017 WL 4740662 (N.D. Ill. Oct. 20, 2017) ........................................................................................................... 2, 3, 9, 15

*Doe v. Johnson*, No. 15 C 1387, 2015 WL 12834771 (N.D. Ill. Nov. 23, 2015) .............. 3, 14, 15

*In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515 (N.D. Ill. 1990) . 7

*In re Blue Cross Blue Shield Antitrust Litig*, No. 2:13-CV-20000-RDP, 2017 WL 9807442 (N.D. Ala. Aug. 31, 2017)......................................................................................... 4, 6, 15

*In re Brand Name Prescription Drugs Antitrust Litig.*,  No. 94 C 897, 1996 WL 5180, (N.D. Ill. Jan. 3, 1996) ........................................................................................... 4, 8–9, 14, 15

*In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 557412 (N.D. Ill. Sept. 19, 1995). ................................................................................................... 5, 6

*In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI(EMC), 2006 WL1699536 (N.D. Cal. June 16, 2006) .................................................................................................... 12

*In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2014 WL 5090032 (E.D. Pa.. Oct. 9, 2014) ........................................................................................................... 6, 7-8

*In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407 (N.D. Ill. 2006) ("*Sulfuric Acid I*")....... 4, 8, 9

*In re Sulfuric Acid Antitrust Litig.*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) ("*Sulfuric Acid II*")........ .................................................................................................................... 4, 6, 9

*Jones v. Nat'l Council of Young Mens' Christian Associations of the U.S.*, No. 09 C 6437, 2011 WL 1740122 (N.D. Ill. May 3, 2011) ................................................................ 13

*Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 689 F. Supp. 841 (N.D. Ill. 1988).......... 10

*Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2019 WL 12528942 (N.D. Ill. July 17, 2019) ................................................................................................................. 3, 4

*Motorola Solutions, Inc. v. Hytera Comm'ns Corp. Ltd.*, 2021 WL 5083758 (N.D. Ill. Nov. 2, 2021) .................................................................................................................... 12

*Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007) ................................................... 12

*Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314 (7th Cir. 1963) ................................ 8

*Roth v. Aon Corp.*, 254 F.R.D. 538 (N.D. Ill. 2009) ......................................................... 7

*United States v. White*, 950 F.2d 426 (7th Cir. 1991) ............................................. 2, 3, 5

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ................................................... 2, 12

*Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018) ............. 9

*Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944
    (N.D. Ill. July 14, 2020) ........................................................................ 12, 13

*Weeks v. Samsung Heavy Indus., Ltd.*, No. 93 C 4899, 1996 WL 288511 (N.D. Ill. May 30, 1996)
    .................................................................................................... 8

## INTRODUCTION

Plaintiffs seek to compel Defendants Nexstar Media Group Inc. ("Nexstar"), Gray Media Group (formerly known as Raycom Media, Inc.) ("Raycom"), The E.W. Scripps Company ("Scripps"), and TEGNA, Inc. ("TEGNA") (collectively, "Defendants") to produce documents protected by the attorney-client privilege. ECF No. 688 ("Motion" or "Mot."). Plaintiffs justify their latest motion to compel with blanket claims that certain documents categorically cannot be privileged and must be produced. It is well-settled, however, that courts evaluate privilege claims on a document-by-document basis. In each case, the documents Plaintiffs seek to compel constitute clear legal advice protected by the attorney-client privilege.

First, despite Plaintiffs categorical assertion that "Antitrust Policies Are Not Privileged," Mot. at 10, courts have held that communications related to an organization's antitrust policies are privileged where they provide legal advice or reveal client confidences. Second, Plaintiffs' emphasis on Defendants' dissemination of certain documents (Mot. at 11-14) is insufficient to waive privilege because Defendants disseminated privileged communications to only their own employees directly concerned with the subject matter. Third, each Defendant's documents convey legal advice protected by the attorney-client privilege and, thus, production should not be compelled. Despite Plaintiffs' speculative attempts to characterize the disputed documents as business policies, Defendants have properly asserted privilege over documents conveying legal advice and client confidences.

Defendants' assertions of privilege are proper and adequately described in their privilege logs. But that legal question is not really the point of Plaintiffs' Motion, which is instead part of Plaintiffs' now four-year-old strategy to impose enormous expense on Defendants and delay efficient administration of this case. Most recently, Plaintiffs have waited until the tail-end of a

long discovery period to flood the Court with motions to compel, ECF Nos. 649, 656, 674, 677, 688, in a misplaced effort to further extend the discovery schedule. ECF Nos. 510, 648. Plaintiffs also unilaterally seek to subvert the parties' carefully negotiated agreement regarding custodians and the relevant time period for document discovery, seek production of voluminous additional documents, and seek Court approval to take 1,050 hours of depositions. ECF No. 647, 674.

Defendants request that this Court deny Plaintiffs' Motion because it fails to establish that any of Defendants' antitrust compliance documents are not privileged or should be produced.

## LEGAL STANDARD

The purpose of attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The invoking party establishes the privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Privilege claims must be made and resolved on a "question-by-question or document-by-document basis." *Id.*; *Certain Underwriters at Lloyds v. Fid. & Cas. Co. of N.Y.*, No. 89 C 0876, 1997 WL 769467, at *2 (N.D. Ill. Dec. 9, 1997) (noting the impropriety of "blanket claims of whether the group of documents are or are not privileged").

Solely business advice is not protected by attorney-client privilege, but "[t]he attorney-client privilege protects an attorney's 'legal advice about a business decision.'" *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017);

*see also Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2019 WL 12528942, at *2 (N.D. Ill. July 17, 2019) ("legal advice that considers business issues is still legal advice").

"[C]ommunications between non-lawyer employees often warrant protection from disclosure." *Crabtree*, 2017 WL 4740662, at *2; *see also Doe v. Johnson*, No. 15 C 1387, 2015 WL 12834771, at *2 (N.D. Ill. Nov. 23, 2015) ("[c]onfidential communications by non-lawyers ... for the purpose of assisting the lawyers to provide legal advice are also protected by the attorney-client privilege."). The attorney-client privilege "turns on whether the communications rest on confidential information obtained from the client, or would reveal the substance of a confidential communication by the client." *Crabtree*, 2017 WL 4740662, at *2. "[D]irect lawyer involvement is not required for the privilege to attach" but "a lawyer must have some relationship to the communication such that the communication(s) between the non-lawyer employees would reveal, directly or indirectly, the substance of a confidential attorney-client communication." *Id.* at *2.

## ARGUMENT

### I.    The Antitrust Compliance Documents That Defendants Withheld Are Protected By Attorney-Client Privilege.

Plaintiffs' Motion attempts to characterize antitrust compliance policies and guidance as "per se" not privileged, stating definitively that "Antitrust Polices Are Not Privileged." Mot. at 10. Plaintiffs' incorrect attempt to categorically preclude certain documents from privilege protection ignores that claims of privilege are "sustained on a question-by-question or document-by-document basis." *White*, 950 F.2d at 430. "[B]lanket claims of whether [a] group of documents are or are not privileged" are not appropriate. *Certain Underwriters*, 1997 WL 769467, at *2.

Courts have found documents related to antitrust compliance policies to be privileged. In *In re Brand Name Prescription Drugs Antitrust Litig.*, the court held that a "presentation describing the application of the antitrust laws to specific aspects of [the defendant]'s business" was

"privileged as it provides legal advice and reveals client confidences regarding certain of [the defendant]'s business practices." No. 94 C 897, 1996 WL 5180, at *2 (N.D. Ill. Jan. 3, 1996). Similarly, in *In re Blue Cross Blue Shield Antitrust Litig*, the court held that an "Antitrust Compliance document" that "reflect[ed] the attorney's legal advice on the issue of how to run [defendant's business] consistent with antitrust laws" was privileged because "it reflect[ed] a 'confidential communication[ ] between an attorney and his client relating to a legal matter for which the client has sought professional advice. No. 2:13-CV-20000-RDP, 2017 WL 9807442, at *6 (N.D. Ala. Aug. 31, 2017).

Plaintiffs' Motion relies heavily on *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407 (N.D. Ill. 2006) ("*Sulfuric Acid I*"), *supplemented*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) ("*Sulfuric Acid II*") to assert that antitrust compliance polices are per se not privileged. Mot. at 10-11. But *Sulfuric Acid I* cited *Brand Name Prescription Drugs* as "a straightforward application of basic attorney-client privilege principles to an obvious and uncomplicated situation." *Sulfuric Acid I,* 235 F.R.D. at 431. Plaintiffs argue that documents related to antitrust guidance presentations are categorically not privileged, Mot. at 13-14, but their own cited authority concluded that such materials are "obvious and uncomplicated" examples of attorney-client privilege. *Id.* Plaintiffs' own cited authority contradicts their assertion that antitrust compliance policies and guidance materials are per se not privileged and other authority holding that such materials are privileged.

## II.   The Antitrust Compliance Documents That Defendants Disseminated Internally To Directly Concerned Employees Fall Within Attorney-Client Privilege Protection.

Plaintiffs' Motion focuses on the alleged broad internal distribution of the disputed documents as an indication that the materials cannot be privileged. Mot. at 11-12, 13. However, "privileged emails shared with a larger number of employees are not per se non-privileged." *Medline*, 2019 WL 12528942, at *2.

4

In an earlier opinion in *Brand Name Prescription Drugs* the court rejected plaintiffs' argument that the disputed documents were "disseminated widely and therefore [are] not confidential." No. 94 C 897, 1995 WL 557412, at *1 (N.D. Ill. Sept. 19, 1995). Noting that "it is well settled that the dissemination" of privileged communications "to those employees directly concerned with such matter does not waive the attorney-client privilege," the court concluded the disputed documents were disseminated to "directly concerned" employees and were therefore privileged. *Id.*

Plaintiffs' argument that Defendants' claims of privilege are "undermined" by internal dissemination, Mot. at 11, contravenes settled law. Plaintiffs' argument is just another attempt to make blanket claims that certain documents are categorically not privileged, despite the fact that privilege determinations are made on a document-by-document basis. *White*, 950 F.2d at 430.

**III.  The Disputed Documents Convey Legal Advice Protected By The Attorney-Client Privilege and Should Not Be Produced.**

A.  Nexstar

There is no basis to compel production of Nexstar's privileged compliance documents. Nexstar has already produced the final, general antitrust policy documents identified through its document review (*see* NexstarTVAds-013161885 and NexstarTVAds-007373281) to Plaintiffs on June 6 and July 6, 2022. Nexstar withheld antitrust compliance documents only if protected by attorney-client privilege, pursuant to the authority cited below. Despite Nexstar's extensive meet and confer discussions with Plaintiffs about the documents on its privilege log, and Nexstar's good faith and numerous attempts to compromise with Plaintiffs, Plaintiffs continue to complain about two categories of documents: (1) antitrust policy documents sent in February 2018 that were "widely distributed" to Tribune personnel, and (2) four documents that were drafts of corporate

compliance policies. Mot. at 2-3. Both sets of documents are protected by privilege, which is not vitiated by their distribution, and Plaintiffs provide no basis to compel their production.

First, Nexstar withheld antitrust policy documents containing specific case studies or discussing detailed hypotheticals that are therefore attorney-client privileged. *See In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2014 WL 5090032, at *3 (E.D. Pa.. Oct. 9, 2014) (antitrust policies that provide "specific advice" regarding compliance with antitrust laws are entitled to privilege); *Blue Cross Blue Shield*, 2017 WL 9807442, at *2 (finding antitrust compliance materials privileged when they "contain[ed] legal analysis and advice from a lawyer on how Blue Caucus should run its meetings consistent with antitrust laws"). In contrast, *Sulfuric Acid II* involved hypotheticals prepared by in-house counsel relying on "his accumulated knowledge and understanding of antitrust law" and were not the product of any specific request for legal advice. *Sulfuric Acid II*, 432 F. Supp. 2d at 797. Plaintiffs' speculation is insufficient to defeat Nexstar's confirmation that the privilege attaches to these documents.

Nor does distribution of these privileged antitrust policy documents to internal employees defeat the assertion of privilege. As Plaintiffs concede, the documents were sent to internal email lists comprised of, e.g., "Tribune Directors of Sales" and "Tribune General Managers" for its local stations—**not to external third parties**. Mot. at 3. Transmission of attorney-client privileged documents to only internal Tribune and Nexstar employees does not break privilege, contrary to Plaintiffs' insinuation. Companies like Tribune and Nexstar, with diffuse operations and numerous local personnel, require consistency and must disseminate legal advice to their local operations. *See Brand Name Prescription Drugs*, 1995 WL 557412 at *1 ("[T]he mere fact that more than one individual is the recipient of the communication does not strip the communication of its confidential nature.").

6

Plaintiffs complain that Nexstar failed to provide a list of "all persons on these email lists," claiming that is necessary to assess whether privilege applies to these documents, even though Plaintiffs admit the email lists are limited exclusively to internal employees. Mot at 3. But Nexstar informed Plaintiffs on multiple occasions that records of the historical recipients of Nexstar and Tribune internal email lists *do not exist*, and Nexstar is simply unable to recreate such historical email lists. *See* Mot., Exs. 5, 7. In any event, identifying email list recipients is not necessary for this Court to confirm that distribution of the antitrust compliance documents was exclusively internal to Nexstar and Tribune employees.

Second, regarding the other four Nexstar entries that are the subject of Plaintiffs' Motion, Nexstar properly withheld privileged drafts of corporate policies; the privilege continues to attach to draft policies even if the final product is circulated externally. *See Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("[M]ost courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact."); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 518 (N.D. Ill. 1990) ("[S]imply because a final product is disclosed to the public (or a third person), an underlying privilege attaching to the drafts of the final product is not destroyed."). For example, in Exhibits 14 and 15 to Plaintiffs' Motion, Angela Betasso, Tribune's Senior Vice President of Sales, explains she will "finalize" the attached policy and guideline documents the following month, after internal review by in-house counsel. *See* Mot., Exs. 14, 15 (NexstarTVAds-010656236; NexstarTVAds-010656212). And as above, (*see supra* at II), distribution of the document to 30 internal recipients in no way vitiates the privilege. Plaintiffs' reliance on *Domestic Drywall* to claim otherwise is misplaced; the policy at issue there was final, made available to 120

7

employees at a training seminar, and posted on an internal Internet site for broad access. *Domestic Drywall*, 2014 WL 5090032, at *4.

    B.  Raycom

Plaintiffs demand production of a Raycom document titled "2018.02.22.Pacing and Competitive Information Guidance.pdf" ("GMG_PL_000729"), even though it is plainly covered by attorney-client privilege. GMG_PL_000729 contains "confident[ial]" "legal advice" from Raycom's "professional legal adviser[s]" to certain client employees, and Raycom has not "waive[d]" privilege. *Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 319 (7th Cir. 1963) (en banc), *cert. denied*, 375 U.S. 929 (1963); *Sulfuric Acid I*, 235 F.R.D. at 425 (legal "advice" on "antitrust laws" and related "legal ramifications ... are privileged"); *Weeks v. Samsung Heavy Indus., Ltd.*, 1996 WL 288511, at *2 (N.D. Ill. May 30, 1996) ("[A] matter committed to a professional legal adviser is prima facie so committed for the sake of legal advice ... and [] within the privilege unless it appears to be lacking in aspects requiring legal advice.").

Plaintiffs' argument hinges on three contentions, all of which lack merit.

*First*, Plaintiffs presume the term "guidance" in a document's title negates its privileged status because, in their misplaced view, any such document is necessarily a non-privileged "instructional guide" intended for "broad use and dissemination." Mot. at 12. As Raycom has repeatedly explained to Plaintiffs, their position rests on a fundamental misunderstanding of the underlying facts: GMG_PL_000729 is not an "instructional guide" or general antitrust policy, nor does it contain "business and financial advice." Mot. at 9. Rather, it is a memorandum containing "client confidences" and "legal advice" from Raycom's general counsel and outside counsel to certain Raycom employees regarding legal ramifications associated with specific "business practices." *Brand Name Prescription Drugs*, 1996 WL 5180, at *2 (A document "is privileged as

8

it provides legal advice and reveals client confidences regarding certain of [the client's] business practices"); *see Crabtree*, 2017 WL 4740662, at *2 ("The attorney-client privilege protects an attorney's 'legal advice about a business decision.'"); *Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018) (same).  Contrary to Plaintiffs' speculation, Mot. at 10 & 12, the document was not "distributed to all employees" of the company as a generic "antitrust compliance manual" like in *Sulfuric Acid I.*, 235 F.R.D. at 320, nor does it contain "hypotheticals" like in *Sulfuric Acid II.*, 432 F. Supp. 2d at 796.  By contrast, GMG_PL_000729 constitutes specific legal instructions provided to certain Raycom corporate and sales employees, precisely because the subject matter of the legal advice directly concerned them and they were imminently "in a position to act" pursuant to that advice.  *Valassis Commc'ns*, 2018 WL 4489285, at *3.  As such, the document is privileged.

**Second**, Plaintiffs assert that "[t]he fact that the document was produced from Raycom's 'Corporate' custodial files suggest[s] that it was intended for broad use and dissemination."  Mot. at 4.  In reaching this flawed conclusion, Plaintiffs misconstrue Raycom's "Corporate" custodian metadata label, which merely indicates the document in question was collected from Raycom's corporate files (here, its corporate legal department), as opposed to the files of Raycom's 58 named custodians.  It should not surprise Plaintiffs that a document with legal advice prepared by Raycom's senior **corporate** legal officer originates from Raycom's "Corporate" records.  Indeed, individual Raycom stations did not have their own in-house lawyers; all in-house legal advice originated from its corporate legal department.  And yet, without any case law support, Plaintiffs invite this Court to upend longstanding privilege doctrine by holding that any document, by virtue of its corporate origin, "suggests" that the company has disclaimed its otherwise valid assertion of privilege.  Mot. at 4.  Plaintiffs' radical proposition should be rejected.

***Third***, Plaintiffs posit that Raycom waived privilege over GMG_PL_000729 because "the same or similar document is listed on TEGNA's privilege log." Mot. at 4 (emphasis omitted). But Plaintiffs' motion conveniently neglects to furnish crucial context for the Court that easily disposes of Plaintiffs' argument: The related document on TEGNA's privilege log originates from a specific employee of KWES—a local broadcast station in the Odessa/Midland DMA, which ***Raycom previously owned and operated and, in late 2018, sold to TEGNA***.[1]

It is well-established that "the authority to assert or waive the attorney-client privilege transferred to [the broadcaster]" that "purchased [the subsidiary station's] operations" and "continue[d] to operate [KWES]." *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 406 (N.D. Ill. 2007); *Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 689 F. Supp. 841, 841 (N.D. Ill. 1988) ("[A]cquiring corporation control[s] subsidiary's privilege with respect to attorney-client communications occurring prior to and relating to sale of subsidiary."). As is apparent from Raycom and TEGNA's document productions, TEGNA custodian Andy Fagen was a ***Raycom*** sales employee at KWES at the time he received the confidential legal advice from Raycom's counsel in early 2018. Upon Raycom's sale of KWES in late 2018, Mr. Fagen remained at KWES and became a TEGNA sales employee. Accordingly, TEGNA assumed ownership over all the KWES station's privileged documents, including GMG_PL_000729. Plaintiffs concede that TEGNA has asserted attorney-client privilege over the inherited document, Mot. at 4, thereby reaffirming its privileged status.

C. Scripps

---

[1] *See* Press Release: TEGNA to Acquire the Leading Television Stations WTOL in Toledo, OH, and KWES in Odessa-Midland, TX, TEGNA Inc. (August 20, 2018), https://www.tegna.com/tegna-to-acquire-the-leading-television-stations-wtol-in-toledo-oh-and-kwes-in-odessa-midland-tx/

Plaintiffs complain about three categories of Scripps documents: (1) emails with the subject "Please read and share: Antitrust policy," (2) the two "antitrust presentations" ("Anti Trust 6-7-11.ppt" and "GMS Presentation Dallas 11-4-15(v3).pptx") and (3) "Manager in the Law Training" presentations. Mot. at 5-6. These documents fall squarely within the attorney-client privilege.

The first two categories of documents—the "Please read and share: Antitrust policy" emails and the two "antitrust presentations"[2]—are not, as Plaintiffs argue, Scripps' antitrust policy, which *Scripps already produced* (at SCR-000886445-52). As Scripps has explained to Plaintiffs, the documents are privileged communications conveying legal advice rendered or given by Scripps' in-house counsel, Dave Giles *about* that policy or *about* regulatory compliance to help Scripps employees comply with the antitrust policy and applicable regulations. *See* Rankie Decl. ¶ 35, Ex. 31 at 10 and n.30; *id.* at ¶¶ 37-38, Exs. 32, 33, 34 (Privilege Log Description column). The same is true for the third category of documents, *i.e.*, the "Manager in the Law Training" presentations (and emails transmitting same), that Plaintiffs incorrectly claim are "generalized corporate compliance materials that serve as basic reference guides for employees." Mot. at 6. As Scripps explained, "[t]hese are not final policies or manuals but rather they are: a communication reflecting legal advice regarding ethics training; and a presentation reflecting that legal advice" prepared by Scripps' in-house counsel and given to employees who needed such legal advice. Rankie Decl. ¶ 35, Ex. 31 at 10; *id.* ¶ 40, Ex. 37 (Privilege Log Description column); Mot. at 6 (recognizing the "Manager and the Law Training" presentations were likely mandatory for Scripps' managers and leadership). These confidential communications and presentations were "primarily" sent to provide legal advice to Scripps employees who needed that legal advice (*e.g.* Scripps employees, managers, and station sales teams), and the attorney client privilege plainly

---

[2] *See* Rankie Decl. ¶ 37, Ex. 32; *id.* ¶ 38, Exs. 33, 33A, 33B, 33C, 33D, and 33E; *id.* ¶ 39, Ex. 34.

applies. *See Motorola Sols., Inc. v. Hytera Comm'ns Corp. Ltd.*, 2021 WL 5083758, at *4 (N.D. Ill. Nov. 2, 2021) ("[t]he central inquiry is not who possessed a communication, but whether it primarily requests or gives legal advice").[3]

All three categories of emails and presentations were distributed to Scripps employees *only*—not to outside third parties—a critical fact that Plaintiffs do not dispute. Mot. at 13.[4] Rather, Plaintiffs seek production of these documents because they were "broadly distributed" to Scripps employees. *Id.* But "[t]here is no rule of law … that puts a numerical upper limit on the number of corporate employees who can be within the sphere of privilege." *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007) (citing *Upjohn*, 449 U.S. at 394). "It is not implausible to believe that employees might receive legal advice from in-house counsel and disseminate it among themselves." *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *4 (N.D. Ill. July 14, 2020). This is especially true where, as here, (1) station VPs/general managers received legal advice from Dave Giles that Scripps intended Scripps' Directors of Sales to share with their sales teams[5] (document categories one and two); and (2) directors/managers of human resources disseminated in-house counsel's legal advice regarding ethics and employment discrimination to appropriate managers or leadership members (document

---

[3] *See In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI(EMC), 2006 WL1699536, at *4 (N.D. Cal. June 16, 2006) ("[t]he attorney-client privilege protects documents which 'involve . . . self-initiated attorney communications intended to keep the client posted on legal developments and implications'").

[4] *See also* Rankie Decl. ¶ 35, Ex. 31 at 9 ("each of the distribution lists referenced in the Log contained only Scripps employee email addresses" and "the titles of the distribution lists indicate which group of employees was included in that particular list (*see, e.g.*, broadcastgeneralmanagers@scripps.com, kshbSales@kshb.com, wcpoleadershipteam@wcpo.com)"). As their names indicate, these email lists included Broadcast General Managers at Scripps, Sales Personnel at Scripps' station KSHB, and the Scripps leadership team at Scripps station WCPO and were internal to Scripps.

[5] *See, e.g.*, Rankie Decl. ¶ 38, Ex. 33B (email from Nick Nicholson, VP/general manager at WFTS to Teresa Morgan, director of sales at WFTS, instructing Teresa Morgan to "make sure all of our sale managers and [account executives] understand our [antitrust] policy" by conveying Dave Giles' legal advice regarding the antitrust policy); *id.* ¶ 38, Ex. 33D (same, but an email from Adam F. Chase, VP/general manager of KERO-23 ABC, to Tim Harper, director of sales at KERO-23 ABC).

category three).[6] "The idea that [non-lawyer employees] may not communicate the legal advice to each other by email without exposing the advice to civil discovery is hardly in furtherance of the corporation's ability to have full and frank consultation with counsel." *Washtenaw*, 2020 WL 3977944, at *4. Despite Plaintiffs' unsupported—and incorrect—claim that these documents "appear to present general antitrust and other regulatory guidance," it is abundantly clear from the face of the redacted emails (Rankie Decl. ¶ 38, Exs. 33A-33E) and Scripps' Supplemental Privilege Log descriptions (*id.* ¶¶ 37-38, 40, Exs. 32, 33, 37) that non-lawyer Scripps employees were conveying Dave Giles' and/or Danyelle Wright's legal advice regarding compliance with Scripps' antitrust policy, regulatory compliance, and/or ethics and employment discrimination. These documents are privileged, and Plaintiffs' Motion must be denied. *See supra*, Section I; *Washtenaw*, 2020 WL 3977944, at *4, *6 (declining to review *in camera* emails exchanged among non-lawyer employees where "log descriptions at issue here adequately indicate that the communications concern 'legal' matters"); *Id.* at *5 ("The Court does not accept that the allegedly 'wide' distribution of these emails warrants *in camera* review, where there is no indication that they were shared outside the company"); *Jones v. Nat'l Council of Young Mens' Christian Ass'ns of the U.S.*, No. 09 C 6437, 2011 WL 1740122, at *1 (N.D. Ill. May 3, 2011) (denying motion to compel presentation prepared by counsel and distributed to 27 board of directors members where presentation summarized a study conducted for purposes of rendering legal advice and included counsel's mental impressions).

### D. TEGNA

---

[6] *See, e.g.*, Rankie Decl. ¶ 40, Ex. 37 (email from Katherine Rawe, director of HR at WCPO, to WCPO's leadership team discussing and also disseminating Dave Giles and Danyelle Wright's legal advice regarding ethics, as given in a confidential presentation prepared by Dave Giles and Danyelle Wright).

TEGNA has already produced to Plaintiffs its non-privileged ethics and antitrust guidelines, as Plaintiffs acknowledge and TEGNA has explained to Plaintiffs. Mot. at 7, Mot., Ex. 48 at 2. Plaintiffs' Motion does not seek those materials, but rather seeks internal, privileged TEGNA communications related to TEGNA's antitrust compliance. For the following reasons, Plaintiffs fail to demonstrate in any way that those TEGNA materials are not privileged and thus provide no grounds for this Court to order TEGNA to produce those materials to Plaintiffs.

First, Plaintiffs seek production of an email and attached antitrust-related talking points, Doc. Nos. 444, 445, sent by TEGNA's then general counsel, Todd Mayman, to TEGNA's Executive Vice President and Chief Operating Officer, Lynn Beall. Mot. at 7. These communications are classic attorney-client communications protected by privilege, and there is no dispute that these two documents were shared only between Mr. Mayman and Ms. Beall. Mot. at 7. Plaintiffs argue, however, that the antitrust talking points were "widely distributed" at TEGNA because Ms. Beall allegedly relied on that material during a call with TEGNA station General Managers. Mot. at 6-7, 13-14. But Ms. Beall's reliance on those attorney-provided talking points in communication with General Managers does not mean the earlier Beall-Mayman email communication was widely distributed. Even if Ms. Beall were conveying antitrust guidance from counsel to others within TEGNA, that communication remains privileged. *See Johnson*, 2015 WL 12834771, at *2 ("[c]onfidential communications by non-lawyers ... for the purpose of assisting the lawyers to provide legal advice are also protected by the attorney-client privilege."). Plaintiffs themselves acknowledge that Ms. Beall's discussion with station General Managers concerned a specific aspect of TEGNA's business, Mot. at 6-7; Mot., Ex. 50, and not general guidance or hypotheticals. *See Brand Name Prescription Drugs*, 1996 WL 5180, at *2 (presentation applying antitrust laws to "specific aspect" of business was privileged).

14

Second, Plaintiffs seek to compel Doc Nos. 483 and 490, Mot. at 7-8, which TEGNA's privilege log properly describes as privileged emails sent by or at the request of counsel, Mot., Ex. 53. Plaintiffs' assertion that the communications are non-privileged "antitrust training-related communications" has no basis in law. Mot. at 14. As explained above, documents related to antitrust policies and compliance are not per se precluded from privilege. *See supra*, at I. These communications from counsel to a small number of TEGNA executives reflect legal advice regarding specific aspects of TEGNA's business and are therefore privileged. *Brand Name Prescription Drugs*, 1996 WL 5180, at *2; *Blue Cross Blue Shield*, 2017 WL 9807442, at *6.

Third, Plaintiffs challenge Doc Nos. 373 and 374 because "neither the sender nor the recipients of the document are attorneys." Mot. at 8. But "[d]irect lawyer involvement is not required for the privilege to attach," *Crabtree*, 2017 WL 4740662, at *2, and TEGNA's privilege log clearly identifies the attorneys with a relationship to the communications for the purposes of attorney-client privilege and that the communication was sent by or at the request of counsel. Mot., Ex. 57. *See also Johnson*, 2015 WL 12834771, at *2 ("[c]onfidential communications by non-lawyers ... for the purpose of assisting the lawyers to provide legal advice are also protected by the attorney-client privilege."). TEGNA's employees' communications sent at the request of counsel and reflecting legal advice are properly protected by the attorney-client privilege.

## CONCLUSION

Defendants respectfully request that this Court deny Plaintiffs' Motion. Plaintiffs provide no basis to challenge Defendants' privilege designations or compel production. To the extent the Court believes an independent examination of the disputed documents will aid the Court in resolving this Motion, Defendants will produce the documents to the Court for *in camera* review.

Dated:  August 24, 2022

By:  */s/ Ross B. Bricker*

**JENNER & BLOCK LLP**
Ross B. Bricker (Ill. Bar No. 3126882)
John F. Ward, Jr. (Ill. Bar No. 6208004)
Andrew F. Merrick (Ill. Bar No. 6290213)
Shaun M. Van Horn (Ill. Bar No. 6297822)
353 N. Clark Street
Chicago, IL 60654-5474
(312) 222-9350
rbricker@jenner.com
jward@jenner.com
amerrick@jenner.com
svanhorn@jenner.com

*Counsel for TEGNA Inc.*

*/s/ Gregory J. Commins, Jr.*
Gregory J. Commins, Jr. (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, DC 20036
Telephone: (202) 861-1536
Facsimile: (202) 861-1783
gcommins@bakerlaw.com

Bridget S. McCabe (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone: (310) 820-8800
bmccabe@bakerlaw.com

John M. Touhy (NDIL 3128400)
**BAKER & HOSTETLER LLP**
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6200 phone
(312) 416-6201 facsimile
jtouhy@bakerlaw.com

*Counsel for Defendant The E.W. Scripps Company*

*/s/ Eliot A. Adelson*
**MORRISON & FOERSTER LLP**
Eliot Adelson (admitted pro hac vice)
Bonnie Lau (admitted pro hac vice)
Margaret A. Webb (admitted pro hac vice)
425 Market Street
San Francisco, CA 94105
(415) 268-7000
eadelson@mofo.com
blau@mofo.com
mwebb@mofo.com

David D. Cross (admitted pro hac vice)
Mary G. Kaiser (admitted pro hac vice)
2100 L Street NW
Washington, D.C. 20037
(202) 887-1500
dcross@mofo.com
mkaiser@mofo.com

**MOLOLAMKEN LLP**
Gerald P. Meyer
300 N. LaSalle St.
Chicago, IL 60654
(312) 450-6700
gmeyer@mololamken.com

*Counsel for Defendants Dreamcatcher*
*Broadcasting LLC, Nexstar Media Group, Inc.,*
*Tribune Broadcasting Company, LLC, and*
*Tribune Media Group, Inc.*

*/s/ David E. Mills*

**COOLEY LLP**
David E. Mills (*pro hac vice*)
(dmills@cooley.com)
Deepti Bansal (*pro hac vice*)
(dbansal@cooley.com)
J.Parker Erkmann (*pro hac vice*)
(perkmann@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700

Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899

Beatriz Mejia (*pro hac vice*)
(mejiab@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel.: (415) 693-2000
Fax: (415) 693-2222

Mazda K. Antia (*pro hac vice*)
(mantia@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Tel.: (858) 550-6000
Fax: (858) 550-6420

Alexander G. Galicki (*pro hac vice*)
(agalicki@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel.: (310) 883-6400
Fax: (310) 883-6500

Matthew L. Kutcher (SBN: 6275320)
(mkutcher@cooley.com)
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel.: (312) 881-6500
Fax: (312) 881-6598

*Counsel for Defendant Gray Media Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

*/s/ John F. Ward*
John F. Ward