IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document relates to all actions.* | Master Docket No. 18 C 06785<br><br>MDL No. 2867<br><br>Honorable Virginia M. Kendall<br><br>***FILED UNDER SEAL***<br><br>***PUBLIC REDACTED VERSION*** |

**PLAINTIFFS' STATUS REPORT**

Plaintiffs respectfully submit this Status Report in advance of the Status Conference set for December 13, 2022. This report also corrects several factual statements or characterizations set forth in Defendants' Status Report (ECF No. 865).

## I. PROPOSED HEARING AGENDA

1. Joint Proposal Regarding Special Matter Candidates (ECF No. 861)
2. Status of Discovery
3. Discovery Schedule

## II. APPOINTMENT OF SPECIAL MASTER TO ADDRESS PRIVILEGE MOTIONS

Pursuant to the Court's November 3, 2022 Minute Entry (ECF No. 850), the Parties proposed candidates to serve as Special Master to review the disputed materials. ECF No. 861. The Parties could not reach consensus on any candidate and therefore Plaintiffs and Defendants each proposed two candidates. *Id*. Each candidate proposed has cleared conflicts and has confirmed that they have availability to serve the Court as a Special Master. *Id*.

## III. STATUS OF DISCOVERY

### A. Document Productions

Defendants' Status Report left out many salient facts concerning the progress of discovery in this case, the most important of which is that Defendants are *still* producing documents to Plaintiffs, even as depositions have begun. As set forth below, Plaintiffs continue to await document productions *from Defendants*. In addition, Plaintiffs have uncovered systemic production deficiencies, including potential spoliation issues, through the course of document review, deposition preparation, and information gathered from early depositions. Plaintiffs' diligence has resulted in large document productions (that should have been made nearly a year ago), and Plaintiffs reasonably anticipate additional, substantial document productions.

1

### 1. *TEGNA Produced 200,000 Pages of Documents Less Than Two Weeks Ago and Anticipates Yet Another Production*

In advance of scheduled depositions, Plaintiffs discovered deficiencies in certain custodial productions from TEGNA and made TEGNA aware of those deficiencies in early October. On December 1, 2022, TEGNA produced nearly ***200,000 pages*** of additional documents (roughly 80 boxes of new documents) to Plaintiffs. TEGNA also stated at that time that it anticipated producing additional documents, which has not yet occurred. Notably, TEGNA anticipates supplementing its privilege log on or before December 22, 2022, to include documents withheld from its most recent productions, which Plaintiffs will thereafter have to review and, if necessary, submit any concerns to the Special Master.

### 2. *Griffin Has Failed to Produce Relevant Documents, Requiring the Postponement of Scheduled Depositions*

Plaintiffs discovered deficiencies in certain of Griffin's document productions and made Griffin aware of those deficiencies. This resulted in the production of nearly ***40,000 pages*** of additional documents since the last status conference (approximately 16 boxes of new documents) and the postponement of certain depositions. Moreover, Griffin informed Plaintiffs, as recently as December 2, 2022 that it has identified other sources of potentially responsive information and will undertake further review to determine what should be produced to Plaintiffs. This is in addition to Griffin's continued search for responsive documents from the files of Mr. Lex Sehl, whose emails (according to Griffin) have been permanently deleted. Plaintiffs continue to investigate this potential spoliation issue and reserve all rights.

### 3. *Scripps May Have Failed to Preserve Relevant Documents*

In preparing for depositions, Plaintiffs uncovered information that they believe indicates that Scripps may have failed to preserve documents relevant for certain document custodians in

this case. Plaintiffs requested further information from Scripps on November 7, 2022, which Scripps initially declined to provide. Plaintiffs reiterated their request on November 15, 2022, citing caselaw. Scripps has not yet provided the requested information, despite promising to do so by the Status Conference. Plaintiffs continue to investigate this potential spoliation issue and reserve all rights.

### 4. To Date, Raycom Has Not Complied with the Court's Order to Produce Documents from CEO LaPlatney's Files

Plaintiffs continue to await production of custodial documents from Raycom's CEO, Pat LaPlatney, as ordered by the Court. ECF No. 844. Raycom initially indicated that a review of Mr. LaPlatney's documents would consist of approximately 96,000 documents, ECF No. 692, and told Plaintiffs that it expects to substantially complete production by December 16, 2022.

However, Raycom's recent representations regarding the anticipated size of this production causes Plaintiffs concern, and Plaintiffs have asked Raycom to (1) confirm that they ran all of Plaintiffs' search terms (which were run against all other Raycom custodians), and (2) provide hit counts for those terms (*e.g.*, how many times those search terms showed up in the documents). Although Raycom confirmed that it used all of Plaintiffs' search terms, it has refused to provide the hit counts of those search terms. It is Plaintiffs' position that Raycom's refusal to provide this information is contrary to its obligations under the ESI Protocol, *see* ECF No. 442, ESI Protocol Sec. 4.1.3 and 4.1.4, and numerous other Defendants have provided this information to Plaintiffs in this case.

The timing of the production of Mr. LaPlatney's documents obviously impacts the timing of his deposition, as well as the deposition of other executives. This is the case because Plaintiffs need to review Mr. LaPlatney's records in order to determine the nature and extent of his communications with other Defendants' executives.

### 5. *To Date, Sinclair Has Not Produced Documents from Faber's Files*

Plaintiffs reached agreement with Sinclair that resolves their Discovery Motion No. 8. ECF No. 864. Pursuant to that agreement, Sinclair will produce responsive and non-privileged documents from Mr. Faber's files that hit on a narrower set of search terms than sought by Plaintiffs through their Motion. *Id*. The parties have further agreed that Sinclair will produce a supplemental privilege log for any documents that Sinclair withholds as privileged. *Id*. Sinclair has not provided a date by which it intends to complete production or provide a privilege log.

### B. Ongoing Meet and Confers

#### 1. *Defendants' Initial Refusal to Produce Cell Phone Records*

During the initial meet and confers regarding the production of documents, Defendants refused to produce information from employees' cell phones, such as text messages, iMessages, and emails from personal email accounts, representing that no relevant documents existed on the cell phones and/or that they did not have possession, custody and control over these sources of documents.

In preparing for and taking depositions, Plaintiffs have uncovered significant evidence that flatly contradicts Defendants' representations regarding these sources of information. As soon as this evidence came to light, Plaintiffs began meeting and conferring with some of the Defendants regarding the productions of certain phone records. Plaintiffs anticipate raising this issue with other Defendants in the near future, as appropriate. Although these discussions are in their early stages, motion practice may be necessary to resolve this matter.

#### 2. *Other Ongoing Meet and Confers*

While Plaintiffs are continuing to work diligently to resolve a number of additional issues without the need for Court intervention, motion practice may be necessary with respect to the

4

following issues: (1) the responses of Raycom, Griffin, TEGNA (and perhaps the responses of other Defendants) to Plaintiffs' Interrogatory Nos. 23-25; (2) Raycom's response to Plaintiffs' Fifth Set of Interrogatories; and (3) TEGNA's (and perhaps other Defendants') refusal to produce certain customer information.

## IV. DEPOSITION PROTOCOL

As the Court is aware, the Parties submitted a Stipulation and [Proposed] Order Concerning Depositions ("Deposition Protocol") on July 15, 2022. ECF No. 647. Although the Parties were largely able to reach an agreement on the substance of the Deposition Protocol, they were unable to resolve four issues. *Id.* The Court addressed several of these issues at the August 29, 2002 and October 21, 2022 hearings and requested the parties to continue meeting and conferring as to others. The Parties have been working diligently and recently reached agreement on all issues except those related to the 30(b)(6) depositions. The parties further agreed to delete Section I.C.1 from the Deposition Protocol and address the issues related to 30(b)(b) depositions separately.

With respect to the 30(b)(6) depositions disputes, the Court had previously requested that the parties provide "the number of 30(b)(6) witnesses they will be calling in order for the Court to rule on the Deposition Protocol dispute." *See* ECF No. 718. On October 10, 2022, Plaintiffs filed a Status Report Regarding Deposition Protocol detailing the Parties' exchange of 30(b)(6) deposition topics and negotiations thereon. *See* ECF No. 830. Since that filing, the parties have continued to meet and confer but have been unable to reach an agreement.

Plaintiffs continue to estimate that fewer than ten witnesses will be designated across the four Plaintiffs for non-disputed deposition topics. A number of Defendants' proposed topics seek impermissible downstream discovery and discovery related to advertising markets other than broadcast television advertising, both of which are the subject of Defendants' Motion to Compel

5

(ECF No. 652). It is Plaintiffs' position that further discussion on those topics should be deferred until after the Court's ruling on that Motion.

With respect to Plaintiffs' proposed topics Defendants objected to the scope of every topic. Although Plaintiffs believe that most, if not all, of Defendants' objections are unwarranted, in light of the breadth of Defendants objections and because Rule 30(b)(1) depositions have already commenced, Plaintiffs proposed deferring further discussions until after more 30(b)(1) depositions have taken place in the hopes that topics can be narrowed or withdrawn if fulfilled by the 30(b)(1) depositions. Defendants have taken the position they will not put up anyone as a fact witness who "may" eventually be a Rule 30(b)(6) witness.

**V.      DISCOVERY SCHEDULE**

At the October 21, 2022 hearing, the Court granted an extension of the discovery schedule until April 15, 2023, recognizing that resolution of the privilege issues needed to precede depositions. *See* Oct. 20, 2022 Hr'g Tr. at 16:20-21; 8:4-9:6 (ECF No. 853). That ruling was predicated on Magistrate Judge Cox being able to undertake resolution of the privilege issues. *See id*.

Without quick resolution of the privilege issues, as well as the numerous outstanding discovery issues outlined above, Plaintiffs believe a further extension of the discovery schedule will likely be warranted. This is particularly so because Plaintiffs are *not* in a position to proceed at full speed with depositions while some Defendants continue to wrongly withhold the most basic of documents, like antitrust policies. *See* ECF Nos. 688, 723. Moreover, Defendants have continued to object to Plaintiffs' requests to hold depositions open if privileged documents are later de-designated. This puts Plaintiffs at risk to prematurely take depositions without a full record, which—particularly in a conspiracy case—could impact Plaintiffs' theory of liability.

Thus, as this Court rightly pointed out, the privilege motions should be resolved before depositions take place. *See* Oct. 20, 2022 Hr'g Tr. at 16:10-21 (ECF No. 853).[1]

## VI. SETTLEMENT

As the Court is aware, Plaintiffs have reached agreements in principle to settle with CBS, Fox, and Cox. The parties are continuing to negotiate the details of certain written agreements and Plaintiffs intend to file a single motion for preliminary approval of the settlements as soon as those agreements are finalized. Defendants have cited no authority in support of their request for the Court to set a deadline for Plaintiffs to seek preliminary approval and Plaintiffs are aware of none.

## VII. DEFENDANTS' MOTION TO COMPEL

Notwithstanding the Court's instruction at the October 21, 2022 hearing that it did not want any more briefing on Defendants' Motion to Compel (ECF No. 652), *see* ECF No. 853 (Oct. 20, 2022 Hr'g Tr. at 45:17-24), Defendants submitted additional argument on this motion in their Status Report. Not only did Defendants disregard this Court's instruction, but their Status Report also makes numerous mischaracterizations that require correction.

Contrary to Defendants' assertions, there is *no* new evidence supporting Defendants' request for downstream discovery from Plaintiffs. While Defendants assert that Carat USA ("Carat") is purportedly ███████████████████████████████████████████ ███████████████████████████████████, Defendants' statement is notably devoid of citation and mischaracterizes the record.[2] As Carat's counsel made clear in correspondence with

---

[1] In light of this, Defendants' attempts to blame Plaintiffs for the pace of discovery are wholly inappropriate. As noted above, Plaintiffs had to postpone depositions in order for Defendants to produce new documents.

[2] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ their argument is wholly unsupported for the reasons set forth in Plaintiffs' Opposition. *See* ECF No. 686 at n.11.

7

Defendants, Carat ████████████████████████ Ex. 1 (CARAT000006-36 at 6). Moreover, Carat specifically informed Defendants in its responses and objections that it ████ ████████████████████████████████████ *See* Defs.' Ex. A at Resp. to Req. No. 6 ████████████████████████,[3] which supports Plaintiffs' argument and belies any notion that Carat is simply acting as a purchasing agent, as Defendants incorrectly assert. Specifically, and as set forth in Plaintiffs' Opposition to Defendants' Motion to Compel, the mere fact of a general agency relationship is not sufficient to invoke the *Illinois Brick* control exception, and where a purchaser provides services to its downstream customers beyond simply purchasing a particular item or service dictated by that customer at a specified price, the *Illinois Brick* control exception does not apply. *See* ECF No. 686 at n. 12; *see also, e.g.*, *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 852–54 (3d Cir. 1996); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2016 WL 1391304, at *2 (E.D.N.Y. Apr. 6, 2016); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 505–506 (S.D.N.Y. 1996).

In short, and contrary to Defendants' mischaracterizations, Carat's responses and objections to Defendants' subpoena support Plaintiffs' position and warrant denial of Defendants' Motion to Compel.

VIII. **THE EVIDENTIARY RECORD TO DATE**

Under the guise of a Status Report, Defendants paint an incomplete, incorrect, and one-sided picture of the evidence developed in this case to date. Plaintiffs do not believe it is

---

[3] ████ ████████████████████████████████████████████████████████████████████ ████ "We identify the most appropriate marketing and media channels, allocate investment and recommend how to deliver connected experiences across media, technology, content and commerce . . . ." Ex. 2 (website screenshot).

appropriate to engage with Defendants on the evidence at this point in the case, other than to note that the evidentiary record developed in the very same depositions characterized by Defendants includes ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████ should not occur in a competitive market.

Dated: December 12, 2022

Respectfully submitted,

/s/ Robert J. Wozniak
Robert J. Wozniak
**FREED KANNER LONDON
& MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
rwozniak@fklmlaw.com

*Liaison Counsel*

Megan E. Jones
**HAUSFELD LLP**
600 Montgomery St. #3200
San Francisco, CA 94111
(415) 633-1908
(415) 358-4980
mjones@hausfeld.com

Michael D. Hausfeld
Hilary K. Scherrer
Nathaniel C. Giddings (IL Bar No. 6306015)
Farhad Mirzadeh
Jane Shin
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
hscherrer@hausfeld.com
ngiddings@hausfeld.com
fmirzadeh@hausfeld.com
jshin@hausfeld.com

*Lead Counsel*

9

| | |
|---|---|
| Meegan Hollywood<br>**ROBINS KAPLAN LLP**<br>1325 Avenue of the Americas, Suite 2600<br>New York, NY 10019<br>(212) 980-740<br>mhollywood@robinskaplan.com | Kimberly A. Justice<br>**FREED KANNER LONDON**<br> **& MILLEN LLC**<br>923 Fayette Street<br>Conshohocken, PA 19428<br>(610) 234-6487<br>kjustice@fklmlaw.com |

*Plaintiffs' Steering Committee*