**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document applies to all actions.* | Master Docket No. 18-06785<br><br>MDL No. 2867<br><br>Hon. Virginia M. Kendall |

**DEFENDANT SINCLAIR BROADCAST GROUP, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SINCLAIR TO PRODUCE DOCUMENTS FROM BARRY FABER'S PRODUCTION WITHHELD AS PRIVILEGED**

**TABLE OF CONTENTS**

**Page(s)**

I. PLAINTIFFS' CHALLENGES TO THE FABER PRIVILEGE LOG ARE MERITLESS....1

**A.** The Documents on the Faber Privilege Log Do Not Implicate Mr. Faber's Business Role....1

**B.** Sinclair Has Not Waived Privilege Over All Documents Related to the OxMyx Initiative....2

**C.** Sinclair Properly Withheld Privileged Documents Shared With Third Parties Necessary to Enable the Rendering of Legal Advice or Covered by Common Interest Privilege....5

**D.** Sinclair's Privilege Descriptions are Sufficient to Evaluate the Claim of Privilege....6

**E.** Sinclair's Privilege Log Identifies Authors or Otherwise Provides Sufficient Information to Evaluate its Claim of Privilege....7

**F.** Sinclair Properly Withheld or Redacted Privileged Communications to Internal Distribution Lists....9

**G.** Plaintiffs' Speculation that Sinclair Withheld Documents Purely Because They Were Sent or Received by Counsel is Baseless....9

II. EVEN IF THE COURT FINDS THAT THERE ARE DEFICIENCIES IN THE FABER PRIVILEGE LOG, PLAINTIFFS ARE NOT ENTITLED TO THE EXRAORDINARY REMEDY OF FORCED WAIVER....10

CONCLUSION....12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys. v. Andrx Pharms., Inc.*, No. 05 C 1490, 2006 WL 2092377 (N.D. Ill. July 25, 2006) ....4

*Am. Nat'l Bank & Trust Co. of Chicago Equitable Life Assurance Soc. of the U.S.*, 406 F.3d 867 (7th Cir. 2005) ....11

*Bacchi v. Massachusetts Mut. Life. Ins. Co.*, 110 F. Supp. 3d 270 (D. Mass. 2015)....8

*Graco Children's Prod., Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590 (N.D. Ill. June 14, 1995) ....4

*In re Grand Jury Proceedings*, 220 F.3d 568 (7th Cir. 2000) ....5

*Heriot v. Byrne*, 257 F.R.D. 645 (N.D. Ill. 2009) ....5

*Hill v. City of Chi.*, 2015 WL 12844948 (N.D. Ill. May 28, 2015) ....11

*Jokich v. Rush Univ. Med. Ctr.*, No. 18 C 7885, 2020 WL 1548955 (N.D. Ill. Apr. 1, 2020) ....4

*McCullough v. Hanley*, No. 17 CV 50116, 2019 WL 3776962 (N.D. Ill. Aug. 12, 2019) ....4

*Muro v. Target Corp.*, 243 F.R.D. 301 (N.D. Ill. 2007) ....11

*Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007) ....9

*Ocean Atl. Dev. Corp. v. Willow Tree Farm, LLC*, No. 01 C 5014, 2002 WL 1968581 (N.D. Ill. Aug. 23, 2002)....9

*Outzen v. Kapsch Trafficcom USA, Inc.*, 2022 WL 267596 (S.D. Ind. Jan. 27, 2022) ....11

*Stafford Trading Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 3007) ....5

*In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407 (N.D. Ill. 2006)....6

*Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889 (N.D. Ill. 2018)....4

*United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989)....6

*Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4 LLC*, 334 F.R.D. 149 (N.D. Ill. 2020) .....11

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) .....4

*Washtenaw Cty. Employees' Retirement Sys. v. Walgreen Co.*, 2020 WL 3977944 (N.D. Ill. July 14, 2020) .....9

**Statutes and Rules**

Fed. R. Evid. 502 .....4

Defendant Sinclair Broadcast Group, Inc. ("Sinclair") submits this brief in opposition to Plaintiffs' Motion to Compel Sinclair to Produce Documents From Barry Faber's Production Withheld As Privileged (the "Motion").

In their Motion, Plaintiffs seek the forced waiver and production of nearly half of all privileged documents that Sinclair withheld or redacted from the files of its former General Counsel, Barry Faber, including communications between Mr. Faber, other in-house counsel at Sinclair, and outside counsel regarding purely legal matters such as then-pending Department of Justice investigations. Plaintiffs' objections to the sufficiency of the entries on Mr. Faber's privilege log (the "Faber Privilege Log") are based on unsupported speculation and a failure to engage with the detailed information provided in the log. Plaintiffs' challenges are baseless, and the Court should deny the Motion.

## ARGUMENT

### I. PLAINTIFFS' CHALLENGES TO THE FABER PRIVILEGE LOG ARE MERITLESS.

#### A. The Documents on the Faber Privilege Log Do Not Implicate Mr. Faber's Business Role.

At the outset, Plaintiffs argue that Sinclair's assertion of privilege over documents involving its former General Counsel is "inherently suspect" because Mr. Faber also had a role as Sinclair's Executive Vice President or Vice President of Distribution and Network Relations. (Mot. at 4-5.) There is, of course, nothing "suspect" about asserting privilege over the documents of a company's General Counsel. Moreover, none of the documents on the Faber Privilege Log relate to Mr. Faber's role in Distribution and Network Relations, which principally involved negotiation of retransmission rights agreements, because documents on those topics are not relevant to this matter or responsive to the parties' agreed set of search terms. As a result, Mr. Faber's "dual role" has nothing to do with the Faber Privilege Log.

Plaintiffs also complain that many of the documents on the Faber Privilege Log "appear to involve routine business matters," citing as examples documents requesting legal advice on potential merger issues and draft contractual term sheets. (*Id*. at 5.) But there is nothing surprising or unique about Sinclair's General Counsel providing legal advice on matters within the ordinary course of Sinclair's business – indeed, that is the job of in-house counsel. The examples that Plaintiffs cite demonstrate the point: legal advice is a critical aspect of merger and contract negotiations. Plaintiffs cite no case or rule establishing that legal advice regarding matters within the ordinary course of a company's business are not privileged – because no such rule exists.

**B. Sinclair Has Not Waived Privilege Over All Documents Related to the OxMyx Initiative.**

Plaintiffs' argument that the Court should find a subject matter waiver over all privileged documents discussing the OxMyx initiative (Mot. at 5-9 (Challenge A)) is baseless. The OxMyx initiative, which never came to fruition, was a proposal that broadcast groups with stations in different markets work together to offer large, national advertisers a product that none of them could offer alone: advertising on a group of stations with a national footprint. (*See, e.g.*, Giddings Decl. Ex. I at 7; Tabatabai Decl. Ex. 1 at 4.) Sinclair believed that OxMyx would allow participating broadcast television stations to compete more effectively against cable and other broadcast networks that could offer a broad, nationwide audience. (Tabatabai Decl. Ex. 1 at 4.) Sinclair took special care to ensure that it considered the antitrust implications of the OxMyx initiative and structured it to avoid any potential for antitrust violations. (*See generally id*.)

As part of those efforts, in September 2016, Sinclair asked its outside counsel to prepare a memorandum discussing potential antitrust issues with the OxMyx initiative (the "<u>OxMyx</u>

Memorandum"). Sinclair subsequently shared that memorandum – in final form only – with other broadcast groups. (*Id.*) Consistent with its disclosure of the OxMyx Memorandum to third parties, Sinclair has already produced that memorandum in this litigation.[1] (*See id.*)

In addition, in April 2016, Sinclair shared with Fox a draft set of "antitrust guidelines" prepared in connection with a proposed (but never consummated) joint venture that would have spun off Sinclair's "Audience Network" business into an independent entity jointly owned by Sinclair and advertising company Visible World (the "Joint Venture Guidelines"). (Giddings Decl. Ex. M.) In the cover email sharing the Joint Venture Guidelines, Sinclair indicated that it understood "the overall legal position" to be similar with respect to antitrust issues in the OxMyx context and that "as long as we follow the recommendations in the attached draft [ ] we will avoid anti-trust concerns."[2] (Giddings Decl. Ex. L.)

The fact that Sinclair shared the OxMyx Memorandum and the Joint Venture Guidelines with other broadcast groups waives privilege over those documents alone. It does not effect a subject matter waiver over *all* privileged documents regarding OxMyx.

As an initial matter, "waivers of the attorney-client privilege are to be narrowly construed." *Abbott Lab'ys. v. Andrx Pharms., Inc.*, No. 05 C 1490, 2006 WL 2092377, at *4 (N.D. Ill. July 25, 2006). In particular, "Courts in this District have emphasized that subject

---

1. Sinclair inadvertently withheld a copy of the OxMyx Memorandum from Mr. Faber's documents, which Plaintiffs challenge as "improperly withheld" "business compliance material[]." (Mot. at 10-11.) While the OxMyx Memorandum does not constitute "antitrust [or] business compliance materials . . . drafted to assist employees in complying with competition and other laws" (*id.*), because it was withheld in error, Sinclair will amend the Faber Privilege Log to remove it. That amendment resolves Plaintiffs' Challenge D.

2. Plaintiffs also point to the fact that Sinclair's outside counsel at Hughes Hubbard & Reed attended a November 2016 meeting between Sinclair and other broadcast groups to serve as an "Anti-Trust Observer." (Mot. at 8.) There is no indication that any legal advice was shared at that meeting.

matter waiver is reserved for *rare cases* in which a party attempts to use privileged information as both a sword and shield in litigation." *Jokich v. Rush Univ. Med. Ctr.*, No. 18 C 7885, 2020 WL 1548955, at *3 (N.D. Ill. Apr. 1, 2020) (emphasis added). In other words, "subject matter waiver is limited to situations in which a party *intentionally puts protected information into the litigation in a selective, misleading and unfair manner*." *McCullough v. Hanley*, No. 17 CV 50116, 2019 WL 3776962, at *11 (N.D. Ill. Aug. 12, 2019) (emphasis added) (quoting Fed. R. Evid. 502 Advisory Comm. Notes); *see also, e.g.*, *Graco Children's Prod., Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590, at *8-9 (N.D. Ill. June 14, 1995) (finding no subject matter waiver where a party's production of a privileged document was not for the purpose of gaining a "tactical advantage" in litigation). Where disclosure of a privileged document is made *outside* the context of litigation, "there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed." *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987).[3]

Here, there is no basis for a finding of subject matter waiver. Sinclair disclosed the Joint Venture Guidelines in April 2016 and the OxMyx Memorandum in September 2016 – *years* before either the Department of Justice ("DOJ") investigation into the exchange of pacing information or this follow-on litigation. As a result, Sinclair could not possibly have waived privilege over those documents for the purpose of gaining a tactical advantage in this litigation. Sinclair produced the Joint Venture Guidelines and the OxMyx Memorandum consistent with its earlier waiver of privilege over those documents. At the same time, it has consistently asserted

3. The sole case that Plaintiffs cite in support of their argument for subject matter waiver does not even concern subject matter waiver and stands only for the proposition that "[k]nowing disclosure [of a privileged document] almost invariably surrenders the privilege" as to that document. *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 896 (N.D. Ill. 2018).

privilege over other documents containing legal advice regarding the OxMyx initiative, has maintained those documents in confidence, and has not shared them with any third parties. Accordingly, subject matter waiver is inappropriate.

### C. Sinclair Properly Withheld Privileged Documents Shared With Third Parties Necessary to Enable the Rendering of Legal Advice or Covered by Common Interest Privilege.

Plaintiffs argue that Sinclair has waived privilege over 11 documents listed on the Faber Privilege Log that were purportedly shared with third parties. (Mot. at 11 (Challenge E).) Not so. For each of the challenged entries, Sinclair's assertion of privilege was proper, either because the third party who received the document was within the scope of attorney-client privilege or was a party with whom Sinclair shared a common interest privilege.

This Court has long recognized that attorney-client privilege "also can apply to third parties, including, in some circumstances, accountants" where "the third party's participation was required to enable the attorney to render legal advice." *Heriot v. Byrne*, 257 F.R.D. 645, 666-67 (N.D. Ill. 2009) (quoting *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000)). Indeed, "in today's market place, attorneys need to be able to have confidential communications with [accountants] . . . to render adequate legal advice." *Id.* at 667 (quoting *Stafford Trading Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *6 (N.D. Ill. Feb. 22, 3007)). Accordingly, Sinclair withheld a small number of documents reflecting communications between Mr. Faber and Sinclair's auditors at PricewaterhouseCoopers regarding DOJ's pacing investigation. The information in the Faber Privilege Log is sufficient to establish that these communications are privileged.

In addition, Sinclair withheld a small number of documents on the basis of common

interest privilege,[4] which applies when two parties "share a common interest about a legal matter" and, in furtherance of that interest, share privileged material between them. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 416 (N.D. Ill. 2006) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989)). The common interest privileged documents listed in the Faber Privilege Log were withheld pursuant to a written common interest agreement between Sinclair and Tribune that those companies entered into in connection with DOJ's review of their proposed merger. Plaintiffs have not offered any basis to treat those documents as non-privileged.

Finally, Plaintiffs cite MDLSBGTV-038344 as an example of a document subject to third-party waiver, noting that privileged advice was shared with Andy Whiteside, the President of Dielectric. (Mot. at 11.) Plaintiffs fail to mention, however, that Dielectric has long been a wholly owned subsidiary of Sinclair, and Mr. Whiteside was a Sinclair employee. *See, e.g.*, Sinclair Schedule 14A Proxy Statement at 8, 18.[5] There was, therefore, no third party involved in that communication.

### D. Sinclair's Privilege Descriptions are Sufficient to Evaluate the Claim of Privilege.

Plaintiffs challenge 105 documents on the Faber Privilege Log, claiming that the privilege descriptions are "vague." (Mot. at 12 (Challenge F).) They are not. Under the

---

4 MDLSBGTV-038616 is an internal document that was mistakenly coded for common interest privilege. It is covered only by the attorney-client privilege and was properly redacted. MDLSBGTV-038562 is an email between Sinclair's in-house and outside counsel. Though it invokes common interest in the subject line, it is only covered by attorney-client privilege. Sinclair withdraws its assertion of the common interest privilege over those documents, but maintains that both are covered by attorney-client privilege.

5. *Available at* https://www.sec.gov/Archives/edgar/data/912752/000104746914004163/a2219681zdef14a.htm.

Stipulation and Order Regarding the Production of Documents and Electronically Stored Information (ECF No. 442) (the "ESI Order"), Sinclair is obligated, in its privilege logs, to provide "a brief description of the nature and subject matter of the document *to be populated by email subject, document title, or document filename to the extent available*." ESI Order § 9.3.6 (emphasis added). There is no dispute that Sinclair has provided the email subject, document title, or document filename for each document where available and has therefore complied with its obligations under the ESI Order.

In fact, Sinclair went above and beyond those obligations and also provided a separate description of the subject matter of the communication, as well as indicated whether the communication reflected a request for legal advice, a provision of legal advice, or gathered information necessary for an attorney to render legal advice. That information is more than sufficient to allow Plaintiffs to assess Sinclair's claim of privilege.

Plaintiffs have not made any showing to the contrary. For example, Plaintiffs challenge as "vague" the descriptions of MDLSBGTV-038453, MDLSBGTV-038454, and MDLSBGTV-038455. Sinclair produced all three of those documents with redactions solely to one email from Sinclair's Chief Executive Officer to Mr. Faber and Mr. Faber's response, which – as described in the Faber Privilege Log – contains legal advice "regarding DOJ pacing investigation." Plaintiffs do not identify what is purportedly vague about that description or any of the others it challenges.

### E. Sinclair's Privilege Log Identifies Authors or Otherwise Provides Sufficient Information to Evaluate its Claim of Privilege.

Plaintiffs challenge two documents in four entries on the Faber Privilege Log that they claim cannot be privileged because the author column for those entries is either blank or contains the notation "Corp MIS [Corporate Management Information Systems]." (Mot. at 12-13

(Challenge G).)

As an initial matter, Sinclair has fully complied with its obligation under the ESI Order to provide author information. That Order requires privilege log entries to provide author information only "to the extent such information is available in metadata." ESI Order § 9.3. Sinclair has already provided the author information, if any, available in the metadata for all documents on the Faber Privilege Log.

In addition, a holistic review of the log entries provides sufficient information to evaluate Sinclair's claim of privilege. *See* *Bacchi v. Massachusetts Mut. Life. Ins. Co.*, 110 F. Supp. 3d 270, 273 (D. Mass. 2015) (privilege log that did not contain author, date, or recipient information on redacted documents was sufficient where holistic review of log entries provided information necessary to evaluate claim of privilege). Two of the entries Plaintiffs challenge, MDLSBGTV-038188 and MDLSBGTV-038192, are copies of a Word document titled "Visible World.Deal Points and Key Issues.docx," described as a "[d]raft chart reflecting legal advice . . . regarding OxMyx initiative." The document was attached to two emails sent by Sinclair's in-house counsel Janet McHugh to Mr. Faber. The other two entries Plaintiffs challenge, MDLSBGTV-038242 and MDLSBGTV-038249, are copies of a Word document titled "katz millennium master agreement AMENDMENT NO 3.doc," described as a "[d]raft agreement reflecting legal advice . . . regarding OxMyx initiative." That document was attached to two emails titled "OxMyx Investor Terms Draft" sent by Sinclair in-house counsel Alison Staley to Mr. Faber and two others within Sinclair. A holistic view of the information provided for both documents makes clear that they are drafts of documents relating to potential transactions that reflect advice from Sinclair's in-house legal department, and are therefore privileged.

### F. Sinclair Properly Withheld or Redacted Privileged Communications to Internal Distribution Lists

Plaintiffs claim that nine entries on the Faber Privilege Log are deficient because they reflect communications to email distribution lists rather than to individual email addresses. (Mot. at 13-14 (Challenge H).) As this Court recently held, however, emails to distribution lists maintain their privilege "where there is no indication that they were shared outside the company." *Washtenaw Cty. Employees' Retirement Sys. v. Walgreen Co.*, 2020 WL 3977944, at *5 (N.D. Ill. July 14, 2020). Here, the distribution list in question is clearly internal to Sinclair, and it is apparent from the description of the list (*i.e.*, "General Managers All Station General Managers") that the recipients of that distribution list are the General Managers of Sinclair's broadcast stations.

Plaintiffs cite *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007), in support of their contention that communications to distribution lists are per se non-privileged. *Muro* does not so hold.[6] In that case, the Court determined that the failure to list individual recipients in a distribution list was deficient because "there is no way for an opposing party to assess whether [the recipients] are within the sphere of corporate privilege." *Id.* That is not the case here. The distribution lists on the Faber Privilege Log, like the distribution lists in *Washtenaw County*, are clearly internal to the company and therefore within the "sphere" of corporate privilege.

### G. Plaintiffs' Speculation that Sinclair Withheld Documents Purely Because They Were Sent or Received by Counsel is Baseless.

Plaintiffs challenge 31 entries on the Faber Privilege Log based on speculation that the

6. Plaintiffs' citation to *Ocean Atl. Dev. Corp. v. Willow Tree Farm, LLC*, No. 01 C 5014, 2002 WL 1968581 (N.D. Ill. Aug. 23, 2002), is unavailing, as that case evaluated privilege claims under Illinois state law – not federal privilege law. *See id.* at *2 ("Because this is a diversity action, Illinois law, and not federal law, controls the Court's application of the attorney-client privilege in this case.").

attorneys who sent or received those documents were not "directly involved" with them, and 18 entries relating to email attachments based on speculation that Sinclair withheld those documents solely because they were sent or received by counsel. (Mot. at 10, 14 (Challenges C & I).) That is incorrect. Sinclair made an individual privilege determination based on the facts and circumstances of each document to determine whether it contained legal advice or a request for legal advice, and did not withhold documents solely on the basis that counsel was a sender or recipient. Indeed, Sinclair has produced thousands of non-privileged documents that include counsel as a sender or recipient.

Plaintiffs' examples do not suggest otherwise. Plaintiffs cite MDLSBGTV-038447 as a document purportedly withheld "based solely on the fact that [it was] sent or received by counsel." (*Id*. at 10.) That document is a term sheet related to DOJ's pacing investigation – in unsigned, draft form – that reflects Mr. Faber's input and legal advice. Another example, MDLSBGTV-038312, is a draft appendix prepared by Sinclair's outside counsel in response to written questions from DOJ. Sinclair properly withheld those documents as privileged.[7] Plaintiffs also cite, as purportedly "improperly withheld attachments," draft term sheets and charts related to a potential transaction that were exchanged between Mr. Faber and other in-house counsel at Sinclair and that reflect their comments and edits. (Mot. at 14 (citing MDLSBGTV-038182 and MDLSBGTV-038183).) Those documents are privileged.

## II. EVEN IF THE COURT FINDS THAT THERE ARE DEFICIENCIES IN THE FABER PRIVILEGE LOG, PLAINTIFFS ARE NOT ENTITLED TO THE EXRAORDINARY REMEDY OF FORCED WAIVER.

Plaintiffs' motion seeks the forced waiver and production of 130 documents on the

---

7. Upon further review, Sinclair will produce MDLSBGTV-038256-57 and its duplicates and near-duplicates, as well as MDLSBGTV-038313. The production of MDLSBGTV-038257 resolves Plaintiffs' "Challenge B" category. (*See* Mot. at 9.)

privilege log of Sinclair's General Counsel. (*See* Giddings Decl. Ex. A.) Even if there were any merit to Plaintiffs' privilege log challenges, they are not entitled to the extreme remedy they request.

The attorney-client privilege plays a "vital role . . . in the administration of justice," and the "severe sanction" of waiver should not be imposed lightly. *Am. Nat'l Bank & Trust Co. of Chicago Equitable Life Assurance Soc. of the U.S.*, 406 F.3d 867, 878-79 (7th Cir. 2005). Courts have repeatedly found that blanket waiver is not an appropriate remedy for an allegedly inadequate privilege log, even where the court agrees that the log is deficient. *See, e.g.*, *Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4 LLC*, 334 F.R.D. 149, 157 (N.D. Ill. 2020) ( "courts have been hesitant to find such sweeping waivers, however poorly a privilege log has been put together"); *Hill v. City of Chi.*, 2015 WL 12844948, at *2 (N.D. Ill. May 28, 2015) (declining to order a blanket waiver of privilege on the contested documents and instead ordering *in camera* review).

In the rare cases where courts have imposed waiver following a privilege log challenge, they have done so only *after* giving parties an opportunity to revise their privilege logs in accordance with court instructions. *See, e.g.*, *Muro v. Target Corp.*, 243 F.R.D. 301, 310 (N.D. Ill. 2007) (ordering production of documents on the basis that "the court has allowed Target *three* opportunities to provide factual bases for the support of its assertions of privilege, and it chose to rest on the bare description in its privilege log"); *Outzen v. Kapsch Trafficcom USA, Inc.*, 2022 WL 267596, at *3-4 (S.D. Ind. Jan. 27, 2022) (imposing waiver after the challenged party failed to comply with court's repeated directions to provide more detailed privilege log descriptions). Here, the circumstances do not support the remedy of forced waiver.

## CONCLUSION

For the foregoing reasons, Sinclair respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

Dated: March 31, 2023

*/s/ Gregory J. Scandaglia*_________________

William J. Kolasky (admitted *pro hac vice*)
Philip A. Giordano (admitted *pro hac vice*)
HUGHES HUBBARD AND REED LLP
1775 I St. NW
Washington, DC 20006
(202) 721-4600
william.kolasky@hugheshubbard.com
philip.giordano@hugheshubbard.com

William R. Maguire (admitted *pro hac vice*)
Fara Tabatabai (admitted *pro hac vice*)
HUGHES HUBBARD AND REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6000
bill.maguire@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

Gregory J. Scandaglia
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603-5713
(312) 580-2020
gscandaglia@scandagliaryan.com

*Attorneys for Defendant Sinclair Broadcast Group, Inc.*