**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE:<br>LOCAL TV ADVERTISING ANTITRUST LITIGATION | MDL NO. 2867<br><br>NO. 18 C 6785<br><br>HONORABLE VIRGINIA M. KENDALL |

**DEFENDANTS TEGNA, INC., GRAY MEDIA GROUP (F/K/A RAYCOM MEDIA, INC.), AND MEREDITH CORPORATION'S OPPOSITION TO PLAINTIFFS' DISCOVERY MOTION NO. 16: MOTION TO COMPEL DEFENDANTS TEGNA, RAYCOM, AND MEREDITH TO PRODUCE DOCUMENTS IN RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION NO. 52**

Defendants TEGNA Inc. ("TEGNA"), Gray Media Group (formerly known as Raycom Media, Inc.) ("Raycom") and Meredith Corporation ("Meredith," and collectively TEGNA and Raycom, "Motion Defendants") hereby oppose Plaintiffs' Discovery Motion No. 16 ("Motion" or "Mot."), which seeks the production of documents responsive to Plaintiffs' Request for Production of Documents No. 52.

## I. INTRODUCTION

In an effort to further press the boundaries of discovery, Plaintiffs ask this Court to compel the production of Motion Defendants' purchaser contact information—emails and mailing addresses.[1] Plaintiffs' request for this contact information is improper: it is premature to seek this information to effectuate class notice when there is no settlement or certified class, it is irrelevant to the substance of Plaintiffs' claims, and producing such information is disproportionate to the needs of this case. Moreover, to the extent the information Plaintiffs seek is properly obtainable prior to class certification (it is not), Plaintiffs' request and Motion are untimely. Plaintiffs should have made their request when negotiating Defendants' data productions (not nine months after Motion Defendants completed those productions) and should have filed their motion by the September 1, 2022 court-mandated deadline (not eight months after it expired). Plaintiffs' Discovery Motion No. 16 should be denied.

Plaintiffs' request for purchaser contact information, purportedly to effectuate class notice, is premature because no settlement or putative class has been approved or certified. Recognizing this, Plaintiffs offer the fallback argument that this contact information is necessary to assess the putative class. But Plaintiffs' Motion fails to explain how purchaser emails and mailing addresses will allow them to evaluate the putative class's viability, particularly in light

[1] "Purchasers" refer to both advertisers and advertising agencies who purchased television spot advertising from Motion Defendants during the relevant period.

of the ample data already in Plaintiffs' possession.

Further, Plaintiffs fail to demonstrate that the discovery is proportional to the current needs of this case. As the Motion Defendants have explained, the burden of collecting and producing transactional data is meaningful, particularly at this late stage of the case after Motion Defendants have already completed their data productions. The burden is further disproportionate in light of the information already available to Plaintiffs, and the amount of time and care necessary to address the potential privacy issues inherent in producing the contact information of tens of thousands of Motion Defendants' purchasers.

Finally, Plaintiffs' motion is untimely. This itself is a separate ground for denial. The parties negotiated the scope of the Motion Defendants' production of purchaser transactional data over a period of months, complying with the agreed process in the Stipulation and Order Regarding the Production of Electronically Stored Information ("ESI Order"). ECF No. 442. During the parties' discussions, Motion Defendants provided Plaintiffs with data samples, answered clarifying questions, and repeatedly met-and-conferred—all to ensure that when Motion Defendants carried out the arduous data collection process, their productions would be complete and no burdensome follow-up would be required. At no point during these protracted negotiations did Plaintiffs request the contact information they now demand, first raising the issue nine months after the productions were complete. At that point, through a series of emails and meet and confers, Motion Defendants clearly explained their positions and declined to produce the information. Plaintiffs then went silent on this issue—until now. But Plaintiffs' deadline to move to compel expired on September 1, 2022. Plaintiffs did not seek an extension of this deadline or move expeditiously after it was clear the parties were at an impasse. This motion is untimely and must be denied.

## II. FACTUAL BACKGROUND

### A. Pre-Production Negotiations

Plaintiffs' Motion omits entirely facts regarding the parties' extensive negotiations and agreements reached in early 2021 regarding the production of purchaser transactional data. Pursuant to those discussions, in the spring of 2021, Motion Defendants produced samples of their transactional data, identifying the fields each Motion Defendant intended to produce. *See* Declaration of Deepti Bansal in Support of Motion Defendants' Opposition to Discovery Motion No. 16 ("Bansal Decl."), Exs. A, B; Declaration of Huiyi Chen in Support of Motion Defendants' Opposition to Discovery Motion No. 16 ("Chen Decl."), Ex. A. Those samples included purchaser names but did not include the purchasers' email and mailing addresses. Plaintiffs took several weeks to assess those purchaser-data samples and did not request any further purchaser-related contact information at that time.

Plaintiffs and Motion Defendants continued their discussions throughout the spring of 2021 prior to the production of complete purchaser transactional data. At no time during those discussions did Plaintiffs request the production of purchaser emails, mailing addresses, or further information on purchaser names. *See* Bansal Decl. Exs. C, D; Chen Decl. Ex. B. The Motion Defendants completed their productions of purchaser transactional data to Plaintiffs later that year: Raycom on August 23, 2021, Meredith on August 27, 2021, and TEGNA on September 8, 2021. Bansal Decl. Exs. E, F; Chen Decl. Ex. C.

### B. TEGNA

Plaintiffs made their first request for TEGNA's purchaser mailing and email addresses by serving RFP No. 52 on August 1, 2022, nearly a year after TEGNA completed production of its detailed purchaser transactional data and only a month before the motion-to-compel deadline. *See* ECF No. 929-1 ("Hollywood Decl."), Ex. A at 18. TEGNA served its responses and objections

on September 12, 2022. Hollywood Decl. Ex. B.

When the parties met and conferred on RFP No. 52 on November 10, 2022, TEGNA learned for the first time that Plaintiffs' claimed purpose for the request was "to send out notice of settlements to putative class members." Hollywood Decl. Ex. C at 10. At that meet-and-confer, TEGNA told Plaintiffs that their request was thus premature in the absence of any certified class in the matter or motion for approval of a settlement class (with respect to certain defendants who had purportedly settled their disputes with Plaintiffs). *Id.* TEGNA has consistently maintained its position on the prematurity of Plaintiffs' request. *See, e.g.*, *id.* at 6-7 ("[W]e objected that such requested discovery is premature and not appropriate at this stage of the litigation, particularly given that there is no certified class in this case and Plaintiffs have not even yet filed a motion for class certification.").

During subsequent negotiations, Plaintiffs articulated no rationale other than class notice for their request except to argue that the demanded purchaser-contact information could be used for "comparing purchasers across Defendants' dataset." *Id.* at 6. Plaintiffs also suggested through a case citation that the requested information might be relevant "under normal discovery rules, such as establishing elements required for class certification." *Id.* at 4. In response, TEGNA questioned the relevance of purchaser contact information to class certification issues, given the detailed identification and transactional information TEGNA had produced to Plaintiffs in 2021. *Id.* at 3. TEGNA again asked Plaintiffs to share any "non-settlement related basis for this request" or "additional legal authority you may be relying on to support Plaintiffs' demands," so that "we are not talking past each other and to avoid burdening the court unnecessarily." *Id.* Plaintiffs, however, chose not to do so before moving to compel.

### C. Meredith and Raycom

Plaintiffs made their first request for purchaser mailing addresses on May 18, 2022,[2] nine months after the complete production of Meredith and Raycom's transactional data. *See* ECF No. 929-2 ("Ruan Decl."), Ex. A at 5; Ex. C at 2-3. Simultaneously, Plaintiffs asked Meredith and Raycom to explain numerous of its data fields. *Id.*

Meredith responded on July 11, 2022, noting that Plaintiffs' requests came over thirteen months after Plaintiffs reviewed the initial data sample and explaining that such requests were not "reasonable" under the ESI Order. Ruan Decl., Ex. A at 3; *see also* ESI Order Sec. 5.2. Nevertheless, and despite Plaintiffs' delay, Meredith followed up to Plaintiffs by letter on July 18, 2022 to provide additional clarification and information in response to Plaintiffs' requests for explanation. Ruan Decl., Ex. B.

Plaintiffs reiterated their request for purchaser information to Meredith on July 21, 2022, explaining for the first time that information would be used "mainly for identifying individual class members." Ruan Decl., Ex. D at 1. Meredith responded on August 2, 2022, asserting Plaintiffs' request was both "unduly burdensome and objectively unreasonable" under the ESI Order, and noting that potential class members had already been identified through Meredith's prior production of transactional data. Ruan Decl., Ex. E at 1.

Raycom responded to Plaintiffs' further requests for information on June 21, 2022. As to Plaintiffs' request for purchaser addresses, Raycom explained that such information "may not be available or accurate" and declined to produce a lookup table. Ruan Decl. Ex. C at 1. Plaintiffs did not respond to Raycom's June 21, 2022 email.

On August 1, 2022—a month before the extant motion to compel deadline, *see* ECF No.

---

[2] Notably, Plaintiffs did not initially request purchaser email addresses from either Meredith or Raycom.

510—Plaintiffs served RFP No. 52, demanding the emails and mailing addresses of all advertisers included in Meredith and Raycom's transactional data. *See* Ruan Decl., Ex. F. Meredith and Raycom served their responses and objections on September 12, 2022. *See* Ruan Decl., Ex. G. The parties met and conferred twice in October and November 2022, and Meredith and Raycom made clear that the burden of producing the data outweighed its relevance at this stage of the litigation and declined to produce the contact information. *See* Ruan Decl. ¶ 2. Critically, at no point during these meet and confers did Plaintiffs assert that purchaser email and mailing addresses were necessary to aid Plaintiffs' class certification assessment.

## III. LEGAL STANDARD

While the Federal Rules permit non-privileged discovery regarding matters that "are relevant to the claims or defenses and proportional to the needs of the case," the scope of discovery is not unlimited. Fed. R. Civ. P. 26(b)(1). There are "ultimate and necessary boundaries on discovery," *O'Toole v. Sears Roebuck & Co.*, 2014 WL 1388660, at *3 (N.D. Ill. Apr. 10, 2014), and the rules do not serve as "a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 925 (N.D. Ill. 2019).

Plaintiffs bear the initial burden of demonstrating the threshold finding of relevance, a concept which must be "firmly applied." *Montgomery v. Caribe Transp. II, LLC*, 2023 WL 2329093, at *2 (S.D. Ill. Mar. 2, 2023). District courts are empowered to "restrict discovery where necessary" given the burden and costs often resulting from expansive discovery expeditions. *See* *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014). That relevancy determination is "not inherent in any item of evidence," but rather must be "made on a case-by-case basis … dependent on the surrounding facts, circumstances, and issues in the case." *Id.* at

722 (citations omitted).

Moreover, "relevance alone does not translate into automatic discoverability"—an "assessment of proportionality is essential," and the party seeking discovery bears the burden of demonstrating the sought-after discovery is proportional to the needs of the case. *Motorola Sols.*, 365 F. Supp. 3d at 924. The "key" to the proportionality inquiry "is careful and realistic assessment of actual need" that may "require the active involvement of a neutral arbiter—the federal judge—to guide decisions respecting the scope of discovery." *See United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3d Cir. 2016).

## IV. ARGUMENT

Plaintiffs' Motion should be denied for three reasons. First, the purchaser contact information Plaintiffs seek through RFP No. 52 is premature. Plaintiffs assert this discovery is necessary to effectuate class notice, but as Motion Defendants have consistently explained, because no class—settlement or otherwise—has been certified, this justification is untenable. Recognizing the weakness in their reasoning, Plaintiffs now argue that email and physical addresses will somehow help in "determining class-wide impact," but fail to explain how purchaser emails and addresses will aid that determination. Second, the discovery sought is not proportional. Given the stage of the case—post data discovery, and with the prospect of a motion for class certification still months away—the burden on Motion Defendants to produce irrelevant purchaser contract information far outweighs any potential benefit to Plaintiffs. Third, it is untimely, which is an independent basis for denial.

### A. The Discovery Sought by RFP No. 52 is Premature and Irrelevant

During the parties' meet-and-confer discussions, Plaintiffs explained that they seek the information at issue for one primary reason: class notice. That rationale fails because the production of contact information effecting class notice is premature where no class has been

approved. Recognizing this deficiency, Plaintiffs now hypothesize that the information they have demanded might be relevant to the class certification inquiry—but Plaintiffs do not bother to explain how, and therefore this reasoning also fails.

### 1. Plaintiffs' Request for Information is Premature as Plaintiffs' Class Certification Motion Will Not Be Fully Briefed for Months and No Settlement Class Has Been Approved

Throughout the parties' meet and confers, Plaintiffs primarily justified their requests for Motion Defendants' purchaser contact information because it apparently would help "effectuate class notice." Mot. at 9. Plaintiffs' Motion repeats that unpersuasive justification, which cannot support their request for an obvious reason: since no class settlement has been filed and no class has been certified, there is no notice to send.

Plaintiffs do not dispute—because they cannot—that this type of discovery is not proper discovery under Federal Rule 26, pre-class approval. *See* *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978) (class contact information is generally outside the scope of "legitimate discovery" under Rule 26); *Bilek v. Nat'l Cong. of Employers, Inc.*, 2022 WL 523108, at *1 (N.D. Ill. Feb. 22, 2022) ("[P]ersonal contact information is not relevant or proportional discovery within the meaning of Federal Rule of Civil Procedure 26(b)(1) at this stage of the case when Plaintiff is looking for information to support her anticipated motion for class certification and before a class has been certified.").

Further, Plaintiffs' argument that class notice may be required in the future does not justify the sought-after discovery. *See, e.g.*, *Bilek*, 2022 WL 523108, at *1; *see also* *McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 2006 WL 681054, at *7 (N.D. Ill. Mar. 13, 2006) ("Given the uncertainties about the class definition and class claims, sending notice to a class [prior to a granted class certification] would be premature, confusing to any potential class members, and

inefficient.").[3] These settlements therefore do not justify the information Plaintiffs seek.[4]

**2. Plaintiffs Have Failed to Show that Motion Defendants' Purchaser Contact Information is Relevant to the Viability of Any Putative Class**

Plaintiffs' second argument—that this information could assist them in assessing the viability of the putative class—is unsupported. Plaintiffs argue (without citation) that "customers' contact information is frequently a reliable means" to deduplicate potential class members across multiple databases. Mot. at 9. Left unsaid in Plaintiffs' Motion is how "emails and mailing addresses" would impact core class certification questions of, for example, predominance or numerosity, or how deduplication is relevant to "determining class-wide impact." Mot. at 9; *see* *Swelnis v. Universal Fidelity L.P.*, 2014 WL 1571323, at *3 (N.D. Ind. Apr. 17, 2014) ("Name and address information does not bear on the size of the class but with who is in it."). This reasoning also falls flat given that the comprehensive purchaser transactional data *already produced* to Plaintiffs. That data provides ample information regarding potential class members. Indeed, for all purchases of television spot advertising from January 1, 2013 to December 31, 2020, Motion Defendants' production contained the names of the purchasing advertiser and agency, the market and station where the buy was placed, and copious additional detail about the advertisement itself.[5]

---

[3] Plaintiffs' notice-related authorities—*In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64 (D.D.C. 2018), *In re Air Cargo Shipping Services Antitrust Litig.*, MD-06-1775 (JG)(VVP) (E.D.N.Y. Oct. 31, 2007), and *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL (D. Kan. Apr. 6, 2006)—stand only for the unremarkable proposition that contact information may be appropriate when necessary to effect notice of an established, certified class. *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001), is even less remarkable, standing only for the rule that class notice may be sent by mail.

[4] Plaintiffs may assert that the discovery is timely because they have reached settlements with certain defendants. *See* Bansal Decl. Ex. G (Aug. 29, 2022 Hearing Transcript), at 31:13-20. But at the October 22, 2022 status conference—almost six months ago—Plaintiffs told that Court that those deals were not yet final, that the parties were "working on papering" them, and that Plaintiffs would provide Defendants with an update within the week. Bansal Decl. Ex. H (Oct. 20, 2022 Hearing Transcript), at 72:6-20. The Court ordered Plaintiffs "to report their progress on any settlement paperwork" shortly following that October 2022 status hearing. *See* ECF No. 844. No such update has been provided, and no settlement has been filed with the Court for approval.

[5] *See, e.g.*, Chen Decl. Ex. D (listing field headings from TEGNA's purchaser transactional data production); Bansal Decl. Ex. I (listing field headings from Raycom's purchaser transactional data production); Bansal Decl. Ex. J (listing

Plaintiffs seem to acknowledge that their arguments as to "classwide impact" are dubious, conceding that the information sought is only "potentially" important. Mot. at 12. Similarly vague assertions have been rejected in other pre-class certification discovery cases, as courts recognize that "personal contact information is not relevant or proportional discovery within the meaning of Federal Rule of Civil Procedure 26(b)(1) at this stage of the case when Plaintiff is looking for information to support her anticipated motion for class certification and before a class has been certified." *Bilek*, 2022 WL 523108, at *1; *see also* *Hazlitt v. Apple Inc.*, 2021 WL 2457987, at *3 (S.D. Ill. June 16, 2021) (denying motion to compel customer information where plaintiff failed to "articulate why personal consumer information is necessary to establish" elements of class certification); *Swelnis*, 2014 WL 1571323, at *3 (concluding there was not "any reason to think" class contact information would assist plaintiff in establishing numerosity pre-class certification, where plaintiff already had information from defendants on "estimated class size").

Having left Motion Defendants and the Court to deduce why the sought-after discovery is relevant, Plaintiffs have not met their initial burden of showing the relevance of this discovery. *See* *Miller*, 17 F. Supp. 3d at 721 (N.D. Ill. 2014).[6]

### B. Plaintiffs' Demand for Purchaser Contact Data is Overly Burdensome and Not Proportional to the Needs of the Case

Because Plaintiffs have failed to show that the discovery sought by RFP No. 52 is relevant, the inquiry should end. Regardless, Plaintiffs' Motion also fails because their Request is not proportional to the needs of the case.

---

field headings from Meredith's purchaser transactional data production).

[6] Plaintiffs' claim that TEGNA has waived any relevance objection, Mot. at 10, falls flat in light of the fact that TEGNA questioned the relevance of the compelled material as soon as Plaintiffs raised this rationale and fully briefs its objection here. By way of contrast, the objecting party in *Buonauro v. City of Berwyn*, the only case Plaintiffs cite on this point, waived its objection by failing to raise it in its response to a motion to compel or during the hearing held on the motion. 2011 WL 116870, at *3 n.3 (N.D. Ill. May 25, 2011).

"The party seeking the discovery has the burden of demonstrating that the discovery is proportional to the needs of the case." *Motorola Sols., Inc.*, 365 F. Supp. 3d at 924 n.6. The proportionality analysis seeks to "eliminate unnecessary or wasteful discovery," and requires a "careful and realistic assessment of actual need." *Gross v. Chapman*, 2020 WL 4336062, at *3 n.1 (N.D. Ill. July 28, 2020) (citation omitted). "The balancing concern is whether a party has the discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Id.* (quotations omitted).

Here, the proportionality analysis tips in Motion Defendants' favor because, as discussed above, the discovery Plaintiffs seek is premature for notice purposes and irrelevant to the merits of the case. Therefore, any burden associated with producing the required information is disproportionately high. *See, e.g.*, *Itex, Inc. v. Westex, Inc.*, 2011 WL 856583, at *2 (N.D. Ill. Mar. 9, 2011) (denying motion to compel "[e]specially because [non-movant has] shown … that the information the plaintiffs seek is of questionable relevancy"); *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 405 (D. Wyo. 2017) (denying request for discovery and explaining that "exposing substantial irrelevant information … would exceed the proper limits of proportionality" despite low burden of production).

Plaintiffs' articulation of need is unpersuasive. In addition to claiming they need to provide class notice (which, as discussed, is premature in the absence of a class), they contend that providing purchasers' email and physical addresses will "permit Plaintiffs … to cross-reference those transactions with purchases contained in other Defendants' transactional data productions." *See* Mot. at 11-12. But they do not explain how, or why, this is necessary, or why Motion Defendants' already-produced transactional data, taken as a whole, does not presently allow them to undertake that process. Motion Defendants should not be compelled to undertake

the cost and burden of further productions when the underlying information is not needed.

Moreover, the production of identifying purchaser data raises significant public policy concerns that further militate against production. While Plaintiffs assert that there is no articulable "public policy concern at issue," Mot. at 13, courts recognize that purchasers and consumers have a "privacy interest in avoiding disclosure of their names and addresses." *Hazlitt*, 2021 WL 2457987, at *3 (citation omitted); *see also* *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000) (noting the "potential for abuse in class actions" resulting from providing information allowing "contact with putative class members"). Similarly, the general principle against production of purchaser contact information in response to requests for production is a "restriction [that] prevents lawyers from turning discovery into a tool to identify potential new clients." *Swelnis*, 2014 WL 1571323, at *2 (quotations omitted). Those public policy considerations are particularly significant here, where Plaintiffs ask for identifying information regarding tens of thousands of Motion Defendants' current and former spot advertising purchasers.

Even setting aside the irrelevancy of this information, and the meaningful public policies concerns implicated by Plaintiffs' RFP No. 52, the burden of producing this information will be meaningful for Motion Defendants. For example, as Meredith and Raycom have explained to Plaintiffs, the data they seek would require a substantial amount of work to corroborate and collect, in the order of months as to Meredith and Raycom. *See* Ruan Decl. ¶ 2. That collection would also be costly, diverting Motion Defendants' employees' attention to gather information Plaintiffs do not need. Moreover, for certain purchasers, contact information may not even exist or is likely outdated, further blunting the relative value to Plaintiffs. *See, e.g.*, Ruan Decl. Ex. C, at 2 (Raycom noting its "physical address information … may not be available or accurate").

Plaintiffs had a chance to avoid this issue: at any point during the parties' initial extensive negotiations, or in response to the Motion Defendants' production of data samples, Plaintiffs could have requested the inclusion of the information they now seek. They chose not to. Instead, Plaintiffs waited nine months to even begin the process of seeking this information (and nearly a year to formally request it), then delayed further before bringing this issue to this Court. Given this inexcusable delay, the Court should not put the Motion Defendants to the renewed burden of an irrelevant data production to compensate for Plaintiffs' failure to request for the data they wanted in the first place.

The proportionality analysis requires a "careful and realistic assessment of actual need," and Plaintiffs' articulated "need" is entirely unsupported by the facts and circumstances of this case. *Gross*, 2020 WL 4336062, at *3 n.1. Plaintiffs' further request for information is therefore disproportionate to the needs of the case and should be denied.

**C. Plaintiffs' Motion is Untimely**

Finally, Plaintiffs' Motion should be denied as untimely. Plaintiffs made the strategic choice to serve RFP No. 52 on August 1, 2022—the last day allowed under the Amended Scheduling Order then in effect—nine months after Motion Defendants had completed their data productions. *See* ECF No. 510. Further, the deadline to file any motions to compel (absent a showing of good cause) was September 1, 2022, which has long since passed. *Id.* Plaintiffs' offer no persuasive "good cause" for their delay, simply asserting their purported need to effectuate class notice. Assuming such pre-class certification discovery is proper (which it is not, as discussed above), Plaintiffs should have made that request when negotiating the scope of Motion Defendants' data productions, not nine months after the productions were made. And, if Plaintiffs desired the information enough to file a motion to compel, they needed to do that before September 1, 2022, or *at least* shortly after it was clear the parties were at an impasse. Indeed, Plaintiffs' last

communication on this topic to Meredith and Raycom on this topic was in November 2022 (over five months ago), and last communication to TEGNA was in early February 2023 (over two months ago). There is no justification for Plaintiffs' delay, and their strategic choices cannot trump the deadlines of this Court. *See* *Alight Sols. v. Thomson*, 2021 WL 5119111, at *2 (N.D. Ill. Nov. 3, 2021) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."). The Motion should be denied as untimely.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel No. 16.

Dated: April 10, 2023

Respectfully submitted,

*/s/ David E. Mills*

**COOLEY LLP**
David E. Mills (*pro hac vice*)
(dmills@cooley.com)
Deepti Bansal (*pro hac vice*)
(dbansal@cooley.com)
J. Parker Erkmann (*pro hac vice*)
(perkmann@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899

Beatriz Mejia (*pro hac vice*)
(mejiab@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel.: (415) 693-2000
Fax: (415) 693-2222

Mazda K. Antia (*pro hac vice*)
(mantia@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Tel.: (858) 550-6000
Fax: (858) 550-6420

Alexander G. Galicki (*pro hac vice*)
(agalicki@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel.: (310) 883-6400
Fax: (310) 883-6500

Matthew L. Kutcher (SBN: 6275320)
(mkutcher@cooley.com)
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel.: (312) 881-6500
Fax: (312) 881-6598

*Counsel for Defendant Gray Media Group, Inc.*

*<u>/s/ Ross Bricker</u>*
**JENNER & BLOCK LLP**
Ross B. Bricker (Ill. Bar No. 3126882)
John F. Ward, Jr. (Ill. Bar No. 6208004)
353 N. Clark Street
Chicago, IL 60654-5474
(312) 222-9350
rbricker@jenner.com
jward@jenner.com

*Counsel for Defendant TEGNA, Inc.*