UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br>LOCAL TV ADVERTISING ANTITRUST LITIGATION<br><br>*This Document Relates to All Actions* | MDL No. 2867<br>No. 18 C 6785<br><br>Honorable Virginia M. Kendall |

**GRIFFIN COMMUNICATIONS, LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' DISCOVERY MOTION NO. 20**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. Document Preservation and Production ........ 2

B. Lex Sehl ........ 3

C. DOJ Document Preservation Notices ........ 5

D. The Account Executives ........ 5

E. Mr. Krier's Texts ........ 6

III. THERE IS NO PREJUDICE HERE AND THEREFORE THERE IS NO BASIS FOR RELIEF ........ 8

IV. PLAINTIFFS HAVE NOT ESTABLISHED IMPROPER CONDUCT BY GRIFFIN ........ 10

V. PLAINTIFFS' PROPOSED REMEDIES ARE UNJUSTIFIED ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbera v. Pearson Educ., Inc.*,
906 F.3d 621 (7th Cir. 2018) ....................................................14

*Bolyard v. Vill. of Sherman*,
No. 19-CV-03146, 2022 WL 16738647 (C.D. Ill. Nov. 7, 2022) ....................8

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................................................13

*Crabtree v. Nat'l Steel Corp.*,
261 F.3d 715 (7th Cir. 2001) ....................................................14

*Faas v. Sears, Roebuck & Co.*,
532 F.3d 633 (7th Cir. 2008) ....................................................11, 14

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
No. 15-cv-1893, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ....................11

*Hunting Energy Servs., Inc. v. Kavadas*,
No. 3:15-CV-228 JD, 2018 WL 4539818 (N.D. Ind. Sept. 20, 2018)....................12

*Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. Ryan & Assocs., Inc.*,
No. 18 C 8348, 2020 WL 6287406 (N.D. Ill. Oct. 27, 2020)....................2

*Krumwiede v. Brighton Assocs., L.L.C.*,
No. 05-cv-3003, 2006 WL 1308629 (N.D. Ill. May 8, 2006)....................12

*Little v. JB Pritzker for Governor*,
No. 18 C 6954, 2021 WL 1165097 (N.D. Ill. Mar. 26, 2021) ....................13

*LKQ Corp. v. Gen. Motors Co.*,
No. 20 C 02753, 2022 WL 14634800 (N.D. Ill. Oct. 25, 2022)....................8, 11

*Long v. Stepro*,
213 F.3d 983 (7th Cir. 2000) ....................................................11

*Norman–Nunnery v. Madison Area Tech. College*,
625 F.3d 422 (7th Cir. 2010) ....................................................11

*In re Old Banc One S'holders Sec. Litig.*,
No. 00 C 2100, 2005 WL 3372783 (N.D. Ill. Dec. 8, 2005) ....................8

*Pable v. Chicago Transit Auth.*,
No. 19 CV 7868, 2023 WL 2333414 (N.D. Ill. Mar. 2, 2023) ....................8

*Worldpay, US, Inc. v. Haydon*,
No. 17-CV-4179, 2018 WL 5977926 (N.D. Ill. Nov. 14, 2018) ....................9

**Other Authorities**

Fed. R. Civ. P. 37(b) ....................8

Fed. R. Civ. P. 37(c) ....................8

Fed R. Civ. P. 37(e) ....................8, 9, 13

Fed. R. Civ. P. 37(e)(1) ....................8, 14

Fed. R. Civ. P. 37(e)(2) ....................14

Local Rule 37.2 ....................1, 2

Rule 37 ....................8

# I. INTRODUCTION

Plaintiffs' Discovery Motion to Compel No. 20 (ECF No. 960) is an unsuccessful effort to create a mountain out of a very small molehill. While there were errors in Griffin's document preservation and production process, they certainly do not justify any of the sweeping sanctions sought by Plaintiffs' overreaching motion.

Plaintiffs' motion concerns a partially missing production from two of Griffin's original 13 custodians, neither of whom played any role in the information exchanges that are the subject of this case. There is no allegation of any missing documents involving the four Griffin employees who acknowledge that they did share pacing information with competitors, and more than 56,000 documents were produced from those witnesses alone. While Griffin emphatically believes that these exchanges were procompetitive and lawful, Plaintiffs have no shortage of evidence to try to prove their case.

Moreover, the missing documents have in significant part been replaced by emails and texts to and from those two custodians contained in the files of other Griffin custodians. And one of these custodians left Griffin before any applicable document hold existed as to his files.[1]

Thus, Plaintiffs' entire motion relates to documents which are of little or no interest in this case, much less "essential," as Plaintiffs' own cases require before any relief may be granted. Plaintiffs should not be able to substitute sanctions for the need to prove their case on the merits.[2]

---

[1] The other issue raised by Plaintiffs concerns partially missing documents from three custodians who were not even part of the initial agreed upon custodian list. They were added at Griffin's initiative (along with three others) because they were believed to have reported to Lex Sehl, one of the custodians whose files were partly missing, in an effort to provide additional documents relating to Mr. Sehl. There is no evidence that any of these additional custodians engaged in any of the conduct that is at the core of this case, and in any event all their emails were produced.

[2] Plaintiffs assertion that they "have complied with the meet and confer requirements of Local Rule 37.2" is false. Local Rule 37.2 requires, at a minimum, that the moving party recite either "the date, time and place of such conference, and the names of all parties participating therein" or

# II. STATEMENT OF FACTS

## A. Document Preservation and Production

In response to Plaintiffs' discovery requests, and in spite of the fact that Griffin only operates in two DMAs (Oklahoma City and Tulsa), Griffin has produced approximately 150,000 documents from 19 custodians. Declaration of M. Richard Mullins in Support of Defendant Griffin Communications, Inc.'s Opposition to Plaintiffs' Discovery Motion #20 ("Mullins Decl.") ¶2 (Ex. 1). Griffin produced more documents per DMA from more custodians per DMA than any other Defendant.

Contrary to Plaintiffs' misstatements, the record shows that Griffin's document preservation efforts were significant and comprehensive. David Griffin, Griffin's CEO, testified that he "made sure that we put a document hold on everything and that no documents would be destroyed", Deposition of David Griffin ("Griffin Dep.") at 161:6-19 (Ex. 2). He added that the "need to preserve information" was "communicated to all relevant employees". *Id.* at 161:25-162:4. *See also id.* at 167:7-14 (all Griffin "emails are backed on a document hold at Microsoft, so they are all preserved"), 167:24-168:5 ("We put a document hold in place to make sure that [documents] would not be destroyed"), 112:9-19 (phones and emails were provided to counsel.).

Also contrary to Plaintiffs' false assertions, Griffin employees were not given discretion as to which documents should be saved. Derek Criss, Griffin's Director of Local Sales in Tulsa, testified that after the 2018 DOJ investigation began, "we were instructed to save all electronic and paper documents." Deposition of Derek Criss ("Criss Dep.") at 35:1-4 (Ex. 3). Mr. Criss

---

"the efforts made by counsel to engage in consultation." Plaintiffs have not provided this information. As a result, Local Rule 37.2 mandates that the court "shall hereafter *refuse* to hear" the motion. Local Rule 37.2 (emphasis added). *See Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. Ryan & Assocs., Inc.*, No. 18 C 8348, 2020 WL 6287406, at *4 (N.D. Ill. Oct. 27, 2020).

testified that to his knowledge "Griffin preserved all documents after this litigation commenced". Criss Dep. at 35:5-13. He added that "we were given instructions. We had had training on this at this point and we were told to save all documents, all electronic and all paper documents." *Id.* 115:12-16, *see* 115:19-21 (all text messages saved). Mr. Criss also stated that instructions were given to save *all* files to OneDrive because OneDrive was backed up every night, instructions were given to not save everything to hard drives, but to save everything to OneDrive. Criss Dep. 114:11-115:11; 118:6-20. Mr. Criss was unaware of anyone who was unable to preserve their documents. Criss Dep. 117:19-25, 118:1.[3] Similarly, Chad Woolbright of the Tulsa office testified that "we preserve all our documents now …" company instructions were to "preserve all documents." Deposition of Chad Woolbright ("Woolbright Dep.") at 26:23-27:4, 28:18-23 (Ex. 4).

Plaintiffs cite to an email relating to pulling documents relating to KFOR (a competitor station) and a statement from David Griffin saying nothing else was needed. Plaintiffs' Discovery Motion No.20 (ECF No. 960) at p.5. Plaintiffs suggest that this concerned "Griffin's preservation efforts," implying that only KFOR-related documents were produced. But Plaintiffs know this is not remotely the case. As just one example, of the 168 deposition exhibits marked by Plaintiffs in the Griffin depositions, only a small minority referenced KFOR. Mullins Decl. ¶11.

**B. <u>Lex Sehl</u>**

One of the document custodians initially designated by Griffin was Lex Sehl, who worked in local sales for Griffin in Tulsa. In that role, Mr. Sehl oversaw the sale of advertising time at Griffin's Tulsa stations by a group of account executives. (Deposition of Lex Sehl ("Sehl Dep.")

[3] The following exchange also occurred with Mr. Criss: "Q: Not just emails were uploaded, correct? *All* documents on your computers were also uploaded and preserved? A: Yes." Criss Dep. at 118:2-5 (emphasis added).

at 34:7-35:23 (Ex. 5).) Mr. Sehl's last day of employment at Griffin was August 10, 2017. (Sehl Dep. at 60:6-60:9.)

Mr. Sehl's replacement was Chad Woolbright, a Local Sales Director for Griffin who moved from Griffin's Oklahoma City office to Tulsa. (Woolbright Dep. at 66:5-66:20.) No issue has been raised with regard to the production of Mr. Woolbright's documents.

Mr. Sehl testified that he did not exchange pacing or other information with Griffin's competitors. (Sehl Dep. at 63:4-64:5, 66:23-67:22). Derek Criss, his superior, confirmed that fact. (Criss Dep. 80:5-11.) There is no reason to dispute this conclusion, and it is not at all significant to the case, since Derek Criss freely explained that he did exchange such information. (Criss Dep. at 242:12-242:22). 12 documents relating to exchanges in Tulsa of pacing information between Mr. Criss and a representative of a competing station were identified and shown to Mr. Criss in his deposition. (*See* Derek Criss Dep Exs. 7 (Ex. 6), 8 (Ex. 7), 9 (Ex. 8), 10 (Ex. 9), 11 (Ex. 10), 13 (Ex. 11), 14 (Ex. 12), 18 (Ex. 13), 19 (Ex. 14), 20 (Ex. 15), 21 (Ex. 16), 23 (Ex. 17)).

Griffin does not possess Mr. Sehl's electronic records. However, Griffin has produced in excess of 3,000 emails and other documents, including text messages, sent by Mr. Sehl to other persons, or sent by other persons to Mr. Sehl. Mullins Decl. ¶3. In total, Griffin has produced in excess of 100,000 documents relating to its operations in Tulsa, where Mr. Sehl worked, including documents from persons reporting to Mr. Sehl and Derek Criss. Mullins Decl. ¶3.

Plaintiffs also subpoenaed the telephone records that identified calls and texts to and from Mr. Sehl. Sehl Dep. Ex. 4 (Ex. 18). Mr. Sehl was questioned during his deposition about a summary of these records prepared by Plaintiffs. (Sehl Dep. 75:25-83:10).

Even though it had no obligation to do so, Griffin recently worked with Mr. Sehl to obtain texts on his personal cell phone that were responsive to Plaintiffs' document requests to Griffin. That information has been produced to Plaintiffs. Mullins Decl. ¶4.

### C. DOJ Document Preservation Notices

On September 11, 2017, Griffin received a Civil Investigative Demand (the "2017 CID") from the Department of Justice. Ex. 10 to Declaration of Nathaniel C. Giddings in Support of Plaintiffs' Discovery Motion No. 20 ("Giddings Decl.") (ECF No. 960-1). The CID stated that it addressed the "[p]roposed merger of Sinclair Broadcasting Group and Tribune Media Company." *Id.* The CID did not apply to Tulsa, where Mr. Sehl worked, but (as it applied to Griffin) only addressed activity in Oklahoma City. The term "Relevant Area" in the subpoena included Oklahoma City, but not Tulsa. *Id.* ¶12. Thus, Plaintiffs' suggestion that the 2017 Department of Justice document hold is somehow applicable to either Mr. Sehl or his account executives in Tulsa completely misstates the facts.

Six months after Mr. Sehl left Griffin's employ, David Griffin received a document hold notice letter from the DOJ, concerning "exchang[es] . . . of competitive information." *See* Ex. 19 (D. Griffin Dep. Ex. 21). Upon receipt of the letter, Griffin began implementing a document hold on all information that could potentially be relevant to the investigation and subsequent litigation the DOJ might initiate. (Griffin Dep. at 155:15-157:10, 160:10-161:19).

### D. The Account Executives

In response to Plaintiffs' expressions of concern regarding Mr. Sehl's files, Griffin offered to produce the files from more than the original 13 custodians on which the parties had agreed. This involved, initially, three Tulsa account executives believed to have been supervised by Mr. Sehl, and later, the files of three additional Tulsa account executives. Mullins Decl. ¶5. More than 14,000 documents were produced from the files of these account executives. *Id*. ¶8. This included

all emails and paper documents, but in three of these cases, "OneDrive" electronic documents were missing. Mullins Decl. ¶¶6-7. It turned out that one of the three account executives was mistakenly included because she did not in fact report to Mr. Sehl. *Id.* ¶7.

Plaintiffs' claim that Griffin "reneged" on its offer to produce documents from these additional account executives is incorrect. After Griffin offered to produce these documents, it learned that some of them could not be accessed. Yet, Griffin still produced all responsive documents from three of the six additional individuals, plus responsive emails and paper documents from the other three. Mullins Decl. ¶8.

**E. <u>Mr. Krier's Texts</u>**

Rob Krier is Griffin's President and former Chief Operating Officer. (Krier Dep. at 39:18-40:12). Mr. Krier's responsibilities relate to Griffin's television and radio stations and digital properties. He testified that his role concerns "the health and wellbeing of all the companies and my -- my main things are making sure that everything's running and that the newscasts are running and that everybody's happy." (Deposition of Robert Krier ("Krier Dep.") 40:13-23 (Ex. 20).)

Mr. Krier had a very limited role in the sale of broadcast television advertising, and did not exchange pacing information with competitors. He relied in that area on Wade Deaver, the Vice President of Sales. While Mr. Deaver reported to Mr. Krier, their interactions primarily concerned personnel matters. (Krier Dep. at 77:15-16). Krier Dep. 64:11-13 ("I don't have the market expertise, that's Wade's job, so I have to rely on him"); 77:9-12, 77:15-16 ("Q . . . Have you ever requested competitive information from any of these individuals? A. No. That was handled by Mr. Deaver. . . Mr. Deaver handles sales, so I wouldn't have a reason to ask about anything.").

While Mr. Krier did engage in communications from time to time with other stations' general managers, they concerned such subjects as security breaches, social contacts, efforts to

purchase advertising on a Griffin station by another station, and how to grow the broadcast TV "pie." Krier Dep. 67:2-69:6, 75:22-76:20, 86:4-89:22, 91:23-93:23.

Even though Griffin's V.P. of Technology, Trevor Wiseman, reports to Mr. Krier, Mr. Krier is not sophisticated with respect to technology matters. Mr. Krier's role is to "keep people happy", not to supervise the operations of the I.T. department. Krier Dep. 97:13-18; *see also* Krier Dep. 41:11-12 ("You oversee Griffin's use of technology? I'm – I oversee Trevor."). As David Griffin explained, Mr. Krier does not have "direct responsibility" for IT. Griffin Dep. 44:23-45:1. His duties with respect to IT were limited to the "people management of the IT department. . . . He relies on Mr. Wiseman." *Id.* at 170:5-14. There is no evidence that Mr. Krier played a significant role in the overall document hold process by the company, nor that he should have played such a role.[4] *See also* Griffin Dep. 161:11-19 (Mr. Griffin met with Trevor Wiseman to implement the document hold).

Mr. Krier's habit has long been to delete almost all text messages, whether from business contacts or family members. He mistakenly believed that when he deleted text messages they were preserved in the cloud, like his emails were. It was only after a software vendor error was discovered on the eve of his deposition, Ex. 8 to Giddings Decl. (ECF No. 960-1), that Mr. Krier learned they were not preserved. Krier Dep. at 29:15-30:6, 31:20-25, 34:2-7, 35:12-36:12.

Any responsive text messages involving a Griffin custodian and Mr. Krier have been produced as part of custodial productions from those custodians. Emails and other electronic documents from Mr. Krier's files were preserved and more than 4,700 have been produced. Mullins Decl. ¶10.

---

[4] For this reason, Plaintiffs' assertion that Mr. Krier's lack of knowledge represents an "institutional failure" is totally baseless.

## III. THERE IS NO PREJUDICE HERE AND THEREFORE THERE IS NO BASIS FOR RELIEF

A court may result to the remedies in Fed. R. Civ. P. 37(e)(1) only "upon finding prejudice to another party from loss of the information." Since Plaintiffs have fallen far short of showing prejudice here, there is no basis for any of the relief they seek.[5]

As Plaintiffs admit in their brief, for a party "to suffer substantive prejudice due to spoliation of evidence, the lost evidence must prevent the aggrieved party from using evidence *essential* to its underlying claim." *In re Old Banc One S'holders Sec. Litig.*, No. 00 C 2100, 2005 WL 3372783, at *4 (N.D. Ill. Dec. 8, 2005) (citing *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir.1997)) (emphasis added). As another court has explained, "[s]ubstantive prejudice occurs when the lost evidence prevents the other party the use of 'crucial' evidence to their underlying claim." *LKQ Corp. v. Gen. Motors Co.*, No. 20 C 02753, 2022 WL 14634800, at *7 (N.D. Ill. Oct. 25, 2022). Articulating what a party "hopes that it might have found among the

---

[5] Plaintiffs also seek relief under Fed. R. Civ. P. 37(b), 37(e), and the court's "inherent authority," Plaintiffs' Brief a 1, but relief for loss of ESI is only appropriate under Fed R. Civ. P. 37(e):

> Case law from the Northern District of Illinois and other district courts within the Seventh Circuit recognize[] that Rule 37(e) provides "the sole source to address the loss of relevant ESI that was required to be preserved but was not because reasonable steps were not taken." *Pable v. Chicago Transit Auth.*, No. 19 CV 7868, 2023 WL 2333414, at *17 (N.D. Ill. Mar. 2, 2023).

No "discovery order" has been violated to warrant sanctions under Fed. R. Civ. P. 37(b). Contrary to what Plaintiffs assert, a failure to produce documents is not by any stretch of the imagination a violation of the scheduling order.

The Committee Notes to the 2015 amendments of Rule 37 explains that Fed. R. Civ. P. 37(c) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." *See also Bolyard v. Vill. of Sherman*, No. 19-CV-03146, 2022 WL 16738647, at *4 (C.D. Ill. Nov. 7, 2022) (same).

deleted information" is not enough. *Worldpay, US, Inc. v. Haydon*, No. 17-CV-4179, 2018 WL 5977926, at *5 (N.D. Ill. Nov. 14, 2018).

Plaintiffs cannot possibly demonstrate prejudice from the missing information under this demanding standard, for several reasons. First, the missing documents represent a small fraction of the information produced by Griffin. *See* Statement of Facts ("SOF"), *supra*.

Second, none of the missing documents relate to the three witnesses who participated in the vast majority of the information exchanges engaged in by Griffin, Derek Criss, Sean Berndt, and Chad Woolbright. Criss Dep. 226:21-227:8, Woolbright Dep. 50:14-20, Berndt Dep. 52:21-25 (Ex. 46). Nor are documents alleged to be missing from the other individual who acknowledged some information exchanges, Wade Deaver. Deposition of Wade Deaver ("Deaver Dep.") 28:24-29:7 (Ex. 21). Extensive information (more than 56,000 documents) was produced from these witnesses. Mullins Decl. ¶12. Coupled with the extensive production by Griffin overall, SOF, *supra*, this establishes that "the abundance of preserved information [is] sufficient to meet the needs of all parties". Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendments.

Third, there is no evidence that the individuals whose documents are missing participated in any information exchanges with competitors, and Mr. Sehl and Mr. Krier testified specifically that they did not. SOF, *supra*.

The circumstantial evidence strongly support this conclusion. The record makes clear that when there were communications with competitors, those communications were frequently shared internally within Griffin. *See e.g.*, Criss Dep. Exs. 7, 14, 20, 23; Woolbright Dep. Exs. 1 (Ex. 22), 2 (Ex. 23), 3 (Ex. 24), 7 (Ex. 25), 9 (Ex. 26), 10 (Ex. 27), 12 (Ex. 28), 13 (Ex. 29), 14 (Ex. 30), 15 (Ex. 31), 16 (Ex. 32), 17 (Ex. 33), 19 (Ex. 34), 20 (Ex. 35), 21 (Ex. 36), 22 (Ex. 37), 23 (Ex. 38), 24 (Ex. 39); Berndt Dep. Exs. A (Ex. 40), C (Ex. 41), E (Ex. 42); Deaver Dep. Exs. 13 (Ex. 43),

15 (Ex. 44), 17 (Ex. 45). Therefore, if Mr. Sehl or Mr. Krier had engaged in those communications, there would very likely be emails from Mr. Sehl or Mr. Krier to his colleagues on that subject, and those emails would have been produced from those colleagues' files. Of the thousands of emails involving Mr. Sehl and Mr. Krier that have been produced, none reflect such communications.

Fourth, given the exchanges with competitors freely acknowledged by other Griffin witnesses, even if Mr. Sehl or Mr. Krier had engaged in such exchanges, there is no reason to believe that that would change the nature of the evidence in this case in any material way.

Fifth, as described above, more than 3,000 emails to or from Mr. Sehl were produced by other custodians, and more than 4,000 of Mr. Krier's documents were produced. SOF, *supra*. There is therefore an "abundance of information" even as to these witnesses.

Finally, the files of the account executives were not missing any emails. There is no indication that any account executive ever engaged in contacts with competitors. But if they had, the likely vehicle would have been emails, all of which were produced.[6]

Plaintiffs thus fall miles short of establishing that any lost information was "essential" or "crucial". All Plaintiffs even claim is that these documents were "relevant." Plaintiffs' Brief at 13. This is both false, based on the foregoing detailed facts, and legally inadequate, even under the cases cited by Plaintiffs. Whether Griffin's process was imperfect, and whether it followed "best practices," is immaterial. No relief is warranted here.

## IV. <u>PLAINTIFFS HAVE NOT ESTABLISHED IMPROPER CONDUCT BY GRIFFIN</u>

While the absence of prejudice is alone a death knell for the Plaintiffs' motion, there is also no reason to believe that Griffin acted in bad faith here, for several reasons. A document is

---

[6] Plaintiffs raise other issues, but they did not prevent Plaintiffs from obtaining all responsive documents. Therefore, such conduct could not cause prejudice under the controlling standard, that "essential" evidence must have been lost.

"destroyed in bad faith if it was done for the purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008); *see also Norman–Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 428 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information."). Even "gross negligence" is not bad faith. *LKQ Corp.*, *supra* at *7.

There is certainly no evidence of such an intent to hide information here, and the evidence is directly contrary to such a conclusion. If Griffin were somehow trying to destroy relevant documents, why would it produce all of the documents for all of its major sales executives and its CEO, while selectively destroying documents related to one subordinate official (Mr. Sehl) and only one category of document for its President, who is not directly involved in advertising sales? Krier Dep. at 66:7-19. The notion that the absence of these documents could be anything but inadvertent makes no sense.

Mr. Krier explained that he simply made a mistake, believing that his texts were saved to the Cloud so that he could continue his longtime practice of deleting them without losing the texts. Krier Dep. at 48:19-24. There is no evidence to the contrary. And given Mr. Krier's very limited role in advertising sales, and because Mr. Sehl did not engage in the exchange of pacing information (but his superior acknowledged doing so), there was absolutely no reason to have destroyed anything.[7]

Defendants' cases all involve "smoking gun" evidence of improper intent, far from what is present here. In *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893, 2016 WL

[7] Plaintiffs cite *Long v. Stepro*, 213 F.3d 983, 987 (7th Cir. 2000) to argue that sanctions may be appropriate if Griffin's conduct was "objectively unreasonable". But *Long* did not involve ESI sanctions. It addressed a violation of a scheduling order by the failure to file a timely witness list. It is completely irrelevant here.

5870218, at *3 (N.D. Cal. Oct. 7, 2016) counsel admitted that there was "an explicit agreement to avoid communicating electronically" about the possible legal claims). *Krumwiede v. Brighton Assocs., L.L.C.*, No. 05-cv-3003, 2006 WL 1308629 (N.D. Ill. May 8, 2006) involved an intentional refusal to maintain a computer without alteration after being notified of the need to maintain it. *Hunting Energy Servs., Inc. v. Kavadas*, No. 3:15-CV-228 JD, 2018 WL 4539818 (N.D. Ind. Sept. 20, 2018), the defendants went as far as "fabricating a paper trail" to try to *create* evidence to defeat plaintiffs' claims. *Id*. at *8.

It is clear that Griffin made significant efforts to preserve its documents. That is revealed both by the extensive deposition testimony quoted above and by the fact that there is no suggestion that production was incomplete as to 11 of the 13 custodians for which Griffin had originally agreed to produce documents.

Finally, as the correspondence between counsel attached as exhibits to Plaintiffs' motion makes abundantly clear, Griffin was forthcoming with Plaintiffs about missing information, and bent over backwards to work with Plaintiffs to resolve the document issues, and to produce additional documents from six custodians.[8]

---

[8] Plaintiffs' proposed forensic expert's opinions should be wholly disregarded, since they are based in significant part on statements that were obviously false, and wholly unsupported by any evidence. Declaration of Tom Matzen in Support of Plaintiffs' Motion for Spoliation Sanctions Against Griffin Communications, LLC (ECF No. 960-3) ("Matzen Decl."). These include the falsehoods that Griffin employees were instructed to choose what documents to retain (Matzen Decl. ¶45), that Mr. Krier oversaw the implementation of the document hold (*id.* ¶41), and that Griffin had a duty to preserve documents in Tulsa as a result of the 2017 DOJ subpoena which was not directed to Tulsa or to information exchanges (*id.* ¶¶10(a), 36-37). He also addressed the email with regard to KFOR discussed *supra* as if it were descriptive of the document hold process (*id.* ¶41), which is false.

These falsehoods are likely explained by the fact that Mr. Matzen relied on "excerpts" of the depositions, presumably preselected for him by Plaintiffs' counsel. (Alternatively, he uncritically parroted Plaintiffs' arguments.) In any event, Mr. Matzen cannot speak to the prejudice issue, which is dispositive here.

## V. PLAINTIFFS' PROPOSED REMEDIES ARE UNJUSTIFIED

Accordingly, there is no basis for any of the relief sought by Plaintiffs:

1. There is no need for additional discovery relating to Griffin's document hold. It is apparent from the discovery that Plaintiffs have already taken that a vast quantity of documents was produced, and that prejudice cannot be shown. In any event, all non-privileged documents relating to the hold have been produced, and as the Statement of Facts explains, Griffin's witnesses have already been extensively examined on the document hold process.

2. There is certainly no reason to hire a forensic expert to examine Griffin's process, since that process has not resulted in the omission of any documents that would cause prejudice to Plaintiffs. As a result, such a review would not yield information of any significance here, and would only impose significant, unjustified expense on Griffin.

3. Fed. R. Civ. P. 37(e), concerning ESI issues, does not address fee-shifting. Plaintiffs cite to a recent Judge Kendall opinion for the proposition that "[e]ven negligence may be a sufficient degree of fault to impose fee-shifting sanctions." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2021 WL 1165097, at *6 (N.D. Ill. Mar. 26, 2021). However, *Little* was not a spoliation case or a request for sanctions under Rule 37(e). Instead, it involved sanctions for repeated violations of court orders. "[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel . . . for the willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (internal citations omitted). That is certainly not relevant here.

Fee-shifting would be especially inappropriate here, since Plaintiffs have spent an inordinate amount of time focusing on the alleged spoliation issue, when it should have been apparent to them that any missing documents would not have an impact on the issues in this case. To impose fee-shifting would be to reward Plaintiffs for this overreach and penalize Griffin for

errors that do not impact the outcome in this case, when Griffin has produced more documents from more custodians per DMA than any other party.

4. Any argument that the jury should be told about Griffin's efforts at document preservation is inappropriate, and at the very least premature. That is an issue that should be addressed, if at all, shortly before the time of trial, where the parties will be able to argue relevance and prejudice in the context of a full record. There is certainly no basis for such relief at this time. *See Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001) (finding district court did not err in excluding evidence of destruction of documents when inclusion of the missing documents would not have affected the outcome).

5. Plaintiffs do not even claim to have any basis for seeking an adverse inference at this time. After depositions of eight Griffin employees, they certainly do not meet the standard necessary to obtain such an inference. It is well settled that "in order to draw an [adverse] inference . . . we ***must*** find that [a party] ***intentionally*** destroyed the documents in ***bad faith***," i.e. in order to hide harmful information. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (emphasis added). *See also* Fed. R. Civ. P. 37(e)(2) advisory committee note to 2015 amendment ("(Subdivision (e)(2) limits the ability of courts to draw adverse inferences based on the loss of information in these circumstances, permitting them only when a court finds that the information was lost with the intent to prevent its use in litigation.").

The bottom line is that none of these measures are "necessary to cure the prejudice", as is required by Fed. R. Civ. P. 37(e)(1), *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627-28 (7th Cir. 2018), since there was no prejudice here. Given these facts, there is no basis for this Court to order "satellite litigation" to attempt to further examine the process by which Griffin preserved

documents. Plaintiffs' goal is apparently to put pressure on Griffin to try to force it to settle this litigation. This Court should not provide Plaintiffs with a sword to do so.

The Motion should be denied.

Dated: May 8, 2023

*/s/ David A. Ettinger*
**HONIGMAN LLP**
David A. Ettinger (admitted *pro hac vice)*
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7368
dettinger@honigman.com

**HONIGMAN LLP**
William B. Berndt
155 North Wacker Drive
Suite 3100
Chicago, IL 60606
(312) 701-9376
wberndt@honigman.com

**MCAFEE & TAFT**
Mark Richard Mullins (admitted *pro hac vice*)
211 N. Robinson Ave.
10th Floor
Two Leadership Square Oklahoma City, OK
73102
(405) 552-2263
rick.mullins@mcafeetaft.com
*Counsel for Defendant Griffin Communications, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/David A. Ettinger
David A. Ettinger (admitted *pro hac vice*)
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7368
dettinger@honigman.com