## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document applies to all actions.* | Master Docket No. 18-06785<br><br>MDL No. 2867<br><br>Honorable Virginia M. Kendall |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS CBS, FOX, THE COX ENTITIES, AND SHAREBUILDERS

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................... 1

II. BACKGROUND ......................................................................................................... 2

   A. LITIGATION HISTORY. ...................................................................................... 2

   B. SETTLEMENT NEGOTIATIONS AND RESULTING AGREEMENT WITH CBS. ......... 4

   C. SETTLEMENT NEGOTIATIONS AND RESULTING AGREEMENT WITH FOX. .......... 6

   D. SETTLEMENT NEGOTIATIONS AND RESULTING AGREEMENT WITH THE COX ENTITIES. .... 7

   E. SETTLEMENT NEGOTIATIONS AND RESULTING AGREEMENT WITH SHAREBUILDERS. ....... 9

   F. THE PROPOSED PLAN OF DISTRIBUTION TO SETTLEMENT CLASS MEMBERS .................. 10

III. LEGAL STANDARD ............................................................................................... 11

IV. ARGUMENT .......................................................................................................... 13

   A. THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE. ..................... 13

      1. *Plaintiffs and Interim Lead Counsel Have Represented the Settlement Classes Vigorously and Skillfully.* ....................................................................... 13

      2. *The Settlements are the Product of Informed, Arm's-Length Negotiations.* .............. 14

      3. *The Relief Provided to the Settlement Classes is Substantial.* .................................. 15

      4. *The Relief is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal.* ....................................................................................... 16

      5. *The Relief is Adequate Considering the Effectiveness of the Proposed Method of Distributing Relief to the Settlement Classes.* ............................................. 17

      6. *The Relief is Adequate Considering the Terms of the Proposed Award of Attorney's Fees* ....................................................................................... 18

      7. *The Settlements and the Proposed Plan of Allocation Treat Settlement Class Members Equitably Relative to Each Other.* ....................................................... 20

   B. THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23(A) ......................................... 21

      1. *Numerosity is Satisfied* .............................................................................. 22

      2. *Commonality is Satisfied* ........................................................................... 22

      3. *Typicality is Satisfied* ................................................................................ 23

      4. *Adequacy is Satisfied* ................................................................................ 24

   C. THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23(B)(3). ................................... 25

      1. *Common Issues Predominate.* ..................................................................... 25

      2. *A Class Action is Superior to Individual Litigations.* ............................................ 26

   D. INTERIM CO-LEAD COUNSEL SHOULD BE APPOINTED SETTLEMENT CLASS COUNSEL. ................................................................................. 27

E.   PLAINTIFFS WILL BRING A SEPARATE MOTION TO APPROVE THE FORM AND
MANNER OF DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS................................... 28

**V.   CONCLUSION ............................................................................................................ 28**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) ....................................................................17

*Alexander v. Q.T.S. Corp.*,
  1999 WL 573358 (N.D. Ill. July 30, 1999)...................................................25

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)....................................................................26

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................... *passim*

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).............................................................................25

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ...................................................................11

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*,
  747 F.3d 489 (7th Cir. 2014) ...................................................................22

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2020 WL 8256366 (N.D. Ala. Nov. 30, 2020) ...........................................19

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
  897 F.3d 825 ........................................................................................19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)............................................20

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*,
  797 F.3d 426 (7th Cir. 2015) ...................................................................25

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) .....................................................20

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015).....................................................................13

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ..................................................................19

*In re Corrugated Container Antitrust Litig.*,
    1981 WL 2093 (S.D. Tex. June 22, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) ..........15

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) ...................................................................................15

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) .....................................................................................13

*In re Corrugated Container Antitrust Litig.*,
    456 U.S. 998 (1982)...................................................................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
    2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)...........................................................17

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) ..........................................................................16

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ...................................................................................11

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    478 U.S. 1004 (1986).................................................................................................11

*Fauley v. Drug Depot, Inc.*,
    323 F.R.D. 594 (N.D. Ill. 2018) (Kendall, J.)....................................................22, 23, 25

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)................................................................11

*Four in One Co. v. S.K. Foods, L.P.*,
    2014 WL 4078232 (E.D. Cal. Aug. 14, 2014)..........................................................20

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ...................................................................................12

*Goldsmith v. Tech. Sos. Co.*,
    1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)..........................................................14

*Hughes v. Baird & Warner, Inc.*,
    1980 WL 1894 (N.D. Ill. Aug. 20, 1980) ...............................................................26

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................................11, 12

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ...................................................................................23

*Kleen Prods. LLC v. Int'l Paper Co.*,
    2017 WL 5247928 (N.D. Ill. Oct. 17, 2017)............................................................16

*Kohen v. Pac. Inv. Mgmt., Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ...............................................................................13, 22

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010)............................................................16

*In re Lithium Ion Batteries Antitrust Litig.*,
    2020 WL 7264559 (N.D. Cal. Dec. 10, 2020).................................................16

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill., Dec. 20, 2017).................................................15

*McNeely v. Nat'l Mobil Health Care, LLC*,
    2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...........................................17

*Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*,
    2021 WL 1339305 (D.N.M. Apr. 9, 2021) .....................................................18

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019).......................................................................22

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
    231 F.R.D. 280 (N.D. Ill. 2005)........................................................................23

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .....................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
    117 F.3d 721 (2d Cir. 1997)..............................................................................20

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
    281 F.3d 629 (7th Cir. 2002) ...........................................................................15

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ...........................................................................19

*In re Potash Antitrust Litig.*,
    2013 WL 12470850 (N.D. Ill. June 12, 2013) ...............................................19

*In re Processed Egg Prod. Antitrust Litig.*,
    2016 WL 3584632 (E.D. Pa. June 30, 2016)..................................................26

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012).......................................................................16

*Pruitt v. City of Chicago*,
    472 F.3d 925 (7th Cir. 2006) ...........................................................................22

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................11

*Rohlfing v. Manor Care, Inc.*,
  172 F.R.D. 330 (N.D. Ill. 1997) .......................................................25

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ....................................................23, 24

*In re Rubber Chems. Antitrust Litig.*,
  232 F.R.D. 346 (N.D. Cal. 2005) .....................................................23

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) .......................................................24

*Saltzman v. Pella Corp.*,
  606 F.3d 391 (7th Cir. 2010) ............................................................24

*Sec'y of Labor v. Fitzsimmons*,
  805 F.2d 682 (7th Cir. 1986) ............................................................24

*In re Steel Antitrust Litig.*,
  2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ......................................23, 24, 25

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .............................................................17

*In re Superior Beverage/Glass Container Consol. Pretrial*,
  133 F.R.D. 119 (N.D. Ill. 1990) .......................................................17

*Swanson v. Am. Consumer Indus., Inc.*,
  415 F.2d 1326 (7th Cir. 1969) ..........................................................22

*In re Telectronics Pacing Sys. Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................17

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) .........................................................................15

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
  97 F.R.D. 668 (N.D. Ill. 1983) .........................................................23

*In re TikTok, Inc., Consumer Privacy Litig.*,
  556 F. Supp. 3d 1076 (N.D. Ill. 2021) ............................................12, 14, 18

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .........................................................................25

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
   309 F.3d 978 (7th Cir. 2002) ......................................................................12

*United States v. Sinclair Broadcast Group, Inc., et al.*,
   No. 1:18-cv-2609, ECF No. 1 (D.D.C.) ..............................................2, 3, 5, 6

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   219 F.R.D. 661 (D. Kan. 2004) ...................................................................27

*In re Urethane Antitrust Litig.*,
   251 F.R.D. 629 (D. Kan. 2008) ...................................................................23

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) ...................................................................23

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ...................................................................27

*In re Vitamins Antitrust Litig.*,
   2000 WL 1737867 (D.D.C. Mar. 31, 2000) ..................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................22

*Walker v. Nat'l Collegiate Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct.
   25, 2019) .................................................................................................22

**Statutes & Rules**

Sherman Act ...................................................................................................27

Sherman Act Section 1 ....................................................................................3

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P.  23(g) ................................................................................27, 28

Fed. R. Civ. P. 45 .............................................................................................8

**Other Authorities**

The Manual for Complex Litigation (Fourth) § 21.632 (2004)  ...........................12

McLaughlin on Class Actions § 6.23 (17th ed. 2020) ......................................20

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs,[1] by and through their undersigned counsel, respectfully submit this Motion for Preliminary Approval of the Settlement Agreements with the Settling Defendants:[2] CBS, Fox, the Cox Entities, and ShareBuilders ("Motion for Preliminary Approval") and request that the Court enter an Order (1) preliminarily approving the proposed settlements with CBS, Fox, the Cox Entities, and ShareBuilders ("Settlements" or "Settlement Agreements"), and the proposed plan of distribution for each of the Net Settlement Funds (as defined below); (2) provisionally certifying the proposed Settlement Classes (defined below) and appointing Megan Jones of Hausfeld LLP as Settlement Class Counsel; and (3) staying the above-captioned action ("Action") for CBS, Fox, the Cox Entities, and ShareBuilders pending final approval of the respective Settlement Agreements.[3]

## I. INTRODUCTION

Plaintiffs have engaged in extensive negotiations and reached Settlement Agreements that, when approved, will resolve all claims against the Settling Defendants. In exchange, Defendants CBS, the Cox Entities, and Fox will collectively pay $48,000,000.00 (forty-eight million dollars) and provide meaningful cooperation, which will assist Plaintiffs in the prosecution of their claims against the Non-Settling Defendants.[4] Defendant ShareBuilders will provide meaningful

---

[1]     "Plaintiffs" refers to One Source Heating & Cooling, LLC, ThoughtWorx, Inc. d/b/a MCM Services Group, Hunt Adkins, Inc., and Fish Furniture.

[2]     "Settling Defendants" refers to (1) CBS Corp. n/k/a Paramount Global ("CBS"); (2) Fox Corp. ("Fox"); (3) Cox Media Group, LLC ("CMG LLC"), Cox Enterprises, Inc. ("CEI"), CMG Media Corporation (f/k/a Terrier Media Buyer, Inc. and d/b/a Cox Media Group) ("CMG"), and Cox Reps, Inc. ("CoxReps") (CoxReps, CMG LLC, CEI, and CMG are collectively referred to herein as the "Cox Entities"); and (4) ShareBuilders, Inc. ("ShareBuilders").

[3]     All capitalized terms in this brief have the same meaning as in the Settlement Agreements, unless otherwise defined.

[4]     "Non-Settling Defendants" refers to Raycom Media Inc. ("Raycom"), Meredith Corporation ("Meredith"), Griffin Communications, LLC ("Griffin"), Nexstar Media Group, Inc. ("Nexstar"), Dreamcatcher Broadcasting, LLC ("Dreamcatcher"), Sinclair Broadcasting Group, Inc. ("Sinclair"), Tribune Broadcasting Company, LLC ("Tribune Broadcasting") and Tribune Media Company ("Tribune

cooperation, which Lead Counsel also believes will assist Plaintiffs in the prosecution of their claims against the Non-Settling Defendants. Plaintiffs respectfully submit that the four Settlements, which were negotiated by experienced and informed counsel, are fair, reasonable, and adequate and in the best interests of the proposed Settlement Classes.[5]

## II.    BACKGROUND

### A.    <u>Litigation History.</u>

Beginning in the late summer of 2018, individual complaints were filed in jurisdictions across the United States alleging an anticompetitive scheme by television broadcasting companies and their sales representative firms to artificially inflate the price of broadcast television spot advertisements. The cases were subsequently transferred and consolidated before this Court, and Megan Jones of Hausfeld LLP was appointed Interim Lead Counsel. ECF Nos. 1, 170, 356.[6]

Plaintiffs filed a Consolidated Amended Antitrust Class Action Complaint on April 13, 2019, naming as Defendants the companies named as defendants by the DOJ, *see* ECF No. 223, and a Consolidated Second Amended Antitrust Class Action Complaint ("Second Amended Complaint") on September 9, 2019, adding additional Defendants subsequently named by the DOJ.[7] *See* ECF No. 292. Plaintiffs allege that Defendants—firms that together account for billions

---

Media") (collectively, "Tribune," and with Dreamcatcher and Nexstar, "Nexstar Group"), The E.W. Scripps Company ("Scripps"), and TEGNA Inc. ("TEGNA").

[5]      The respective settlement agreements are attached as Exhibit 1 ("CBS Settlement"), Exhibit 2 ("Fox Settlement"), Exhibit 3 ("Cox Entities Settlement"), and Exhibit 4 ("ShareBuilders Settlement") (collectively, the "Settlement Agreements" or "Agreements") to the Declaration of Megan E. Jones ("Jones Decl.") submitted in support of Plaintiffs' Motion for Preliminary Approval. All capitalized defined terms used herein have the same meanings ascribed in the Settlement Agreements.

[6]      On November 13, 2018, the United States Department of Justice ("DOJ") filed its original complaint against Raycom, Meredith, Griffin, Dreamcatcher, Sinclair, and Tribune, later adding Nexstar as a defendant on December 13, 2018. *See United States v. Sinclair Broadcast Group*, *Inc., et al.*, No. 1:18-cv-2609, ECF No. 1 (D.D.C.). A final judgment was entered against all seven defendants on May 22, 2019. *Id*. at ECF Nos. 34-40.

[7]      On June 17, 2019, the DOJ filed a second amended complaint, adding CBS, CEI, Scripps, Fox, and TEGNA as defendants. *See United States v. Sinclair Broadcast Group*, *Inc., et al.*, No. 1:18-cv-2609, ECF

of dollars in annual broadcast television spot advertising revenue—engaged in a unitary scheme to raise the prices of broadcast television spot advertisements to supra-competitive levels by agreeing to fix prices and exchange competitively sensitive information, including pacing data, in violation of Section 1 of the Sherman Act and various state unfair competition laws. *See* ECF Nos. 223, 292.

Plaintiffs' claims have been vigorously prosecuted and contested at every stage of this Action. *See* Jones Decl., ¶ 10. On October 8, 2019, CBS, Fox, CMG LLC, Dreamcatcher, Griffin, Meredith, Nexstar, Raycom, Scripps, Sinclair, TEGNA and Tribune (collectively, "Broadcaster Defendants") filed a motion to dismiss the Second Amended Complaint. ECF No. 328. Following briefing and oral argument, the Court denied the Broadcaster Defendants' motion on November 6, 2020. ECF No. 392. Thereafter, the parties proceeded with discovery, which is still ongoing.

In March 2022, following the production and review of millions of documents from Defendants, Plaintiffs amended their complaint to add ShareBuilders as a Defendant, alleging that it facilitated the alleged conspiracy. *See* ECF No. 556 ("Third Amended Complaint"). ShareBuilders moved to dismiss, and by opinion and order dated August 29, 2022, the Court dismissed ShareBuilders with leave to amend. *See* ECF No. 716 at 16. On October 20, 2022, the Court extended the fact discovery schedule to at least April 15, 2023, *see* ECF 844 and on March 13, the Court vacated the April 15 discovery deadline in light of the ongoing privilege disputes pending before the Special Master. *See* ECF No. 926.

To date, Defendants have collectively produced, and Plaintiffs have been diligently reviewing, nearly fourteen (14) million documents. Jones Decl., ¶ 13. Plaintiffs also received and

No. 42 (D.D.C.). A final judgment was entered against these five defendants on December 3, 2019. *Id.* at ECF Nos. 76-80.

are reviewing thousands of pages of third-party documents in response to subpoenas for documents served on a number of third parties. *Id.*, ¶ 14. Notably, Plaintiffs served dozens of subpoenas on AT&T and Verizon, seeking telephone records for more than 1,200 individuals associated with Defendants, and have received roughly 1.4 million pages of telephone records in response. *Id.* Plaintiffs then synthesized these phone records, which has enabled them to identify instances where certain Defendants' employees were communicating with each other. *Id.* To date, Plaintiffs have filed over twenty (20) discovery motions against one or more Defendants, which, among other things, seek additional documents and custodians, challenge Defendants' assertions of privilege, and seek spoliation sanctions. *Id.*, ¶ 15. Plaintiffs have also taken over thirty (30) depositions. *Id.*

**B.      Settlement Negotiations and Resulting Agreement with CBS.**

Beginning in the Summer of 2021, counsel for Plaintiffs and CBS began a series of vigorous, bilateral settlement discussions, which included email exchanges, telephonic communications, and video conference meetings. *Id.*, ¶ 20. In late 2021, the parties reached an agreement in principle to settle. *Id.* Thereafter, over the course of many months, the parties engaged in arm's-length negotiations regarding the settlement terms, with the final Settlement Agreement executed on May 10, 2023. *Id.*, Ex. 1.

The CBS Settlement is on behalf of a Settlement Class (the "CBS Settlement Class") defined as follows:

> All persons and entities in the United States who purchased broadcast television spot advertising directly from one or more Broadcaster Defendants in a designated market area ("DMA") within which two or more of the Broadcaster Defendants sold broadcast television spot advertisements on broadcast television stations, including anyone who directly paid one or more Defendants for all or a portion of the cost of such broadcast television spot advertisements from January 1, 2014 to and including December 31, 2018 (the "Settlement Class Period"). For the sake of clarity, the DMAs within which two or more of the Broadcaster Defendants sold broadcast television spot advertisements on broadcast television stations are set

4

forth in Appendix A to the consolidated Third Amended Antitrust Class Action Complaint dated March 16, 2022 and attached hereto.

Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, or co-conspirators; the court, court staff, defense counsel, all respective immediate family members of these excluded entities, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

*Id.*, ¶ 3.[8]

Pursuant to the CBS Settlement, CBS will pay $5,000,000 (five million dollars) to settle this Action. *Id.*, ¶ 5. The CBS Settlement provides no reversion of the Settlement Amount or opt-out reduction to CBS.

In addition to the monetary payment, CBS agreed to provide Plaintiffs with valuable cooperation in the continued prosecution of their claims against the remaining Defendants. *Id.*, ¶ 12. This includes CBS providing Plaintiffs with the following: (1) all documents previously produced by CBS to the DOJ in connection with *United States v. Sinclair Broadcast Group, Inc. et al.*; (2) documents responsive to Plaintiffs' First Set of Request for Documents, as limited by the parties' agreements regarding scope, custodians, search terms and privilege; (3) structured data for its stations for the time period from January 1, 2013 through December 31, 2020; (4) an attorney proffer regarding the broadcast television spot advertising industry and facts reasonably known to CBS that are relevant to the claims asserted in the Action; and (5) declarations, certifications, or affidavits regarding the authenticity and admissibility of documents. *Id.* This cooperation—some of which CBS has already provided to Plaintiffs and all of which will be made available to Plaintiffs if the Court grants preliminary approval of the CBS Settlement—is valuable

---

[8]     This is the ***same*** class definition in all four Settlement Agreements and is hereinafter referred to as the "Settlement Classes."

to Plaintiffs and the Class members they represent as this case proceeds to trial. Jones Decl., ¶ 21.

In consideration for the above-specified relief, Plaintiffs and the proposed CBS Settlement Class agree, among other things, to release claims against CBS and Releasees (as defined in the CBS Settlement Agreement) that were, or could have been, brought in this Action arising from the conduct alleged in Action. *Id*., Ex. 1, ¶ 4. The release does not extend to any other Defendants, and importantly, CBS's sales remain in the case for purposes of joint and several liability. *Id*., ¶ 17.

### C.     Settlement Negotiations and Resulting Agreement with Fox.

Plaintiffs likewise reached the Fox Settlement following hard fought and arm's-length negotiations. Jones Decl., ¶ 22. The negotiations began in or around July of 2021. *Id*. After several months of negotiations between the parties, which included email exchanges, telephonic communications and video conference meetings, Plaintiffs and Fox reached an agreement in principle to settle in October of 2021. *Id*. The parties then engaged in months of negotiations regarding a final Settlement Agreement, which was executed on May 9, 2023. *Id*., Ex. 2.

The Fox Settlement is on behalf of the Fox Settlement Class, which has the same definition as the CBS Settlement Class, as set forth above. *Id.*, Ex. 2, ¶ 3. Pursuant to the Fox Settlement, Fox will pay $6,000,000 (six million dollars) to settle this Action. *Id*., ¶ 5. The Fox Settlement provides no reversion of the Settlement Amount or opt-out reduction to Fox.

In addition to the monetary payment, Fox agreed to provide Plaintiffs with valuable cooperation in the continued prosecution of their claims against the remaining Defendants. *Id*., ¶ 12. This includes Fox providing Plaintiffs with the following: (1) all documents produced by Fox to the DOJ in connection with *United States v. Sinclair Broadcast Group, Inc. et al.*; (2) documents responsive to Plaintiffs' First Set of Request for Documents; (3) structured data for its stations for the time period from January 1, 2013 through December 31, 2020; (4) an attorney proffer(s) regarding the broadcast television spot advertising industry and facts reasonably known to Fox

6

that are relevant to the claims asserted in the Action; (5) witnesses for up to two depositions; and (6) declarations, certifications, or affidavits, at the request of Plaintiffs' counsel, regarding the authenticity and admissibility of documents. *Id*. This cooperation—some of which Fox has already provided to Plaintiffs and all of which will be made available to Plaintiffs if the Court grants preliminary approval of the Fox Settlement—is valuable to Plaintiffs and the Class members they represent as this case proceeds to trial. Jones Decl., ¶ 23.

In consideration for the above-specified relief, Plaintiffs and the proposed Fox Settlement Class agree, among other things, to release claims against Fox and Releasees (as defined in the Fox Settlement Agreement) that were, or could have been, brought in this Action arising from the conducted alleged in the Action. *Id*., Ex. 2, ¶ 4. The release does not extend to any other Defendants, and importantly, Fox's sales remain in the case for purposes of joint and several liability. *Id*., ¶ 17.

### D.    Settlement Negotiations and Resulting Agreement with the Cox Entities.

Plaintiffs likewise reached the Cox Entities Settlement following hard fought and arm's-length negotiations. Jones Decl., ¶ 24. The initial negotiations were mediated by Michelle Yoshida of Phillips ADR in January of 2022. *Id*. While the parties did not reach an agreement during the mediation, thereafter, they continued to engage in direct negotiations, including email exchanges, telephonic communications, and video conference meetings. *Id*. Plaintiffs and the Cox Entities reached an agreement in principle to settlement in February 2022. *Id*. The parties then engaged in additional arm's-length negotiations regarding the detailed terms of the settlement to reach a final Settlement Agreement, which was executed on May 10, 2023. *Id.*, Ex. 3.

The Cox Entities Settlement is on behalf of the Cox Entities Settlement Class, which also has the same definition as the CBS Settlement Class, as set forth above. *Id.*, ¶ 3.

Pursuant to the Cox Entities Settlement, the Cox Entities will pay an aggregate total of

$37,000,000 (thirty-seven million dollars) to settle this Action. *Id.*, ¶ 5. Rules 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified. Plaintiffs and the Cox Entities have entered into one such agreement: the Cox Entities have the right to rescind the Settlement Agreement if opt-outs meet or exceed certain criteria set forth in a confidential supplemental agreement (which shall be provided to the Court for *in camera* inspection upon request). Jones Decl., ¶ 25.

In addition to the monetary payment, the Cox Entities agreed to provide Plaintiffs with valuable cooperation in the continued prosecution of their claims against the remaining Defendants. *Id.*, Ex. 3, ¶ 12. This includes the Cox Entities providing Plaintiffs with the following: (1) documents responsive to Plaintiffs' Rule 45 subpoena served on CoxReps; (2) assistance with respect to questions about the transactional data that CMG produced; (3) attorney proffers related to Cox Reps and CMG, including a description of facts reasonably known to CoxReps and/or CMG that are relevant to the claims asserted in the Action; (4) declarations, certifications, or affidavits, regarding the authenticity and admissibility of documents; (5) witnesses for one 30(b)(6) deposition each of CMG and CoxReps; and (6) up to five witnesses at the trial against the remaining Defendants. *Id.* This cooperation—some of which the Cox Entities have already provided to Plaintiffs and all of which will be made available to Plaintiffs if the Court grants preliminary approval of the Cox Entities Settlement—is valuable to Plaintiffs and the Class members they represent as this case proceeds to trial. Jones Decl., ¶ 25.

In consideration, Plaintiffs and the proposed Cox Entities Settlement Class agree, among other things, to release claims against the Cox Entities and Releasees (as defined in the Cox Entities Settlement Agreement) that were, or could have been, brought in this Action arising from the conducted alleged in the Action. *Id.*, Ex. 3, ¶ 4. The release does not extend to any other

Defendants, and importantly, the Cox Entities' sales remain in the case for purposes of joint and several liability. *Id.*, ¶ 17.

E. **<u>Settlement Negotiations and Resulting Agreement with ShareBuilders.</u>**

Plaintiffs likewise reached the ShareBuilders Settlement following hard fought and arm's-length negotiations. Jones Decl., ¶ 26. Plaintiffs and ShareBuilders initially discussed settlement prior to the filing of Plaintiffs' Third Amended Complaint which added ShareBuilders as a Defendant. *Id.* Those discussions ultimately did not bear fruit. *Id.* Following the Court's dismissal of ShareBuilders as a Defendant in August 2022, the parties restarted their settlement discussions. *Id.* Following a mediation session with the Honorable Michael J. Reagan (Ret.) of JAMS in October 2022, which included a proffer regarding ShareBuilders' financial status and ability to pay any settlement amount, the parties reached an agreement in principle to settle for cooperation only. *Id.* The parties then engaged in additional arm's-length negotiations regarding the detailed terms of the settlement to reach a final Settlement Agreement, which was executed on May 10, 2023. *Id.*, Ex. 4.

The ShareBuilders Settlement is on behalf of the ShareBuilders Settlement Class, which also has the same definition as the CBS Settlement Class, as set forth above. *Id.*, ¶ 3.

Pursuant to the ShareBuilders Settlement, ShareBuilders agreed to provide Plaintiffs with valuable cooperation in the continued prosecution of their claims against the remaining Defendants. *Id.*, ¶ 8. This includes ShareBuilders providing Plaintiffs with the following: (1) documents responsive to Plaintiffs' First Set of Requests for Production of Documents served on ShareBuilders; (2) a demonstration of how it uses its algorithm(s) and related electronic code and an ability to inspect the algorithm(s) under mutually agreed terms; (3) assistance with respect to questions about the algorithm(s); (4) attorney proffers regarding the broadcast television spot advertising industry and facts known to ShareBuilders that are relevant to the claims asserted in

9

the Action; (5) up to four witnesses, including Erin Koller and Austin Locke, for witness interviews (the "ShareBuilders Witnesses"); (6) up to four of the ShareBuilders Witnesses for depositions; (7) up to four of the ShareBuilders Witnesses to testify at trial; (8) a 30(b)(6) deposition with up to ten (10) topics; and (9) declarations, certifications, or affidavits regarding the authentication and admissibility of ShareBuilders' documents. *Id*. This cooperation—some of which ShareBuilders has already provided to Plaintiffs and all of which will be made available to Plaintiffs if the Court grants preliminary approval of the ShareBuilders Settlement—is valuable to Plaintiffs and the Class members they represent as this case proceeds to trial. Jones Decl., ¶ 27.

In consideration, Plaintiffs and the proposed ShareBuilders Settlement Class agree, among other things, to release claims against ShareBuilders and Releasees (as defined in the ShareBuilders Settlement Agreement) that were, or could have been, brought in this Action arising from the conducted alleged in the Third Amended Complaint. *Id*., Ex. 4, ¶ 4. The release does not extend to any other Defendants, and the non-settling Defendants remain jointly and severally liable for the full amount of damages caused by the alleged conspiracy. *Id*., ¶ 14.

## F.    The Proposed Plan of Distribution to Settlement Class Members.

Subject to the Court's approval and direction, the proceeds from the CBS, Fox, and the Cox Entities Settlements, net of Court-approved attorneys' fees, litigation expenses, claims administration costs, and service awards for the class representatives (the "Net Settlement Funds"), will be distributed, to the extent economically feasible, to members of the respective Settlement Classes pursuant to a *pro rata* plan of allocation based upon the amounts claiming Settlement Class members paid to the Broadcaster Defendants for broadcast television spot advertising during the Settlement Class Period.[9] As discussed in more detail below, such a *pro rata* distribution is fair

---

[9]    If the total final claim payment is equal to or less than $5.00, no distribution will be made to that claimant, and the claimant will be notified that there will be no distribution given the *de minimis* value of

and reasonable because it will compensate Settlement Class members commensurate with the degree of alleged harm suffered.

## III.  LEGAL STANDARD

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.") (*citing E.E.O.C. v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 888-89 (7th Cir. 1985)), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 312-13.

A class action, however, may only be settled with court approval. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002) ("Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action."). Before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e). And before notice is given to class members, the court must make a preliminary evaluation of the proposed settlement. The Manual for Complex Litigation explains:

> First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

the claim.

11

The Manual for Complex Litigation (Fourth) § 21.632 (2004).

The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99. Rule 23(e), which was amended in 2018 to include its own four-factor test for finding a proposed class action settlement fair, reasonable, and adequate, considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, however, a court need not conduct a full inquiry into whether a settlement satisfies Rule 23(e); rather, it need only determine whether a proposed settlement is "within the range of possible approval" and whether it is likely that the class will be certified. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval'"); *see also In re TikTok, Inc., Consumer Privacy Litig.*, 556 F. Supp. 3d 1076, 1080-83 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)).

## IV.     ARGUMENT

### A.     The Proposed Settlements are Fair, Reasonable, and Adequate.

#### 1.     *Plaintiffs and Interim Lead Counsel Have Represented the Settlement Classes Vigorously and Skillfully.*

Rule 23(e)(2)(A) requires that "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Adequacy is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pac. Inv. Mgmt., Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009). Plaintiffs and Interim Lead Counsel have more than adequately represented the proposed Settlement Classes.

Plaintiffs and the proposed Settlement Classes do not have antagonistic or conflicting claims. Indeed, they are purchasers of broadcast television advertising spots asserting the same claims against the same Defendants to recover for the same alleged injury inflicted by Defendants. Plaintiffs have participated in this Action and are genuinely concerned about the alleged conduct's effects on other similarly situated purchasers, and there has been no evidence, let alone any real probability, that Plaintiffs have antagonistic interests with other members of the Settlement Classes. *See, e.g., In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 394 (3d Cir. 2015) (finding that there is no fundamental intra-class conflict to prevent class certification where all class members pursuing damages under the same statutes and the same theories of liability); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981), *cert. denied*, 456 U.S. 998 (1982) (certifying a settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

Further, Plaintiffs and Interim Lead Counsel will continue to litigate this case vigorously and competently. As demonstrated when she sought appointment, Interim Lead Counsel is qualified, experienced, and thoroughly familiar with antitrust class action litigation. *See also* ECF No. 170. Interim Lead Counsel has obtained an excellent result for the Settlement Classes and will continue to do so as this case proceeds against the non-settling Defendants through discovery, class certification, summary judgment, and trial. Accordingly, Plaintiffs and Interim Lead Counsel have adequately represented the Class.

### 2. The Settlements are the Product of Informed, Arm's-Length Negotiations.

The Settlements are the product of informed, arm's-length negotiations. As described above, Plaintiffs and Defendants have been engaged in protracted litigation over the course of more than four years, involving the review of more than fourteen (14) million documents, the review of deposition transcripts from the DOJ investigations, and extensive motion practice. *See* Part II-A, *supra*. In light of the significant amount of discovery conducted, Plaintiffs possessed sufficient information to reach fair, reasonable, and adequate settlements.

Moreover, the Settlements are the product of extensive arm's-length settlement negotiations, which included numerous rounds of give-and-take between Interim Lead Counsel and the respective Settling Defendants' counsel. *See* Jones Decl., ¶ 18. The negotiations were hard-fought and conducted in good faith, resulting fair, reasonable, and adequate Settlements. *Id*. Where, as here, a settlement is proposed by experienced counsel and results from arm's-length negotiations, a presumption that the settlement is fair and reasonable is appropriate. *Goldsmith v. Tech. Sos. Co.*, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995). Such a presumption reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). *See TikTok*, 565 F. Supp. 3d at 1088

14

n.5 (collecting cases).

### 3. The Relief Provided to the Settlement Classes is Substantial.

In assessing whether a settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), the Court should consider the following:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[, if required]; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

The CBS, Fox, and Cox Entities Settlements provide $5 million, $6 million, and $37 million respectively, totaling $48 million in monetary relief. These amounts represent a significant relief for the Settlement Classes. Importantly, the proposed Settlements do not affect the potential full recovery of damages for the Settlement Classes under the antitrust laws; the remaining Defendants will be jointly and severally liable for injuries incurred because of the conspiracy Plaintiffs allege. *See Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output.") (citing *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)).

In addition, if approved, each of the Settlements provides significant cooperation that would otherwise be obtainable only through protracted litigation. The cooperation will provide Plaintiffs with strategic advantages and increase the value of this case to the absent class members as Plaintiffs continue to litigate against the remaining Defendants. For decades, courts around the country have recognized the benefit of cooperation in settlements in antitrust class actions, including in cooperation-only settlements. *See, e.g.*, *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *10, *12 (N.D. Ill., Dec. 20, 2017) ("[T]he [settlement's] cooperation agreement [will] save the plaintiffs from trying to determine the right questions to ask the right people, a challenge plaintiffs

often face in civil discovery [and] will serve to minimize the costs and challenges the plaintiffs face in their case. . . ."); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, at *16 (S.D. Tex. June 22, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (noting that the cooperation provisions in the settling parties' agreements "constituted a substantial benefit to the class"); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting that the cooperation provisions of the settling parties' agreement weigh in favor of court approval); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) ("[T]he Court recognizes that [settling Defendant's] agreement to cooperate with Plaintiffs throughout the course of pre-trial proceedings and trial is valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants."); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wis. 2010) (recognizing the value of and approving a cooperation only settlement).

In sum, Interim Lead Counsel thoroughly evaluated the relative strengths and weaknesses of the respective litigation positions and determined that each Settlement brings substantial benefits to the proposed Settlement Classes at an early stage in this Action and avoids the delay and uncertainty of continuing protracted litigation with the Settling Defendants. Jones Decl., ¶ 19. The benefits of Settlements outweigh the costs and risks associated with continued litigation with Settling Defendants and weigh in favor of granting preliminary approval.

### 4. The Relief is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal.

It has long been recognized that "[a]ntitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) (collecting cases from across the circuits); *see also Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *5

(N.D. Ill. Oct. 17, 2017) ("Antitrust cases are particularly complex and risky").

While Plaintiffs believe the case is strong and that they would achieve success on the merits, these Settlements mitigate that risk and protect the Settlement Classes. *See, e.g.*, *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, partial settlements often play a vital role in resolving class actions") (cleaned up); *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990) ("The 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages. None of these risks should be underestimated."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323-24 (3d Cir. 2011) (noting that a settlement represents a compromise that takes into account risks, expense and delay of further litigation); *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (noting that a settlement avoids costs, delays, and other problems associated with complex class actions).

Absent the Settlements, members of the Settlement Classes would likely need to wait years before any recovery, with summary judgment briefing not yet scheduled, and trial and an inevitable lengthy appeals period thereafter. Thus, the Settlements assures that there will be some monetary recovery now, the value of which courts often recognize. *See, e.g.*, *McNeely v. Nat'l Mobil Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) (noting that the class was "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted"); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (cleaned up).

### 5. *The Relief is Adequate Considering the Effectiveness of the Proposed Method of Distributing Relief to the Settlement Classes.*

Plaintiffs propose to distribute the Net Settlement Funds *pro rata*, by check or electronic

17

means, based on individual Settlement Class members' purchases of broadcast television advertising spots during the Settlement Class Period, which treats all members of the Settlement Classes equitably. Such a *pro rata* distribution is fair and reasonable because it will compensate members of the Settlement Classes commensurate with the degree of alleged harm suffered.

For example, Settlement Class members that purchased more broadcast television advertising spots (and thus likely suffered more in alleged damages than Settlement Class members that purchased fewer spots) will receive proportionately more from the Settlements. In other words, the method of distribution will ensure that Settlement Class members are compensated in proportion to the alleged injuries they suffered. Such *pro rata* distribution is the norm in complex class action antitrust settlements. *See* Part IV.A.7, *infra*.

Plaintiffs' proposed allocation plan will be efficient and streamlined. Plaintiffs' proposed method of distribution includes mailing and emailing notice to potential members of the Settlement Classes, which are widely accepted as an effective form of distributing notice in class actions. *See, e.g.*, *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, 2021 WL 1339305, at *7 (D.N.M. Apr. 9, 2021)*; *TikTok*, 565 F. Supp. 3d at 1091-92 (approving email notice). This plan of allocation will ensure the Net Settlement Funds are distributed to as many members of the Settlement Classes as possible, as efficiently and fairly as possible.

> **6.** ***The Relief is Adequate Considering the Terms of the Proposed Award of Attorney's Fees***

At a later date, Plaintiffs' Counsel will submit an application(s) to the Court for: (i) an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount, (ii) reimbursement of expenses and costs reasonably and actually incurred in connection with prosecuting the action, not to exceed $6,000,000 (six million dollars); and (iii) reimbursement of

expenses and costs incurred in connection with settlement notice and administration.[10]

Courts in this Circuit routinely award attorneys' fees of one-third of settlement funds in class actions, including in analogous antitrust cases. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (recognizing presumption that attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total amount of money going to class members and their counsel"); *In re Potash Antitrust Litig.*, 2013 WL 12470850, at *1 (N.D. Ill. June 12, 2013) (finding an award of one-third of the settlement funds reasonable).

Plaintiffs will also seek an interim incentive award of $5,000 (five thousand dollars) for each of the four class representatives. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A]n incentive award is appropriate if it is necessary to induce an individual to participate in the suit . . . ."). To determine if an incentive award is warranted, a district court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (internal quotation marks omitted). Here, Plaintiffs have been active participants in this Action and have spent time producing documents and responding to interrogatories. Jones Decl., ¶ 16. Incentive awards are appropriate in these circumstances.

---

[10]     Consistent with practice in class actions under Rule 23, Plaintiffs will file a separate motion addressing their requested attorneys' fees and litigation expenses in advance of the opt-out and objection deadline established by the Court. Prior to notice being given to the Settlement Class, the Court must determine whether it will likely be able to approve the proposal under Rule 23(e)(2)—that is, whether the requested percentage is within the range typically approved by courts. After Settlement Class members have had the opportunity to weigh in on the request, and a final approval hearing is held, the Court will decide whether to approve the requested attorneys' fees and litigation expenses. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at *23 (N.D. Ala. Nov. 30, 2020) (approving, preliminarily, a proposed fee percentage that was "in line with benchmarks" in the Circuit, noting that settlement class members would receive the formal "fee and expense request and will have an opportunity to object to any such award prior to final approval").

7. **The Settlements and the Proposed Plan of Allocation Treat Settlement Class Members Equitably Relative to Each Other.**

Rule 23(e)(2)(D) requires that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Consideration under this Rule "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. A plan of allocation will pass muster so long as "it has a reasonable, rational basis, particularly if experienced and competent class counsel support it." McLaughlin on Class Actions § 6.23 (17th ed. 2020) (cleaned up).

Here, the Settlements and the proposed plan of allocation treat members of the Settlement Classes equitably, in that every person or entity that purchased broadcast television advertising spots during the Class Period is subject to the same terms of the Settlements, and the proposed plan of allocation will provide for relief in proportion to the harm allegedly suffered. Additionally, the release applies uniformly to all members of the Settlement Classes and does not affect the apportionment of the relief to them. *Pro rata* distributions are regularly approved in antitrust cases and other types of complex class action litigation. *See, e.g.,* In re Vitamins Antitrust Litig., 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable.").[11] Accordingly, this factor will likely weigh in favor

---

[11]     *See also* In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 135 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("[A] pro rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims."); Four in One Co. v. S.K. Foods, L.P., 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"); In re Citric Acid Antitrust Litig., 145 F. Supp. 2d 1152, 1154 (N.D. Cal.

of granting preliminary approval.

### B.     The Proposed Settlement Classes Satisfy Rule 23(a)

In addition to preliminarily approving the Settlements, Plaintiffs respectfully request that

the Court certify the CBS Settlement Class, the Fox Settlement Class, the Cox Entities Settlement

Class, and the ShareBuilders Settlement Class, each of which has been defined as follows:

> All persons and entities in the United States who purchased broadcast television
> spot advertising directly from one or more Broadcaster Defendants in a designated
> market area ("DMA") within which two or more of the Broadcaster Defendants
> sold broadcast television spot advertisements on broadcast television stations,
> including anyone who directly paid one or more Defendants for all or a portion of
> the cost of such broadcast television spot advertisements from January 1, 2014 to
> and including December 31, 2018 (the "Settlement Class Period"). For the sake of
> clarity, the DMAs within which two or more of the Broadcaster Defendants sold
> broadcast television spot advertisements on broadcast television stations are set
> forth in Appendix A to the consolidated Third Amended Antitrust Class Action
> Complaint dated March 16, 2022 and attached hereto.

> Excluded from the Settlement Class are Defendants, their parent companies,
> subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents,
> or co-conspirators; the court, court staff, defense counsel, all respective immediate
> family members of these excluded entities, federal governmental entities and
> instrumentalities of the federal government, and states and their subdivisions,
> agencies and instrumentalities.

The proposed Settlement Classes should be certified because it satisfies the four

requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

representation—and Rule 23(b)(3)—namely, that "questions of law or fact common to class

members predominate over any questions affecting only individual members," and that class action

treatment is the "superior" method to "fairly and efficiently adjudicate[e] the controversy." Fed.

R. Civ. P. 23(b)(3). Moreover, according to the Supreme Court, the class certification burden is

---

2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is
generally reasonable."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *5-8 (N.D.
Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon proportional value of price-fixed
component in finished product).

lower for "settlement-only class certification," because the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citations omitted). The Court's focus is instead "on whether a proposed class has sufficient unity so that absent class members can fairly be bound by" the settlements. *Id.* at 621.

As shown below, this standard is readily satisfied in this case, and the Settlement Classes should be certified.

### 1. Numerosity is Satisfied

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)(1) is easily satisfied here because there are tens of thousands of members of the Settlement Classes and joinder would be impracticable. *See Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (finding that numerosity was satisfied where "it's reasonable to believe [the class is] large enough to make joinder impracticable and thus justify a class action suit.") (citing *Kohen*, 571 F.3d at 677-78); *Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594, 599 (N.D. Ill. 2018) (Kendall, J.) ("Numerosity is typically satisfied where a potential class representative can identify at least 40 members.") (citing *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)).

### 2. Commonality is Satisfied

Commonality requires "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). A question is "common to the class if it generates a common answer, such that determination of the question will 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 214 (N.D. Ill. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019). "For purposes of Rule 23(a)(2), even a single common question will suffice." *Id.* (cleaned up).

Common questions in this Action include whether Defendants entered into an unlawful combination, contract, or conspiracy to artificially inflated prices for broadcast television spot advertising above competitive levels, whether harm was suffered, and the proper measure of damages. Because proof of each of these questions will be common to the class, the commonality requirement of Rule 23(a)(2) is satisfied. *See, e.g., Thillens, Inc. v. Cmty. Currency Exch. Ass'n, 97 F.R.D. 668, 677 (N.D. Ill. 1983)* ("The overriding common issue of law is to determine the existence of a conspiracy . . . ."); *In re Urethane Antitrust Litig., 768 F.3d 1245, 1256 (10th Cir. 2014)* (affirming trial court's certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

### 3. *Typicality is Satisfied*

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "Where claims stem from the same *event*, *practice*, or legal theory, they are said to be typical." *Fauley*, 323 F.R.D. at 600 (Kendall, J.) (citing *Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998)*) (emphasis in original). Typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc., 231 F.R.D. 280, 282 (N.D. Ill. 2005)*. Thus, factual differences among class members do not defeat typicality. *See Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992)* ("The fact that there is some factual variation among the class grievances will not defeat a class action."). Courts regularly find typicality satisfied in cases alleging a price-fixing conspiracy. *See, e.g., In re Steel Antitrust Litig., 2015 WL 5304629, at \*3 (N.D. Ill. Sept. 9, 2015)* (finding typicality

satisfied where "plaintiffs and all class members alleg[e] the same antitrust violations by defendants") (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) (alterations in original); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 640 (D. Kan. 2008) *aff'd*, 768 F.3d 1245 (10th Cir. 2014)).

Typicality is satisfied here because the Plaintiffs each allege the same legal theories and fact issues that underlie the rest of the Settlement Classes' claims—that Defendants conspired to fix prices and exchange competitively sensitive information to derail the competitive process and avoid price competition. *See Steel*, 2015 WL 5304629, at *4 (finding typicality where "the claims of each named representative and class members are based on the same legal theory and arise from the same course of conduct").

### 4.    *Adequacy is Satisfied*

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where the class representatives have retained competent counsel, have a sufficient interest in the outcome to ensure the case is vigorously prosecuted, and do not have interests antagonistic to those of the class. *See Steel*, 2015 WL 5304629, at *4 (citing *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010)).

As discussed in more detail above, the adequacy requirement is easily satisfied here. *See* Part IV.A.1, *supra*. Plaintiffs retained qualified and competent counsel who are highly experienced in prosecuting class actions generally, and antitrust class actions in particular; the pre-filing investigation and work performed since the initial complaint was filed show that Plaintiffs and their counsel are vigorously prosecuting this case; and Plaintiffs' interests in this Action are aligned with, and not antagonistic to, those of the Settlement Classes they seek to represent. *See Rosario*, 963 F.2d at 1018 (concluding that a class is fairly and adequately represented if class

representatives' claims are not antagonistic or conflicting with claims of the class) (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)).

**C.      The Proposed Settlement Classes Satisfy Rule 23(b)(3).**

Once the four prerequisites of Rule 23(a) are met, Plaintiffs must show the proposed Settlement Classes also satisfy Rule 23(b). The proposed Settlement Classes satisfy Rule 23(b)(3) by showing that "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fauley*, 323 F.R.D. at 602 (Kendall, J.) (quoting Fed. R. Civ. P. 23(b)(3)). *See also id.* (citing *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*, 797 F.3d 426, 443 (7th Cir. 2015)).

### 1.      *Common Issues Predominate.*

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotation omitted). Predominance requires that "*questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

In antitrust conspiracy cases such as this one, courts have consistently found that common issues regarding the existence and scope of the conspiracy predominate over individual issues. *See, e.g.*, *Steel*, 2015 WL 5304629, at *5 ("In many cases alleging a violation of antitrust laws,

25

predominance is a test 'readily met.'") (quoting *Amchem*, 521 U.S. at 625)).[12] This rule is particularly true in the context of settlement classes, where "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620-21.[13] In the settlement context, the Supreme Court has noted that "the predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Id.* at 623 n.18.

Here, Plaintiffs' and the Settlement Classes' claims all focus on the same operative set of facts and legal theories. They were all allegedly harmed by the same conduct by Defendants and evidence of the alleged conspiracy would be entirely common if presented in a litigation posture, which is not at issue here because the proposal is there would be no trial. Thus, the predominance requirement for the Settlement Classes is met here, as "[a]ll claims arise out of the same course of defendants' conduct; [and] all share a common nucleus of operative fact, supplying the necessary cohesion." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

### 2. A Class Action is Superior to Individual Litigations.

In considering class certification, the Court must balance the advantages of a class action with other available methods of adjudication, considering (a) class members' interests in individual litigation, (b) the extent of ongoing individual litigation, (c) the desirability of centralizing the

---

[12]    *See also Alexander v. Q.T.S. Corp.*, 1999 WL 573358, at *10 (N.D. Ill. July 30, 1999) ("It is well established that the question of conspiracy predominates in antitrust cases."); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 336-37 (N.D. Ill. 1997) ("The weight of authority in antitrust cases indicates that the question of the existence of a conspiracy in restraint of trade is one that is common to all potential plaintiffs, and the importance of this question usually warrants treating them as a class."); *Hughes v. Baird & Warner, Inc.*, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) (noting that "[t]he existence of a conspiracy is the common issue in this case," and that this issue "predominates over issues affecting only individual sellers").

[13]    *See also, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016) (holding that certain litigation class concerns, like common impact, fall away in the context of a settlement class because they are trial management issues).

claims in one forum, and (d) difficulties in managing a class action trial. Fed. R. Civ. P. 23(b)(3)(A)-(D).

In most antitrust class actions, although the conduct at issue generates widespread harm, individual recoveries are relatively modest, at least compared to the millions of dollars in attorney time and litigation expenses required to recover them. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (recognizing that in antitrust litigation it can be "prohibitively expensive for class members with small claims to proceed individually" as litigation "require[s] significant fees toward expert analysis and testimony"). For this reason, the first superiority factor favors certifying the Settlement Class. And likely because of that same reason, there are no individual Sherman Act actions being prosecuted outside of this MDL, such that the second superiority factor favors certification too.

As to the third superiority factor, individual suits would be "grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation" while a "class action is by far the more superior method." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004). And as to the fourth superiority factor, in a settlement-only class certification, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

Accordingly, all four superiority factors favor certification here.

### D.     Interim Lead Counsel Should Be Appointed Settlement Class Counsel.

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and

(4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Interim Lead Counsel readily meet these requirements and should be appointed as Settlement Class Counsel. As discussed above, Interim Lead Counsel undertook significant effort in identifying and asserting the claims in this Action. She has significant experience litigating antitrust class actions, as this Court implicitly recognized when it appointed Interim Lead Counsel to represent the proposed class pursuing claims against all Defendants. *See* ECF No. 170. Interim Lead Counsel has vigorously prosecuted this case and committed the substantial resources necessary to effectively litigate it, including significant out of pocket litigation expenses and thousands of hours of attorney time, with no guarantees of remuneration. For these reasons, the Court should appoint Interim Lead Class Counsel as Settlement Class Counsel.

### E.    **Plaintiffs Will Bring a Separate Motion to Approve the Form and Manner of Dissemination of Notice to the Settlement Class.**

Plaintiffs move under Rule 23(e) to determine whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," such that "giving notice [to the Settlement Class] is justified." Fed. R. Civ. P. 23(e)(1)(B). Plaintiffs will file a separate motion to approve the form and manner of dissemination of notice to the members of the Settlement Class, which will include deadlines for members of the Settlement Classes to object to, or opt out of, one or more of the Settlements, as well as claims administration deadlines, and a proposed final approval hearing date for the Court's consideration.

## V.    **CONCLUSION**

Plaintiffs respectfully submit that their Motion for Preliminary Approval should be granted, the Settlement Classes certified under Rules 23(a) and 23(b)(3), and Interim Lead Counsel appointed Settlement Class Counsel under Rule 23(g).

Dated: May 26, 2023

Respectfully submitted,

*/s/ Robert J. Wozniak*
Robert J. Wozniak
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
rwozniak@fklmlaw.com

*Liaison Counsel*

Hilary K. Scherrer
Nathaniel C. Giddings
Farhad Mirzadeh
In Kyung "Jane" Shin
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 540-7200
hscherrer@hausfeld.com
ngiddings@hausfeld.com
fmirzadeh@hausfeld.com
jshin@hausfeld.com

Megan E. Jones
**HAUSFELD LLP**
600 Montgomery St. #3200
San Francisco, CA 94111
(415) 633-1908
(415) 358-4980
mjones@hausfeld.com

*Lead Counsel*

Meegan Hollywood
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite
3600 New York, NY
10022
(212) 980-7400
mhollywood@robinskaplan.com

Kimberly A. Justice
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6487
kjustice@fklmlaw.com

*Plaintiffs' Steering Committee*

29