**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION | Case No. 1:18-CV-06785<br>MDL No. 2867<br><br>Hon. Virginia M. Kendall |

**DEFENDANT NEXSTAR MEDIA GROUP, INC.'S OPPOSITION TO PLAINTIFFS' DISCOVERY MOTION NO. 21: TO COMPEL DEFENDANT NEXSTAR GROUP TO PRODUCE WHITEPAPERS SUBMITTED TO THE U.S. DEPARTMENT OF JUSTICE**

## TABLE OF CONTENTS


**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

**I. Plaintiffs Know that No Pacing Investigation White Papers Exist—But They Willfully Omitted This Critical Fact in Their Motion.** .......... **2**

**II. Plaintiffs Seek Documents Outside the Parties' Longstanding Discovery Agreement.** .......... **3**

**III. Plaintiffs Misrepresent the Parties' Agreement.** .......... **6**

**IV. This Motion Is Untimely.** .......... **7**

**V. Plaintiffs Are Not Entitled to Costs Under Rule 37.** .......... **8**

**CONCLUSION** .......... **10**

## TABLE OF AUTHORITIES

**Cases**

*Cent. States, Se. & Sw. Areas Pension Fund v. Wingra Redi-Mix, Inc.*,
No. 21 C 3684, 2023 WL 199360 (N.D. Ill. Jan. 17, 2023) ........ 5

*Druding v. Care Alts.*,
No. 08-2126(JBS/AMD), 2017 WL 11461795 (D.N.J. June 21, 2017) ........ 4

*Forth v. Walgreen Co.*,
No. 17 C 2246, 2019 WL 10255628 (N.D. Ill July 10, 2019) ........ 9

*In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*,
No. 3:12-md-02385-DRHSCW, 2013 WL 6486921 (S.D. Ill. Dec. 9, 2013) ........ 5

*In re Sulfuric Acid Antitrust Litig.*,
235 F.R.D. 407 (N.D. Ill. 2006) ........ 7

*Kalra v. Alder Pollock & Sheenan, P.C.*,
No. 3:18-cv-00260-KAD, 2020 WL 7828790 (D. Conn. Dec. 31, 2020) ........ 5

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
422 F. Supp. 2d 934 (N.D. Ill. 2006) ........ 5

*Northington v. H&M Int'l*,
No. 08-cv-6297, 2011 WL 663055 (N.D. Ill. Jan. 12, 2011) ........ 5

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) ........ 5

*Pierce v. Underwood*,
487 U.S. 552 (1988) ........ 9

*Pinks v. M&T Bank Corp.*,
No. 13-CV-1730, 2016 WL 1216813 (S.D.N.Y. Mar. 25, 2016) ........ 4

*Samuel, Son & Co. v. Beach*,
No. 13-128, 2014 WL 5089718 (W.D. Pa. Oct. 9, 2014) ........ 3

*Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*,
424 F.3d 542 (7th Cir. 2005) ........ 8

*Widevine Techs., Inc. v. Verimatrix, Inc.*,
No. 2-07-cv-321, 2009 WL 4884397 (E.D. Tex. Dec. 10, 2009) ........ 5

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................ 10

Fed. R. Civ. P. 26 ........................................................................................................ 5

Fed. R. Civ. P. 29 advisory committee's note to 1993 amendment.............................................. 4

Fed. R. Civ. P. 37 ................................................................................................... 9, 10

Local Rule 37.2 ........................................................................................................ 3, 4

## INTRODUCTION

Plaintiffs' Motion to Compel demands that Nexstar produce any "white papers" sent to the U.S. Department of Justice ("DOJ") (1) in connection with the DOJ's investigation into exchanges of pacing information (the "Pacing Investigation") or (2) DOJ's investigation of the Sinclair/Tribune merger (the "Merger Investigation"). Plaintiffs knowingly misstate the facts, including the parties' longstanding agreement regarding the scope of discovery. The Court should deny the Motion.

First, as Plaintiffs knew *before they filed their Motion*, Nexstar did not submit any white papers to the DOJ in connection with the Pacing Investigation. Plaintiffs egregiously omit this critical fact in their Motion to wrongly depict Nexstar as uncooperative and as withholding relevant documents. This is improper.

Second, any white papers submitted to DOJ in connection with the Merger Investigation are outside the scope of the parties' expansive discovery agreement. That agreement, which Nexstar has relied on for over two years, set clear parameters on what Nexstar would produce pursuant to Plaintiffs' Request for Production No. 1 ("RFP 1"). Plaintiffs now—years later—seek additional documents well beyond that agreement.

Third, Plaintiffs' Motion is extremely untimely. The deadline for filing motions to compel passed nine months ago. Plaintiffs have known for years that the discovery agreement they knowingly reached with Nexstar did not capture the documents they now seek.

The Court should reject Plaintiffs' efforts to evade the parties' discovery agreement and reopen discovery. The Motion should be denied.

## ARGUMENT

### I. Plaintiffs Know that No Pacing Investigation White Papers Exist—But They Willfully Omitted This Critical Fact in Their Motion.

Plaintiffs fail to inform the Court that Nexstar has already stated that no white papers were submitted to DOJ in connection with the Pacing Investigation. Nexstar told Plaintiffs in unequivocal terms on May 12:

> "There were no white papers submitted by Tribune or Nexstar to DOJ regarding the pacing investigation."

Decl. of Eliot Adelson in Supp. of Nexstar's Opp'n to Pls.' Disc. Mot. No. 21 ("Adelson Decl.") ¶ 2, Ex. A at 2. Instead of disclosing this key fact to the Court, Plaintiffs inaccurately stated that "Nexstar Group ultimately refused to confirm (or deny) the existence of any such submissions." Mot. 6. This knowing misrepresentation is egregiously improper. Plaintiffs also gloss over the fact that Nexstar produced to Plaintiffs on May 11 a letter that Tribune submitted to DOJ in 1996 explaining why the exchange of pacing information in the Los Angeles DMA did not violate the antitrust laws. Adelson Decl. ¶ 5, Ex. D. Nexstar produced this document in an effort to resolve this dispute, even though it is not within the discovery parameters the parties agreed to years ago. Yet Plaintiffs persisted with this Motion.

Plaintiffs refused to withdraw or correct the Motion even after Nexstar emphasized for them that it had confirmed *before* they filed their Motion that no responsive documents exist in connection with the Pacing Investigation; Nexstar also emphasized that the Motion misrepresents the scope of the parties' discovery agreement. Adelson Decl. ¶ 3, Ex. B. But rather than withdraw or even correct the Motion, Plaintiffs responded with a litany of questions, claiming that they suddenly "need more information" to decide whether to proceed with their Motion. Adelson Decl. ¶ 4, Ex. C. Importantly, Plaintiffs do not dispute that the Motion contains material misstatements of fact, and the list of questions confirms that the Motion was, at best, filed prematurely and in

violation of Local Rule 37.2's requirement to fully meet and confer. If answers to these questions are necessary for Plaintiffs to decide whether to withdraw their Motion, then Plaintiffs did not have a proper basis to file the Motion in the first place or to persist with it now—especially given the undisputed misrepresentations in the Motion. This alone warrants denying the Motion and a stern rebuke of Plaintiffs' willful misconduct.

## II. Plaintiffs Seek Documents Outside the Parties' Longstanding Discovery Agreement.

Plaintiffs ask this Court to order Nexstar to search for and produce documents that the parties agreed Nexstar would not search for and produce. The Court should enforce the parties' discovery agreement and reject Plaintiffs' belated demand. *See Samuel, Son & Co. v. Beach*, No. 13-128, 2014 WL 5089718, at *4 (W.D. Pa. Oct. 9, 2014) (noting that the resolution of "discovery disputes … can only be furthered if the [c]ourt enforces agreements reached during meet and confer sessions and requires the parties and their counsel to perform their respective obligations under the bargains which have been achieved").

Discovery agreements are necessary to place some limitation on the overwhelming burden that discovery can place on a party and the Court, especially in a case of this scope and magnitude. Here, Nexstar agreed to a broad scope of discovery (e.g., 172 custodians) in exchange for certain limitations on where Nexstar would have to look for responsive documents and how those documents would be identified. Through this Motion, Plaintiffs now want the benefits of those negotiations (172 custodians; receipt of over 5 million documents) without the minimal limitations upon which they agreed.

In 2021, the parties met and conferred regarding the scope of Nexstar's response to RFP 1, settling on an agreement that Nexstar would produce most of the documents that Plaintiffs requested, but importantly limited the scope of collection, review and production. The parties

agreed that Nexstar would produce: (1) the DOJ's Pacing Investigation CIDs and documents produced pursuant to those CIDs, Adelson Decl. ¶ 7, Ex. F; (2) custodial documents produced in connection with the Merger Investigation from certain custodians that hit on the parties' search terms, Adelson Decl. ¶ 6, Ex. E at 35-36; (3) relevant narrative responses to CIDs, *id*. at 2; and (4) Tribune deposition transcripts, *id*. at 36.

The parties further agreed that Nexstar **would not** produce its correspondence with DOJ, the search terms used with the DOJ, and custodial documents produced in connection with the merger investigation that did not hit on agreed-upon search terms. *Id*. at 11, 40.

Recognizing that "[p]arties are best situated to understand the discovery needs to the case," courts routinely uphold discovery agreements like this. *Pinks v. M&T Bank Corp*., No. 13-CV-1730, 2016 WL 1216813, at *4 (S.D.N.Y. Mar. 25, 2016) ("To the extent that Parties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements.").[1] Local Rule 37.2 recognizes that consultation and agreement between litigants serves to "curtail undue delay and expense in the administration of justice." LR 37.2. But "[a] meet and confer process furthers the discovery process *only if the parties abide by the terms of their discovery agreements and the Court 'enforces' the agreements*." *Druding v. Care Alts*., No. 08-2126(JBS/AMD), 2017 WL 11461795, at *3 (D.N.J. June 21, 2017) (emphasis added) (citation omitted). *See Widevine Techs., Inc. v. Verimatrix, Inc*., No. 2-07-cv-321, 2009 WL 4884397, at *2 (E.D. Tex. Dec. 10, 2009) (denying defendant's motion to compel on the basis of the parties' agreement); *Kalra v. Alder Pollock & Sheenan, P.C*., No. 3:18-cv-00260-KAD, 2020 WL 7828790, at *4 (D. Conn. Dec. 31, 2020) (agreeing with defendants that documents were placed

[1] *See also* Fed. R. Civ. P. 29 advisory committee's note to 1993 amendment (parties are free to "agree upon ... limitations upon discovery").

outside the scope of discovery on the basis of the parties' agreement and noting "[t]hat the Plaintiffs may now regret their agreement does not make it any less enforceable.").

Plaintiffs' speculation that Nexstar may have documents or data that it has not produced and that may contain some relevant information is beside the point. *See, e.g.*, *Kalra*, 2020 WL 7828790, at *4 n.2. Were that the standard for discovery, no discovery limitations would ever matter because they will always exclude some relevant documents or data, especially in large, complex cases like this. Rule 26 recognizes this reality in the proportionality limits it expressly applies to discovery. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and proportional to the needs of the case . . . .***" (emphasis added)). Plaintiffs cite several cases that state the uncontroversial proposition that Rule 26 permits broad discovery. *See, e.g.*, *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 945 (N.D. Ill. 2006); *Cent. States, Se. & Sw. Areas Pension Fund v. Wingra Redi-Mix, Inc.*, No. 21 C 3684, 2023 WL 199360, at *2 (N.D. Ill. Jan. 17, 2023); *Northington v. H&M Int'l*, No. 08-cv-6297, 2011 WL 663055, at *10 (N.D. Ill. Jan. 12, 2011); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-md-02385-DRHSCW, 2013 WL 6486921, at *12 (S.D. Ill. Dec. 9, 2013). But broad discovery does not mean limitless, and none of those cases discusses an agreement to limit discovery, as the parties negotiated here. Thus, Plaintiffs' authorities are inapposite.

Plaintiffs attempt to impute a nefarious reason for Nexstar's refusal to collect, review and produce documents that are outside the scope of the parties' agreement.[2] This is patently untrue

[2] Contrary to Plaintiffs' assertions, Mot. 6, 13 n.6, Nexstar has never held the position that white papers would not have hit on the parties' search terms. This position is nonsensical. For RFP 1, the search terms were used only in connection with custodial documents produced to the DOJ in the Merger Investigation; there is no reason to expect that white papers submitted to DOJ would be in the custodial files of Tribune business employees who are document custodians.

and not well taken. Nexstar negotiated and is relying upon the discovery agreement to try to contain some of the extraordinary cost that discovery has imposed. In fact, the 1996 letter that Plaintiffs claim was "concealed" completely supports Nexstar's position in this case that pacing cannot be used to fix prices: For example:

- "[W]e believe that this type of exchange plainly does not facilitate collusion."
- "Pacing figures reveal nothing about the prices obtained by any station in the past or currently, or the prices they plan to charge in the future, for any program or daypart."
- "[A] competitor's pacing figure tells KTLA nothing at all about the particular programs or dayparts the competitor has sold, the competitor's remaining inventory in any of its dayparts or programs, the revenue generated by any of them, or the prices quoted or actually obtained in any of those sales."
- "[C]ompetitive pacing figures provide no relevant information concerning any other station's price, supply of inventory, or revenue for any program or daypart."

Adelson Decl. ¶ 5, Ex. D at 1, 3, 6.

## III. Plaintiffs Misrepresent the Parties' Agreement.

Knowing that "white papers" do not fall within the scope of the parties' longstanding agreement, Plaintiffs attempt to rewrite the agreement to include "white papers" within "narrative responses." Plaintiffs claim that "narrative responses" means any "DOJ-related documents." Mot. 4. This is patently untrue. They omit that "narrative responses" here expressly and narrowly means "written narrative responses to [DOJ] CIDs," analogous to interrogatory responses. Adelson Decl. ¶ 6, Ex. E at 2.

Plaintiffs do not inform the Court of the March and April 2021 correspondence in which these requests were negotiated. This correspondence makes clear that Plaintiffs' request for "narrative responses" was expressly limited to written ***responses to DOJ's CIDs***, not any "DOJ-related documents." In a March 3, 2021 letter, Plaintiffs asked Nexstar to "confirm whether Nexstar provided interrogatory responses ***(or written narrative responses to CIDs)*** to the DOJ as

part of either the Merger Investigation or the Pacing Investigation, and if so, whether Nexstar will produce those responses in this case." *Id.* (emphasis added). This meaning is confirmed in Plaintiffs' subsequent letters. *Id.* at 14 (equating narrative responses with interrogatory responses); *id.* at 32 (same).

Furthermore, Plaintiffs' overbroad interpretation of "narrative responses" makes no sense in the context of the discovery agreement. The agreement provided that Nexstar would produce from the Merger Investigation: (1) the documents produced to DOJ from certain custodian's files that hit on the parties' agreed-upon search terms; (2) narrative responses to DOJ CIDs that were relevant to this litigation; and (3) transcripts of DOJ's depositions of Tribune employees. Documents outside these categories are beyond the parties' discovery agreement, including, specifically, that Nexstar would ***not*** produce DOJ correspondence. Adelson Decl. ¶ 6, Ex. E at 11.

If "narrative responses" means any "DOJ-related documents" as Plaintiffs now claim, then Nexstar would have been obligated to produce DOJ correspondence, which the parties agreed Nexstar would ***not*** produce. It is absurd to conclude that Nexstar would agree to produce any "DOJ-related documents" while at the same time standing on its objections and not producing DOJ correspondence. The Court should not adopt an interpretation of a discovery agreement that renders a key provision absurd. *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 419-420 (N.D. Ill. 2006) (noting the "long tradition of reading contracts sensibly" and rejecting an interpretation of protective order that would yield an "absurd result").

## IV. This Motion Is Untimely.

Even if Plaintiffs' demand for documents were permissible under the parties' discovery agreement, the Court should still deny Plaintiffs' Motion to Compel because it is extremely

untimely. The deadline for moving to compel was September 1, 2022. ECF No. 510. Plaintiffs filed this Motion on May 19, 2023.

There is no good cause to excuse Plaintiffs' late filing. When evaluating good cause, a court primarily considers the diligence of the party. *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (discussing Rule 16(b)'s good-cause standard for modifying a scheduling order). The parties agreed in 2021 on what Nexstar would produce in response to RFP 1. If Plaintiffs wanted more, they should not have made that agreement and instead filed a motion to compel on RFP 1. They did not and it is far too late now.

Plaintiffs insist their late filing is excusable because a white paper produced by Sinclair supposedly revealed previously unknown categories of materials in Nexstar's possession. Nonsense. Plaintiffs have always known that there was correspondence between Tribune and the DOJ that Nexstar did not produce—after all, the *parties agreed that Nexstar would not produce such correspondence*.

This Motion is part of Plaintiffs' ongoing campaign to expand discovery and impose significant costs and burdens on Defendants. Plaintiffs have filed twenty-one motions to compel and have indicated that more are coming. Consistent with the Court's ruling last year on Defendants' motion to compel discovery from Plaintiffs, Plaintiffs should not be allowed to impose "the burden of additional document discovery at this stage of the case." *See* ECF No. 921 at 10.

## V. Plaintiffs Are Not Entitled to Costs Under Rule 37.

Plaintiffs brazenly ask the Court to order Nexstar to pay Plaintiffs' costs for bringing this Motion. The Court should reject this request out of hand, and instead award Nexstar sanctions for the cost of defending against a Motion based upon knowing misrepresentations and with which

Plaintiffs have persisted even after Nexstar asked Plaintiffs to withdraw the Motion given those misstatements.

Rule 37(a) provides that a court cannot award expenses where the nondisclosure was substantially justified or where other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). In the context of Rule 37, "substantially justified" means that there is a "genuine dispute," or that reasonable people could differ as to the appropriateness of the contested action. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Nexstar's actions are substantially justified. After Plaintiffs issued an untimely demand to produce new documents, Nexstar followed a reasonable course of action—it reviewed the parties' agreement and related correspondence to determine if the request was consistent with that agreement. After determining that the demand was outside the parties' discovery agreement, Nexstar objected. After proposing and holding a meet and confer, Nexstar determined that there were no white papers relating to pacing exchanges and told Plaintiffs. In a show of good faith, Nexstar produced the 1996 letter—which Plaintiffs specifically requested. There is no credible argument that Nexstar's interpretation of the parties' agreement is objectively unreasonable. Plaintiffs' sole cited case on this point does not support their argument. *See Forth v. Walgreen Co.*, No. 17 C 2246, 2019 WL 10255628, at *7 (N.D. Ill July 10, 2019) (denying request for sanctions because "the parties' dispute on that issue was genuine, and [the opposing party's] arguments cannot be dismissed as frivolous").

In any event, there is no prejudice to Plaintiffs. Plaintiffs have deposed only one Nexstar employee and no Tribune employees. Plaintiffs fail to articulate in any way how they have been prejudiced from Nexstar's response to their untimely demand for new documents that either do not exist or are beyond the limits of discovery. Plaintiffs are not entitled to sanctions.

Rather, sanctions should be imposed upon Plaintiffs for forcing Nexstar to respond to this Motion and its knowing misrepresentations. Rule 37(a)(5)(B) presumptively requires Plaintiffs to pay Nexstar's reasonable costs unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). This Motion is not "substantially justified." Not only does the Motion seek documents that Plaintiffs know do not exist, but it contains material omissions and misrepresentations to the Court (i.e. that Plaintiffs know that Pacing Investigation white papers do not exist and that "narrative responses" means something other than what Plaintiffs expressly requested and the parties agreed to). Plaintiffs do not dispute that the Motion contains these misrepresentations, which alone warrants sanctions, especially given Plaintiffs persisted with the Motion even after Nexstar emphasized these misrepresentations and asked them to withdraw it. Adelson Decl. ¶ 3, Ex. B.

## CONCLUSION

Plaintiffs' Discovery Motion No. 21 is a meritless request for documents that do not exist or are beyond the scope of the parties' longstanding discovery agreement. Such agreements are critical for the "just, speedy, and inexpensive determination" of large, complex matters like this. Fed. R. Civ. P. 1. And parties must be held to the agreements they reach in litigation. They also must not mislead courts with material omissions and misrepresentations, as Plaintiffs have done here. The Motion should be denied.

Dated: June 6, 2023

Respectfully submitted,

*/s/ Eliot Adelson*

MORRISON & FOERSTER LLP
Eliot Adelson (admitted *pro hac vice*)
Bonnie Lau (admitted *pro hac vice*)
Margaret A. Webb (admitted *pro hac vice*)
425 Market Street
San Francisco, CA 94105
(415) 268-7000
eadelson@mofo.com
blau@mofo.com
mwebb@mofo.com

David D. Cross (admitted *pro hac vice*)
Mary G. Kaiser (admitted *pro hac vice*)
Joseph C. Folio III (admitted *pro hac vice*)
2100 L Street NW
Washington, D.C. 20037
(202) 887-1500
dcross@mofo.com
mkaiser@mofo.com
jfolio@mofo.com

MOLOLAMKEN LLP
Megan Cunniff Church (Bar No. 6281234)
Matthew J. Fisher (Bar No. 6326897)
300 N. LaSalle St.
Chicago, IL 60654
(312) 450-6700
mchurch@mololamken.com
mfisher@mololamken.com

*Counsel for Defendants Dreamcatcher Broadcasting LLC, Nexstar Media Group, Inc., Tribune Broadcasting Company, LLC, and Tribune Media Group, Inc.*