IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION** <br><br> *This document relates to all actions.* | Master Docket No. 18-06785 <br><br> MDL No. 2867 <br><br> The Honorable Judge Virginia M. Kendall |

**DEFENDANTS' SEALED MOTION TO RECONSIDER, VACATE, AND/OR STAY ORDERS REGARDING PRELIMINARY APPROVAL OF SETTLEMENTS AND NOTICE**

1

## INTRODUCTION AND BACKGROUND

Defendants,[1] by their attorneys, respectfully move the Court to reconsider and vacate its Order Granting Preliminary Approval of Settlements with Defendants CBS, Fox, the Cox Entities and ShareBuilders ("Settling Defendants") (ECF No. 991), and its Order Appointing Settlement Administrator, Approving Settlement Notice Program, and Compelling Production of Customer Contact Information. (ECF No. 994). Non-Settling Defendants further move the Court for entry of an Order staying dissemination of notice to the settlement classes until after the Court has given Non-Settling Defendants an opportunity to be heard on Plaintiffs' motion for preliminary approval of the proposed settlements. In support of its Motion, Non-Settling Defendants state as follows.

Non-Settling Defendants do not oppose the substance of the partial settlements, only certain aspects of the proposed notice process, the recipients of the proposed notice, and the content of the notices. Non-Settling Defendants have not yet had the opportunity to be heard on the notice process at all, because Plaintiffs' motions were approved before Non-Settling Defendants could respond. This Court has discretion to shape the settlement process, including the timing and content of the notices, and should exercise that discretion to protect the due process rights of Non-Settling Defendants by permitting them to assert their objections. Accordingly, Non-Settling Defendants move to set aside the approvals and to allow Non-Settling Defendants to respond and object to Plaintiffs' motions through briefing and, if useful, a hearing.

Plaintiffs reached an agreement in principle to settle with three of the four Settling Defendants in the multidistrict litigation ("MDL")—CBS, Fox, the Cox Entities, and Cox—more than a year ago, and with the fourth Settling Defendant (ShareBuilders) more than six months ago.

---

[1] Defendants include Griffin Communications, LLC ("Griffin"), Meredith Corporation ("Meredith"), Nexstar Media Group, Inc. ("Nexstar"), Gray Media Group, Inc. (formerly known as Raycom Media, Inc.) ("Raycom"), the E.W. Scripps Company ("Scripps"), Sinclair Broadcast Group, Inc. ("Sinclair"), and TEGNA, Inc. ("TEGNA") (collectively "Defendants" or "Non-Settling Defendants").

(Pls.' Mot. Preliminary Approval ("Preliminary Approval Motion") at 3 (ECF No. 982)). On May 26, 2023, Plaintiffs filed a Motion for Preliminary Approval of these settlements. (*Id.*). Collectively, CBS, Fox, and the Cox Entities agreed to pay $48 million to settle Plaintiffs' claims against them, without any admission of wrongdoing or liability of any kind. (*Id.* at 1; *see, e.g.*, Decl. of M. Jones, Ex. 1 ¶ 16 (ECF No. 982-1)). The Settling Defendants also agreed to provide Plaintiffs with documents and structured transactional data responsive to Plaintiffs' discovery requests and to make certain personnel available for interviews or testimony. (Preliminary Approval Motion at 1–2).

Plaintiffs' proposed Settlement Class, by its express terms, includes every customer of the Non-Settling Defendants, even though the Non-Settling Defendants have neither settled with Plaintiffs nor been found liable for any of the misconduct alleged in the Third Amended Complaint. (*Id.* at 4). In fact, the Settlement Class is so broadly drafted that customers of Non-Settling Defendants who are not even located in the local geographic markets where a Settling Defendant operates would receive a notice. (*Id.*).

On June 9, 2023, Plaintiffs filed a Motion to appoint a settlement administrator, approve their proposed notice program, and compel Defendants TEGNA, Raycom, and Meredith to turn over their customer contact information (the "Notice Motion"). (ECF No. 988). Attached to the Notice Motion are proposed settlement notices and a Claim Form, which effectively treat the Settling and Non-Settling Defendants as an indistinguishable pack of co-conspirators. For example, under the proposed notice program, notices are to be sent to every customer of every broadcaster Defendant in the case, including the Non-Settling Defendants, stating that the Settling and Non-Settling Defendants alike are accused of participating in an "unlawful conspiracy to fix, raise, maintain, or stabilize the price levels of broadcast television spot advertising" and have

3

participated in "illegal sharing of information." (Decl. of G. Interpido-Bowden, Ex. B at 2; Ex. C at 1 (ECF No. 988-1)). Nowhere in any of the proposed notices is there any mention that the Non-Settling Defendants deny the existence of this alleged conspiracy, that the case is still in the discovery stage, or that the Court has neither considered nor granted certification of a litigation class nor adjudged any of them liable for any type of wrongdoing. (*Id.*).[2]

Plaintiffs did not confer with any of the Defendants about a briefing schedule for the Preliminary Approval Motion or the Notice Motion, as has been standard practice throughout the litigation, nor did Plaintiffs provide a certification of conferral in accordance with Local Rule 37.2. It also appears that Plaintiffs did not notice either motion for presentment or a hearing. The Non-Settling Defendants identified several substantial issues with both motions that are necessary to bring to the Court's attention, and they were in the process of preparing a response to the Motions when, on June 15, 2023, the Court issued an Order granting the Preliminary Approval Motion ("Preliminary Approval Order"). (ECF No. 991).

A few hours after the Court issued the Preliminary Approval Order, TEGNA filed a Notice of Intent to Respond to the Notice Motion and to the new arguments within it in support of Plaintiffs' request to compel TEGNA's customer contact information. (ECF No. 992). Meredith and Raycom were similarly preparing a Notice of Intent to Respond to the Notice Motion. Nevertheless, a few hours later, on the same day, the Court issued an Order granting the Notice

---

[2] Buried in the final two paragraphs of the Notice Motion was Plaintiffs' second attempt to compel TEGNA, Raycom, and Meredith to produce customer contact data. (Notice Motion at 10–11). This circumvented Plaintiffs' pending and fully briefed motion to compel TEGNA, Raycom, and Meredith to produce customer contact data in Plaintiffs' Discovery Motion No. 16 (ECF Nos. 929, 945, 957). Unlike their first motion to compel this information—which focused primarily on the purported utility of customer contact information in establishing classwide impact—Plaintiffs now argue that such information is necessary for "effectuating notice of the settlements and facilitating claims administration." (Notice Motion at 11). TEGNA, Raycom, and Meredith today have filed a separate motion seeking reconsideration and vacatur of the Court's order compelling them to produce their customer contact information. (ECF No. 1001). As shown in that filing, TEGNA, Raycom, and Meredith's customer contact information is not needed to effectuate class notice, but even if it were, the information should only be produced to the settlement administrator, not Plaintiffs themselves, and should be safeguarded with appropriate confidentiality protections.

Motion, which granted Plaintiffs' motion to compel customer contact information from TEGNA, Raycom, and Meredith (the "Notice Order"). (ECF No. 994).

## LEGAL STANDARD

Non-Settling Defendants seek reconsideration of the Preliminary Approval and Notice Orders because they have not had the opportunity to be heard on material deficiencies in the content of the notice and aspects of the settlement administration. "[D]istrict judges may reconsider interlocutory orders at any time before final judgment." *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018). Indeed, reconsideration of a ruling prior to final judgment "is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being asked to reconsider [her] own ruling." *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000).

Reconsideration is appropriate to address inadvertent errors in prior rulings. *Mitchell v. JCG Indus.*, 842 F. Supp. 2d 1080, 1082 (N.D. Ill. 2012) (citation omitted); *see also Dahlstrom v. Sun-Times Media, LLC*, 346 F. Supp. 3d 1162, 1167 (N.D. Ill. 2018) (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). In these circumstances, a motion for reconsideration allows the court to correct itself. *Id.*[3]

## ARGUMENT

**I.     By Summarily Granting Class Certification and Preliminary Approval, The Court's Preliminary Approval Order Failed to Follow Seventh Circuit Precedent and Should Be Vacated.**

Defendants respectfully submit that it was error to grant the Preliminary Approval Motion without providing the affected parties an opportunity to respond or object. The Court also erred by granting certification of the settlement classes at the preliminary approval stage, also without

---

[3] *See also, e.g.*, *In re: Sw. Airlines Voucher Litig.*, 2016 WL 3418565, at *4–5 (N.D. Ill. June 22, 2016) (Kennelly, J.) (granting motion to reconsider and to vacate order in settlement approval process after concluding that "prudence counsel[ed]" stricter compliance with Rule 23 approval procedures).

5

affording the affected parties an opportunity to respond.[4] In so doing, the Court may have inadvertently allowed Plaintiffs to dictate the terms of the preliminary approval and notice process in a manner that prejudices the Non-Settling Defendants. Consequently, the Court should vacate the Preliminary Approval Order and consider Non-Settling Defendants' responses and objections to Plaintiffs' motion or allow further briefing on the issues.[5]

### A. *The Court Did Not Conduct the Required Preliminary Approval Analysis.*

Seventh Circuit precedent is clear that preliminary approval of a class action settlement should not be perfunctory. Rather, district courts are to conduct "a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (St. Eve, J.) (citation omitted). At that hearing, the Court is to consider evidence relating to the following factors: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among [a]ffected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Id.*

These required considerations are only the bare minimum. In cases like this one, many courts demand more. As one MDL court noted:

---

[4] The Non-Settling Defendants did not have an opportunity to respond to the Motions, and even if they had, they have not waived any opposition to them. *See* N.D. Ill. L.R. 78.3 ("[f]ailure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto").

[5] Non-settling defendants have standing to object to approval of a partial settlement if they will potentially suffer "plain legal prejudice," or harm to a legal right, because of the settlement. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 501 (7th Cir. 2012). That is the case here. Non-Settling Defendants do not object to the content of the settlements, but to the lack of opportunity to be heard, the proposed content of the notice, and the impact it might have on the Non-Settling Defendants' customer relationships and the local TV advertising industry as a whole, which implicates the Non-Settling Defendants' due process rights. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 776–77 (7th Cir. 2021) (where government action affects private interests, "the opportunity to be heard at a meaningful time and in a meaningful manner" is a "fundamental requirement of due process" (internal quotation marks omitted) (quoting *City of L.A. v. David*, 538 U.S. 715, 716–17 (1985) (per curiam))).

6

> Where the size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is "within the range of possible approval" with minimal fuss. ***But in a case such as this, where the putative class members range in the millions, the parties have completed extensive discovery, substantive objections are raised at the preliminary stage, and the costs and efforts to provide notice are substantial, it may be advisable for the court to engage in a more piercing and thorough analysis of the issues in the first instance***, rather than waiting until the final approval hearing.

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 589 (N.D. Ill. 2016) (emphasis added) (Lee, J.) ("*In re NCAA*").

That analysis has not taken place here. The Court has not considered the "amount of opposition" to the settlement process, since it granted preliminary approval without permitting any "affected parties" to respond at all, including by not accepting any briefing from the Non-Settling Defendants. With respect to the rest of the mandatory factors, there is only one sentence in the Preliminary Approval Order about them: "The Court finds that the Settlements set forth in the Settlement Agreements are preliminarily determined to be fair, reasonable, adequate, and in the best interest of the Settlement Classes [and] raise no obvious reason to doubt its fairness." (Preliminary Approval Order ¶ 3). Making this finding without giving the affected parties an opportunity to respond to the Plaintiffs' motions was clearly erroneous. As Judge Lee has written, "it bears emphasizing the Seventh Circuit's recognition that … the law 'quite rightly requires more than a judicial rubber stamp'" at the preliminary approval stage. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021) (Lee, J.) (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014)).

    B. ***The Court May Have Erroneously Purported to Grant Final Certification of the Settlement Classes at the Preliminary Approval Stage***.

Perhaps unintentionally, the Preliminary Approval Order could be interpreted to have granted *final certification* of the settlement classes, which is even more troubling given that the

7

Court has not considered any opposition and does not appear to have conducted the required analysis.[6] Rule 23 is clear that, at the preliminary approval stage, the Court should not rule on the final certification of the settlement class, but should only address whether "the court *will likely be able* to … certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B) (emphasis added); *see In re TikTok*, 565 F. Supp. 3d at 1087 (concluding in preliminary approval order that "the Court will likely be able to certify the proposed Nationwide Class and Illinois Subclass"). As the drafters of the amended Rule 23 clarified:

> [I]f a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, ***after the final hearing***, to certify the class …. [T]he court cannot make the decision regarding the prospects for certification without a suitable basis in the record. ***The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.***

FED. R. CIV. P. 23(e)(1), advisory committee's note to 2018 amendment (emphasis added). The Preliminary Approval Order, however, states that "[t]he Court certifies the four respective Settlement Classes (the 'CBS Settlement Class,' the 'Fox Settlement Class,' the 'Cox Entities Settlement Class,' and the 'ShareBuilders Settlement Class')." (Preliminary Approval Order ¶ 7). Accordingly, there is manifest error in the Preliminary Approval Order, and it should be vacated on this basis alone.

### C. *The Court Did Not Address the Significant Evidentiary Barriers to Certification of a Nationwide Class.*

While discovery is still ongoing, the existing evidentiary record raises serious questions about the propriety of nationwide class certification—which the Court's approval of the proposed settlement class and notice plan presumes to be warranted. In denying Defendants' motion to

---

[6] *See Simpson v. Dart*, 23 F.4th 706, 713 (7th Cir. 2022) (holding that "[w]hen conducting class certification analyses, district courts should assess the four Rule 23(a) factors as to each of the putative class claims," and reversing grant of class certification for failure to undertake this "rigorous" inquiry).

dismiss, the Court ruled that the class certification stage was the appropriate time to adjudicate whether Plaintiffs need to prove that "wrongful conduct and resultant injury" occurred in each DMA: "Defendants seek to apply additional requirements by having [Plaintiffs] plead a specific injury in each of the 127 DMAs at issue in this case, but that is an issue to be raised at the class certification stage…." (Order Denying Defs.' MTD at 12 (ECF No. 392)).

Through the limited depositions that Plaintiffs have taken, there is already substantial evidence that an analysis of conduct and harm must be undertaken in each DMA, not just at a nationwide level. For example, deposition testimony shows that all pricing and rate-setting decisions for ads aired on local broadcast stations are made at the local level, on a station-by-station basis. (*See, e.g.*, Ex. A, D. Nagel (Director of Sales, TEGNA/WKYC, Cleveland) Dep. Tr. 37:20–22 ("The only person that can set a rate at the station is me, nobody else. Every rate is cleared by me."); Ex. B, M. Spruill (General Manager, Nexstar/WKRN, Nashville) Dep. Tr. 39:13–40:3 ("Q: Okay. When you set prices, did you … have guidance from Nexstar corporate or from your regional managers as far as setting prices for spot ads in Nashville? … A: So Nexstar was told – their stations are totally autonomous, meaning that they put the right people in place to run the business the way it should be run and achieving revenue goals, so do I get – so do I have somebody that puts a heavy thumb on m[e] and say, 'You have to sell this price?' No I do not.")). That deposition testimony also shows that broadcast stations owned or operated by different Defendants in different local markets vary not only in how they set prices, but in numerous important aspects of the sales of broadcast spot TV ads, including inventory management; use of different Sales Rep firms over the years, different ownership structures, different ratings organizations, different sales team structures, different third-party vendors such as ShareBuilders,

9

Kantar, and Miller Kaplan; and any alleged behavior regarding different forms of pacing information.

Another obstacle to nationwide class treatment is that each transaction between an advertiser and a station is unique and individually negotiated. Take Hunt Adkins, one of the named plaintiffs in this case, as an example.

At bottom, by approving the settlement class and notice plan, the Court has presumed away a central contested issue that has evidence on both sides, superimposing Plaintiffs' view of the disputed evidence onto the class certification question without a full record or the benefit of adversarial briefing. This should be addressed by, at a minimum, through clarifying language in the Court's preliminary rulings to indicate that the Court has not determined whether a national class—or any class—would be appropriate for the litigation going forward.

> **II. The Notice Order Also Should Be Vacated, And the Proposed Notice Should Be Amended to Clarify That the Non-Settling Defendants Have Not Been Adjudged To Have Participated In an Antitrust Conspiracy.**

The Notice Order also should be vacated, for at least the following reasons:

**A.** *The Court's Error in Granting Preliminary Approval Also Requires Vacatur of the Notice Order.*

First, vacating the Preliminary Approval Order necessarily requires that the Notice Order also be vacated, since an order granting preliminary approval is a prerequisite to class notice. *See* FED. R. CIV. P. 23(e)(1)(B) (notice to a settlement class is proper "if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal"); 4 WILLIAM B. RUBENSTEIN, NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13:10 (6th ed.) (preliminary approval "sets forth the grounds for the initial decision to send notice of a proposed settlement to the class").

**B.** *The Notice Order Was Improperly Issued Without Affording the Non-Settling Defendants Any Opportunity to Respond or Object.*

Second, the Notice Order was entered without providing affected parties—including all Non-Settling Defendants, and especially TEGNA, Raycom, and Meredith, who were ordered to turn over additional customer contact information—the opportunity to voice their concerns and object to the notice program. Affected parties should always have the opportunity to object before such orders are issued, but the loss of that right is particularly critical in this case. Unlike a typical class action settlement, in which notice is sent only to the customers of settling defendants, in this case the planned settlement notices are to be sent to *all* the Non-Settling Defendants' customers, as well as customers of the Settling Defendants. The harm of such a notice to Non-Settling Defendants is significant.

To elaborate, approval of the proposed notice process would mean that customers with whom the Non-Settling Defendants have existing business relationships—many of which are

11

longstanding, ongoing, and important to their operations and profitability—will receive a notice advising that the Non-Settling Defendants have been implicated in an illegal and ongoing price-fixing conspiracy to wrongfully overcharge those customers for broadcast television spot advertising. The result could be severe and unjustified reputational harm that would erode the goodwill each of the Non-Settling Defendants have spent years building with their customers. *See, e.g.*, *Donovan v. Robbins*, 752 F.2d 1170, 1176 (7th Cir. 1985) (holding that a judge approving a settlement must consider views of third parties who claim that settlement will harm them); *Columbus Park Nursing & Rehab. Ctr. v. Sebelius*, 940 F. Supp. 2d 805, 811 (N.D. Ill. 2013) (interference with existing business relationships implicates due process concerns). The disruption to their business relationships is potentially seismic, as is the potential damage to the local TV advertising industry as a whole, since the notice could sour customers on the Non-Settling Defendants' services and push them to other sources of advertising.[7]

Those harmful consequences, and fundamental principles of due process, entitled the Non-Settling Defendants to a meaningful opportunity to respond to Plaintiffs' notice proposal and, at a minimum, suggest ways to ameliorate any potential prejudice to the Non-Settling Defendants from dissemination of the notice of the settlements to the proper parties. *See Donovan*, 752 F.2d at 1176; *Columbus Park*, 940 F. Supp. 2d at 811. Many of these concerns can be remedied by vacating the Notice Order and by postponing notice of the settlement until after a hearing on the Plaintiffs' motion for preliminary approval, *see infra* section III, sending notice to only the customers of the Settling Defendants that are entitled to relief under the proposed settlements, or, at a minimum, amending the proposed notice to add additional language clarifying that (1) the Non-Settling

---

[7] Additionally, the proposed notice could prompt confused and concerned customers to call Non-Settling Defendants' stations to discuss Plaintiffs' allegations and demand answers, even though none of the Non-Settling Defendants have settled, admitted liability, or been found liable for any wrongdoing.

12

defendants deny all wrongdoing; (2) discovery is still ongoing and will not conclude for six months or more; (3) the Court has not made any finding that a litigation class should be certified, and (4) the Court has not made any finding of an illegal conspiracy, liability or wrongdoing whatsoever. *See Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012) (court has "nearly complete discretion" over the "form and content" of a settlement notice); *Cason-Merenda v. Detroit Med. Ctr.*, 2010 WL 446452, at *2 (E.D. Mich. Jan. 28, 2010) (noting the potential prejudice in similar situation and instructing the parties to "draft these notices in a way that sufficiently apprises class members … that only a partial settlement has been reached with certain of the Defendants, and that Plaintiffs' claims against the non-settling Defendants are still being litigated"). Alternatively, the Court has discretion to postpone notice until after class certification is decided. *Cf. McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 2006 WL 681054, at *7 (N.D. Ill. Mar. 13, 2006) ("Given the uncertainties about the class definition and class claims, sending notice to a class [prior to a granted class certification] would be premature, confusing to any potential class members, and inefficient.").

### C. *The Inconsistency Between the Class Definitions in the Complaint, the Preliminary Approval Order, and the Notice Order Creates Confusion.*

Third and finally, there are material differences between how the proposed class is defined in the Third Amended Complaint ("TAC") and how it is defined in the settlement agreements and the Court's Preliminary Approval Order. *See Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, at *2–3 (N.D. Ill. Jan. 4, 2013) (observing that "[d]istrict courts typically, though not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant complaint"). The TAC defines the proposed class as including only those "entities that purchased spot advertising directly from the defendants' stations . . . *and* paid directly for it." (TAC ¶ 302 (emphasis added)). By contrast, the settlement agreements and Preliminary Approval Order define

13

the class more broadly as including "entities that purchased spot advertising directly from the Defendants' stations . . . *including* those that paid directly for it." (Preliminary Approval Order ¶ 7 (emphasis added)). Adding to the confusion, the Notice initially defines the settlement class as limited to direct purchasers who paid directly, just as the TAC does (Decl. of G. Interpido-Bowden, Ex. F at 1), but later defines it more broadly as including *all* direct purchasers, including those who paid directly, as the proposed settlements and Preliminary Approval Order do. (*Id.* at 5). These inconsistent class definitions are another reason the Court should not have summarily granted preliminary approval of the proposed settlements without input from the affected parties.

The broader definition of the settlement classes in the Preliminary Approval Order and Notice is likely to lead to conflicting claims being filed by both the advertiser and its advertising agency for purchases that advertiser made using an ad agency as its agent. On the other hand, the narrower definition in the TAC and Notice may result in a large portion of the settlement fund being paid to advertising agencies for purchases they made merely as an agent for advertisers, even though they could not have been injured when they were paid by the advertiser for those purchases before they paid the station. *Cf. Staley v. Gilead Scis., Inc.*, 619 F. Supp. 3d 977, 981–83 (N.D. Cal. 2022) (holding that Blue Cross/Blue Shield did not have standing to recover damages for overcharges on drugs it purchased as an agent for Medicare using government funds).

### III. The Court Should Stay Preliminary Approval Proceedings and Dissemination of Notice Until After Briefing and a Hearing on Plaintiffs' Motion for Preliminary Approval of the Four Proposed Settlements.

After vacating the Preliminary Approval and Notice Orders, the Court also should enter a schedule for preliminary approval and notice proceedings until, at the earliest, the parties have had an opportunity to brief the Court and to participate in a hearing on Plaintiffs' motion for preliminary approval. The Court has inherent authority to stay proceedings "where the party seeking the stay would be spared 'hardship or inequity,' the prejudice to the non-movant would be

comparatively minor, and the stay would significantly advance judicial economy." *Freed v. Friedman*, 215 F. Supp. 3d 642, 658 (N.D. Ill. 2016). All these factors warrant a stay here.

First, the Preliminary Approval and Notice Orders prejudice Defendants in at least three ways: (1) interfering with Defendants' existing business relationships by communicating to all of their clients that they allegedly deliberately overcharged customers for broadcast television spot advertising, without the appropriate caveats, explanations, and disclaimers of liability; (2) pre-judging the issue of advertising agencies' antitrust standing, before the Non-Settling Defendants have had a meaningful opportunity to present facts and arguments on that issue; and (3) granting certification of a settlement class with an overbroad, nearly identical definition to the class definition in the TAC.[8]

The second and third factors also favor a stay. There would be no prejudice to Plaintiffs, the Settling Defendants, or the proposed classes by this postponement. Plaintiffs have waited for more than a year to seek approval of three of their settlements and more than six months for the last one. They will not be prejudiced by waiting for the Court to further consider the impacts of the settlements and notice on the Non-Settling Defendants before disseminating notice to class members. *See Bilek v. Nat'l Cong. of Emps., Inc.*, 2022 WL 523108, at *1 (N.D. Ill. Feb. 22, 2022) (noting that plaintiffs have no need for customer contact information at the pre-class certification stage). And the Court also will benefit from the input of the parties affected by the settlements and notice plan. *See In re NCAA,* 314 F.R.D. at 590 (appointing objector to argue against adequacy

---

[8] Courts recognize the potential for such prejudice in certifying (or preliminarily certifying) settlement classes in partial settlements, and sometimes include explicit language stating "that the grant of preliminary approval is without prejudice to the defenses and positions of the non-settling defendants as to any issue, including certification of the litigation classes." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 436 n.2 (E.D. Pa. 2008). Such assurances are notably absent from the Preliminary Approval and Notice Orders.

15

of settlement to "ensure[] … the benefit of the adversarial process" at preliminary approval hearing). Accordingly, the Court should grant a stay.

## CONCLUSION

The Non-Settling Defendants do not object to the substance of the settlements Plaintiffs have proposed. Rather, the Non-Settling Defendants object to the process by which the Court granted preliminary approval and ordered class notice, which did not involve the level of scrutiny required by the Federal Rules and did not permit affected parties, including Non-Settling Defendants, to raise with the Court their objections to the settlement class definition and notice plan that would cause them harm. Accordingly, for the reasons outlined above, the Court should grant Defendants' motion to reconsider the Preliminary Approval Order and the Notice Order, vacate those orders, enter an order staying class notice until Non-Settling Defendants have an opportunity to respond to Plaintiffs' motions for preliminary approval and notice, and grant any such other relief as the Court deems just and proper.

Dated: June 28, 2023

Respectfully submitted,

*/s/ Ross B. Bricker*
**JENNER & BLOCK LLP**
Ross B. Bricker (Ill. Bar No. 3126882)
John F. Ward, Jr. (Ill. Bar No. 6208004)
353 N. Clark Street
Chicago, IL 60654-5474
(312) 222-9350
rbricker@jenner.com
jward@jenner.com

*Counsel for TEGNA Inc.*

*/s/ David E. Mills*
**COOLEY LLP**
David E. Mills (*pro hac vice*)

16

*/s/ David A. Ettinger*
**HONIGMAN LLP**
David A. Ettinger (admitted *pro hac vice*)
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(312) 465-7368
dettinger@honigman.com

**MCAFEE & TAFT**
Mark Richard Mullins (admitted *pro hac vice*)
211 N. Robinson Ave., 10th Floor
Two Leadership Square
Oklahoma City, OK 73102
(405) 552-2263
rick.mullins@mcafeetaft.com

*Counsel for Defendant Griffin Communications, LLC*

*/s/ William J. Kolasky*
**HUGHES HUBBARD & REED LLP**
William J. Kolasky (*pro hac vice*)
Philip A. Giordano (*pro hac vice*)
1775 I Street, N.W.
Washington, DC 20006
(202) 721-4600
william.kolasky@hugheshubbard.com
philip.giordano@hugheshubbard.com

Fara Tabatabai (*pro hac vice*)
One Battery Park Plaza
New York, NY 10004
(212) 837-6000
fara.tabatabai@hugheshubbard.com

**SCANDAGLIA RYAN LLP**
Gregory J. Scandaglia
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
(312) 580-2020
gscandaglia@scandagliaryan.com

*Counsel for Defendant Sinclair Broadcast Group, Inc.*

(dmills@cooley.com)
Deepti Bansal (*pro hac vice*)
(dbansal@cooley.com)
J. Parker Erkmann (*pro hac vice*)
(perkmann@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899

Beatriz Mejia (*pro hac vice*)
(mejiab@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel.: (415) 693-2000
Fax: (415) 693-2222

Mazda K. Antia (*pro hac vice*)
(mantia@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Tel.: (858) 550-6000
Fax: (858) 550-6420

Alexander G. Galicki (*pro hac vice*)
(agalicki@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel.: (310) 883-6400
Fax: (310) 883-6500

Matthew L. Kutcher (SBN: 6275320)
(mkutcher@cooley.com)
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel.: (312) 881-6500
Fax: (312) 881-6598

*Counsel for Defendant Gray Media Group, Inc.*

*/s/ Gregory J. Commins, Jr.*
**BAKER & HOSTETLER LLP**
Gregory J. Commins, Jr. (admitted *pro hac vice*)
1050 Connecticut Ave., NW Suite 1100
Washington, DC 20036
Telephone: (202) 861-1536
Facsimile: (202) 861-1783
gcommins@bakerlaw.com

Bridget S. McCabe (admitted *pro hac vice*)
Dyanne J. Cho (admitted *pro hac vice*)
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone: (310) 820-8800
bmccabe@bakerlaw.com
dcho@bakerlaw.com

John M. Touhy (NDIL 3128400)
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6200 phone
(312) 416-6201 facsimile
jtouhy@bakerlaw.com

*Counsel for Defendant The E.W. Scripps Company*

*/s/ Eliot A. Adelson*
**MORRISON & FOERSTER LLP**
Eliot Adelson (admitted *pro hac vice*)
Bonnie Lau (admitted *pro hac vice*)
Margaret A. Webb (admitted *pro hac vice*)
425 Market Street
San Francisco, CA 94105
(415) 268-7000
eadelson@mofo.com
blau@mofo.com
mwebb@mofo.com

David D. Cross (admitted pro hac vice)
Mary G. Kaiser (admitted pro hac vice)
Joseph C. Folio III (admitted pro hac vice)
2100 L Street NW
Washington, D.C. 20037
(202) 887-1500
dcross@mofo.com
mkaiser@mofo.com
jfolio@mofo.com

**MOLOLAMKEN LLP**
Megan Cunniff Church (Bar No. 6281234)
Matthew J. Fisher (Bar No. 6326897)
300 N. LaSalle St.
Chicago, IL 60654
(312) 450-6716
mchurch@mololamken.com
mfisher@mololamken.com

*Counsel for Defendants Dreamcatcher Broadcasting LLC, Nexstar Media Group, Inc., Tribune Broadcasting Company, LLC, and Tribune Media Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 28, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

*/s Ross B. Bricker*
Ross B. Bricker
