UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br>LOCAL TV ADVERTISING ANTITRUST LITIGATION<br><br>*This Document Relates to All Actions* | MDL No. 2867<br>No. 18 C 6785<br><br>Honorable Virginia M. Kendall |

**GRIFFIN COMMUNICATIONS, LLC'S POST-HEARING BRIEF IN OPPOSITION TO PLAINTIFFS' DISCOVERY MOTION NO. 20 FOR SPOLIATION SANCTIONS AGAINST DEFENDANT GRIFFIN COMMUNICATIONS, LLC**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bolyard v. Vill. of Sherman*,
No. 19-cv-03146, 2022 WL 16738647 (C.D. Ill. Nov. 7, 2022) ....6

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
770 F. Supp. 2d 1299 (N.D. Ga. 2011) ....1

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,
No. 09-61166-CIV, 2011 WL 1456029 (S.D. Fla. Apr. 5, 2011) ....1, 2

Griffin Communications, LLC ("Griffin") files this Post-Hearing Brief to address the factual disagreements between counsel at the July 21, 2023 hearing on Plaintiffs' Discovery Motion No. 20: For Spoliation Sanctions Against Defendant Griffin Communications, LLC (ECF No. 960) ("Plaintiffs' Initial Brief"), as well as certain questions raised by the Court:

1. Plaintiffs contend that the September 11, 2017, litigation hold notice to Griffin from the Department of Justice meant there was a duty in this case to preserve Lex Sehl's emails. But the DOJ notice related only to its investigation of the "proposed acquisition of Tribune Media Co. by Sinclair Broadcast Group," *see* Exhibit 11 to Plaintiffs' Initial Brief (ECF No. 960-2), not to any issue in this case. Additionally, the September 26, 2017, Civil Investigative Demand which followed the litigation hold notice, *see* Exhibit 10 to Plaintiffs' Initial Brief (ECF No. 960-2), addressed its questions only to the Sinclair-Tribune merger transaction and to the "relevant area" which included Oklahoma City, but not Tulsa, where Mr. Sehl worked. Similarly, the litigation hold notice referred to a "designated market area," which included Oklahoma City, but, again, not Tulsa. Tribune had no stations in Tulsa.

These documents did not create any duty that is applicable to this case. As the Court explained in *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1307 (N.D. Ga. 2011) (where document preservation was triggered by a government CID), "Delta owed no preservation duty to [private] Plaintiffs that it could have breached. If Delta failed to comply with the CID, the DOJ—not Plaintiffs—is the appropriate party to take action." *Id.* at 1308. *See also Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029 (S.D. Fla. Apr. 5, 2011) ("[T]he alleged destruction of evidence arose primarily when Defendants were under a duty to *others* (such as government officials who issued subpoenas), but not necessarily these Plaintiffs."). *Id.* at *1 (emphasis in original). The Court added that it was "reluctant to create a new

legal precedent which would establish some type of free-floating or shifting duty which other parties could latch onto in order to seek the sanctions which the parties with standing choose not to pursue." *Id.*

2. Plaintiffs contended that Mr. Sehl's documents would be important because of potential contacts with the CoxReps firm. Plaintiffs omitted to explain that Mr. Sehl had very limited contacts with the CoxReps firm, only when Shawn Jordan, the Griffin representative who dealt regularly with CoxReps, was on vacation. *See* Sehl Dep. 150:10-15, 182:3-14, Exhibit 1 hereto. Moreover, Plaintiffs' citation to one such communication between Mr. Sehl and CoxReps shows that some of these documents were in fact produced.[1]

3. Plaintiffs suggest that the unavailability of Mr. Krier's texts must have been intentional because the head of IT reported to Mr. Krier. But, as set forth in Griffin's Brief in Opposition to Plaintiffs' Discovery Motion No. 20 (ECF No. 969) ("Opposition") at p.7, David Griffin explained that Mr. Krier does not have "direct responsibility" for IT. Griffin Dep. 44:23-45:1 (Ex. 2 to Opposition (ECF No. 969-3). His duties with respect to IT were limited to the "people management of the IT department. . . . He relies on Mr. Wiseman." *Id.* at 170:5-14. *See also Id.* at 161:11-19 (Mr. Griffin met with Trevor Wiseman to implement the document hold). Moreover, if Griffin intended to deprive Plaintiffs of evidence, it surely would not have withheld documents from two individuals who had an inconsequential role in pacing exchanges, and then produced an exhaustive group of documents from the individuals who did have a substantial role in those efforts.

---

[1] Plaintiffs also have access to CoxReps documents and to CoxReps' "cooperation" pursuant to their settlement with CoxReps. Plaintiffs' Motion for Preliminary Approval of Settlements with Defendants CBS, Fox, The Cox Entities, and Sharebuilders (ECF No. 982) at p.8.

4. Plaintiffs contended at the hearing that they had no access to any information about the persons with whom Mr. Krier texted. In fact, Plaintiffs had such information and utilized it in Mr. Krier's deposition, but only showed Mr. Krier texts between him and one individual, Peter Diaz.[2] *See* Krier Dep. Ex. 3, Exhibit 2 hereto (references to texts in first column). Mr. Diaz, while a TEGNA executive, was based in Dallas, *id.*, and therefore not in either of the Oklahoma markets that represent Griffin's sole DMAs. Additionally, he was described by Mr. Krier as a longtime friend. *See* Krier Dep. cited in ECF No. 969-21 at 76:16-20, 97:19-22. Conclusively, TEGNA does not have any stations in either the Tulsa or Oklahoma City markets where Griffin operates, and is therefore not a competitor of Griffin.

The fact that Plaintiffs did not bother to question Mr. Krier about any texts other than the (irrelevant) texts with Mr. Diaz further establishes that Mr. Krier's other texts were viewed by Plaintiffs as having no significance, and that Plaintiffs' complaints about the missing texts are tactical, rather than substantive.

5. Contrary to Plaintiffs' allegations, Griffin's employees were never given the option of choosing which documents were relevant and should be preserved. In support of that contention, Plaintiffs' expert Mr. Matzen cites to the deposition of Derek Criss at 35:8-13 (*see* ECF No. 969-4 (Criss Dep.). That testimony states as follows:

> Q. Who -- who would be in charge of making sure that documents are preserved at Griffin?
>
> A. Several people. The account executives were in charge of keeping their documents and uploading them to the common drive or the OneDrive so it could be backed up every night and then IT was in charge of that.

[2] Counsel for Griffin mistakenly stated at the hearing that the none of texts were utilized.

This language does not say that Griffin employees could choose which documents could be uploaded to OneDrive. In fact, Mr. Criss' additional testimony, cited by both Griffin, ECF No. 969 at pp.2-3 and Plaintiffs' Initial Brief at p.2, makes clear that "we were instructed to save all electronic and paper documents." Deposition of Derek Criss ("Criss Dep.") at 35:1-4 (Exhibit 3 to Opposition, ECF No. 969-4). He added that "we were given instructions. We had had training on this at this point and we were told to save all documents, all electronic and all paper documents." *Id*. 115:12-16. *See* Opposition at p.7.

6. Plaintiffs asserted at the hearing that all the files of three of the six additional custodians that Griffin produced to mitigate any possible prejudice from the loss of Mr. Sehl's documents were lost. In fact, emails were produced from all six. "OneDrive" documents, containing Word documents, Excel spreadsheets and PowerPoints, were unrecoverable for three of the six. However, one of those six was an individual whose documents were mistakenly provided, since that individual did not report to Mr. Sehl. Another left in November, 2017, and therefore there was no obligation to preserve her documents in Tulsa. *See* Declaration of M. Richard Mullins in Support of Defendant Griffin Communications, Inc.'s Opposition to Plaintiffs' Discovery Motion # 20 (ECF No. 969-2) at ¶¶6-7. Nor did Plaintiffs seek to depose any of the six account executives.

7. Plaintiffs were incorrect in stating at the hearing that there was a violation of the Court's ESI Order because Griffin did not permit its IT personnel to have a telephone conversation with Plaintiffs' retained experts. In fact, Richard Mullins, counsel for Griffin, who was knowledgeable regarding those issues, engaged in numerous conferences with Plaintiffs' counsel. Griffin also offered to, and did, respond to written questions from Plaintiffs on IT issues. *See* Exhibit 4 to Plaintiffs' Initial Brief (ECF No. 960-2) ("Griffin remains willing to answer germane

written questions if Plaintiffs wish to submit them."). As Plaintiffs acknowledge, Griffin also offered to present its IT representatives for deposition, and even provided dates to Plaintiffs. Plaintiffs chose not to take those depositions and instead have sought a far more sweeping (and expensive) remedy against Griffin, the appointment of an expert to review all of Griffin's IT procedures. This is another indication that what is sought here would not in any way mitigate prejudice, but is a tactical, and punitive, effort.

8. Plaintiffs stated at the hearing that Griffin found a room full of unexplained hard drives. In fact, when these hard drives were found, they were all carefully examined by Griffin's outside vendor, and none of them related to Mr. Sehl or the account executives whose OneDrives could not be recovered. *See* Exhibit 4 to Plaintiffs' Initial Brief (ECF No. 960-2) ("Based on information received from Griffin's vendor, none of the computers appear to have been used by any custodian, including Mr. Sehl . . . Our vendor did not find anything indicating that the desktops were used by Mr. Sehl.").

At argument, the Court expressed concerns that sophisticated companies should not be making mistakes in their production of ESI after a number of years of litigation involving ESI. The foregoing explains that the mistakes by Griffin (which is a small company operating only in Oklahoma) were quite limited.[3]

The federal rules and the courts recognize that the ESI rules are not designed to penalize every mistake made by a party. That is why the prerequisite to any remedy is prejudice. Both parties' briefs explain that any remedy should be no "greater than necessary to cure the prejudice."

---

[3] Nevertheless, in light of the mistakes made, Griffin has been reviewing its litigation hold procedures and is in the process of updating them to assure that mistakes will not be made in the future. Mr. Krier will be retiring before the end of this year.

*Bolyard v. Vill. of Sherman*, No. 19-cv-03146, 2022 WL 16738647, at *2 (C.D. Ill. Nov. 7, 2022) (quoting Fed. R. Civ. P. 37(e)(1)). The existence of prejudice requires that "the lost evidence must prevent the aggrieved party from using evidence *essential* to its underlying claim." Plaintiffs' Initial Brief at p.13, Plaintiffs' Reply Brief in Support of Discovery Motion No. 20: for Spoliation Sanctions Against Griffin Communications, LLC (ECF No. 973) at pp.4-5, Opposition at p.8. (citing *In re Old Banc One S'holders Sec. Litig.*, No. 00 C 2100, 2005 WL 3372783, at *4 (N.D. Ill. Dec. 8, 2005)).

The opposing party should not be able to seize on a few ESI mistakes in order to gain a litigation advantage, unless it can show clear harm. Plaintiffs have fallen far short of that showing here. Moreover, the sole remedy Plaintiffs now seek (appointment of a firm to investigate Griffin's litigation hold process) would not mitigate any conceivable prejudice. Its sole effect would be to impose significant burden and costs on Griffin.

Dated: July 27, 2023

*/s/ David A. Ettinger*
**HONIGMAN LLP**
David A. Ettinger (admitted *pro hac vice)*
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7368
dettinger@honigman.com

**HONIGMAN LLP**
William B. Berndt
155 North Wacker Drive
Suite 3100
Chicago, IL 60606
(312) 701-9376
wberndt@honigman.com

**MCAFEE & TAFT**
Mark Richard Mullins (admitted *pro hac vice*)
211 N. Robinson Ave.
10th Floor
Two Leadership Square Oklahoma City, OK 73102
(405) 552-2263
rick.mullins@mcafeetaft.com
*Counsel for Defendant Griffin*

*Communications, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/David A. Ettinger

David A. Ettinger (admitted *pro hac vice*)
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7368
dettinger@honigman.com