## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**IN RE:**
**LOCAL TV ADVERTISING ANTITRUST**
**LITIGATION**

**MDL NO. 2867**

**NO. 18 C 6785**

**Honorable Virginia M. Kendall**

## DEFENDANTS' OMNIBUS OBJECTION TO THE SPECIAL MASTER
## REPORT & RECOMMENDATION NO. 1 (ECF NO. 1030)

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 6

     I.     The R&R Wrongly Required a Showing of "Client Confidences" for
           Privilege to Attach to Attorney Communications, Contrary to Seventh
           Circuit Law. ........................................................................................... 6

           A.     Seventh Circuit Precedent Protects Communications Reflecting
                    Legal Advice. ........................................................................... 7

           B.     The R&R's Cited Authority Does Not Support a "Client
                    Confidences" Rule. ................................................................. 9

           C.     Requiring "Client Confidences" Will Stifle Full and Frank
                    Communication. ..................................................................... 13

     II.    The R&R Wrongly Concluded Hundreds of Defendants' Documents Did
           Not Contain Legal Advice. ................................................................... 16

           A.     Documents from In-House Counsel Routinely Receive Privilege
                    Protection. .............................................................................. 17

           B.     Legal Advice May Take the Form of Instructions, Overviews, or
                    Hypotheticals on How to Comply with the Law. .................... 18

     III.   The R&R Relied on an Unreasonable and Arbitrary Process. ............ 21

     IV.   The R&R Wrongly Held that Extrinsic Evidence Is Necessary to Prove
           Each Element of a Privilege Claim. ..................................................... 23

           A.     The R&R Erred by Applying an Incorrect Legal Standard. .... 24

           B.     The R&R Relied on Cases that Do Not Support Its Rule. ....... 27

CONCLUSION ............................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Grain Trimmers, Inc. v. Office of Workers' Comp. Programs*,
   181 F.3d 810 (7th Cir. 1999) ...................................................25

*Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*,
   406 F.3d 867 (7th Cir. 2005) ...................................................21

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*,
   326 F.R.D. 176 (N.D. Ill. 2018).................................................8

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94 C 897, 1996 WL 5180 (N.D. Ill. Jan. 3,1996) ....................................*passim*

*Carmody v. Bd. of Trustees of Univ. of Illinois*,
   893 F.3d 397 (7th Cir. 2018) ..................................................*passim*

*Central Die Casting & Mfg. Co. v. Tokheim Corp.*,
   1994 WL 444796 (N.D. Ill. Aug. 15, 1994) ........................................25

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980)..................................................19

*Crabtree v. Experian Info. Sols., Inc.*,
   No. 1:16-cv-10706, 2017 WL 4740662 (N.D. Ill. Oct. 20, 2017) ..............17, 21, 26

*In re CV Therapeutics, Inc. Sec. Litig.*,
   No. C-03-3709 ............................................................19

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..........................................................24

*DeLeon-Reyes v. Guevara*,
   No. 1:18-cv-01028, 2020 WL 3050230 (N.D. Ill. June 8, 2020)...........................29

*Denius v. Dunlap*,
   209 F.3d 944 (7th Cir. 2000) ...................................................16

*Dirickson v. Intuitive Surgical, Inc.*,
   No. 19 C 7249, 2020 WL 11421623 (N.D. Ill. Dec. 23, 2020) ...................21, 22, 24

*Doe v. Johnson*,
   No. 15 C 1387, 2015 WL 12834771 (N.D. Ill. Nov. 23, 2015)...................21, 22, 24

*Matter of Feldberg*,
  862 F.2d 622 (7th Cir. 1988) ...........................................................................10, 11, 12

*Finnegan v. Myers*,
  No. 3:08-cv-503-RL-CAN, 2014 WL 12789809 (N.D. Ind. Feb. 18, 2014) ..........................25

*Fisher v. United States*,
  425 U.S. 391 (1976).........................................................................................7, 10, 11

*Flagstar Bank, FSB v. Freestar Bank, N.A.*,
  No. 09 C 1941, 2009 WL 2706965 (N.D. Ill. Aug. 25, 2009) ...............................26

*Matter of Grand Jury Proceeding, Cherney*,
  898 F.2d 565 (7th Cir. 1990) ..........................................................................11

*Heriot v. Byrne*,
  257 F.R.D. 645 (N.D. Ill. 2009)........................................................................17

*Hollister Inc. v. E. R. Squibb & Sons, Inc.*,
  No. 84 C 1987, 1988 WL 129988 (N.D. Ill. Dec. 1, 1988) ....................................12

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) .................................................................. *passim*

*Leybold-Heraeus Techs., Inc. v. Midwest Instrument Co., Inc.*,
  118 F.R.D. 609 (E.D. Wis. 1987) .....................................................................25

*Massuda v. Panda Exp., Inc.*
  759 F.3d 779 (7th Cir. 2014) ..........................................................................30

*McCook Metals L.L.C. v. Alcoa Inc.*,
  192 F.R.D. 242 (N.D. Ill. 2000)..........................................................................8

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
  No. 14 C 3618, 2019 WL 12528942 (N.D. Ill. July 17, 2019) .........................................17, 26

*Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*,
  257 F.R.D. 456 (N.D. Ill. 2008).......................................................................26

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
  No. 03 C 2934, 2007 WL 781252 (N.D. Ill. Mar. 8, 2007) ...................................13

*Oleksy v. Gen. Elec. Co.*,
  No. 06 C 1245, 2011 WL 3471016 (N.D. Ill. Aug. 8, 2011).................................28

*In re Plasma-Derivative Protein Therapist Antitrust Litig.*,
  Nos. 09 C 7666, 11 C 1468, 2013 WL 791432 (N.D. Ill. Mar. 4, 2013)...............................19

*Rehling v. City of Chicago*,
207 F.3d 1009 (7th Cir. 2000) .......................................................................7, 9, 10

*Schlicksup v. Caterpillar, Inc.*,
No. 09–CV–1208, 2011 WL 11737159 (C.D. Ill. Aug. 19, 2011) ....................................18, 19

*Smith-Brown v. Ulta Beauty, Inc.*,
No. 15 C 10340, 2019 WL 2644243 (N.D. Ill. June 27, 2019) ............................................19

*Slaven v. Great Am. Ins. Co.*,
83 F. Supp. 3d 789 (N.D. Ill. 2015) ..............................................................27, 28

*Smith v. Board of Educ.*,
No. 17 C 7034, 2019 WL 2525890 (N.D. Ill. June 19, 2019) ..............................................29

*Stafford Trading, Inc. v. Lovely*,
No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ..............................................16

*In re Sulfuric Acid Antitrust Litig.*,
235 F.R.D. 407 (N.D. Ill. 2006) .......................................................13, 20, 21, 22

*U.S. Sec. & Exch. Comm'n v. Hollnagel*,
No. 07 CV 4538, 2010 WL 11586980 (N.D. Ill. Jan. 22, 2010) ...........................................25

*United States v. Adriatico-Fernandez*,
498 F. App'x 596 (7th Cir. 2012) .................................................................28, 29

*United States v. BDO Seidman, LLP*,
337 F.3d 802 (7th Cir. 2003) ....................................................................28

*United States v. Bey*,
772 F.3d 1099 (7th Cir. 2014) ...................................................................19

*United States v. Defazio*,
899 F.2d 626 (7th Cir. 1990) ...................................................................7, 8, 9

*United States v. First State Bank*,
691 F.2d 332 (7th Cir. 1982) ...................................................................29

*United States v. Jicarilla Apache Nation*,
564 U.S. 162 (2011).......................................................................13

*United States v. Leonard-Allen*,
739 F.3d 948 (7th Cir. 2013), *as amended* (Aug. 29, 2013)................................................11

*United States v. Rainone*,
32 F.3d 1203 (7th Cir. 1994) ...................................................................11

*United States v. Weger*,
709 F.2d 1151 (7th Cir. 1983) ................................................................11

*United States v. White*,
950 F.2d 426 (7th Cir. 1991) ................................................................28

*Upjohn Co. v. United States*,
449 U.S. 383 (1981)........................................................................13, 15

*Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC*,
334 F.R.D. 149 (N.D. Ill. 2020)........................................................18, 19

*Washtenaw Cnty. Employees' Retirement Sys. v. Walgreen Co.*,
No. 15 C 3187, 2020 WL 3977944 (N.D. Ill. July 14, 2020) ...........................8, 17

*Weeks v. Samsung Heavy Indus., Ltd.*,
No. 93 C 4899, 1996 WL 288511 (N.D. Ill. May 30, 1996) ...........................8, 17

*Wier v. United Airlines, Inc.*,
No. 19 CV 7000, 2021 WL 1517975, at *7 (N.D. Ill. Apr. 16, 2021) .......................8, 21, 26

*Matter of Witnesses Before The Special Mar. 1980 Grand Jury*,
729 F.2d 489 (7th Cir. 1984) ................................................................11

**Other Authorities**

Fed. R. Civ. P. 11(b) ........................................................................26

Fed. R. Civ. P. 53(f)(5) ........................................................................21

Fed. R. Civ. P. 26 ........................................................................27

Fed. R. Civ. P. 53 ........................................................................2

## INTRODUCTION

Defendants respectfully submit: (1) this Omnibus Objection to the Special Master Report & Recommendation No. 1 on Plaintiffs' Motions to Compel Production of Antitrust Compliance Documents and Exhibits 1 through 6 thereto (the "R&R") (ECF No. 1030)[1] ("Objection"); and (2) Appendices 1-5, filed concurrently herewith (collectively, "Appendices").[2]  The R&R misapplied applicable law by: **(I)** requiring the presence of a "client confidence" to establish a claim of attorney-client privilege; **(II)** concluding, wrongly, that legal advice was not given; **(III)** applying an arbitrary and unreasonable process to reach its conclusions; and **(IV)** requiring extrinsic evidence to prove each element of privilege.  Defendants ask the Court to reject the R&R and enter an Order requiring the Special Master to set a reasonable process for resolving the disputed privilege claims (with further input from the parties on such process, as necessary) and to thereafter analyze Defendants' claims of privilege under applicable law.  To the extent the Court determines the law imposes the requirements set forth in the R&R, Defendants request an opportunity to submit to the Special Master extrinsic evidence to further support Defendants' privilege claims, consistent with the established approach of courts in this District.

## BACKGROUND

Defendants Nexstar, Raycom, Scripps, Sinclair, and TEGNA served privilege logs pursuant to the Stipulation and Order Regarding the Production of Documents and Electronically Stored Information ("ESI Order") (ECF No. 442) to Plaintiffs on or before January 31, 2022.  Each

---

[1] For purposes of this Objection, "Defendants" include, Nexstar Media Group, Inc. ("Nexstar"), Gray Media Group, Inc. (formerly known as Raycom Media, Inc.) ("Raycom"), the E.W. Scripps Company ("Scripps"), Sinclair Broadcast Group, Inc. ("Sinclair"), and TEGNA, Inc. ("TEGNA") (collectively "Defendants").  Griffin Communications, LLC and Meredith Corporation do not have documents at issue in R&R No. 1.

[2] Each Defendant has submitted an appendix addressing its own documents; see Appendix 1 (Nexstar), 2 (Raycom), 3 (Scripps), 4 (Sinclair) and 5 (TEGNA).

1

Defendant identified all attorneys to assist Plaintiffs in evaluating Defendants' privilege claims (with their initial privilege logs or thereafter, and in any case, at least four months before Plaintiffs filed their motions to compel).[3]  Following the initial service of privilege logs, Defendants met and conferred and corresponded with Plaintiffs in good faith for months in adherence with the ESI Order, providing Plaintiffs additional information regarding Defendants' privilege claims in response to specific requests, including supplemental information about the identity of attorneys on their respective logs.  Defendants repeatedly offered to provide more information to Plaintiffs for any specific document about which Plaintiffs expressed concern.  Without any obligation to do so, Defendants served on Plaintiffs revised privilege logs beginning in November 2021.  (R&R at 10).

On August 10, 2022, Plaintiffs filed Discovery Motion No. 5 against Nexstar, Raycom, Scripps, and TEGNA, seeking production of antitrust and corporate compliance documents.  (ECF No. 688).  On September 1, 2022, immediately after the parties briefed Discovery Motion No. 5, Plaintiffs filed additional motions to compel Defendants to produce documents withheld as privileged.  (ECF Nos. 727, 737, 738, 740, 741 (collectively, "Plaintiffs' Motions")).

On February 6, 2023, the Court appointed the Hon. Richard A. Levie (Ret.) as Special Master in the above captioned case.  (ECF No. 920).  The Court made clear in its March 8, 2023 Order Pursuant to Federal Rule of Civil Procedure 53 that the Special Master was being appointed

---

[3] The R&R incorrectly reflects that Defendants first provided their lists of attorneys on their privilege logs to Plaintiffs months after the initial dates of service.  (ECF No. 1030 at 10) (listing "April 13, 2022" under Nexstar, "July 1, 2022" under Raycom, "July 28, 2022" under Scripps, and "N/A***" under Sinclair and TEGNA). While some Defendants may have supplemented their attorneys' lists, most Defendants served an attorney list in conjunction with their initial privilege log by January 31, 2022.

"to consider and rule upon [a]ll pending motions relating to privilege log entries in the above-captioned case." (ECF No. 925).

On February 16, 2023, the parties first met via video conference with the Special Master to discuss the scope of the disputes, and they met again on March 1, 2023 to discuss a procedure to address the motions relating to Defendants' privilege log entries. (*See* Declaration of David E. Mills in Support of Defendants' Omnibus Objection to the Special Master R&R ("Mills Decl.") ¶ 2). On March 8, 2023, Defendants and Plaintiffs met and conferred to discuss a procedure the Special Master could follow, including priority categories for review, and Defendants' rights to supplement their privilege logs if there were a judicial finding of insufficiency in the claims of privilege. (*Id.* ¶ 3). The parties agreed to submit a written protocol that would outline a proper process to the Special Master, either jointly or separately if the parties could not agree. (*Id.*).

Following the parties' meet-and-confer and at their request, the Special Master postponed a March 13, 2023 status hearing to permit the parties to further meet and confer on a written protocol. (*Id.* ¶ 4). Defendants and Plaintiffs exchanged draft protocols on March 14, 2023 and met and conferred about those protocols on March 15, 2023. (*Id.*).

Defendants and Plaintiffs were unable to stipulate to a uniform protocol and agreed to submit separate written proposals to the Special Master. (*Id.* ¶¶ 5- 7). Defendants submitted their proposal on March 15, 2023 (*see id.* ¶ 5; Ex. A to Mills Decl.), and Plaintiffs proposed an alternative protocol on March 16, 2023 (*see id.* ¶ 6; Ex. B to Mills Decl.). Defendants replied to Plaintiffs' proposal on March 20, 2023 (*see id.* ¶ 7; Ex. C to Mills Decl.). While the parties could not agree on a proper protocol, Defendants did accept Plaintiffs' proposal that the Special Master review privilege log entries by Plaintiff-identified categories, starting with Plaintiffs' first category, "Withheld/Redacted Antitrust Guidelines/Corporate Policies (which include privileged

communications *about* guidelines and policies)."[4]  (Mills Decl. ¶ 7).  That first category is the subject of the Special Master's R&R.

Defendants' proposed written protocol cited the typical practice of courts in the Northern District of Illinois and proposed the following basic process:

1. The Special Master would review Defendants' privilege log entries and, if he determined any entry to be insufficient, provide the relevant Defendant with an opportunity to submit additional information to cure the alleged insufficiency; and

2. If Defendants do not cure an insufficiency in their privilege log entries, the Special Master may request *in camera* review to make a determination about the privileged nature of the document.

(Ex. A to Mills Decl. at 1).  At the core of Defendants' protocol, and as discussed with the Special Master, was that Defendants would be entitled to one opportunity to supplement at the first instance where there has been a judicial determination of insufficiency because "**[t]here has been no ruling about the sufficiency of *any* privilege log or *any* privilege claim in the above-captioned case**." (Ex. C to Mills Decl. at 6 (emphasis in original)).

Plaintiffs' written protocol, on the other hand, proposed that the Special Master should (1) engage immediately in *in camera* review and (2) refuse to permit Defendants an opportunity to provide additional information to cure any alleged insufficiency, on the basis that Defendants allegedly "waived" their rights to do so.  (*See* Ex. B to Mills Decl. at 1-3).  Defendants' Reply to

---

[4] Defendants did not agree that Plaintiffs' categorizations, including in this priority category, accurately or appropriately described the contents of the withheld or redacted documents.  (Mills Decl. ¶ 7).

Plaintiffs' Proposed Protocol for Privilege Review refuted Plaintiffs' waiver argument.  (*See* Ex. C to Mills Decl.).

On March 22, 2023, the parties and the Special Master convened a third time and discussed the parties' competing protocols.  (*See* Mills Decl. ¶ 8).  On April 4, 2023, Defendants asked the Special Master whether he needed "any additional information from the Defendants … to facilitate [the] determination of the proper procedure."  (*See id.* ¶ 9; Ex. D to Mills Decl.).  The Special Master did not request any additional information.

On May 2, 2023, the Special Master instructed various Defendants to produce for *in camera* review documents challenged by Plaintiffs as improperly withheld or redacted Antitrust Guidelines/Corporate Policies (including privileged communications about guidelines and policies).  (*See* Mills Decl. ¶ 10).  Defendants complied with the Special Master's instruction, producing documents for *in camera* review by May 5, 2023.  (*Id.*).  The Special Master instructed Defendants to provide the additional antitrust compliance documents challenged in Plaintiffs' Discovery Motions Nos. 9, 11, 12, 14, and 14-A, and Defendants complied by June 2, 2023.  R&R at 14.

In the four months between submission of Defendants' and Plaintiffs' respective written protocols and issuance of the R&R, the Special Master did not articulate any procedure that he would follow.  (*See* Mills Decl. ¶ 11).  In a small number of instances, the Special Master indicated that a privilege claim was insufficiently supported by a log entry or by the document itself and provided only certain Defendants the opportunity to submit additional information to cure the alleged insufficiency.  (*Id.* ¶ 12).  For example, the Special Master contacted one Defendant for a

declaration to substantiate the claim of privilege for certain documents.[5]  (*Id.*).  While the Special Master had not expressly adopted Defendants' protocol (or any protocol) or stated that Defendants would be afforded the opportunity to supplement their logs with extrinsic evidence to support their privilege claims if the Special Master determined that a privilege claim was insufficiently supported, that was precisely the process he *appeared* to be following.  (*Id.* ¶ 13).

On July 26, 2023, the Special Master issued the R&R, to which Defendants now object. (*Id.* ¶ 14).

## ARGUMENT

### I.  The R&R Wrongly Required a Showing of "Client Confidences" for Privilege to Attach to Attorney Communications, Contrary to Seventh Circuit Law.

The R&R rejected nearly all of Defendants' attorney-client privilege claims—on nearly three hundred documents—in part because the protected communications did not "reveal client confidences."  *See generally* R&R at 21-23 (proposed legal standard); *id.* at 57-175 (recommending production of the majority of Defendants' documents based in part on the determination that "client confidences" are not revealed).  But Seventh Circuit law does not require that a document reveal "client confidences" in order for privilege to attach.  While a discussion of "client confidences" *may* render a document privileged, it is not necessary for privilege to attach; communications revealing or conveying "legal advice" are also protected, regardless of whether they reveal "client confidences."  *See, e.g.*, *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 405 (7th Cir. 2018).  The R&R's failure to recognize privilege protection for

---

[5] The Special Master's process was unreasonable and inconsistently applied because he permitted some, but not all, Defendants to offer extrinsic evidence to support a claim of privilege over some but not all documents that he determined were insufficiently supported.  Defendants request an orderly process that permits all Defendants to supply supplemental information in the event the Special Master determines a log and/or document are insufficient to support a privilege claim.

communications containing legal advice should be rejected because it: (a) contradicts Seventh Circuit precedent; (b) is unsupported by the authority cited in the R&R itself; and (c) ignores the privilege's core purpose of encouraging open and frank communication between attorneys and their clients.

### A. Seventh Circuit Precedent Protects Communications Reflecting Legal Advice.

The R&R seeks to impose a rule more stringent than Seventh Circuit authority and stricter than the standard Plaintiffs argued in their motions to compel that form the basis of this dispute.[6] In the Seventh Circuit, "[c]ommunications from attorney to client are privileged only if they constitute legal advice, **_or_** tend directly or indirectly to reveal the substance of a client confidence." *See, e.g.*, *id.* at 405 (citing *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)) (emphasis added). The "or" signals that the two inquiries are disjunctive, *i.e.*, an attorney-client communication is privileged if the communication reveals **either** (1) legal advice; **or** (2) "client confidences," but does not require both. *See, e.g.*, *Carmody*, 893 F.3d at 405 (memorandum from attorney to client was privileged because "it contains legal advice—specifically, recommendations regarding the investigation of the conduct that led to [employee's] termination," without reference to "client confidences"); *Judson*, 529 F.3d at 388 (memorandum between two of defendant's attorneys was privileged because it contained "legal strategy of filing for bankruptcy to minimize

---

[6] In thousands of pages of briefing against five Defendants, Plaintiffs never advocated for a privilege standard that turned on the existence of "client confidences" in attorney communications. Plaintiffs cited dozens of cases to support their arguments and raft of motions against Defendants, but they never cited the two primary cases the R&R relies on to underpin its "client confidences" rule: *Rehling v. City of Chicago*, 207 F.3d 1009 (7th Cir. 2000) and *Fisher v. United States*, 425 U.S. 391 (1976). (*See* ECF Nos. 688, 723, 735, 827, 737, 821, 738, 822, 740, 824, 741, 826 (Plaintiffs' motions to compel Nos. 5, 9, 11, 12, 14, and 15 and replies in support thereof); *see also* ECF Nos. 736, 820, 739, and 823 (Plaintiffs' motions to compel Nos. 10 and 13 specific to Griffin and Meredith and replies in support thereof)).

losses," without reference to "client confidences"); *Defazio*, 899 F.2d at 635 (testimony was not privileged where it contained no legal advice and no "client confidences").

Many cases in this district apply the Seventh Circuit standard articulated in *Carmody*, *Judson*, and *Defazio* and protect communications containing legal advice, without requiring proof of "client confidences." *See, e.g.*, *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *7 (N.D. Ill. Apr. 16, 2021) (emails were privileged where they provided legal advice, without reference to "client confidences" and even when there was no indication the emails responded to confidential client communications); *Washtenaw Cnty. Employees' Retirement Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *5 (N.D. Ill. July 14, 2020) (emails reflecting legal advice were privileged, without reference to "client confidences"); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 183-84 (N.D. Ill. 2018) (requests by client for their counsel's suggestions to edit commercial documents were privileged, without deciding whether "client confidences" were revealed); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 253-54 (N.D. Ill. 2000) (interoffice memoranda between attorney and client requesting or giving legal advice were privileged, without reference to "client confidences"); *Weeks v. Samsung Heavy Indus., Ltd.*, No. 93 C 4899, 1996 WL 288511, at *2 (N.D. Ill. May 30, 1996) (law firm's billing statement indicating whether and how its client should make a variety of employment and other legal decisions was privileged, without reference to "client confidences").

In *BankDirect Capital Finance*, the district court relied on Seventh Circuit precedent (*Carmody*, *Rehling*, and *Defazio*) to consider whether exchanges between client and attorney regarding draft commercial documents were privileged. 326 F.R.D. at 183-84. The court observed that while drafting commercial documents "is not litigation-related advice," the privilege extends to "legal advice of any kind," and therefore, the documents were protected by privilege. *Id.* at 183

8

(citing *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 416 (N.D. Ill. 2006) ("*Sulfuric Acid*"), *supplemented*, 432 F. Supp. 2d 794, 796-97 (N.D. Ill. 2006); *Rehling*, 207 F.3d at 1019). Similarly, in *Doe v. Johnson*, the district court relied on *Rehling* and *Defazio* to consider whether emails regarding a U.S. Citizenship and Immigration Services Request for Evidence ("RFE") were privileged. No. 15 C 1387, 2015 WL 12834771, at *2 (N.D. Ill. Nov. 23, 2015). The court concluded that emails containing the attorney's legal advice in the form of revisions to the RFE and communication about what information can be requested in the RFE were privileged, without any reference to whether those emails revealed "client confidences." *Id.* at *2-3. With respect to a different email, the court concluded that the email was privileged, without any reference to legal advice, because it "tend[ed] to reveal confidential client communications regarding the parties to the land transaction." *Id.* at *3.

## B.    The R&R's Cited Authority Does Not Support a "Client Confidences" Rule.

The R&R fails to cite any of the three controlling Seventh Circuit cases or the many Northern District of Illinois cases that protect attorney communications as privileged when they contain legal advice, but not necessarily "client confidences." Instead, the R&R relies on a handful of cases, most of them decided between 20 and almost 50 years ago, that do not support the R&R's requirement that a privileged communication reveal "client confidences." The many cases decided in the years since, including controlling authority from the Seventh Circuit (*Carmody*, *Judson*), demonstrate that the R&R applied the incorrect standard. *See supra* Section I.A.

***Rehling* (7th Cir. 2000)**. The R&R relies heavily on *Rehling*, which does not justify the purported "client confidences" rule. *Rehling* states that the attorney-client privilege generally attaches to client statements, but attorney statements may also be protected when they "rest on confidential information obtained from the client" or "reveal the substance of a confidential

communication by the client." 207 F.3d at 1019 (cited by the R&R at 23).[7] Notwithstanding those statements, *Rehling* upholds the extension of privilege over legal advice, without considering whether "client confidences" would be revealed. *Id*. Specifically, the Seventh Circuit considered whether the district court erred in finding that statements from an in-house attorney for the Superintendent of Police were privileged, even where those statements did not reveal "client confidences." *Id*. The district court determined that the attorney gave *legal advice* to the Chicago Police Department ("CPD") about a CPD employee in connection with the Americans with Disabilities Act, and because the attorney's testimony would reveal that legal advice, the privilege applied. *Id*. The Seventh Circuit affirmed, observing that the in-house attorney testified he had rendered legal advice in his capacity as General Counsel, and concluded that "[t]his is exactly the kind of legal advice the privilege was meant to protect." *Id*.

Even if *Rehling* stood for the R&R's rule that "client confidences" are required to render a communication privileged (it does not), that rule would be contradicted or superseded by *Carmody* and *Judson*, two Seventh Circuit cases decided years after *Rehling's* 2000 holding. As discussed in Section I.A. *supra*, both *Carmody* and *Judson* expressly apply privilege to communications based on the provision of legal advice alone, without considering whether those communications revealed "client confidences."

**<u>Fisher (1976) & Feldberg (7th Cir. 1988)</u>**. Next, the R&R improperly announces that a "privilege untethered to a client confidence appears to lack acceptance under Supreme Court and Seventh Circuit law, as many courts in this district have so held." R&R at 24 (citing *Fisher v.*

---

[7] The *Rehling* court did not conclude attorney-to-client communications would be protected *only when* "those communications rest on confidential information obtained from the client" or "those communications would reveal the substance of a confidential communication by the client." 207 F.3d at 1019. Rather, both of those categories of communications "will be" protected. *Id*.

*United States*, 425 U.S. 391, 403 (1976), *Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988), and three Northern District of Illinois cases decided in 1995, 1980, and 1988). This conclusion is demonstrably wrong.

*Fisher*, decided in 1976, did not address the question of whether privilege attaches only to communications that reveal "client confidences." In *Fisher*, the Supreme Court considered whether the attorney-client privilege protected tax documents that the taxpayer transferred to his attorney for the purpose of seeking legal "assistance" in tax investigations. 425 U.S. at 403-05. The Court held that the documents were privileged because they revealed confidential information provided to the attorney *in connection with* the client's request for legal advice. *Id*. *Fisher* did not analyze whether an attorney communication is privileged if it contains legal advice but not "client confidences." Nor has *Fisher* ever been cited by courts in the Seventh Circuit for that proposition; its privilege holding is cited only in the limited circumstances shaping its own discussion—the applicability of privilege to factual documents.[8]

*Matter of Feldberg*, decided in 1988, likewise considered a different question. The *Feldberg* court assessed whether questions directed to an attorney in a grand jury investigation called for privileged information. 862 F.2d at 623-24. Because the attorney was also a records

---

[8] The only Seventh Circuit cases relying on *Fisher*'s privilege discussion considered whether purely factual information given by the client to an attorney may be protected by privilege. *See, e.g.*, *United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013), *as amended* (Aug. 29, 2013) (client intake form identifying the name of the person who referred client to attorney was not privileged); *United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994) (client's communications sent to his prior attorney were protected by privilege); *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 568 (7th Cir. 1990) (client's legal fee arrangement was privileged because it was a confidential communication and revealing the fee payer's identity would reveal the client's involvement in a crime and reveal his motive for seeking legal advice); *Matter of Witnesses Before The Special Mar. 1980 Grand Jury*, 729 F.2d 489, 495 (7th Cir. 1984) (client fee information was not privileged because it did not contain confidential information); *United States v. Weger*, 709 F.2d 1151, 1155 (7th Cir. 1983) (the form, i.e., "type style characteristics," of a privileged communication is not privileged).

custodian, the court found that certain questions, such as "where did you look for the documents?" would not implicate privileged information because the information requested "would not reveal legal advice rendered to the firm *or* confidential information received from" the client. *Id*. at 628 (emphasis added). Other questions directed to the attorney's role as an advisor called for privileged information and should not be answered. *Id*. *Feldberg* does not address whether an attorney communication rendering legal advice must also reveal "client confidences" in order to be privileged.

The R&R also incorrectly states that "many courts in this district" have declined to find privilege "untethered to a client confidence." R&R at 24 (citing only three cases from this district that were decided in 1995, 1988, and 1980). Not so. In the decades since the three cited cases were decided, several Northern District of Illinois cases have evaluated whether privilege attaches to legal advice without reference to "client confidences." *See supra* Section I.A. (collecting cases). Many of those courts have resolved this inquiry squarely against the R&R's rule, holding that privilege applies to communications of legal advice, without reference to whether "client confidences" would be revealed. *See id.*[9]

**_Sulfuric Acid_ (N.D. Ill. 2006) & _Brand Name_ (N.D. Ill. 1996)**. The R&R also cites *Sulfuric Acid* and *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 5180 (N.D. Ill. Jan. 3, 1996) to support its rule, suggesting that the court's consideration of "client confidences" in those cases renders "client confidences" a requirement for the application of

---

[9] The three cases themselves do not support the R&R rule, either. *See, e.g.*, *Hollister Inc. v. E. R. Squibb & Sons, Inc.*, No. 84 C 1987, 1988 WL 129988, at *1 (N.D. Ill. Dec. 1, 1988) (cited in R&R at 24 n.77). The *Hollister* court expressly stated the "preferred view," that "the privilege also protects any communication from the attorney to his client when made in the course of giving legal advice," and applied this rule to conclude that certain communications were privileged, without regard to "client confidences" (ordering other portions of documents to be disclosed due to waiver).

privilege. *See* R&R at 37, 38. But neither court applied a rule that an attorney-client communication *must* reveal "client confidences" in order to warrant privilege protection. *Sulfuric Acid* applied the Seventh Circuit rule that privilege applies to communications from attorney to client if they reveal "client confidences" *or* provide legal advice. *See* 235 F.R.D. at 430-31. When the court ordered production of documents, it was because the documents did not reflect legal advice *and* did not reveal "client confidences." *Id.* at 431 (declining to protect hypothetical examples in a policy as privileged because "[n]o advice is reflected, no confidential confidences are revealed, and the contents of the hypotheticals are not disclosed"). Likewise, in *Brand Name*, the court determined that the challenged documents were privileged because they revealed "client confidences," contained legal analysis, provided legal advice, were maintained as confidential, and/or implicitly revealed "client confidences." 1996 WL 5180, at *2-3. The court did not require "client confidences" as a prerequisite to finding privilege. Rather, the court determined, as the *Sulfuric Acid* court did, that the documents were privileged on multiple grounds. *See id.*

The R&R announced a rule that is unsupported by the authorities it cites and contradicted by the weight of Seventh Circuit authority. The R&R therefore erred and should be reversed.

### C. Requiring "Client Confidences" Will Stifle Full and Frank Communication.

The purpose of the attorney-client privilege is to encourage "full and frank" communication between attorney and client, which advances the "public interests in the observance of the law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389-90 (1981). Frequently described as sacred, the attorney-client privilege "'is the oldest of the privileges for confidential communications known to the common law.'" *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011) (quoting *Upjohn*, 449 U.S. at 389); *Murata Mfg. Co. v. Bel Fuse, Inc.*, No. 03 C 2934, 2007 WL 781252, at *4 (N.D. Ill. Mar. 8, 2007) ("Deeply rooted

in public policy[,] and playing a 'vital role' in the administration of justice, [the attorney-client privilege] remains one of the most carefully guarded privileges and is not readily to be whittled down.") (citations omitted).

The R&R's rule erodes this longstanding principle and seeks to inject a substantial degree of uncertainty over what types of attorney communications are privileged. For example, if a memorandum is delivered to a client, providing legal advice based on information not rising to the level of "client confidences," will the memorandum be protected? What about sensitive legal advice based on client facts already in the public domain?[10] If a lawyer provides advice based on sensitive client information already known to the lawyer, and thus not reflected in the communication, will that advice be protected? The R&R's rule would dictate "no," that advice would not be protected. *See generally* R&R at 21-24. Practically speaking, this type of consistent and long-held relationship might result in a high volume of legal advice without reflecting anything confidential to the client. Such advice nevertheless deserves privileged protection. *See, e.g.*, *Brand Name*, 1996 WL 5180, at *5 (document was privileged without regard to "client confidences" because it reflected "confidential legal advice on a proposed voluntary price restraint agreement based on [in-house] counsel's knowledge of [the employer-client]'s business activities"; document was privileged when it contained "confidential legal analysis of the proposed

---

[10] If a lawyer writes a memo to a publicly-traded company client giving tax advice based on that lawyer's interpretation of the tax law as applied to non-confidential facts in the public domain (*e.g.*, facts pulled from the client's public SEC filings), such a memo would not be protected under the R&R's "client confidences" rule because it would not divulge overt confidential business information. This simply cannot be. Such a memo might be premised on a confidential client concern about complying with the tax law that is not rooted in specific facts. Even if that concern does not stem from confidential client facts, and even if that concern is not evident on the face of the document, the memo should nevertheless be protected as privileged given the legal advice contained within. *See, e.g.*, *Judson*, 529 F.3d at 388 (memo describing "legal strategy of filing for bankruptcy to minimize losses" was privileged).

legislation based on the attorney's knowledge of [the client]'s business activities and in response to [the client]'s on-going request for legal advice").

The R&R also does not answer vital questions raised by its proposed novel rule: what rises to the level of a "client confidence"? How would a client know if it was "safe" to seek advice that would later be protected by privilege? If a "client confidence" is revealed to other professional advisors, like tax professionals, and later used as a basis to request legal advice, does that "client confidence" qualify for privilege under the R&R? These lines are not easily drawn and a spotty application of privilege over advice containing some information but not others will further complicate the inquiry. *See, e.g.*, *Upjohn*, 449 U.S. at 393 ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts is little better than no privilege at all."). This type of uncertainty risks chilling the provision of legal advice, rendering attorneys reluctant to communicate their advice to clients because, without revealing "client confidences," such a communication would not be protected in future potential litigation. Or a client may decide not to solicit a written memo giving advice on regulatory compliance if that advice is not based on a "client confidence." These unintended results contravene the Supreme Court's long recognized principle— that privilege advances the "public interests in the observance of law and administration of justice." *Id.* at 389.

The application of the R&R's proposed rule to in-house attorneys is particularly troubling. In-house attorneys are employed by and fully integrated into a company. During their day-to-day practice, in-house lawyers routinely encounter and learn "confidences" of their employer. How would a court measure or understand what level of "client confidences" reside in the in-house lawyer's mind and to what extent those already-known confidences underpin the legal advice given to a company's employees? Legal advice from an in-house lawyer might very well be grounded

15

in "client confidences" that are not evident in written communications but are nevertheless confidential. That does not make the legal advice from an in-house attorney any less privileged or deserving of protection. *See, e.g.*, *Brand Name*, 1996 WL 5180, at *5 (document was privileged without regard to "client confidences" because it reflected "confidential legal advice on a proposed voluntary price restraint agreement based on [in-house] counsel's knowledge of [the employer-client]'s business activities").

Clients need to consult with their attorneys frequently on many matters, some of which do not hinge on "client confidences," such as sensitive advice on regulatory compliance, recent laws, applications of new court decisions to their business, and more. The privilege doctrine in the Seventh Circuit has historically shielded those communications—and for good reason—to encourage full and frank communication between lawyers and clients. The R&R's proposed rule would abrogate Seventh Circuit law and should be rejected.

## II. The R&R Wrongly Concluded Hundreds of Defendants' Documents Did Not Contain Legal Advice.

The R&R concludes that most of Defendants' documents do not contain legal advice, describing them as merely "instructional," "overview[s] of the antitrust laws," or "public information" that simply convey "legal information," rather than legal advice. *See, e.g.*, Ex. 1 to R&R at 64 (describing Nexstar documents as "instructional in nature"); Ex. 2 to R&R at 107, 112 (describing Raycom documents as "instructional in nature"); Ex. 3 to R&R at 118 (same, as to Scripps documents); Ex. 4 to R&R at 131 (describing Sinclair documents as "instructional materials"); Ex. 5 to R&R at 169 (describing TEGNA documents as "instructional"). These findings also lack support under Seventh Circuit precedent and should not be adopted by the Court.

A.    **Documents from In-House Counsel Routinely Receive Privilege Protection.**

The attorney-client privilege protects confidential communications between a client and attorney made for the purpose of obtaining legal advice.  *Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *2 (N.D. Ill. Feb. 22, 2007) (citing *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000)).  It also protects confidential communications from an attorney to a client that either reveal legal advice or "client confidences."  *See supra* Section I.A.  When a communication reflects the lawyer's role as the client's professional legal adviser, the communication is "entitled to the assumption that it was intended to confer legal advice" and is therefore covered by the attorney-client privilege.  *See Weeks*, 1996 WL 288511, at *2 (where law firm's billing statement indicated whether and how client should make various employment decisions and reflected law firm's role as legal adviser, the statement was privileged).[11]

Communications from in-house counsel are entitled to equal privilege protection, provided that legal advice is the primary or predominant purpose of the communication, rather than business advice or dealings.  *See, e.g.*, *Washtenaw Cnty*, 2020 WL 3977944, at *2 (citing *BankDirect*, 326 F.R.D. 176 at 181 ("The question is always whether the 'primary' or 'predominant purpose' of the communications is to render or solicit legal advice.")).  Even an attorney's legal advice *about* a business decision is protected by the attorney-client privilege.  *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-cv-10706, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017); *see also Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2019 WL 12528942, at *2 (N.D. Ill. July 17, 2019)

---

[11] The privilege protects more than just attorney-client communications: "direct lawyer involvement is not required for the privilege to attach," and a communication will still be protected so long as a lawyer has "some relationship to the communication such that the communication(s) between the non-lawyer employees would reveal, directly or indirectly, the substance of a confidential attorney-client communication."  *Crabtree*, 2017 WL 4740662, at *2 (citing *Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009)) (internal quotations omitted).

("legal advice that considers business issues is still legal advice"). "A matter committed to a professional legal adviser is prima facie so committed for the sake of legal advice … and is therefore within the privilege unless it appears to be lacking in aspects requiring legal advice.'" *Crabtree*, 2017 WL 4740662, at *2 (citation omitted). In distinguishing between business and legal advice, courts have explained that legal advice "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC*, 334 F.R.D. 149, 158-59 (N.D. Ill. 2020) (citing *BankDirect*, 326 F.R.D. at 181); *see also Schlicksup v. Caterpillar, Inc.*, No. 09–CV–1208, 2011 WL 11737159, at *5 (C.D. Ill. Aug. 19, 2011) ("legal advice does include advice regarding compliance with the law").

Under this rubric, the R&R should have concluded that the legal advice conveyed in Defendants' documents was privileged. Instead, the R&R ordered collectively ***over 90 percent*** of Defendants' documents produced.

### B. Legal Advice May Take the Form of Instructions, Overviews, or Hypotheticals on How to Comply with the Law.

The R&R wrongly concluded that attorney communications providing "instructions" or "overviews" of antitrust principles are not privileged. But such communications are not exempt from privilege merely because they lack a more traditional analysis of law to facts. The Defendant-communications reviewed *in camera* by the Special Master are classic examples of counsel (both in-house and external) providing legal advice and instructions on how to comply with various laws, regulations, or company policies to ensure that their client is properly complying. *See* Appendix 1 (Nexstar) at 1-2; Appendix 2 (Raycom) at 1-3; Appendix 3 (Scripps) at 1-2; Appendix 4 (Sinclair) at 1-2; Appendix 5 (TEGNA) at 1-3. That the legal advice is provided in conjunction with a synthesized explanation of the laws, regulations, and policies applicable to the client does

not prevent privilege protection.[12]  This advice—even in the form of instructions—is rendered to "guide future conduct" and is squarely privileged.  *See Urban 8*, 334 F.R.D. at 158-59 (legal advice includes "interpretation and application of legal principles *to guide future conduct* or to assess past conduct") (emphasis added); *Schlicksup*, 2011 WL 11737159, at *5 ("legal advice does include advice regarding compliance with the law"); *Smith-Brown v. Ulta Beauty, Inc.*, No. 15 C 10340, 2019 WL 2644243, at *3 (N.D. Ill. June 27, 2019) ("emails … to certain Regional Vice Presidents and District Managers … providing them with legal advice and *instruction*" are privileged) (emphasis added); *see also In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI(EMC), 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006) (privilege protects "self-initiated attorney communications intended to keep the client posted on legal developments and implications, even when no written request" generates the advice).[13]

For example, in *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, the plaintiffs challenged defendant's claim of privilege over a presentation given by defendant's in-house counsel to defendant's board of directors.  Nos. 09 C 7666, 11 C 1468, 2013 WL 791432, at *4 (N.D. Ill. Mar. 4, 2013).  The court found the presentation covered "topics including in-house counsel outreach, antitrust compliance, litigation defense, and [defendant's] bylaws" and

---

[12] The R&R also appears to suggest that because the "Case Study" analyzed in an antitrust compliance policy sent by in-house counsel "concerns events many years before" the policy was distributed, that somehow weighs in favor of a finding that the policy is not privileged.  *See* Exhibit 1 to R&R at 63.  But privileged information remains privileged, even if the information is old.  The R&R provides no contrary authority.

[13] The R&R's citations to *United States v. Bey* and *Coastal States Gas Corporation v. Department of Energy* (R&R at 28) do not support the R&R's conclusion that Defendants' documents do not contain legal advice.  In *Bey*, the court declined to uphold a privilege claim over a communication by which the attorney "merely forwarded from the court to his client the public information in a court order."  772 F.3d 1099, 1101 (7th Cir. 2014).  The attorney had offered no advice and merely relayed the information from the court order.  *Id.*  And in *Coastal States*, the D.C. Circuit declined to extend privilege to a memorandum that lacked confidential treatment.  617 F.2d 854, 863 (D.C. Cir. 1980).

concluded the presentation was "indeed legal in nature, and clearly provides legal advice" and was, therefore, privileged. *Id.* The *Brand Name* court similarly ruled that a presentation was privileged when it described the application of the antitrust laws to "specific aspects of [the defendant's] business" and provided legal advice, as well as revealed "client confidences" relating to the defendant's business practices. 1996 WL 5180, at *3. The *Brand Name* court also found privileged a draft memorandum from in-house counsel that provided "confidential legal advice on a proposed voluntary price restraint agreement based on [in-house] counsel's knowledge of [the employer-client's] business activities." *Id.* at *5. Here, like in *Plasma* and *Brand Name*, the documents that the Special Master reviewed *in camera* provide confidential advice based on an attorney's knowledge of Defendants' business and should be protected.

The R&R also concludes that hypotheticals in Defendants' documents are not privileged because they do not reflect requests for legal advice or reveal any "client confidences." But such hypotheticals are routinely protected under the law; "the fact that a communication may take the form of a hypothetical does not mean that it is automatically outside the scope of the privilege." *Sulfuric Acid*, 235 F.R.D. at 431 ("It is the substance of what they do, and not the form in which they clothe their transactions, which must afford the test.") (citation omitted). Here, the hypothetical scenarios in Defendants' documents were formed based on counsel's understanding of Defendants' business practices and for the purpose of advising Defendants' employees on complying with applicable laws, regulations, or company policies in the course of carrying out their job duties and responsibilities.

These documents provide guidance and advice to clients on antitrust compliance. They reflect the attorney's custom selection of which advice to render, how to render that advice, and which specific parts of company policies warrant particular attention, given the attorney's

20

knowledge of Defendants' business and issues Defendants are currently navigating. Such attorney communications are routinely protected as privileged and should be here.

### III. The R&R Relied on an Unreasonable and Arbitrary Process.

The procedure employed by the Special Master is reviewed for abuse of discretion. (ECF No. 925 at 4; Fed. R. Civ. P. 53(f)(5).) It is proper to find an abuse of discretion where the procedure for making privilege decisions is "fundamentally wrong, or is clearly unreasonable, arbitrary, or fanciful." *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.,* 406 F.3d 867, 878 (7th Cir. 2005).

As set forth in Defendants' proposed procedural protocol, the typical practice of a court in the Northern District of Illinois assessing privilege claims is to review the claim of privilege, typically based on the entries in the privilege log, and provide an opportunity to the withholding party to provide additional information if there is a judicial finding of insufficiency. *See Am. Nat. Bank & Tr. Co. of Chicago,* 406 F.3d at 870-71 (magistrate judge ordered defendant to produce amended privilege log after *in camera* review); *Sulfuric Acid.,* 235 F.R.D. at 432 (ordering production of additional factual evidence after *in camera* review); *see also Wier,* 2021 WL 1517975, at *17 (ordering amendment of operative privilege log and declining *in camera* review); *Dirickson v. Intuitive Surgical, Inc.,* No. 19 C 7249, 2020 WL 11421623, at *3 (N.D. Ill. Dec. 23, 2020)* (same); *Crabtree,* 2017 WL 4740662, at *3 (same).

*Sulfuric Acid,* a case upon which the R&R heavily relies, is instructive and has perhaps the clearest statement that parties are routinely given an opportunity to supplement. In that case, after *in camera* review, the Court held:

> Although judges who ask for additional briefs are often sorry … the issue is sufficiently important that it should be decided on the merits and not by default. Thus the defendants are given 14 days to file whatever additional *factual* support

they desire to satisfy their burden of proof on the question of the applicability of the privilege….

235 F.R.D. at 432 (emphasis in original).  Such practice is particularly appropriate where, as here, *there has been no prior judicial determination about the sufficiency of any privilege claim*.

The Special Master did not follow this practice, nor did he explain in advance that he would not follow this practice.  Despite specifically requesting that the parties provide him a protocol to evaluate Defendants' privilege logs on March 1, 2023, and meeting with the parties about their proposed protocols on March 22, 2023, the Special Master never adopted a protocol or articulated what process, if any, he would follow when evaluating Defendants' privilege logs.  He concluded—as revealed for the first time in his R&R—that he needed "extrinsic evidence" that "would have advanced the inquiry into whether the attorney-client privilege or work [product] doctrine were applicable."  R&R at 48; *see also* *id*. at 45 ("only extrinsic evidence can possibly establish the validity of the proponent's claims").  But the Special Master did not provide notice of this requirement or allow Defendants to provide the information he had deemed necessary. As discussed in Sections IV.A to IV.B *infra*, requiring extrinsic evidence and disregarding representations of counsel go beyond the law. The Special Master, having deemed such information necessary, should have allowed Defendants a consistent, non-arbitrary, fair, and meaningful opportunity to provide it, and he abused his discretion by determining, without prior notice, that extrinsic evidence would be required, that counsels' representation would not be considered, and that privilege decisions would be made selectively without permitting Defendants

a reasonable opportunity to supplement their claims with factual support unless the privilege claim was "crystal clear" on the face of the document.[14]

Had the Special Master provided such an opportunity, Defendants would have provided the evidence, including declarations and supporting detail, which the Special Master described as missing, to cure any deficiencies in the claims of privilege underlying his decision. *See e.g.*, R&R at 45-47. Indeed, in an *ad hoc* instance the Special Master permitted Raycom to submit a declaration on behalf of a third-party to confirm the assertion of privilege over its documents (*id.* at 14), after which the Special Master concluded the withheld memorandum was privileged. *Id.* at 174.[15] The Special Master did not provide a similar opportunity on other documents that Raycom withheld, nor did he give other Defendants the same opportunity to offer extrinsic evidence to support their privilege claims.

Under these circumstances, the Special Master's process unreasonably, unfairly, and without notice deviated from established precedent in the Seventh Circuit and is an abuse of discretion. This Court, thus, should reject the R&R.

## IV. The R&R Wrongly Held that Extrinsic Evidence Is Necessary to Prove Each Element of a Privilege Claim.

---

[14] The Special Master selectively contacted one Defendant to inquire about a limited number of privilege claims and selectively sought from that Defendant—but not others—extrinsic support in the form of a declaration to substantiate the claim of privilege.

[15] On June 27, 2023, the Special Master requested that Raycom's counsel review two documents, a parent email and an attachment, where it was "not clear [to the Special Master] that the third party holder of the claimed privilege is invoking the privilege." Raycom provided a written response on June 30, 2023, defending the claim of privilege, which reflected legal advice in the form of a memorandum provided by outside counsel to the board of the FBC Television Affiliates Association (Ex. E to Mills Decl.), on which Raycom had a representative. The Special Master requested on July 17, 2023 that "*a declaration or affidavit* from the Association be submitted to him for the completeness of the record." (Ex. F to Mills Decl.) Raycom procured that Association declaration and submitted it on July 25, 2023. (*Id.*)

The R&R rejected many of Defendants' attorney-client privilege and work-product claims on the basis that the party claiming privilege must offer competent, extrinsic evidence to support each element of the privilege claim. This novel evidentiary requirement came out of nowhere: no one proposed, and the parties never discussed, a requirement of extrinsic proof during meet-and-confers, and neither side briefed such a requirement in connection with Plaintiffs' motions to compel or the various submissions to the Special Master. Yet the R&R relies on this requirement in recommending the production of *hundreds* of documents over which the Defendants have claimed privilege, ***even where the documents themselves demonstrate that they are privileged***. The extrinsic-evidence requirement creates a new and substantially heightened burden of proof for asserting privilege that conflicts with case law and Federal Rule of Civil Procedure 26 ("Rule 26"). The Court should reject the R&R and instruct the Special Master to conduct his analysis without this unsupported requirement.

### A.     The R&R Erred by Applying an Incorrect Legal Standard.

The R&R wrongly held that a party asserting the attorney-client privilege must make an evidentiary showing far more stringent than what the law requires. According to the R&R, "it is incumbent on the proponent of the privilege to demonstrate the existence of the privilege with competent evidence such as declarations, affidavits or submission of contextual documents to establish that the attorney-client privilege or work product protection exist." R&R at 45. Further, the R&R found that such evidence is required *even when the document has been submitted for* in camera *review*; unless the document itself is "crystal clear" that each element is satisfied, "only extrinsic evidence can *possibly* establish the validity of the proponent's claims." *Id.* (emphasis added). The R&R concluded by claiming that "unsupported statements of fact by counsel,"

including privilege log descriptions, are not evidence.  *Id.* at 25, 45; *see, e.g.*, Ex. 1 to R&R at 58; Ex. 3 to R&R at 122.

But "crystal clear" is not the appropriate legal standard for asserting any legal claim, let alone a privilege claim.  The existence of a privilege need only be established by a preponderance of evidence.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 n.10 (1993) (citation omitted) ("Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court … by a preponderance of proof."); *Finnegan v. Myers*, No. 3:08-cv-503-RL-CAN, 2014 WL 12789809, at *6 (N.D. Ind. Feb. 18, 2014) (citation omitted) (elements of privilege claim "are to [be] establish[ed] by a preponderance of the evidence").  In other words, the reviewing court must determine only whether it is "more likely than not" that the privilege attaches.  *See Am. Grain Trimmers, Inc. v. Office of Workers' Comp. Programs*, 181 F.3d 810, 817 (7th Cir. 1999) (comparing preponderance standard to "clear and convincing" standard).  The R&R erred in requiring Defendants to meet a higher standard that is contrary to law.

Further, the R&R's requirement of extrinsic evidence is inconsistent with the way in which courts in the Seventh Circuit, including this Court, adjudicate privilege claims.  Extrinsic evidence is not required to support a privilege claim—particularly, as here, when the document itself is submitted for *in camera* review.  *See U.S. Sec. & Exch. Comm'n v. Hollnagel*, No. 07 CV 4538, 2010 WL 11586980, at *9 (N.D. Ill. Jan. 22, 2010) ("[W]here the withholding party has identified the persons who participated in a communication and the document has been submitted for an *in camera* review, the privileged nature of a communication may be established by the document itself and the circumstances relating to the communication."); *Central Die Casting & Mfg. Co. v. Tokheim Corp.*, 1994 WL 444796, at *3 (N.D. Ill. Aug. 15, 1994) (holding that memorandum was

25

privileged based on document itself and circumstances relating to the communication even though the document was not marked "confidential" and party did not provide supporting affidavit); *Leybold-Heraeus Techs., Inc. v. Midwest Instrument Co., Inc.*, 118 F.R.D. 609, 612-13 (E.D. Wis. 1987) (holding that parties claiming privilege need not submit documents under affidavit but attorney claiming privilege "must make submissions with clarity, buttressed by argument and citation sufficient for the court to make a decision as to each submission for which the privilege is claimed"); *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 257 F.R.D. 456, 460-61 (N.D. Ill. 2008) (adjudicating privilege claim without extrinsic evidence); *Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965, at *4-5 (N.D. Ill. Aug. 25, 2009) (same).

In fact, nearly all privilege disputes are resolved without recourse to extrinsic evidence. Instead, courts either rely upon only the representations of counsel—as officers of the court, *see* Fed. R. Civ. P. 11(b)—contained in a party's privilege log, or review the document itself *in camera*. *See, e.g.*, *Crabtree*, 2017 WL 4740662, at *2-3 (deciding privilege claim without extrinsic evidence, declining even to order *in camera* review); *Medline Indus.*, 2019 WL 12528942, at *2 (same); *Brand Name*, 1996 WL 5180, at *2-5 (deciding privilege claims following *in camera* review without extrinsic evidence); *see also* *Wier*, 2021 WL 1517975, at *7 ("The Court will not cast doubt onto the privilege log descriptions based on counsel's speculation. … To give credence to Wier's concerns would require the Court to 'find that the otherwise adequate descriptions are simply disingenuous [when t]he Court has not been presented with a basis for such a finding and does not so find.' … The Court declines to do so."). Moreover, this Court, in cases referred to Magistrate Judges, regularly adjudicates privilege disputes without reference to extrinsic evidence. *See, e.g.*, *Miyano Mach.*, 257 F.R.D. at 461; *Flagstar Bank*, 2009 WL 2706965, at *4-5. By discrediting or discarding all representations of counsel (including privilege log descriptions), the

R&R too narrowly circumscribed the information a reviewing court should consider and contradicted the host of cases in which courts credit and rely on this information in adjudicating privilege claims.

The R&R's new extrinsic evidence rule also conflicts with Rule 26's express requirements. The R&R admonished Defendants for "d[oing] little more than offer assurances that the withheld documents are privileged" during the meet-and-confer process. R&R at 45. Not only is this incorrect but the R&R's proposed standard also goes above and beyond what Rule 26 requires. Rule 26(b)(5)(A)(ii), which sets forth the requirements for a privilege log, states that parties must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In other words, Rule 26 requires precisely what the R&R disregarded—an attorney-drafted description of the document that enables an assessment of the privilege.[16] Conspicuously absent from Rule 26 is a requirement that a party claiming the privilege submit competent, extrinsic evidence supporting a privilege claim or any suggestion that representations of counsel cannot be considered. And for good reason: requiring extrinsic evidence to support every privilege claim—and disregarding counsels' representations—would be an untenable approach to the assessment of privilege claims, especially in a multi-district class action like this one.

### B.     The R&R Relied on Cases that Do Not Support Its Rule.

The R&R described its heightened evidentiary requirement as "not a novel proposition of law but, rather, a reference to [a] long-standing and uniformly existing requirement to sustain

---

[16] Defendants maintain that their privilege logs are sufficient to establish their privilege claims.

claims of attorney-client privilege or work product protection." R&R at 45. However, none of the cases the R&R cited as authority support the R&R's extrinsic evidence requirement.

Although the R&R relied heavily on *Slaven v. Great American Insurance Co.*, the court in that case resolved the privilege claim not with extrinsic evidence, but through *in camera* review. 83 F. Supp. 3d 789, 801 (N.D. Ill. 2015). The R&R cited a boilerplate sentence in *Slaven* that states: "the burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity that the attorney/client privilege or work-product applies to each document that is claimed to be privileged." R&R at 45 n.163 (citing *Slaven*, 83 F. Supp. 3d at 796). In *Slaven*, the party claiming privilege filed a declaration supporting its claim, but the court rejected that declaration as conclusory and did not rely upon it. 83 F. Supp. 3d at 799-800. Instead, the court resolved the claim—finding that the privilege did, in fact, apply—by reviewing the document *in camera*. *Id.* at 801. The *Slaven* court did *not* hold that extrinsic evidence was necessary to prove a privilege claim. *See generally id.* at 789-803.

Moreover, the authorities cited in *Slaven* do not support the R&R's extrinsic evidence requirement either. In *United States v. BDO Seidman, LLP*, the Seventh Circuit analyzed a different issue entirely, namely, whether a party had demonstrated a colorable claim of privilege under 26 U.S.C. § 7525 and if so, whether the party had established a legally protectable interest in preventing the disclosure of documents revealing their identities. 337 F.3d 802, 813 (7th Cir. 2003). In *United States v. White*, the Seventh Circuit faulted the defendant for failing to make even the barest assertion of privilege and for being "unable to point to any specific information in the [purportedly privileged documents] to which the attorney-client privilege would attach." 950 F.2d 426, 430 (7th Cir. 1991). Similarly, in *Oleksy v. General Electric Co.*, the district court rejected a privilege claim because the withholding party provided no information or argument

supporting its privilege claims and had not submitted the documents for *in camera* review. No. 06 C 1245, 2011 WL 3471016, at *2-3 (N.D. Ill. Aug. 8, 2011). In none of these cases did the court impose any extrinsic evidence requirement. Thus, the decision in *Slaven* stands only for the uncontroversial position that extrinsic evidence is one of several types of information upon which a court *may* rely to resolve a privilege dispute; it does not support the R&R's blanket rule that extrinsic evidence is required for *every* privilege claim or that representations of counsel must be disregarded because they are not evidence.

The other cases cited by the R&R offer scant support for its heightened evidentiary burden. In *United States v. First State Bank*, the court faulted the defendant for not submitting an affidavit to support his privilege claim, but the need to provide an affidavit arose from previous show-cause orders. 691 F.2d 332, 335 (7th Cir. 1982). *First State Bank* does not stand for the proposition that a withholding party is required to provide affidavits to support every element of a privilege claim, as the R&R states. *See* R&R at 45 n.163. In *Smith v. Board of Education*, the court, after conducting *in camera* review, determined that emails from in-house counsel concerning the discipline of employees were not privileged. No. 17 C 7034, 2019 WL 2525890, at *2 (N.D. Ill. June 19, 2019). However, the court did not demand or impose any requirement related to extrinsic evidence. *Id.* The R&R's reliance on *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 3050230, at *3-4 (N.D. Ill. June 8, 2020) is also misplaced. The R&R cited *DeLeon-Reyes* as requiring "affidavits, deposition transcripts, documents, interrogatory answers, or other evidence" for each element of a privilege claim, but in that case, the withholding party had not submitted a privilege log or anything else in support of its privilege claims and had not provided the documents for *in camera* review. *See* R&R at 25-26 n.87 (citing *DeLeon-Reyes*, 2020 WL 3050230, at *3-4).

Finally, the R&R's claim that a reviewing court cannot credit factual representations by counsel in determining whether the privilege applies is inaccurate. *See* R&R at 45. As an initial matter, under Rule 11, the Court and Special Master may rely on representations by counsel. Further, the cases that the R&R cited in support of its claim that it cannot rely upon attorney representations have nothing to do with the attorney-client privilege. *See id.* at 45-46 n.166 (citing *United States v. Adriatico-Fernandez,* 498 F. App'x 596, 599 (7th Cir. 2012); *Massuda v. Panda Exp., Inc.* 759 F.3d 779, 783-84 (7th Cir. 2014)). *Adriatico-Fernandez* involved a court faulting criminal defense counsel for offering unsupported statements challenging the defendant's pre-sentence report. 498 F. App'x at 599. *Massuda* addressed unsupported allegations in a fraud complaint. 759 F.3d at 783-84. Both decisions focused on the specific factual circumstances of the case, and neither stands for the blanket proposition that the Court cannot rely upon attorney representations to resolve a privilege dispute.

## CONCLUSION

For all of the foregoing reasons, the Court should not adopt the R&R's conclusions of law or conclusions of fact in the Exhibits to the R&R and should enter an Order requiring the Special Master to set a reasonable process for resolving the disputed privilege claims (with further input from the parties on such process, as necessary) and to thereafter analyze Defendants' claims of privilege under applicable law.

Dated: August 18, 2023

Respectfully submitted,

_/s/ Gregory J. Commins, Jr._

**BAKER & HOSTETLER LLP**
Gregory J. Commins, Jr. (admitted _pro hac vice_)
1050 Connecticut Ave., NW Suite 1100
Washington, DC 20036
Telephone: (202) 861-1536
Facsimile: (202) 861-1783
gcommins@bakerlaw.com

Bridget S. McCabe (admitted _pro hac vice_)
Dyanne J. Cho (admitted _pro hac vice_)
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone: (310) 820-8800
bmccabe@bakerlaw.com
dcho@bakerlaw.com

John M. Touhy (NDIL 3128400)
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6200 phone
jtouhy@bakerlaw.com

_Counsel for Defendant The E.W. Scripps Company_

**MORRISON & FOERSTER LLP**
Eliot Adelson (admitted _pro hac vice_)
Bonnie Lau (admitted _pro hac vice_)
Margaret A. Webb (admitted _pro hac vice_)
425 Market Street
San Francisco, CA 94105
(415) 268-7000
eadelson@mofo.com
blau@mofo.com
mwebb@mofo.com

David D. Cross (admitted _pro hac vice_)

**COOLEY LLP**
David E. Mills _(pro hac vice)_
(dmills@cooley.com)
Deepti Bansal _(pro hac vice)_
(dbansal@cooley.com)
J. Parker Erkmann _(pro hac vice)_
(perkmann@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899

Mary G. Kaiser (admitted *pro hac vice*)
Joseph C. Folio III (admitted *pro hac vice*)
2100 L Street NW
Washington, D.C. 20037
(202) 887-1500
dcross@mofo.com
mkaiser@mofo.com
jfolio@mofo.com

**MOLOLAMKEN LLP**
Megan Cunniff Church (Bar No. 6281234)
Matthew J. Fisher (Bar No. 6326897)
300 N. LaSalle St.
Chicago, IL 60654
(312) 450-6716
mchurch@mololamken.com
mfisher@mololamken.com

*Counsel for Defendants Dreamcatcher
Broadcasting LLC, Nexstar Media Group,
Inc., Tribune Broadcasting Company, LLC,
and Tribune Media Group, Inc.*

Beatriz Mejia *(pro hac vice)*
(mejiab@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel.: (415) 693-2000
Fax: (415) 693-2222

Mazda K. Antia *(pro hac vice)*
(mantia@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Tel.: (858) 550-6000
Fax: (858) 550-6420

Alexander G. Galicki *(pro hac vice)*
(agalicki@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel.: (310) 883-6400
Fax: (310) 883-6500

Matthew L. Kutcher (SBN: 6275320)
(mkutcher@cooley.com)
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel.: (312) 881-6500
Fax: (312) 881-6598

*Counsel for Defendant Gray Media Group,
Inc.*

**JENNER & BLOCK LLP**
Ross B. Bricker (Ill. Bar No. 3126882)
John F. Ward, Jr. (Ill. Bar No. 6208004)
353 N. Clark Street
Chicago, IL 60654-5474
(312) 222-9350
rbricker@jenner.com
jward@jenner.com

*Counsel for Defendant TEGNA, Inc.*

**HUGHES HUBBARD & REED LLP**
William J. Kolasky *(pro hac vice)*
Philip A. Giordano *(pro hac vice)*
1775 I Street, N.W.
Washington, DC 20006
(202) 721-4600
william.kolasky@hugheshubbard.com
philip.giordano@hugheshubbard.com

William R. Maguire *(pro hac vice)*
Fara Tabatabai *(pro hac vice)*
HUGHES HUBBARD & REED LLP
One Battery Park Plaza

New York, NY 10004
(212) 837-6000
fara.tabatabai@hugheshubbard.com
bill.maguire@hugheshubbard.com

Gregory J. Scandaglia
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
(312) 580-2020
gscandaglia@scandagliaryan.com

*Counsel for Defendant Sinclair Broadcast
Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 18, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

/s/ Gregory J. Commins, Jr.
Gregory J. Commins, Jr.