18-6785
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION | ) ) ) ) ) ) ) MDL No. 2867<br>No. 18 C 6785<br>Judge Virginia M. Kendall |

MEMORANDUM OPINION AND ORDER

PLAINTIFFS' DISCOVERY MOTION NO. 21 TO COMPEL DEFENDANT NEXSTAR GROUP TO PRODUCE WHITEPAPERS SUBMITTED TO THE UNITED STATES DEPARTMENT OF JUSTICE

Plaintiffs[1] in this putative antitrust class action move under Federal Rules of Civil Procedure 26(b) and 37(a) to compel Defendant Nexstar Group[2] to produce all whitepapers, including any supporting exhibits, submitted to the United States Department of Justice ("DOJ") in connection with the DOJ's review of the Sinclair-Tribune merger (the "Merger Investigation") and with the DOJ's investigation of competitively sensitive information exchanged in the broadcast television industry (the "Pacing Investigation"). (Dkt. 977). Plaintiffs also move for costs and fees associated with bringing their Motion. (*Id.*) For the following reasons, Plaintiffs' Motion is granted. (*Id.*)

BACKGROUND

A.    DOJ Investigations

---

[1] "Plaintiffs" refers collectively to Thoughtworx, Inc. d/b/a MCM Services Group; One Source Heating & Cooling LLC; Hunt Adkins, Inc.; and Fish Furniture. (Dkt. 977 at 1 n.1).
[2] "Nexstar Group" refers to Dreamcatcher Broadcasting LLC ("Dreamcatcher"), Nexstar Media Group, Inc. ("Nexstar Media"), and Tribune Broadcasting Company, LLC & Tribune Media Company (together, "Tribune"). Nexstar Group acquired Tribune in September 2019. (Dkt. 977 at 1 n.2; Dkt. 555 ¶ 36).

In 2017, Sinclair attempted to buy Tribune. (*See* dkt. 555 ¶¶ 261–62). As part of its investigation into the proposed merger, DOJ served Civil Investigative Demands ("CIDs") on several defendants in this case, including Sinclair, Tribune, and Nexstar. (Dkt. 977-1 at 102–16, *id.* at 119–33). The Merger Investigation revealed that Sinclair, Tribune, and other major broadcasters exchanged information that allegedly violated antitrust laws. (*See* dkt. 555 ¶¶ 6–10). The Merger Investigation evolved into the DOJ's Pacing Investigation. (*See* dkt. 555 ¶¶ 6–10; dkt. 977-1 at 102–16, *id.* at 119–33). Following the Pacing Investigation, in November 2018, the DOJ filed its original complaint in the District Court for the District of Columbia along with proposed settlements with six defendants, including Dreamcatcher and Tribune.[3] (Dkt. 555 ¶ 51). The DOJ later amended its complaint to add Nexstar, and the court entered final judgment against these seven defendants in May 2019. (*Id.* ¶¶ 52–53).

B.  Discovery Negotiations between Plaintiffs and Nexstar Group

In this action, Plaintiffs sought documents that defendants had submitted to the DOJ in connection with its Merger Investigation and Pacing Investigation.[4] (Dkt. 977-1 at 11). Nexstar Group objected to Plaintiffs' discovery request as overly broad and unduly burdensome. (Dkt. 977-1 at 11). Defendants offered to produce a more limited set of documents.[5] (Dkt. 977-1 at 12). After

---

[3] *See United States v. Sinclair Broadcast Grp., Inc.*, No. 1:18-cv-2609 (D.D.C.).
[4] On December 11, 2020, Plaintiffs served on all Defendants Request for Production No. 1 ("RFP No. 1"), seeking:
> All Documents You received, exchanged, produced, or created in connection with any investigation by the Federal Trade Commission ("FTC") or the Antitrust Division of the United States Department of Justice ("DOJ") (including, without limitation, *U.S. v. Sinclair Broadcast Group, Inc., et al.*, No. 18-cv-2609 (D.D.C.) and the DOJ's investigation into Sinclair's proposed merger with Tribune), inclusive of any Civil Investigative Demands or other requests for production, your responses to the same, all related correspondence (inclusive of custodian proposals, search terms, hit reports, and all related matters), any related privilege logs, and any recordings of interviews or depositions of You by the FTC or DOJ in any format (whether by transcription, audio, video, or any combination thereof).

(Dkt. 977-1 at 11).
[5] Defendants responded on January 22, 2021, that they would produce
> non-privileged, relevant, responsive, and reasonably accessible Civil Investigative Demand(s) ("CID"), documents produced in response to such CIDs, and documents produced to the Division in response to any request for cooperation under the Final Judgment as to Defendants, dated May

four meet-and-confers regarding Plaintiffs' RFPs, counsel for Plaintiffs memorialized their discussions with Defendants' counsel, stating:

> Nexstar confirmed that it produced documents to the [DOJ] related to (1) the Sinclair-Tribune merger review … and (2) the pacing investigation …, which includes any documents pursuant to a cooperation agreement entered into between Nexstar and DOJ. Nexstar represents that Nexstar Media and Tribune produced documents related to the DOJ Pacing Investigation, but that Dreamcatcher did not.

(Dkt. 983-6 at 2). Plaintiffs' counsel also asked: "Please also confirm whether Nexstar provided interrogatory responses (or written narrative responses) to the DOJ as part of either the Merger Investigation or the Pacing Investigation, and if so, whether Nexstar will produce these responses in this case." (Dkt. 983-6 at 2).

In a letter dated March 17, 2021, Nexstar Group confirmed that it had already given Plaintiffs: (1) the DOJ's CIDs to Nexstar, Tribune, and Dreamcatcher in connection with the Pacing Investigation; (2) the documents produced to DOJ in response to the pacing CIDs; and (3) the documents produced in response to DOJ's subsequent requests for cooperation regarding pacing. (Dkt. 983-6 at 10). Regarding the Merger Investigation, counsel for Nexstar Group stated: "Neither Nexstar Media nor Tribune produced any interrogatory responses to the DOJ in connection with the Pacing Investigation or the Merger Investigation." (Dkt. 983-6 at 11). Counsel for Nexstar Group further clarified that "Nexstar will apply the agreed (or Court-ordered) search methodology to the documents comprising the Tribune Merger Investigation production and will produce the non-privileged documents responsive to Plaintiffs' requests." (Dkt. 983-6 at 11).

As Plaintiffs noted in their response to the March 17 letter, Nexstar Group's confirmation about its document production omitted (1) whether Dreamcatcher had produced interrogatory

---

22, 2019, in *U.S. v. Sinclair Broadcast Group Inc., et al.*, to the extent the foregoing exist and are within Defendants' possession, custody, and control, and pursuant to the provisions of the Confidentiality Order.
(Dkt. 977-1 at 12).

responses to the DOJ in connection with either the Merger Investigation or the Pacing Investigation, and (2) whether "interrogatory responses" produced by any entity included "written narrative responses" that Plaintiffs had previously asked about.[6] (Dkt. 983-6 at 14). After additional meet-and-confers about this and other discovery issues, Nexstar Group agreed to apply the parties' "heavily negotiated search methodology" to identify non-privileged, responsive documents produced to the DOJ in connection with the Merger Investigation. (Dkt. 983-6 at 40; *see also id.* at 31). Nexstar Group also confirmed that "Dreamcatcher did not produce any interrogatory responses to the DOJ in connection with the Pacing Investigation or the Merger Investigation." (*Id.* at 36). Nexstar Group, however, still did not address whether it had provided any "written narrative responses" as opposed to interrogatory responses to CIDs.

In August 2021, Plaintiffs twice followed up with Nexstar Group, asking for clarification about the type of responses that Tribune and Dreamcatcher had provided to the DOJ in its Merger Investigation.[7] (Dkt. 977-1 at 46–47). Nexstar Group was then "still looking into any Tribune/Dreamcatcher narrative responses to the DOJ, but will plan to produce any portions that are relevant to this case." (Dkt. 977-1 at 45–46). Following a meet-and-confer on August 23,

---

[6] Plaintiffs wrote on March 25, 2021:
> Interrogatory Responses: you confirmed that there were not interrogatory responses provided to the DOJ "in connection with the Pacing Investigation or the Merger Investigation" by Nexstar Media or Tribune. Does that representation extent [sic] to Dreamcatcher? Does that representation include narrative responses – to the extent you differentiate those from interrogatory responses? And finally, does that representation include interrogatory or narrative responses provided to the DOJ from Nexstar Media, Tribune, or Dreamcatcher, or any combination thereof? If no to any of those follow up questions, will Nexstar produce those materials to plaintiffs?

(Dkt. 983-6 at 14).

[7] In an email chain scheduling a meet-and-confer, counsel for Plaintiffs wrote on August 19, 2021:
> Also, it appears that we never closed the loop on whether Tribune and Dreamcatcher provided narrative responses (or similar) to the DOJ. I believe that you all previously represented that Nexstar provided no such responses to the DOJ as part of either the pacing or merger investigations, but that you were going to follow up regarding Tribune and Dreamcatcher.

(Dkt. 977-1 at 47). On August 20, 2021, Plaintiffs' counsel again wrote: "Please also let me know about the status of your investigation into the existence of any narrative response (or similar) that Tribune and/or Dreamcatcher provided to the DOJ as part of the merger and/or pacing investigations." (*Id.* at 46).

counsel for Plaintiffs recapped the discussion in an August 24 email. Plaintiffs documented their understanding of defense counsel's representations: "You confirmed that Tribune and Dreamcatcher submitted narrative responses to the DOJ as part of the merger and/or pacing investigations and that Nexstar intended to produce those responses to Plaintiffs in the next several weeks." (Dkt. 977-1 at 43). On the same email chain, counsel for Nexstar Group responded: "We confirm that Nexstar intends to produce all substantive, relevant information contained in Tribune and Dreamcatcher's narrative responses to DOJ in connection with the merger investigation, as we discussed on the meet and confer call." (Dkt. 977-1 at 43).

In September 2021, Nexstar Group turned over to Plaintiffs the responsive discovery material it had produced for the DOJ investigations. (Dkt. 977-1 at 50). Plaintiffs then asked Nexstar Group to "[p]lease clarify whether Nexstar, Tribune, and/or Dreamcatcher are withholding any narrative responses provided to the DOJ for either the merger or pacing investigation." (Dkt. 977-1 at 50). Nexstar Group responded:

> Tribune did not serve narrative responses in connection with the DOJ pacing investigation. It only served narrative responses in connection with the DOJ's review of the Tribune-Sinclair merger. We have produced the narrative responses that contain information responsive to Plaintiff's discovery requests in this case. We did not produce responses that contain solely non-responsive information relating to retransmission agreements, the structure of the merger, or Tribune's cable network.

(Dkt. 977-1 at 50). Plaintiffs made no further inquiries into Nexstar Group's production of documents related to the DOJ Merger Investigation until March 2023.

**C.  Sinclair Whitepaper and Plaintiffs' Inquiries into Nexstar Group Whitepapers**

On February 11, 2021, Sinclair produced a February 27, 2018 letter sent by DOJ to Sinclair and Tribune's counsel in connection with the Sinclair-Tribune merger. (Dkt. 977-1 at 136). The letter "asked Sinclair to provide a white paper outlining its belief that the sharing of competitive sensitive information was procompetitive." (*Id.* at 138). Plaintiffs asked Sinclair for this

5

whitepaper, and Sinclair finally produced it in March 2023. (Dkt. 977-1 at 66; *see also id.* at 142–60). The whitepaper describes Sinclair's view of its information exchanges and why they did not violate antitrust laws. (*See id.* at 142–60).

On March 28, 2023, shortly after receiving the Sinclair whitepaper, Plaintiffs requested that all defendants

> promptly confirm that **all** white papers submitted to the DOJ bearing in any way to its investigation into this industry, including the pacing investigation and the Sinclair-Tribune merger investigation, have been produced in this litigation. If they have not, please produce all such white papers, including any attachments submitted with any such whitepapers, by no later than next Friday, April 7. Alternatively, please confirm that no such documents exist.

(Dkt. 977-1 at 66). All other defendants stated that no such documents existed. (*See* dkt. 977-1 at 73–92; Dkt. 983-2 at 13). Nexstar Group responded, "We are continuing to consider and review materials related to your request." (Dkt. 977-1 at 94). Counsel for Nexstar Group followed up:

> Nexstar objects to your March 28 demand for "**all**" white papers." As you know, Plaintiffs' RFP 1 sought the production of documents related to the DOJ's Tribune-Sinclair merger and pacing investigations. We agreed that, with regard to documents related to the merger investigation, Nexstar would produce only those documents that were produced to DOJ and that hit on the parties' agreed-upon search terms, and only as to specific custodians. For the pacing investigation, we agreed to produce the DOJ's CIDs, the documents produced in response to the CIDs, and the documents produced in response to DOJ's subsequent requests. This agreement did not include other categories of documents, such as a general request for white papers.

(Dkt. 977-1 at 72–73). Plaintiffs found it "incredible to believe that Nexstar's (or its predecessors') whitepaper(s) did not hit on any of the agreed search terms" and objected to Nexstar Group's position that "the parties' agreement on search terms abrogates Nexstar's obligation to identify and produce relevant documents." (Dkt. 983-2 at 13).

On May 12, 2023, Nexstar Group's counsel stated:

> As the parties agreed in 2021, Nexstar investigated whether it was in possession of any relevant narrative responses to DOJ CIDs, which we identified and produced. At your request, we have now also located and produced the 1996 letter from Tribune to DOJ. There were no white papers submitted by Tribune or Nexstar to DOJ regarding the

6

pacing investigation. Nexstar has not undertaken an investigation into "written responses to DOJ questions as part of the DOJ merger investigation and/or pacing investigation." This request expands far beyond the scope of what the parties agreed that Nexstar would look for or produce. Indeed, that definition is more expansive even than what Plaintiffs asked for in previous emails ("white papers"; "white papers or similar") and even what Plaintiffs ask for *in the first paragraph of your May 11 email* (narrative responses, white papers or similar).

(Dkt. 983-2 at 2). Plaintiffs filed their Motion to Compel the following week. (Dkt. 977). Nexstar Group requested that Plaintiffs withdraw their Motion, but Plaintiffs declined. (Dkt. 983-3 at 1).

## DISCUSSION

### A. Whitepapers Are Discoverable

"[D]istrict courts enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). Non-privileged information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case, considering ... the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, any whitepapers that entities comprising Nexstar Group produced to the DOJ in response to its Merger Investigation or the Pacing Investigation are discoverable.[8] The Sinclair whitepaper demonstrates the relevance to Plaintiffs' claims of any similar whitepapers produced by Nexstar Group. It describes Sinclair's view of its exchange of competitive information as procompetitive. A Nexstar Group whitepaper would very likely discuss those same issues at the heart of this case.

Production of such whitepapers is also proportional to the needs of this case. Nexstar Group points out—as have other defendants in this consolidated class action—that discovery here is vast, so limits are necessary. True enough. But Plaintiffs have sought discoverable information from the documents produced in the DOJ investigations since serving their RFP No. 1. Nexstar Group

---

[8] Nexstar Group has not claimed that such documents—if they exist—are privileged.

7

agreed to "to produce all substantive, relevant information contained in Tribune and Dreamcatcher's narrative responses to DOJ in connection with the merger investigation." (Dkt. 977-1 at 43). Although Plaintiffs at that time did not specifically request production of whitepapers from the Merger Investigation, these fall within the general parameters of the parties' understanding of discoverable information.

Nexstar Group now contends that "whitepapers" do not fall within the category of "narrative responses" to the DOJ's Merger Investigation that Plaintiffs have sought since discovery began. According to Nexstar Group, correspondence between its counsel and Plaintiffs' counsel during discovery negotiations "makes clear that Plaintiffs' requests for 'narrative responses' was expressly limited to written *responses to DOJ's CIDs*, not any 'DOJ-related documents.'" (Dkt. 983 at 6) (emphasis in original). The only applicable responses, Nexstar argues, are those to interrogatories from the initial DOJ CIDs. The Court disagrees. Having reviewed the extensive correspondence detailed above, the Court finds that discoverable "narrative responses" includes such substantive, written responses that defendants gave to the DOJ's specific production requests in connection with its investigations. They include responses both to the initial CIDs and the follow-up requests for specific productions after initial CID disclosures. Sinclair produced its whitepaper as a response to DOJ's letter that "asked Sinclair to provide a white paper outlining its belief that the sharing of competitive sensitive information was procompetitive." (Dkt. 977-1 at 138). Although Plaintiffs did not initially know that DOJ had made such a request of Sinclair or of any other defendants, responses to such requests fall within the scope of "narrative responses" to the DOJ's Merger Investigation.

It is overly narrow to exclusively define "narrative responses" as Nexstar's initial answers to DOJ CID interrogatories, particularly considering Plaintiffs' many attempts to clarify precisely

how Nexstar Group understood the term. Plaintiffs asked several times how "narrative responses" differed from interrogatory responses. Nexstar Group never answered this question straight on. But it affirmatively represented: "We have produced the narrative responses that contain information responsive to Plaintiff's discovery requests in this case." (Dkt. 977-1 at 50). While this may have been an accurate statement, it might also have been incomplete. Nexstar Group knew that Plaintiffs had been and remained concerned—up until its affirmative representation—about Nexstar Group's production of all discoverable narrative responses to the DOJ's requests for production in the Merger Investigation.

Moreover, the burden to search for whitepapers and to produce them if they exist is minimal. Nexstar Group has not proposed that searching for these specific documents imposes an undue burden.[9] It complains, rather, that Plaintiffs agreed to place limits on what would otherwise have been an "overwhelming burden" during discovery, and that this Motion to Compel exceeds those reasonable limitations. (*See* dkt. 983 at 3, 5). If Plaintiffs can come back and ask for more, Nexstar argues, then discovery limitations are meaningless. Again, the Court disagrees. The parties' agreement to search terms applicable to the ESI sought in this case was necessary and appropriate to guide fact discovery and help narrow the massive volume of documents to those most relevant to key issues. Limiting search terms also ensures that discovery comes to an appropriate end so that the case may proceed. *See, e.g.*, *Velez v. City of Chicago*, 2021 WL 3109657, at *1 (N.D. Ill. July 22, 2021) ("All good things, including discovery, must come to an end." (quoting *United States ex rel. Taylor v. Hicks*, 513 F.3d 228, 233 (5th Cir. 2008)). Even if the whitepapers were beyond the scope of the parties' agreement, the Court is not bound to enforce

---

[9] Notably, none of the other defendants that were asked whether they had produced such whitepapers to the DOJ had any trouble confirming the nonexistence of these documents within days of Plaintiffs' inquiry. Nexstar Group has provided no reason to suppose it would be any more difficult for it to do the same.

discovery agreements. *See, e.g.*, *Flemming v. Herman Gutierrez & Ecolab, Inc.*, 2017 WL 1021993, at *1 (N.D. Ill. Mar. 16, 2017); *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2019 WL 1258942, at *1 (N.D. Ill. July 17, 2019).

Here, there is good reason to compel discovery. Plaintiffs could not have been aware of such highly relevant and discoverable information when they agreed to ESI search terms and document custodians. After Plaintiffs discovered the likely existence of a specific category of documents, there was little burden on Nexstar Group to search for and produce them. Regardless of any discovery agreements between the parties, the Court finds that the information contained in whitepapers submitted to the DOJ in connection with its Merger Investigation is discoverable. Fed. R. Civ. P. 26(b)(1).

**B.      Nexstar Group Is Obligated Either to Produce Whitepapers or to Confirm That None Exists**

When a party "has responded to a[ ] … request for production," it "must supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete …." Fed. R. Civ. P. 26(e)(1)(A); *see also David v. Caterpillar, Inc.*, 324 F.3d 851, 856 (7th Cir. 2003). A party may move for an order compelling discovery where the other party's responses are inadequate. Fed. R. Civ. P. 37(a)(3)(B); *see also* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). Here, Plaintiffs have alleged that Nexstar Group's production in response to RFP No. 1 was not complete because it withheld nonprivileged, relevant, and responsive documents without disclosing that fact. Specifically, Plaintiffs argue that Nexstar Group has failed to disclose whether it produced whitepapers in response to the DOJ's Merger Investigation. Plaintiffs have a sound

10

basis for this allegation, given both the Sinclair Whitepaper's existence and Nexstar Group's evasive answers to Plaintiffs' requests for clarification about its production to the DOJ.

Nexstar Group argues that it has no discovery obligation here because (1) it has already told Plaintiffs that "[t]here were no white papers submitted by Tribune or Nexstar regarding the pacing investigation;" (2) even if they did exist, they are outside the scope of the discovery agreement; and (3) Plaintiffs' Motion to Compel is untimely. (Dkt. 983 at 2–8). These arguments do not carry the day. First, Nexstar's declaration about whitepapers regarding the *Pacing Investigation* does not resolve whether Nexstar Group entities submitted any whitepapers in response to the *Merger Investigation*. The parties' correspondence never made this clear. (*See* dkt. 983-6 at 2; *id.* at 11; *id.* at 14; *id.* at 36; *id.* at 40; dkt. 977-1 at 45–47). Nexstar Group continues to avoid stating outright whether any of its entities submitted whitepapers to the DOJ in connection with the Merger Investigation. Considering Plaintiffs' multiple queries about this discoverable information, Nexstar Group has failed to sufficiently respond and must do so now. *See* Fed. R. Civ. P. 37(a)(3)(B), 37(a)(4).

Second, according to Nexstar Group, its discovery obligation extends no further than the parties' discovery agreement. But such agreements do not control whether Nexstar Group has met its discovery obligations under the Federal Rules of Civil Procedure. *See, e.g.*, *Medline Indus., Inc.*, 2019 WL 12528942, at *1; *Flemming*, 2017 WL 1021993, at *1; *cf. Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 779 (7th Cir. 2016) (Rule 37 obliges parties to comply with court's discovery orders). The Rules require a party to supplement its incomplete responses, and an evasive response is not complete. Discovery cannot be limitless in a case like this, but the Merger Investigation whitepapers (if they exist) are discoverable regardless of the parties' discovery agreements. Defendants must supplement their responses to Plaintiffs' RFP No. 1 if they were incomplete. Fed.

11

R. Civ. P. 26(e)(1)(A). All other defendants have done so. Nexstar, too, must supplement its response, even if it means searching beyond the limited set of documents to which Nexstar Group applied the agreed-upon ESI search methodology.

Third, Plaintiffs' Motion is timely. Plaintiffs learned of the probable existence of discoverable information after the Court's deadline for motions to compel had passed. It was only after the Sinclair whitepaper came out in March 2023 that Plaintiffs could invoke Rule 26(e)(1) and ask defendants to supplement their responses to RFP No. 1 with specific information about whitepapers. Before that, in 2021, Plaintiffs diligently sought to clarify Nexstar Group's understanding of "narrative responses" to the DOJ's investigations. Nexstar Group's affirmative representations at that time implied its complete disclosure of relevant, responsive information contained in narrative responses. Now, because of the Sinclair whitepaper and subsequent communications, its response appears incomplete. Plaintiffs have timely sought a complete response regarding discoverable information. The passing of the Court's deadline for a motion to compel does not alter Nexstar Group's obligation to supplement an incomplete response. Nor does it mean that discovery has no limits. Rather, all parties remain under the obligation to supplement incomplete or incorrect discovery responses made to prior timely requests. Fed. R. Civ. P. 26(e); *see also, e.g.*, *Medline Indus.*, 2023 WL 2711433, at *4 ("Discovery often closes long before the beginning of trial and the duty to supplement is not boundless if it reaches relevant information, covered by a discovery request, learned by a party before trial.").

## C. Plaintiffs Are Entitled to Reasonable Attorney's Fees and Costs

When a party prevails on a motion to compel, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But the court must not order such payment if "the opposing party's nondisclosure, response, or objection was substantially justified" or the award of expenses would be otherwise unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii); *see also Rickels v. City of South Bend*, 33 F.3d 785, 786–87 (7th Cir. 1994) (explaining that the "loser pays" in discovery disputes unless his position was "substantially justified"). In the Rule 37 context, a party's position is "substantially justified" if there is a "genuine dispute"—that is, if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Nexstar Group points to its discovery agreement with Plaintiffs to justify its position that it was never obligated to look for or disclose the existence of any whitepapers produced to the DOJ in connection with the Merger Investigation. It asks this Court to award reasonable fees and costs to Nexstar Group if it prevails on this Motion, acknowledging the principle that the loser in discovery disputes typically pays the opponent's fees. The parties' agreement aside, Nexstar Group has not argued that the Federal Rules of Civil Procedure justify its position. And the agreement does not control; the Rules do. Nor has Nexstar Group provided any compelling reason that the information is not discoverable, either by asserting a privilege or by explaining that searching for such whitepapers would impose an undue burden. Nexstar Group's position is not substantially justified; therefore, the Court orders Nexstar Group to pay Plaintiffs' reasonable expenses and costs, including attorney's fees, associated with bringing this Motion.

**CONCLUSION**

The Court grants Plaintiffs' Motion to Compel Defendant Nexstar Group to produce whitepapers, including any attached exhibits, submitted to the U.S. Department of Justice in response to the Department's Merger Investigation and Pacing Investigation, if such documents exist and are not subject to an evidentiary privilege. [977] Further, the Court orders Defendant Nexstar Group to pay Plaintiffs' reasonable expenses and costs, including attorney's fees, associated with bringing this Motion. [*Id.*]

Virginia M. Kendall
United States District Judge

Date: August 31, 2023