**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document applies to all actions* | Master Docket No. 18-06785<br><br>MDL No. 2867<br><br>The Honorable Virginia M. Kendall |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OMNIBUS OBJECTION TO THE SPECIAL MASTER'S REPORT & RECOMMENDATION NO. 1**

# TABLE OF CONTENTS


**I. INTRODUCTION** ........ **1**

**II. STATEMENT OF FACTS** ........ **2**

**A. Defendants' Multiple Privilege Log Revisions and Their Numerous Opportunities to Substantiate Their Assertions of Privilege.** ........ **2**

**B. Defendants Assert "We Are Ready to Litigate This," and Plaintiffs File Motions to Compel on Privilege Issues.** ........ **3**

**C. The Court Appoints Judge Levie as Special Master, and He Begins His In Camera Review.** ........ **4**

**D. Judge Levie Determines That Defendants Have Improperly Withheld, in Whole or in Part, 289 of the 304 Documents (95%) He Reviewed In Camera.** ........ **5**

**III. STANDARDS OF REVIEW** ........ **5**

**IV. ARGUMENT** ........ **7**

**A. Judge Levie Correctly Determined That Assertions of Privilege and Attorney Work-Product Are to Be Narrowly Construed.** ........ **7**

**B. Judge Levie Did Not Abuse his Discretion in Determining Whether Defendants' Documents Were Privileged, Based on His In Camera Review.** ........ **8**

*1. Defendants Agree that Judge Levie Did Not Need Extrinsic Evidence to Make Privilege Determinations.* ........ *9*

*2. Defendants' Argument is Based on a Flawed Reading of the R&R.* ........ *10*

*3. Defendants' Argument is Unsupported by the Caselaw* ........ *11*

**C. Judge Levie Did Not Abuse His Discretion by Denying Defendants Yet Another "Bite at the Apple."** ........ **14**

**D. Judge Levie Correctly Applied Seventh Circuit Precedent Regarding Client Confidences** ........ **18**

*1. Not All Communications from an Attorney to a Client are Privileged.* ........ *19*

a. Judge Levie correctly determined that the attorney-client privilege does not attach to communications untethered from client confidences, either directly or indirectly. ........ 19

b. In the alternative, Judge Levie determined that almost all of these documents did not convey legal advice. ........ 24

*2. Defendants' Assertion that Documents Are Privileged Simply Because They Involve In-House Counsel is Contrary to the Law.* ........ *26*

*3. Defendants Cannot Properly Shield Statements of Company Policy Simply Because They Contain "Instructions, Overviews, or Hypotheticals" From Counsel.* ........ *27*

**V. CONCLUSION** ........ **30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Target Corp.*,
281 F.R.D. 314 (N.D. Ill. 2012)....27

*In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*,
133 F.R.D. 515 (N.D. Ill. 1990)....20

*Ami-Rec-Pro, Inc. v. Ill. Tool Works, Inc.*,
No. 97 C 5409, 1998 WL 70607 (N.D. Ill. Feb. 11, 1998)....20

*Avery Dennison Corp. v. UCB Films PLC*,
No. 95 C 6351, 1998 WL 703647 (N.D. Ill. Sept. 30, 1998)....20

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*,
326 F.R.D. 176 (N.D. Ill. 2018)....22

*Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*,
709 F.2d 1109 (7th Cir. 1983)....8

*Brooks v. Walls*,
279 F.3d 518 (7th Cir. 2002)....23

*C&F Packing Co. v. IBP, Inc.*,
No. 93 C 1601, 1997 WL 619848 (N.D. Ill. Sept. 30, 1997)....20

*Carmody v. Bd. of Trs. of Univ. of Ill.*,
893 F.3d 397 (7th Cir. 2018)....22

*Cent. Die Casting & Mfg. Co. v. Tokheim Corp.*,
No. 93 C 7692, 1994 WL 444796 (N.D. Ill. Aug. 15, 1994)....13

*Crabtree v. Experian Information Solutions, Inc.*,
No. 1:16-cv-10706, 2017 WL 4740662 (N.D. Ill. Oct. 20, 2017)....13, 26

*In re CV Therapeutics, Inc. Sec. Litig.*,
No. C-03-3709....29

*Dirickson v. Intuitive Surgical, Inc.*,
No. 19 C 7249, 2020 WL 11421623 (N.D. Ill. Dec. 23, 2020)....10

*Doe v. Johnson*,
No. 15 C 1387, 2015 WL 12834771 (N.D. Ill. Nov. 23, 2015)....22

*In re Domestic Drywall Antitrust Litig.*,
No. 13-MD-2437, 2014 WL 5090032 (E.D. Pa. Oct. 9, 2014)........................................12, 28

*Matter of Feldberg*,
862 F.2d 622 (7th Cir. 1988) ........................................................................................22

*Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co.*,
244 F. Supp. 2d 890 (N.D. Ill. 2002) ..........................................................................18

*Flagstar Bank, FSB v. Freestar Bank, N.A.*,
No. 09 C 1941, 2009 WL 2706965 (N.D. Ill. Aug. 25, 2009)........................................13

*Gen-Probe Inc. v. Amoco Corp.*,
No. 94 C 5069, 1996 WL 264707 (N.D. Ill. May 16, 1996) .........................................20

*United States ex rel. Gill v. CVS Health Corp.*,
No. 18 C 6494, 2023 WL 2771166 (N.D. Ill. Apr. 4, 2023)..............................................9

*Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs., Inc.*,
739 F. Supp. 2d 1089 (N.D. Ill. 2010) (Kendall, J.) .....................................................17

*Matter of Grand Jury Proceeding, Cherney*,
898 F.2d 565 (7th Cir. 1990) ........................................................................................22

*In re Grand Jury Proceedings*,
220 F.3d 568 (7th Cir. 2000) ..........................................................................................8

*Hampton v. Wyant*,
296 F.3d 560 (7th Cir. 2002) ........................................................................................24

*Hollister Inc. v. E. R. Squibb & Sons, Inc.*,
No. 84 C 1987, 1988 WL 129988 (N.D. Ill. Dec. 1, 1988) ..........................................22

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ..........................................................................................6

*Jenkins v. Bartlett*,
487 F.3d 482 (7th Cir. 2007) ..........................................................................................7

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
529 F.3d 371 (7th Cir. 2008) ........................................................................................22

*Kanter v. Comm'r*,
590 F.3d 410 (7th Cir. 2009) ..........................................................................................6

*Leybold-Heraeus Techs., Inc. v. Midwest Instrument Co.*,
118 F.R.D. 609 (E.D. Wis. 1987) .................................................................................13

*LKQ Corp. v. Gen. Motors Co.*,
No. 20 C 2753, 2021 WL 4125097 (N.D. Ill. Sept. 9, 2021)........................................6, 14, 15

*McCook Metals L.L.C. v. Alcoa Inc.*,
192 F.R.D. 242 (N.D. Ill. 2000)..............................................................................................22

*United States ex rel. McGee v. IBM Corp.*,
No. 11 C 3482, 2017 WL 1232616 (N.D. Ill. Apr. 4, 2017)...................................................27

*Medline Industries, Inc. v. C.R. Bard, Inc.*,
No. 14 C 3618, 2019 WL 12528942 (N.D. Ill. Jul. 17, 2019) ................................................14

*Medline Industries, Inc. v. Wypetech, LLC*,
No. 20 CV 4424, 2020 WL 6681353 (N.D. Ill. Nov. 12, 2020) ................................................7

*Metzen v. Barnhart*,
No. 00 C 7331, 2002 WL 31011090 (N.D. Ill. Sept. 6, 2002)................................................10

*Midwestern Univ. v. HBO & Co.*,
No. 96 C 2826, 1999 WL 32928 (N.D. Ill. Jan. 4, 1999) .......................................................20

*Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*,
257 F.R.D. 456 (N.D. Ill. 2008)..............................................................................................13

*N. Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*,
164 F.R.D. 59 (N.D. Ill. 1995)................................................................................................20

*Nedlog Co. v. ARA Servs., Inc.*,
131 F.R.D. 116 (N.D. Ill. 1989)..............................................................................................20

*Nilssen v. Motorola, Inc.*,
No. 96 C 5571, 98 C 2229, 2002 WL 206007 (N.D. Ill. Feb. 8, 2002) ..................................17

*Ohio-Sealy Mattress Mfg. Co. v. Kaplan*,
90 F.R.D. 21 (N.D. Ill. 1980)............................................................................................20, 23

*Oleksy v. Gen. Elec. Co.*,
No. 06 C 1245, 2011 WL 3471016 (N.D. Ill. Aug. 8, 2011) ..................................................12

*Pearlshire Capital Grp., LLC v. Zaid*,
490 F. Supp. 3d 1299 (N.D. Ill. 2020) ......................................................................................8

*Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*,
762 F.2d 557 (7th Cir. 1985) ..................................................................................................17

*Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*,
123 F.R.D. 282 (N.D. Ill. 1988)........................................................................................17, 18

*In re Reed*,
526 B.R. 713 (N.D. Ill. 2014) ....................10

*Rehling v. City of Chicago*,
207 F.3d 1009 (7th Cir. 2000), *amended* (Apr. 4, 2000) ....................2, 20, 23, 28

*Ret. Sys. v. Walgreen Co.*,
No. 15 C 3187, 2020 WL 3977944 (N.D. Ill. July 14, 2020) ....................22, 26

*S Indus., Inc. v. Centra 2000, Inc.*,
249 F.3d 625 (7th Cir. 2001) ....................1

*Schlicksup v. Caterpillar, Inc.*,
No. 09-CV-1208, 2011 WL 11737159 (C.D. Ill. Aug. 19, 2011) ....................28

*SEC v. Hollnagel*,
No. 07 CV 4538, 2010 WL 11586980 (N.D. Ill. Jan. 22, 2010)....................13

*Slaven v. Great Am. Ins. Co.*,
83 F. Supp. 3d 789 (N.D. Ill. 2015) ....................8, 11, 12

*Smith v. Board of Education of City of Chicago*,
No. 17 C 7034, 2019 WL 2525890 (N.D. Ill. June 19, 2019) ....................12, 13

*Smith-Brown v. Ulta Beauty, Inc.*,
No. 18 C 610, 2019 WL 2644243 (N.D. Ill. June 27, 2019) ....................28, 29

*SmithKline Beecham Corp. v. Pentech Pharms., Inc.*,
No. 00 C 2855, 2001 WL 1397876 (N.D. Ill. Nov. 6, 2001)....................10

*St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*,
No. 1:15-CV-10324, 2022 WL 1642311 (N.D. Ill. Mar. 30, 2022) ....................6, 7

*Stafford Trading, Inc. v. Lovely*,
No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ....................26

*In re Sulfuric Acid Antitrust Litig.*,
235 F.R.D. 407 (N.D. Ill. 2006)....................12, 24, 25, 26

*In re Sulfuric Acid Antitrust Litig.*,
432 F. Supp. 2d 794 (N.D. Ill. 2006) ....................12, 21, 28

*Thayer v. Chiczewski*,
No. 07 C 1290, 2009 WL 2957317 (N.D. Ill. Sept. 11, 2009)....................19

*United States v. BDO Seidman*,
337 F.3d 802 (7th Cir. 2003) ....................12

*United States v. Defazio*,
899 F.2d 626 (7th Cir. 1990) ....................23

*United States v. Jicarilla Apache Nation*,
564 U.S. 162 (2011)....................24

*United States v. Leonard-Allen*,
739 F.3d 948 (7th Cir. 2013) ....................22

*United States v. Melgar*,
227 F.3d 1038 (7th Cir. 2000) ....................17

*United States v. Rainone*,
32 F.3d 1203 (7th Cir. 1994) ....................22

*United States v. Weger*,
709 F.2d 1151 (7th Cir. 1983) ....................22

*United States v. White*,
950 F.2d 426 (7th Cir. 1991) ....................12

*Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*,
334 F.R.D. 149 (N.D. Ill. 2020)....................28

*Viskase Corp. v. Am. Nat'l Can Co.*,
888 F. Supp. 899 (N.D. Ill. 1995) ....................20

*Matter of Walsh*,
623 F.2d 489 (7th Cir. 1980) ....................8

*Weeks v. Samsung Heavy Indus., Ltd.*,
No. 93 C 4899, 1996 WL 288511 (N.D. Ill. May 30, 1996) ....................22

*Wier v. United Airlines, Inc.*,
No. 19 CV 7000, 2021 WL 1517975 (N.D. Ill. Apr. 16, 2021)....................10, 14, 21

*Matter of Witnesses Before The Special Mar. 1980 Grand Jury*,
729 F.2d 489 (7th Cir. 1984) ....................15, 22

*Ziemack v. Centel Corp.*,
No. 92 C 3551, 1995 WL 314526 (N.D. Ill. May 19, 1995) ....................20

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(5)(A)(ii) ....................9

Fed. R. Civ. P. 53(f)(3) ....................6

**Other Authorities**

Alexa Ashworth, et al., *Federal Procedure, Lawyers Edition: Burden of Proof Regarding Privilege in Discovery*, 10 Fed. Proc., L. Ed. (Aug. 2023) ............................................................10

Plaintiffs submit this response to Defendants' Omnibus Objection to the Special Master's Report & Recommendation No. 1 (ECF No. 1052; the "Objection" or "Obj."). For the reasons set forth below, this Court should reject Defendants' arguments and affirm, in whole, Judge Levie's Report & Recommendation No. 1 (ECF No. 1030; the "R&R"), which recommended finding most of Defendants' antitrust compliance policies to be non-privileged.[1]

## I. INTRODUCTION

Defendants have claimed that tens of thousands of documents are privileged. This Court appointed Judge Levie in "consideration of the scope of the attorney client privilege disputes," ECF No. 850, and he has prepared a comprehensive and detailed analysis of the first set of those claims after months of effort. The parties agreed at the outset that his rulings on procedural or factual matters are subject to review only for abuse of discretion or clear error. And in the Seventh Circuit's memorable language, "clear error" must "strike[] [the court] as wrong with the force of a five week old, unrefrigerated, dead fish." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). *See* Part III, *infra.*

Beginning with the settled proposition that claims of privilege are to be narrowly construed, Part IV-A., *infra*, Judge Levie was well within his discretion in finding the vast majority of Defendants' documents non-privileged after an intensive *in camera* review. Nor did he abuse his discretion by denying Defendants – who bore the burden of proof – yet another opportunity to provide supporting evidence for their privilege claims, particularly after they had refused to do so

---

[1] In support of this Response, Plaintiffs submit the Declaration of Megan E. Jones ("Jones Decl."), with exhibits thereto. In addition, Plaintiffs cite to the following Declarations previously submitted (with exhibits) (1) Heather T. Rankie in Support of Plaintiffs' Motion to Compel Defendants Nexstar Media Group, Inc., the E.W. Scripps Company, Raycom Media, Inc., and TEGNA, Inc. to Produce Antitrust/Business Compliance Documents (ECF No. 688-1; the "First Rankie Declaration"), and Exhibits 1-57 thereto; (2) Heather T. Rankie in Support of Plaintiffs' Discovery Motion Nos. 9-15 (ECF No. 744; the "Second Rankie Declaration"), and Exhibits 1-73 thereto; and (3) Anjalee M. Behti in Support of Plaintiffs' Replies to Discovery Motions Nos. 9-15 (ECF No. 828; the "Behti Declaration").

during almost two years of meeting, conferring and motion practice. *See* Parts IV-B & C, *infra*. Finally, Judge Levie correctly applied long-settled Seventh Circuit law, *see Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000), *amended* (Apr. 4, 2000), in holding that attorney advice—particularly in the form of antitrust training and compliance materials—untethered from client confidences is not privileged. *See* Part IV-D, *infra*.

## II. STATEMENT OF FACTS

### A. Defendants' Multiple Privilege Log Revisions and Their Numerous Opportunities to Substantiate Their Assertions of Privilege.

By January 31, 2022, Defendants had served their initial privilege logs, which collectively asserted privilege over more than 50,000 documents. Second Rankie Decl., ¶¶ 24, 38, 45, 53, & 69. Throughout the first half of 2022, Plaintiffs sent dozens of detailed letters raising their questions and concerns regarding Defendants' logs, *see* R&R at 9-10, requesting that Defendants cure the deficiencies in their logs. *See, e.g.*, Second Rankie Decl., Ex. 20. Defendants responded by insisting that Plaintiffs enumerate each deficiency, forcing Plaintiffs not only to identify the error (*e.g.*, no attorney listed but attorney client privilege claimed) but also to identify every time the error occurred on the log for each privilege log entry individually. Plaintiffs did so repeatedly. *See* R&R at 10, Table 2. Throughout this months-long process, in response, each Defendant amended its log at least once, and Defendants withdrew their privilege claims for a number of documents. *See* R&R at 9.

Throughout this process, Plaintiffs repeatedly reminded Defendants of their burden to prove all elements of privilege for each withheld document and requested that Defendants substantiate their privilege claims. *See, e.g.*, Second Rankie Decl., Exs. 20, 32, 35, 39, 48, 52, & 56. This included expressly requesting that Defendants amend log entries related to antitrust compliance policies. *See, e.g.*, *id.*, Exs. 25 & 41. Despite being provided multiple opportunities to

do so, Defendants largely ignored Plaintiffs, opting to stand on their unsubstantiated assertions of privilege, despite months of efforts. *See* R&R, Table 2[2]; *see also*, *e.g.*, Second Rankie Decl., Exs. 10-11, 13-16 (demonstrating Plaintiffs' efforts with Meredith); Exs. 20-28, 30 (demonstrating Plaintiffs' efforts with Nexstar); Exs. 32-36 (demonstrating Plaintiffs' efforts with Raycom); Exs. 39-41, 43-44 (demonstrating Plaintiffs' efforts with Scripps); Exs. 46-54 (demonstrating Plaintiffs' efforts with Sinclair); Exs. 56-67 (demonstrating Plaintiffs' efforts with TEGNA).

**B. Defendants Assert "We Are Ready to Litigate This," and Plaintiffs File Motions to Compel on Privilege Issues.**

With a September 1, 2022 motion to compel deadline looming, on August 20, 2022, Plaintiffs filed their first motion to compel on privilege issues, which sought production of certain antitrust and other business compliance policies and related materials. Discovery Mot. No. 5 (ECF No. 688). Notwithstanding this filing, Plaintiffs continued their efforts to work through their other concerns with Defendants' privilege logs, which by then, had been ongoing for months. In an apparent effort to avoid additional motions being filed, Defendants trickled out additional pieces of information and generally resisted Plaintiffs' efforts to declare an impasse. *See*, *e.g.*, Second Rankie Decl., Exs. 24, 36, 42, & 65.

Plaintiffs sought Defendants' agreement to extend the schedule to permit for these discussions to continue. *See id.*, Ex. 8. Defendants, however, brashly proclaimed their assertions of privilege were ripe for resolution at the August 29, 2022 hearing:

> ***Let's see that motion.*** We want to get this going, right? That's why we said "no" to their request for an extension of that. ***We are ready to litigate this. If we lose, we lose; if we win, we win.***

Behti Decl., Ex. 1 at 19:25-20:3 (emphases added). Accordingly, Plaintiffs filed their omnibus

[2] For example, Nexstar amended its log on July 8, 2022, but elected not to revise even a single privilege description in its 10,000+ entry privilege log. *See* Second Rankie Decl., Ex. 27.

motions to compel three days later. *See* Discovery Mots. Nos. 9-15 (ECF Nos. 727, 728, 729, 730, 731, 732, 733).

### C. The Court Appoints Judge Levie as Special Master, and He Begins His *In Camera* Review.

On February 6, 2023, the Court appointed the Honorable Richard A. Levie (Ret.) to serve as a Special Master and referred to him Plaintiffs' pending motions to compel on privilege issues. ECF Nos. 920, 925. The parties held their first conference with Judge Levie on February 16, 2023, and the referred motions to compel, together with the cases cited therein, were provided to Judge Levie by the parties on February 21, 2023. *See* R&R at 13. Subsequently, Judge Levie held conferences with the parties on February 21, March 1, and March 22, and received written submissions from the parties concerning, *inter alia*, questions regarding Plaintiffs' challenges and the phasing and protocol for his review. *Id.*

The parties ultimately agreed that Judge Levie should prioritize his review by looking first at the challenged antitrust compliance policy materials. *Id*. In addition, although the parties had a dispute about the process that Judge Levie would employ in undertaking his review, Defendants conceded at a March 22, 2023 conference with Judge Levie that he had the authority to undertake an *in camera* review if he determined doing so would be helpful, at his discretion. *See* Jones Decl., Ex. 1 at 56:18-25 ("One is we are not taking issue with the authority you have, Your Honor, to look at documents *in camera*, to the extent that you think it is helpful to understand, what a category means, what a document means . . . ."). Consistent with this recognition, Defendants provided Judge Levie with their documents for *in camera* review. *See* R&R at 13-14.

Based on a review of his invoices, Judge Levie and his colleague, Ms. Wendy Anderson, collectively spent more than 600 hours working on privilege-related issues in this matter, between February and July of 2023. *See* Jones Decl., ¶ 3. This included reviewing the parties' motion to

compel briefing and submissions made directly to the Special Master; holding multiple conferences with the parties; and reviewing documents *in camera*. *See* R&R at 5. As part of this review, Judge Levie and Ms. Anderson had available to them more than 750 pages of briefing, more than 2,000 pages of supporting declarations, exhibits, and other materials, and more than 190 judicial opinions concerning Defendants' assertions of privilege. *See* Jones Decl., ¶ 4.

### D. Judge Levie Determines That Defendants Have Improperly Withheld, in Whole or in Part, 289 of the 304 Documents (95%) He Reviewed *In Camera*.

Based on his review of the extensive record and the law, Judge Levie issued the R&R on July 26, 2023. The R&R spans 175 pages and cites nearly 100 judicial opinions. In relevant part, Judge Levie concluded that "Defendants largely failed to carry their burdens to establish that the attorney-client privilege or the work product doctrine applied . . . ." R&R at 5. On a Defendant-by-Defendant-basis, Judge Levie concluded that Nexstar had improperly withheld 100% of the documents he had reviewed (124 of 124 documents); that Raycom had improperly withheld, in whole or in part, 75% of the documents he had reviewed (24 of 32 documents); that Scripps had improperly withheld 100% of the documents he had reviewed (38 of 38 documents); that Sinclair had improperly withheld 100% of the documents he had reviewed (26 of 26 documents); and that TEGNA had improperly withheld, in whole or in part, 92% of the documents he had reviewed (77 of 84 documents). *See* R&R, Exs. 1-6.[3]

## III. STANDARDS OF REVIEW

Defendants' Objection focuses on alleged errors in Judge Levie's review process and factual findings. The parties stipulated, however (and this Court entered that stipulation as an Order), that this Court would review "the Special Master's findings of fact for clear error; rulings

[3] Judge Levie also evaluated Defendants' claims of work-product protection over fifty (50) documents and determined that only ***one*** document qualified for this protection. *See* R&R at 50-51.

on procedural matters for abuse of discretion; and findings of law *de novo*." ECF No. 925 at 4.[4] Judge Levie's factual determinations and procedural decisions—including deciding that Defendants should not be afforded yet another opportunity to amend their privilege logs or supplement their assertions of privilege—were well within his broad discretion.

Consistent with the foregoing, Judge Levie's procedural decisions are subject to an abuse of discretion standard of review. This standard is highly deferential, *see Isby v. Bayh*, 75 F.3d 1191, 1196–97 (7th Cir. 1996), and only "occurs when no reasonable person could agree with the [judicial officer's] decision." *LKQ Corp. v. Gen. Motors Co.*, No. 20 C 2753, 2021 WL 4125097, at *1 (N.D. Ill. Sept. 9, 2021) (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013)). Defendants do not contest that this standard applies to Judge Levie's procedural determinations. *See* Obj. at 21.[5]

Also consistent with the above, Judge Levie's factual findings are subject to a clear error standard of review. "The clear error standard means that [this C]ourt can overturn [Judge Levie's] ruling only if [it] is left with the definite and firm conviction that a mistake has been made." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 1:15-CV-10324, 2022 WL 1642311, at *1 (N.D. Ill. Mar. 30, 2022) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d. 926, 943 (7th Cir.

---

[4] *See also* Fed. R. Civ. P. 53(f)(3); *Kanter v. Comm'r*, 590 F.3d 410, 416 (7th Cir. 2009) ("Rule 53, governing masters . . . provides that the district court's review of matters that are the subject of an objection is *de novo* unless the parties have stipulated (with the court's approval) that review will be for clear error.")

[5] Defendants incorrectly characterize the abuse of discretion standard by pointing to a case involving the issuance of discovery ***sanctions***, not at issue here. *See* Obj. at 21 (citing *Am. Nat. Bank & Tr. Co. of Chi. v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867 (7th Cir. 2005)). Defendants cite no decision—and Plaintiffs are aware of none—in which a court has applied the "arbitrary or fanciful" standard to the process employed by a Special Master or Magistrate Judge's on a routine discovery motion. Moreover, in that case, the Magistrate Judge chose to review, *in camera*, twenty (20) of four hundred documents—selected by the challenging party—that had allegedly been withheld in bad faith and stated that if he found just four of these twenty to be not privileged, he would issue sanctions. *Id.* at 878. The Seventh Circuit found that basing sanctions on that wholly arbitrary process was an abuse of discretion. *Id*. Here, by comparison, Judge Levie reviewed *each* of the challenged documents *in camera* and determined whether privilege attached.

1997)). That is, the alleged error must "strike[] [this Court] as wrong with the force of a 5 week old, unrefrigerated, dead fish." *Id.* (quoting *S Indus.*, 249 F.3d at 627). Defendants do not articulate a standard for Judge Levie's factual findings—which necessarily includes his privilege determinations, *see Medline Industries, Inc. v. Wypetech, LLC*, No. 20 CV 4424, 2020 WL 6681353, at *3 (N.D. Ill. Nov. 12, 2020) ("Whether a party has waived the attorney-client privilege is a question of fact."); *see also Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) ("We review the district court's findings of fact and application of law to fact in connection with a claim to attorney-client privilege for clear error.")—but pursuant to the stipulation, a clear error standard indisputably applies.

Regardless of the standard, Judge Levie's R&R deserves significant deference, and Defendants' objections should be overruled.

## IV. ARGUMENT

Defendants have failed to articulate any cognizable reason why this Court should overturn the R&R. As set forth below, Judge Levie correctly determined that (1) assertions of privilege are to be narrowly construed; (2) extrinsic evidence is unnecessary to determine the assertion of privilege when a document is reviewed *in camera*; (3) Defendants are not entitled to yet another opportunity to fix their deficient privilege logs or submit extrinsic evidence; and (4) Seventh Circuit precedent requires legal advice to be tethered to client confidences, either directly or indirectly, in order for it to be privileged.

### A. Judge Levie Correctly Determined That Assertions of Privilege and Attorney Work-Product Are to Be Narrowly Construed.

Judge Levie properly observed that "the attorney-client privilege must 'be strictly construed within the narrowest possible limits.'" R&R at 22 & n.68 (quoting *Radiant Burners, Inc.*

*v. Am. Gas Ass'n*, 320 F.2d 314, 323 (7th Cir. 1963) (en banc)).[6] Indeed, Seventh Circuit "case law has recognized consistently that the privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (internal citation omitted).[7] Likewise, attorney work-product protections are narrowly construed, with the withholding party bearing the burden of establishing their applicability, *see Pearlshire Capital Grp., LLC v. Zaid*, 490 F. Supp. 3d 1299, 1307 (N.D. Ill. 2020), and "[i]t is axiomatic that in order to invoke the protection of the work product privilege, one must show that the materials sought to be protected were prepared in anticipation of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) (cleaned up). In short, "there is no presumption in favor of finding a document to be immune from discovery under either the attorney-client privilege or the work product doctrine." *Pearlshire*, 490 F. Supp. 3d at 1307.

### B. Judge Levie Did Not Abuse his Discretion in Determining Whether Defendants' Documents Were Privileged, Based on His *In Camera* Review.

Defendants take issue with the fact that Judge Levie, after conducting an *in camera* review of their documents, found that Defendants had overwhelmingly failed to satisfy their burden of establishing each element of the asserted privilege. *See* Obj. at 24-27.[8] They argue that Judge Levie erred by "requiring extrinsic evidence to support every privilege claim . . . ." Obj. at 27.

---

[6] Judge Levie further noted that "the Supreme Court limits the privilege's application to 'only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" R&R at 22 & n.69 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976) (cleaned up)).

[7] *See also Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) ("The [attorney-client] relationship itself does not create a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." (cleaned up)).

[8] Defendants do not argue that Judge Levie abused his discretion by undertaking an *in camera* review. Nor could they. *See Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 801 (N.D. Ill. 2015) ("[T]he Seventh Circuit has warned that privilege determinations ought not to be made without the judge first reviewing the questioned documents *in camera* . . . . After all, the responsibility of determining whether the privilege exists rests upon the judge and not upon the lawyer whose client claims the privilege." (citing *Am. Nat'l Bank*, 406 F.3d at 880 & n.7)).

Defendants' complaint amounts to little more than an attempt to blame Judge Levie for their strategic decision—to reject Plaintiffs' repeated requests that Defendants come forward with additional information or evidence, *see* Part II-A, *supra*—to rest on their threadbare assertions of privilege, bolstered only by the "assurances and representations of counsel." R&R at 45, n.165.[9]

Defendants' dissatisfaction with the results of the *in camera* review, however, cannot serve as a basis on which to reverse Judge Levie. As shown below, this argument fails for three reasons: (1) Defendants agree that Judge Levie acted appropriately in evaluating Defendants' assertions of privilege without evaluating extrinsic evidence, (2) the argument rests on a flawed reading of the R&R, and (3) it is unsupported by the caselaw.

#### ***1. Defendants Agree that Judge Levie Did Not Need Extrinsic Evidence to Make Privilege Determinations.***

Defendants appear to agree that *in camera* review is often the best, and final means by which assertions of privilege can be assessed, arguing that "[e]xtrinsic evidence is ***not required*** to support a privilege claim—particularly, as here, ***when the document itself is submitted for in camera review***." Obj. at 25 (emphases added). Of course, Judge Levie knows what is (and is not) privileged,[10] and his review of the documents themselves ensured that the conclusions he reached

---

[9] Defendants invoke Rule 26(b)(5)(A)(ii) to argue that they need only provide assurances that a document is privileged in order to make it so. *See* Obj. at 27. This argument is not only specious, but also belied by the fact that Judge Levie noted numerous discrepancies between Defendants' *claims* regarding the documents they withheld and what was apparent on the face of the documents *themselves*. *See, e.g.*, R&R, Ex. 5 (TEGNA) at 604 ("Contrary to TEGNA's claim, the document does not contain any 'mental impressions, conclusions, opinions, or legal theories' of TEGNA's attorneys."). That is to say, Defendants provided both Judge Levie and this Court with a very good reason to reject their "assurances" of privilege. *See United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2023 WL 2771166, at *7 n.6 (N.D. Ill. Apr. 4, 2023) ("[A] lawyer's credibility is not judged differently than that of any other person and the oath or its equivalent does not assure candor or veracity based on the party's occupation.") (citing *United States v. Boliaux*, 915 F.3d 493, 497 (7th Cir. 2019)).

[10] Defendants appear to argue that Judge Levie improperly applied a "clear and convincing" standard in determining whether privilege attached to their documents, *see* Obj. at 25, but that term appears nowhere in the R&R. To be sure, Judge Levie notes that "[u]nless a document is crystal clear on its face that the attorney-client privilege or work product protection applies, only extrinsic evidence can possibly establish

were correct. *See Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *17 (N.D. Ill. Apr. 16, 2021) ("The ultimate proof of privileged content is disclosure of the content itself.").[11] Because Defendants agree that Judge Levie is capable of making privilege determinations based solely on his review of the Defendants' documents, they necessarily concede that the factual determinations Judge Levie reached in conducting that review were not clearly erroneous. *See In re Reed*, 526 B.R. 713, 719 (N.D. Ill. 2014) (finding no clear error when a lower tribunal makes factual findings where it "could have asked for more proof" but "it did not need to"); *Metzen v. Barnhart*, No. 00 C 7331, 2002 WL 31011090, at *9 (N.D. Ill. Sept. 6, 2002) ("[T]he ALJ's determination that he did not need additional information to reach a conclusion was not clear error."). Defendants' attack on Judge Levie's conclusions should be rejected on this basis alone.

### 2. *Defendants' Argument is Based on a Flawed Reading of the R&R.*

Defendants' argument should also be rejected because it rests on a flawed reading of the R&R. Although the R&R notes that "factual statements must be supported by competent evidence such as affidavits, deposition transcripts, documents, interrogatory answers, or other evidence," it also recognizes that "[r]egardless of form, though, the party claiming a privilege must provide sufficient facts to establish the existence of that privilege." R&R at 25-26 (citing authorities).[12]

---

the validity of the proponent's claims." R&R at 45. But that is not a standard of proof, it is a restatement of black letter law that it is incumbent on the party asserting privilege to come forward with facts necessary to satisfy establish each element of the asserted privilege. *See* Part IV-A, *supra*; *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00 C 2855, 2001 WL 1397876, at *4 (N.D. Ill. Nov. 6, 2001) ("It is ***not clear from the privilege log or from the document itself*** whom the recipient attorney represents. In addition, the document does not appear to involve legal advice or a request for legal advice from counsel. Therefore, it must be produced." (emphasis added)).

[11] *See also Dirickson v. Intuitive Surgical, Inc.*, No. 19 C 7249, 2020 WL 11421623, at *1 (N.D. Ill. Dec. 23, 2020) ("[T]he thrust of these cases is that *in camera* review is more critical before compelled disclosure, so courts might make sure that the disclosed materials truly are not privileged.") (citing cases).

[12] *See also* R&R at 30 ("[T]he party invoking the privilege must establish the necessary factual record; often such record will involve information extrinsic to the privilege log ***or*** document reviewed *in camera*." (emphasis added)); Alexa Ashworth, et al., *Federal Procedure, Lawyers Edition: Burden of Proof Regarding Privilege in Discovery*, 10 Fed. Proc., L. Ed. § 26:104 (Aug. 2023) ("The party objecting to

Thus, far from "requiring" Defendants to submit extrinsic evidence to support their assertions of privilege, Judge Levie properly concluded, consistent with precedent, that it is Defendants' burden to establish application of the privilege; that Defendants could (but were not necessarily required to) attempt to satisfy their burden by submitting extrinsic evidence when they filed their oppositions to Plaintiffs' motions to compel; and that despite having the opportunity, Defendants chose not to do so, thereby permitting Judge Levie to make his privilege determinations based on the documents themselves. *See* R&R at 46-53. Indeed, Judge Levie concluded that a number of the documents withheld by Defendants TEGNA and Raycom were privileged *without* the provision of any extrinsic evidence. Defendants attempt to fault Judge Levie for evaluating the record that they chose to submit to this Court, which contained no extrinsic evidence.[13] If, as Defendants contend, Judge Levie had held that extrinsic evidence was always required, he would presumably have been unable to determine that even this handful of documents was privileged.

### 3. *Defendants' Argument is Unsupported by the Caselaw.*

The weight of authority supports Judge Levie's conclusion that assertions of privilege must either be evident from the face of the document ***or*** be supported through extrinsic evidence.

For starters, Defendants are simply incorrect that "none of the cases the R&R cited as authority support" Judge Levie's determination that extrinsic evidence is typically necessary to support assertions of privilege. *See* Obj. at 28. To the contrary, Judge Levie relied on *Slaven*, 83 F. Supp. 3d at 796, for the proposition that "it is incumbent on the proponent of the privilege to demonstrate the existence of the privilege with competent evidence . . . ." R&R at 45 & n.163.[14]

discovery has the burden of establishing the existence of a privilege by establishing all elements of the privilege clearly. The objecting party's burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory assertions." (footnotes omitted)).

[13] This Court referred specific motions for Judge Levie to resolve. *See* ECF No. 925.

[14] Defendants incorrectly claim that *Slaven* "did not hold that extrinsic evidence was necessary to

There, the court wrote: "All jurisdictions adhere to the basic principle that the burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity that the attorney/client privilege or work-product applies to each document that is claimed to be privileged." *Slaven*, 83 F. Supp. 3d at 796 (citing cases).[15] In addition, Judge Levie relied heavily on *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407 (N.D. Ill. 2006) ("*Sulfuric Acid I*"), *In re Sulfuric Acid Antitrust Litig.*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) ("*Sulfuric Acid II*"), and *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2014 WL 5090032 (E.D. Pa. Oct. 9, 2014), *see* R&R (*passim*), all of which involved review of extrinsic evidence in evaluating assertions of privilege. *See Sulfuric Acid I*, 235 F.R.D. at 431 (reviewing document *in camera* and holding "[c]ertain portions of the . . . manuals . . . are not privileged"); *Sulfuric Acid II*, 432 F. Supp. 2d at 796-97 (considering affidavit explaining preparation of manual and holding that it "confirms the non-privileged nature of the hypotheticals and related materials"); *Domestic Drywall*, 2014 WL 5090032, at *1 & 4 (considering, *inter alia*, attorney declaration concerning the distribution of the policy to more than 120 employees and holding policy was not privileged).[16]

---

prove a privilege claim." Obj. at 28. Putting the above-quoted language aside, the *Slaven* court rejected an attorney declaration submitted to support the privilege claims for lack of detail and relied instead on *in camera* review of the documents, *see id.* at 799-801, which shows, consistent with the R&R, that even an attorney declaration may be incompetent or insufficiently detailed to support a privilege claim. *See* R&R at 25 ("Conclusory statements of law by counsel are not evidence – 'simply describing a lawyer's advice as "legal", without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege.'"); *id.* at 33 ("[A]s with the attorney client privilege, '[b]lanket claims of privilege or conclusory assertions are insufficient to carry this burden'" on the work product protection.).

[15] In a case of misplaced zeal, Defendants even challenge the applicability of cases *cited* by *Slaven*, but each of those decisions supports *Slaven*'s conclusion that competent evidence is necessary to support assertions of privilege. *See United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements."); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) ("The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis") (cleaned up); *Oleksy v. Gen. Elec. Co.*, No. 06 C 1245, 2011 WL 3471016, at *3 (N.D. Ill. Aug. 8, 2011) ("The party claiming the privilege has the burden of showing the specific facts giving rise to the privilege . . . .") (cleaned up).

[16] Defendants also attempt to distinguish *Smith v. Board of Education of City of Chicago*, No. 17 C

Indeed, Defendants' own cases support Judge Levie's conclusions. For example, Defendants cite *SEC v. Hollnagel*, No. 07 CV 4538, 2010 WL 11586980, at *9 (N.D. Ill. Jan. 22, 2010), for the proposition that "[e]xtrinsic evidence is not required to support a privilege claim . . . when the document itself is submitted for in *camera* review." Obj. at 25. Contrary to Defendants' assertion, however, *Hollnagel* does not state this blanket rule, and the Special Master in that case expressly relied on extrinsic evidence. *See Hollnagel*, 2010 WL 11586980, at *10 (noting that the Special Master's *in camera* review was done "in conjunction with the defendants' other submissions—the two declarations, and their privilege logs," which "were generally sufficient to enable" an assessment of the assertions of privilege). Defendants' other cases similarly involve the consideration of extrinsic evidence,[17] or obviously privileged documents.[18]

Defendants' other cases—which they rely upon for the proposition that "nearly all privilege disputes are resolved without recourse to extrinsic evidence," Obj. at 26—are readily distinguishable.[19] Indeed, Defendants cite no cases where, like here, the withholding parties (1)

7034, 2019 WL 2525890, at *2 (N.D. Ill. June 19, 2019), on the ground that it did not "impose any requirement related to extrinsic evidence." Obj. at 29. But they do not dispute the proposition for which it is cited by in the R&R, namely, that "courts presume that where in-house counsel is involved, 'the attorney's input is more likely business rather than legal in nature.'" R&R at 47 & n.169. And, *Smith* further holds that "communications by a corporation with its attorney, who at the time is acting solely in h[er] capacity as a business advisor, [are] not privileged," and that "[w]hen an attorney serves in a non-legal capacity . . . h[er] advice is privileged only upon *a clear showing* that [s]he gave it in a professional legal capacity." 2019 WL 2525890, at *2 (emphasis added). *Smith* supports the R&R.

[17] *See Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965, at *2-4 (N.D. Ill. Aug. 25, 2009) (conducting *in camera* review and considering, in addition to the documents themselves, extrinsic evidence in evaluating the assertion of privilege, including the privilege log, affidavits, and a contemporaneous email).

[18] *See Cent. Die Casting & Mfg. Co. v. Tokheim Corp.*, No. 93 C 7692, 1994 WL 444796, at *3 (N.D. Ill. Aug. 15, 1994) (conducing *in camera* review and finding that, on the face of the document, it was obviously privileged); *Leybold-Heraeus Techs., Inc. v. Midwest Instrument Co.*, 118 F.R.D. 609, 612-13 (E.D. Wis. 1987) (same); *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 257 F.R.D. 456, 460-61 (N.D. Ill. 2008) (same).

[19] In *Crabtree v. Experian Information Solutions, Inc.*, No. 1:16-cv-10706, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017), the court denied *in camera* review because it found defendants' privilege log descriptions sufficient. *Id.* at *2. Here, the R&R identified numerous defects in Defendants' logs, *see* R&R

repeatedly refused to provide more information regarding their privilege claims in the meet-and-confer process or through the motion to compel briefing, *see* Part II-B, *supra*; or (2) offered to provide their documents for *in camera* review, *see* Part II-C, *supra*. At most, these cases stand for the proposition that judicial officers have a great deal of discretion in determining whether, and if so, when, to conduct an *in camera* review or request that a party submit supporting extrinsic evidence. *See LKQ Corp.*, 2021 WL 4125097, at *1 ("Discretion is the antithesis of an inflexible rule." (citing cases)).

In sum, Defendants' attacks on Judge Levie's conclusions regarding "extrinsic evidence" are ill-founded and should be rejected. They certainly demonstrate no abuse of discretion.

### C. Judge Levie Did Not Abuse His Discretion by Denying Defendants Yet Another "Bite at the Apple."

Defendants, claiming to be surprised by the above-discussed "novel evidentiary requirement," Obj. at 24, also argue that Judge Levie abused his discretion by denying them the opportunity to submit additional, extrinsic evidence to support their assertions of privilege. *See id.* at 21-23. Putting aside the fact that Defendants concede that extrinsic evidence is unnecessary where documents are reviewed *in camera*, *see* Part IV-B-1, *supra*, this argument fails because Defendants were given repeated opportunities to bolster their assertions of privilege and repeatedly declined to do so. Defendants' repeated decisions to provide additional information substantiating their assertions of privilege waives their right to do so now.

---

at 45, 46, 48, and Defendants voluntarily "offered to produce the documents to the Court for *in camera* review . . . ." (R&R at 13). *Medline Industries, Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2019 WL 12528942, at *2 (N.D. Ill. Jul. 17, 2019), is distinguishable for the latter reason as well, and because plaintiff's motion for *in camera* review was untimely. Finally, the court in *Wier*, 2021 WL 1517975, at *7, found certain privilege log descriptions inadequate and ordered the defendant to provide more detail, and the privilege log descriptions the court found sufficient there did not on their face raise questions about the propriety of the privilege claim, unlike those at issue here. *See* R&R at 16 (listing examples of entries questioned by Plaintiffs); 37-39 (discussing legal principles regarding discoverability of antitrust compliance documents).

As noted above, throughout the better part of 2022, Plaintiffs repeatedly advised Defendants of their burden to substantiate their assertions of privilege, requesting that Defendants amend their logs or provide additional information necessary to support their privilege claims. *See* Part II-A, *supra*. Despite Plaintiffs' good faith efforts, Defendants declined to meaningfully substantiate their assertions of privilege, instead making the strategic decision to stand solely on the information contained in their privilege logs. *Id*.

Defendants' obstinacy continued even after motion practice began. In Discovery Motion No. 5, Plaintiffs reiterated Defendants' burden of proof and set out the elements that needed to be satisfied, stating that "[t]he party seeking to invoke the privilege bears the burden of proving all of its essential elements," and that "each of these elements must be established as to each document . . . ." Discovery Mot. No. 5 at 9 (ECF No. 688). However, Defendants "fail[ed] to submit any declarations or documents supporting their privilege claims. Rather, Defendants rel[ied] on facts that are not established in the record, make vague and conclusory statements about the contents of the documents, and otherwise argue that the documents are privileged." Reply on Mot. No. 5 at 3 (ECF No. 723). Defendants' continued refusal stood in stark contrast to the multiple authorities cited by Plaintiffs establishing that bare assertions of privilege are inadequate, and that more particularized information, including a declaration, may be required. *See id*. at 3-4; *see also id*. at 4 ("Given Defendants' collective failure to submit declarations or other evidentiary support for the privilege claims, for this reason alone, Plaintiffs' motion should be granted.").

There is no question that Defendants were indisputably on notice ***before*** Plaintiffs filed their broader privilege log motions (*i.e.*, Discovery Motions Nos. 9, 11, 12, 14 and 15 (ECF Nos. 727, 729, 730, 732, 733), which are also at issue here) that their lack of evidentiary showing was a problem. But in the lead-up to the filing of those motions—a period which Defendants had yet

another opportunity to support their assertions of privilege with additional facts or evidence—Defendants again chose to ignore their obligations to substantiate their privilege claims.

Still operating in good faith, Plaintiffs requested that Defendants agree "not to object to future motions to compel on privilege log issues based on timeliness" to allow more discussion and to give Defendants a further opportunity to substantiate their privilege claims. Second Rankie Decl., Ex. 8. Defendants quickly refused, *id.*, and at a status conference before this Court several days later, demanded that Plaintiffs file their motion to compel, brashly proclaiming: "***We are ready to litigate this. If we lose, we lose; if we win, we win.***" Behti Decl., Ex. 1 at 19:25-20:3 (emphasis added).

Subsequently, Plaintiffs filed their broader privilege log motions a few days later and again reiterated Defendants' obligations to prove "all . . . essential elements" of each privilege claim. *See, e.g.,* Mem. in Supp. of Discovery Mot. No. 9 at 1, 3 (ECF No. 735). Yet again, however, Defendants' oppositions to these motions were unsupported by declarations, contemporaneous documents, or other evidence. *See, e.g.,* Nexstar Opp. to Discovery Mot. No. 9 (ECF No. 792).[20] Through 750 pages of briefing and more than 2,000 pages of declarations and supporting materials, *see* Part II-C, *supra*, Defendants have chosen to stand solely on the information contained in their privilege logs.

These facts establish that Defendants' assertions—that the requirement that they may need to submit evidence to meet their burden of proof "came out of nowhere" and that "no one proposed [or] . . . discussed, a requirement of extrinsic proof during meet-and confers, [or in briefing on] Plaintiffs' motions to compel. . . ." (Obj. at 24)—are simply untrue. ***Defendants have been on***

---

[20] *See also* Raycom Opp. to Discovery Motion No. 11 (ECF No. 783); Scripps Opp. to Discovery Motion No. 12 (ECF No. 790); TEGNA Motion to Amend Briefing Schedule or in the Alternative Opp. to Discovery Motion No. 14 (ECF No. 797); Sinclair Opp. to Discovery Motion No. 15 (ECF No. 781).

***notice for nearly two years***. Through letters, through phone calls, through emails, and finally, through briefs, Plaintiffs repeatedly demanded that Defendants actually substantiate their privilege assertions, and at each turn, Defendants largely declined to do so.

These facts also establish that Defendants have waived the ability to cure the deficient record that they chose, presumably for strategic reasons, to rest their assertions of privilege on. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("[A]rguments not made before a magistrate judge are normally waived."); *Nilssen v. Motorola, Inc.*, No. 96 C 5571, 98 C 2229, 2002 WL 206007, at *6 (N.D. Ill. Feb. 8, 2002) ("It is not proper to raise a new theory in objections to the findings of the Special Master after the motions have been fully briefed and the material issues joined.").[21]

To hold otherwise would require Judge Levie to start his process all over again, resulting in substantial additional delay in discovery, and expense for all parties. This being the case, additional guidance can be drawn from caselaw regarding motions for reconsideration, which holds that arguments or evidence that was available to a party prior to an order cannot be raised for the first time after the order has been issued. *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (noting that parties are precluded form treating rulings "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure").[22] This is a "heavy burden," and "[t]he Seventh Circuit has repeatedly cautioned that motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present

---

[21] *See also Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089, 1116-17 (N.D. Ill. 2010) (Kendall, J.) (rejecting attempt to raise new theories in objections to the Special Master's conclusions that were not previously raised) (citing *Nilssen*, 2002 WL 206007, at *6).

[22] *See also Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 560–61 (7th Cir. 1985) ("[T]he evidence on which [defendant's] new arguments rest was available to it at the time it responded to plaintiff's . . . motion and [defendant] was obligated to make these arguments at that time.").

newly discovered evidence." *Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co.*, 244 F. Supp. 2d 890, 891 (N.D. Ill. 2002) (cleaned up) (citing cases). This generally requires a showing that the law or facts "have ***changed significantly*** since the issue was presented. *Id*. (emphasis added). Defendants cannot make such a showing here, and absent this, allowing Defendants to "rehash[] the same arguments advanced in the original briefing," *Quaker Alloy*, 123 F.R.D. at 288, wastes judicial resources and should be rejected.

Several Defendants submitted appendices to the Objection (ECF Nos. 1052-8 to -012), which claim to offer additional explanation by counsel about why particular documents are actually privileged. As the foregoing discussion makes clear, these explanations are too little, too late: any such explanations should have been offered more than a year ago, and not after the mammoth investment of time, effort and expense which Plaintiffs and Judge Levie have made.[23]

In short, Defendants have made their evidentiary bed, and now they must lie in it. Both Plaintiffs and Judge Levie evaluated the record that Defendants submitted and spent thousands of dollars in time doing so. In addition to the additional expense that the parties would incur by engaging Judge Levie to re-review a new privilege record, Plaintiffs would have to again divert significant resources from establishing Defendants' liability to litigating privilege issues. Defendants had countless opportunities over nearly two years to supplement the record. They chose not to do so, and this Court should not let them do so now simply because Defendants are dissatisfied with the results of Judge Levie's *in camera* review.

### D. Judge Levie Correctly Applied Seventh Circuit Precedent Regarding Client Confidences.

---

[23] In addition, given Judge Levie's factual finding that there was often a gap between what Defendants' privilege logs ***claimed*** about the documents, and the actual documents, *see* note 9, *supra*, it would be an appropriate exercise of discretion to give these additional statements little if any weight.

Defendants lodge just one attack against Judge Levie's legal conclusions: that he improperly concluded that only legal advice tethered, directly or indirectly, to client confidences is privileged. *See* Obj. at 6-13. As set forth below, Judge Levie's legal analysis is sound, and Defendants' arguments are inconsistent with Seventh Circuit and Supreme Court precedent, as well as the great weight of authority in this District.

### *1. Not All Communications from an Attorney to a Client are Privileged.*

As set forth below, Defendants' argument fails for at least two reasons: (1) Judge Levie already considered Defendants' position and correctly rejected it, *see* R&R at 23-24; and (2) even if legal advice untethered from client confidences gives rise to the proper assertion of privilege (it does not), Judge Levie nonetheless expressly found that 250 of the 263 documents ordered to be produced in full did not contain legal advice, whether linked to client confidences or not.

#### a. Judge Levie correctly determined that the attorney-client privilege does not attach to communications untethered from client confidences, either directly or indirectly.

Defendants take the aggressive position that communications by a lawyer (or "legal advice") standing alone, are *per se* privileged. *See* Opp. at 7-9. As discussed above, Defendants' position finds no support in case law in the Seventh Circuit. It is black letter law that the presumption is against application of the privilege, *see* Part IV-A, *supra*, and that not every communication between a lawyer and a client is privileged. *See* *Thayer v. Chiczewski*, No. 07 C 1290, 2009 WL 2957317, at *8 (N.D. Ill. Sept. 11, 2009) ("[T]he Court rejects Plaintiff's insistence that any communications directed to or from Plaintiff's counsel's law firm should be automatically excluded from the City's subpoena. Not every communication with an attorney is privileged and Plaintiff, like all litigants, must establish that a privilege applies before withholding relevant, responsive communications.")

Consistent with the above, the Seventh Circuit has held that "[a]lthough the attorney-client

privilege generally attaches only to statements made by the client, statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client." *Rehling*, 207 F.3d at 1019 (cleaned up). Courts in this District have thus routinely held that the privilege only extends to legal advice that is connected, either directly or indirectly, to client confidences. *See, e.g.*, *Midwestern Univ. v. HBO & Co.*, No. 96 C 2826, 1999 WL 32928, at *2 (N.D. Ill. Jan. 4, 1999) ("When a lawyer gives legal advice to the client it does not automatically trigger the attorney-client privilege. Rather, statements which would reveal the substance of the confidential communication are protected. Thus, this court will not protect documents based solely on the assertion that they reflect legal advice." (cleaned up)); *Gen-Probe Inc. v. Amoco Corp.*, No. 94 C 5069, 1996 WL 264707, at *3 n.10 (N.D. Ill. May 16, 1996) ("[C]ommunications from the attorney to the client should be privileged only if the statements do in fact reveal, directly or indirectly, the substance of a confidential communication by the client. Legal advice or communications, standing alone, should not automatically receive protection. Instead, the party asserting the privilege must show that such advice relates to prior confidential client communications.").[24]

Requiring "legal advice" to be connected to client confidences in order for privilege to attach makes sense, especially as to antitrust compliance documents. As the court explained in

---

[24] Countless other decisions confirm that this is the rule in the Seventh Circuit. *See, e.g.*, *Ami-Rec-Pro, Inc. v. Ill. Tool Works, Inc.*, No. 97 C 5409, 1998 WL 70607, at *3 (N.D. Ill. Feb. 11, 1998); *Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1998 WL 703647, at *3 (N.D. Ill. Sept. 30, 1998); *C&F Packing Co. v. IBP, Inc.*, No. 93 C 1601, 1997 WL 619848, at *2 (N.D. Ill. Sept. 30, 1997); *Viskase Corp. v. Am. Nat'l Can Co.*, 888 F. Supp. 899, 900 (N.D. Ill. 1995);; *N. Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995); *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 314526, at *4 (N.D. Ill. May 19, 1995); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 518 (N.D. Ill. 1990); *Nedlog Co. v. ARA Servs., Inc.*, 131 F.R.D. 116, 118 (N.D. Ill. 1989); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D. Ill. 1980).

*Sulfuric Acid II*, "legal advice" untethered from client confidences is indistinguishable from a lawyer "giving a talk on his experiences at a conference or perhaps writing an article on the subject of antitrust concerns in the . . . industry," neither of which "would be subject of a debate over the applicability of the attorney client privilege." 432 F. Supp. 2d at 797; *see also* R&R at 38 ("[T]he 'client confidence' element is key to deciding whether antitrust compliance documents are privileged.").

It is therefore hardly surprising that many of Defendants' cases confirm that "legal advice" must be linked in some way to client confidences in order to be privileged. For example, in *Wier*, the court took care to note that the defendant's employees had collected and transmitted confidential information to counsel to assist in the rendering of legal advice. 2021 WL 1517975, at *7.[25] Similarly, in *In re Brand Name Prescription Drugs Antitrust Litigation*, the court repeatedly linked its conclusion that documents were privileged to the fact that the documents' legal advice relied on client confidences. No. 94 C 897, 1996 WL 5180, at *2 (N.D. Ill. Jan. 3, 1996).[26] Finally, in *Upjohn Co. v. United States*, the Supreme Court noted that the legal advice was premised on information provided by employees, and that "the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice" and were aware that their communications with counsel were '"highly confidential' when made." 449 U.S. 383, 394-95 (1981). That is, the Supreme Court's holding in *Upjohn* turned on the fact that the legal advice was being based on and informed by confidential information from

---

[25] Defendants incorrectly describe this document as involving the provision of legal advice. *See* Obj. at 8. To the contrary, this opinion concerns the transmittal of confidential information from the client to counsel.

[26] For example, the following findings appear in this opinion: "[I]t provides legal advice and reveals client confidences" (Log No. 420); "it contains a summary of confidential legal advice concerning a proposed business program and implicitly reveals client confidences" (Log No. 433); and "provides confidential legal advice and implicitly reveals client confidences" (Log No. 1218).

the client. Several of Defendants' other cases similarly support Plaintiffs' position.[27]

Defendants' other cases are distinguishable because they do not actually address whether "legal advice" must be linked to client confidences in order for privilege to attach.[28] They are distinguishable on additional bases as well. For example, Defendants cite cases where the assertion of privilege was not challenged[29]; where the court evaluated whether privilege log entries were sufficient (as opposed to conducting an *in camera* review)[30]; and where the documents involved

---

27 *See, e.g.*, *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 253 (N.D. Ill. 2000) ("The Court recognizes that other courts have held form letters containing legal advice to be non-privileged. . . . However, these documents are distinguishable from those in *Ami/Rec–Pro* in that they ***contain confidential information*** that is completed on the form by the client and communicated back to the attorney.") (emphasis added); *Weeks v. Samsung Heavy Indus., Ltd.*, No. 93 C 4899, 1996 WL 288511 (N.D. Ill. May 30, 1996) (finding that a law firm's billing statements that had been inadvertently produced in discovery were confidential and should be returned to the producing parties); *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565 (7th Cir. 1990) (revealing the identity of an individual who paid attorney fees would convey a "confidential communication" and was therefore privileged information in "special circumstance[s]"); *Matter of Witnesses Before The Special Mar. 1980 Grand Jury*, 729 F.2d 489, 495 (7th Cir. 1984) (discussing a grand jury subpoena seeking fee information and holding that "[b]ecause the attorney-client privilege protects only confidential communications, we decline the appellees' and the district court's invitation to adopt a rule protecting any fee information which might incriminate the client."); *United States v. Leonard-Allen*, 739 F.3d 948 (7th Cir. 2013) (holding that the district court did not err in permitting a client intake form to be introduced at trial, as it did not reflect "either the lawyer's or the client's thinking" and "reveal[ed] nothing confidential.").

28 *See, e.g.*, *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 405 (7th Cir. 2018) (discussing whether the inadvertent production of a legal memorandum offering bespoke legal advice regarding the termination of an employee constitutes waiver); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176 (N.D. Ill. 2018) (discussing whether deal documents with input from attorneys and financial advisors can contain legal advice); *Doe v. Johnson*, No. 15 C 1387, 2015 WL 12834771, at *2 (N.D. Ill. Nov. 23, 2015); *Matter of Feldberg*, 862 F.2d 622 (7th Cir. 1988) (assessing whether questions asked in a grand jury investigation would invade the attorney-client privilege); *United States v. Weger*, 709 F.2d 1151 (7th Cir. 1983) (wholly inapt situation where a client had fraudulently signed a title opinion using a law firm's letterhead, prompting the law firm to introduce letters between the law firm and client for the purpose of comparing type style; the letter was not introduced for the substance contained within it, thus no invasion of attorney-client privilege).

29 *See* *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (noting that the parties did not dispute that the memo was privileged, but rather, that the question was whether the crime-fraud exception applied); *Hollister Inc. v. E. R. Squibb & Sons, Inc.*, No. 84 C 1987, 1988 WL 129988 (N.D. Ill. Dec. 1, 1988) (discussing whether attorney waived a client's privilege where the attorney admits to refreshing his recollection using a privileged document for his own deposition); *United States v. Rainone*, 32 F.3d 1203 (7th Cir. 1994) (assessing whether the attorney-client privilege should yield for other privileges, such as the Sixth Amendment right of confrontation).

30 *See* *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *5

obviously non-privileged communications.[31] Indeed, Defendants point this Court to ***no cases*** that even implicitly question, let alone explicitly disavow, the Seventh Circuit's holding in *Rehling*.

*Rehling* thus remains the law of this Circuit, *see Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002) ("One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)."), and Judge Levie correctly applied it when he concluded that "legal advice" must be tethered to client confidences in order for privilege to attach. *See* R&R at 23-24 (concluding that while "[s]ome courts in other jurisdictions and legal commentators" support the "expansion of the scope of the attorney-client privilege" to "legal advice alone, which does not reveal client confidences," as Defendants argue, that "[a]ny expansion of the privilege untethered to a client confidence appears to lack acceptance under Supreme Court and Seventh Circuit law . . . ." (footnotes omitted)). Defendants have provided no basis to reverse this conclusion.

It follows that Defendants' professed concern that the Special Master's application of Seventh Circuit and Supreme Court precedent is somehow new and will "stifle" communications between attorneys and clients, Obj. at 13-16, is specious, at best. As set forth above, Judge Levie applied the law as it has been applied in this District since at least 1980, *see Ohio-Sealy*, 90 F.R.D. at 28, and by the Seventh Circuit since at least 2000, *see Rehling*, 207 F.3d at 1019. Thus, it is *Defendants* who seek to disrupt more than four decades of precedent with their novel and sweeping conception of privilege, not Plaintiffs.[32]

---

(N.D. Ill. July 14, 2020) (evaluating assertions of privilege as reflected on the defendant's privilege log).

[31] *See United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) (reaching the common sense conclusion that the fact that an attorney relayed to his client a conversation he had with an IRS agent in which the agent informed the attorney that his client was likely to be charged with a tax crime was neither legal advice nor connected to any client confidences).

[32] Defendants appear to concede as much, claiming that only a handful of cases support their argument. *See* Obj. at 12. As shown above, none of the cases relied upon by Defendants actually supports

This Court should reject Defendants' attempt to broaden a privilege which the courts have consistently held is entitled to narrow effect.[33]

**b. In the alternative, Judge Levie determined that almost all of these documents did not convey legal advice.**

Even if this Court were to agree with Defendants and reject more than four decades of Circuit and District precedent, it should nonetheless affirm the R&R for the simple reason that Judge Levie ***also*** determined that the vast majority of the documents at issue did not reflect legal advice, whether tethered to client confidences or not. Specifically, Judge Levie concluded that 250 of the 263 documents (95%) he ordered to be produced in full did not reflect legal advice.[34] For example, Judge Levie specifically concluded, *inter alia*, that the documents at issue contained "no

---

their argument, and indeed, some affirmatively undercut it. In any event, it is Defendants who are attempting to disrupt decades of precedent, not Plaintiffs, and under Defendants' own line of reasoning, their argument must therefore be rejected. *See* Obj. at 15; *see also* *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 183 (2011) ("We have said that for the attorney-client privilege to be effective, it must be predictable") (citing *Jaffee v. Redmond*, 518 U.S. 1, 18 (1996); *Upjohn*, 449 U.S. at 393).

[33] Defendants claim that Plaintiffs did not argue in their briefing that legal advice must be connected to client confidences in order to give rise to privilege. *See* Obj. at 7, n.6. Not so. As Judge Levie correctly pointed out in the R&R, "Plaintiffs specify they seek reference or instructional materials that do not contain client confidences or legal advice, and thus are not privileged." R&R at 3. For example, Plaintiffs specifically pointed to *Sulfuric Acid I*, 235 F.R.D. at 431, where the court found that the antitrust policies at issue there "did not reveal client confidences, only articulated the company's policies, and provided an overview of antitrust law in various jurisdictions." *See* Discovery Mot. No. 5 at 10 (ECF No. 688). Regardless, Seventh Circuit precedent establishes that neither Judge Levie nor this Court is confined to arguments and caselaw contained in the parties' briefing. *Hampton v. Wyant*, 296 F.3d 560, 565 (7th Cir. 2002) ("Courts frequently decide cases on lines of reasoning that can't be found in the briefs. There is no federal entitlement to have a case decided strictly on the basis of precedent cited to the tribunal.") (citing *Elder v. Holloway*, 510 U.S. 510 (1994)).

[34] The thirteen exceptions are TEGNA Privilege Log Nos. 212, 226, 227, 435, 464, 466, 508, 511, 512, 514, 615, 616, and 632. For these entries, Judge Levie noted only that the documents did not contain client confidences or "legal advice reflecting [or based on a] client confidence[]." *See, e.g.*, R&R, Ex. 5 (TEGNA) at p. 165. To the extent the Court is inclined to agree with Defendants on this issue (it should not), the most the Court should do is remand to Judge Levie as to these thirteen documents to determine whether they in fact contain any "legal advice" untethered from client confidences. Because, as noted herein, Judge Levie determined the other documents had no legal advice, whether tethered to client confidences or not, there is no need for this Court or Judge Levie to take any further action as to those documents.

client confidences, ***no legal advice***, and no legal advice reflecting client confidence";[35] that the documents contained "***no legal advice*** and no legal advice reflecting client confidences";[36] that the documents contained "***no legal advice of any kind***";[37] and that the documents do "***not contain any legal advice*** whether reflecting client confidences or not."[38] Indeed, Defendants appear to concede as much, admitting that Judge Levie concluded "that most of Defendants' documents do not contain legal advice." *See* Obj. at 16.

Judge Levie's conclusion that nearly all of Defendants' documents contain no legal advice, whether linked to client confidences or not, is hardly surprising. In *Sulfuric Acid I*, the court reached virtually the same conclusion with regard to the antitrust compliance documents at issue there, writing:

The discoverability in antitrust cases of internal compliance manuals has not been

---

35 R&R, Ex. 1 (Nexstar) at Log No. 476; Ex. 2 (Raycom) at Log Nos. 349 743, 744, 434, 222, 727, 728, 236, and 237; Ex. 3 (Scripps) at Log Nos. 41, 43, 44, 121, 122, 149, 156; Ex. 5 (TEGNA) at Log Nos. 223, 369, 481, 492, 557, 621, and 641. *See also id.*, Ex. 1 (Nexstar) at Log No. 7588 ("Nexstar has not identified any client confidences in these documents, nor any requests for legal advice, or any legal advice."); Log No. 7260 ("The email does not contain a request for legal advice, disclosure of a client confidence, provision of legal advice or provision of legal advice reflecting client confidences."); Log No. 6191 ("[T]he document contains no client confidences of Tribune Media. It also contains no legal advice generally or legal advice reflecting client confidences."); Ex. 4 (Sinclair) at Log No. 20810 ("[T]hese emails provide general information about the laws but do not contain client confidences, legal advice, or legal advice that reveals client confidences.").

36 R&R, Ex. 2 (Raycom) at Log Nos. 729 and 474. *See also id.*, Ex. 2 (Raycom) at Log No. 450 ("[T]hey contain no legal advice or legal advice reflecting client confidences.").

37 R&R, Ex. 3 (Scripps) at Log No. 54; Ex. 4 (Sinclair) at Log No. 11089. *See also id.*, Ex. 4 (Sinclair) at Log No. 24968 ("The Guidelines neither contain nor reveal any client confidences nor do they indicate it was prepared in response to a request for legal advice. Furthermore, the Guidelines do not provide legal advice of any sort."); Ex. 2 (Raycom) at Log No. 266 ("This transmittal email contains no client confidences, nor any legal advice.").

38 R&R, Ex. 3 (Scripps) at Log No. 42. *See also id.*, Ex. 1 (Nexstar) at Log No. 4702 ("Even were the project Mr. Reilly mentions a client confidence, it is not a client confidence disclosed to an attorney when seeking legal advice."); Ex. 2 (Raycom) at 436 ("This policy information does not contain any client confidences or legal advice, let alone legal advice reflecting client confidences."); Ex. 5 (TEGNA) at Log No. 634 (Concluding that "[t]he document also contains no client confidences, no legal advice, let alone legal advice reflecting client confidences."); Log No. 228 ("[C]ontrary to TEGNA's description, the email contains no legal advice."); Log No. 271 ("Mr. Beall's email contains no client confidences, no request for legal advice or legal advice reflecting client confidences.").

> the subject of much judicial attention. One reason may be that they are often merely a compendium of policies and rules, which by definition ***neither reveal client confidences nor constitute the giving of legal advice*** and thus are outside the scope of the attorney-client privilege, whether viewed broadly or narrowly.

235 F.R.D. at 430 (emphasis added).

In short, because Judge Levie has reviewed virtually all documents *in camera* and determined that they contain neither legal advice ***nor*** client confidences, his conclusions must be upheld regardless of whether the Court accepts Defendants' novel, unfounded theory of privilege.

### 2. *Defendants' Assertion that Documents Are Privileged Simply Because They Involve In-House Counsel is Contrary to the Law.*

In reviewing each document, Judge Levie properly assessed whether the primary purpose of communication was legal in nature. *See* R&R at 27-28 (describing the legal standard for assessing communications with in-house counsel). He recognized that a privilege analysis of communication with in-house counsel is more nuanced because the communication often serves a dual purpose. *Id.* at 27. Nonetheless, "[t]he party claiming privilege must also establish the client sought 'legal advice . . . from a professional legal adviser in his capacity as such.'" *Id.* Defendants' recitation of the case law involving communication with in-house counsel does not establish a different standard. *See, e.g.*, *Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *2 (N.D. Ill. Feb. 22, 2007) ("The attorney-client privilege applies only where legal, not business, advice is sought.").[39]

Defendants did not meet their burden of showing that the documents involving in-house counsel reviewed by Judge Levie were privileged. Rather, Judge Levie's *in camera* review

[39] *See also* *Washtenaw Cnty.*, 2020 WL 3977944, at *2 (recognizing the challenge of assessing the privilege of communications with in-house counsel and applying the standard that "the legal advice must predominate within that communication"); *Crabtree*, 2017 WL 4740662, at *2 (concluding defendants properly withheld documents containing "discussions about the legal implications of certain business decisions").

demonstrated that, for these documents, in-house counsel were involved—but not providing legal advice. For example, Judge Levie found that the Tribune Antitrust Memo from Tribune's in-house counsel, which is disputed by Nexstar, is a series of "transmittal emails," with the attached document "contain[ing] no client confidences and no legal advice, and no legal advice reflecting client confidences," with no affidavit supporting privilege. R&R, Ex. 1 (Nexstar) at pp. 62-65. Similarly, Judge Levie found that emails between Scripps' in-house counsel and employees "designed to alert employees that their job roles may be subject to antitrust laws" contained "no client confidences, no requests for legal advice, and no legal advice of any kind," because they described a process for employees to undertake, rather than actual legal advice. *Id.*, Ex. 3 (Scripps) at pp. 122–24. And again, Judge Levie found that email chains sent among TEGNA in-house counsel, and its sales director largely did "not contain client confidences, legal advice or legal advice reflecting client confidences." *Id.*, Ex. 5 (TEGNA) at p. 146.

These examples show that, as required by law, Judge Levie assessed whether these documents contained legal advice and found that they did not—regardless of in-house counsel's involvement in preparing the documents. *See, e.g.*, *Acosta v. Target Corp.*, 281 F.R.D. 314, 324 (N.D. Ill. 2012) (finding that markings by in-house counsel were not legal advice); *United States ex rel. McGee v. IBM Corp.*, No. 11 C 3482, 2017 WL 1232616, at *3 (N.D. Ill. Apr. 4, 2017) (and noting that much of in-house counsel's work was business, rather than legal, advice). There is no basis to conclude that Judge Levie abused his discretion—or committed clear error—in finding that the documents involving in-house counsel are not privileged.

#### ***3. Defendants Cannot Properly Shield Statements of Company Policy Simply Because They Contain "Instructions, Overviews, or Hypotheticals" From Counsel.***

Judge Levie correctly held that "the test [for compliance documents] is not whether an attorney authored the compliance manual, but 'whether the communication rests on confidential

information obtained from the client or would reveal the substance of a confidential communication by the client.'" R&R at 36–37 (quoting *Sulfuric Acid I*, 235 F.R.D. at 415); *accord Rehling*, 207 F.3d at 1019. Under this test, used repeatedly in this District, an antitrust manual that does not actually contain or rely on client confidences is not privileged, whether or not it contains hypotheticals. R&R at 39 (citing *Sulfuric Acid I*, 235 F.R.D. at 430); *see also Domestic Drywall*, 2014 WL 5090032, at *4 (finding compliance manual not privileged as "it is more akin to a reference or instructional guide"). Hypotheticals are not privileged when the attorney "alter[s] the information" or when they are based upon "accumulated knowledge and understanding of antitrust law in the [company] business" because client confidences are not revealed in either case. *Sulfuric Acid II*, 432 F. Supp. 2d at 797.

Defendants object to Judge Levie's findings that the antitrust policies are not privileged, arguing that they "are classic examples of counsel . . . providing legal advice and instructions on how to comply with various laws." Obj. at 18. But in providing snippets of quotes from numerous cases to bolster their argument, Defendants ignore the context of those cases, where each court actually looked at the documents to assess whether they revealed client confidences. *See Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 165 (N.D. Ill. 2020) (reciting that "legal advice does include advice regarding compliance with law" but finding no such communications in the withheld documents (cleaned up)); *Schlicksup v. Caterpillar, Inc.*, No. 09-CV-1208, 2011 WL 11737159, at *5-6 (C.D. Ill. Aug. 19, 2011) (concluding that the withheld documents do not contain any "advice on complying with applicable laws" by attorneys); *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 2644243 (N.D. Ill. June 27, 2019) (finding privileged a series of emails—not a presentation or manual—providing legal advice to

certain managers and executives).[40]

Likewise, Defendants' focus on two purportedly analogous cases, Obj. at 19-20, does not suggest that an antitrust manual without client confidence can be privileged. The court in *In re Plasma-Derivative Protein Therapies Antitrust Litigation* held that a PowerPoint presentation covering topics including antitrust compliance *and litigation defense* contained privileged material but that such privilege was waived by the presence of a third party which "expressly negates confidentiality." Nos. 09 C 7666, 11 C 1468, 2013 WL 791432, *4 (N.D. Ill. Mar. 4, 2013). In a second case, Defendants highlight just two of the several documents reviewed by the court. Obj. at 20 (citing *Brand Name*, 1996 WL 5180, at *3). The first document involved a "presentation describing the application of the antitrust laws to specific aspects" of the company business, where the presentation "provide[d] legal advice and reveal[ed] client confidences." *Brand Name*, 1996 WL 5180, at *2. The second document found privileged was a draft memorandum that "provide[d] confidential legal advice on a proposed voluntary price restraint agreement based on counsel's knowledge of [the company's] business activities." *Id.* at *5. Both times, that court considered whether the document contained confidential information—based on specific, articulated facts about an actual business situation—rather than simple legal instruction. *Id.* at *3, 5.

Judge Levie examined each of Defendants' compliance documents to determine whether the hypotheticals and other information contained or rested on confidential information as guided by case law. In the documents that Defendants object to, he found that there was no such

---

40 Defendants also misquote a Northern District of California case to suggest that attorney-client privilege may apply where the communication is initiated by counsel. Obj. at 19. The court actually stated that "self-initiated attorney communications" may be privileged where they are "intended to keep the client posted on legal developments and implications, ***including implications of client activity noticed by the attorney*** but with regard to which no written request for advice from the client has been found." *See In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI(EMC), 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006), *as clarified on reconsideration*, No. C-03-3709 SI (EMC), 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006) (reviewing the documents to determine if they demonstrate a request for legal advice).

information. *See, e.g.*, R&R, Ex. 1 (Nexstar) at pp. 63-67. Defendants have neither identified the confidential information in the compliance documents, nor presented any case law suggesting that compliance documents can be privileged without containing or resting on confidential information.

## V. CONCLUSION

For the foregoing reasons, the Court should reject Defendants' arguments and **AFFIRM** Judge Levie's conclusions in the R&R and order the de-designated documents to be produced by a date certain.

Dated: September 1, 2023

Respectfully submitted,

*/s/ Robert J. Wozniak*

Robert J. Wozniak
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
rwozniak@fklmlaw.com

***Liaison Counsel***

Megan E. Jones
**HAUSFELD LLP**
600 Montgomery St. #3200
San Francisco, CA 94111
(415) 633-1908
(415) 358-4980
mjones@hausfeld.com

Michael D. Hausfeld
Hilary K. Scherrer
Nathaniel C. Giddings
Farhad Mirzadeh
In Kyung "Jane" Shin
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com hscherrer@hausfeld.com

ngiddings@hausfeld.com
fmirzadeh@hausfeld.com
jshin@hausfeld.com

***Lead Counsel***
Meegan Hollywood
**ROBINS KAPLAN LLP**
1325 Avenue of Americas,
Suite 3601 New York, NY
10019
Tel: (212) 980-740
Fax: (212) 980-7499
mhollywood@robinskaplan.com

Kimberly A. Justice
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
Fax: (224) 632-4521
kjustice@fklmlaw.com

***Plaintiffs' Steering Committee***

Cyril V. Smith
**ZUCKERMAN SPAEDER LLP**
100 E Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 949-1145
Fax: (410) 659-0436
csmith@zuckerman.com

Joshua Mathew
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue
New York, NY 10022
Tel: (212) 704-4347
Fax: (212) 704-0256

***Additional Counsel for Plaintiffs***