**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION** *This document applies to all actions.* | Master Docket No. 18-06785 MDL No. 2867 Honorable Virginia M. Kendall |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH DEFENDANTS CBS, FOX, THE COX ENTITIES, AND SHAREBUILDERS**

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 3

   A.   Litigation History ............................................................................................ 3

   B.   Summary of the Settlement Negotiations and Terms ....................................... 4

III. THE SETTLEMENTS SATISFY THE STANDARD FOR FINAL APPROVAL ........ 8

   A.   The Court-Approved Notice Program Satisfies Due Process and Has Been Fully
Implemented ................................................................................................................ 9

   B.   The Settlements Are Fair, Reasonable, and Adequate, and Should Be Granted Final
Approval ...................................................................................................................... 11

      1.   The Settlements Provide a Substantial Recovery to the Settlement Class ................... 14

      2.   The Settlements Eliminate Significant Risk to a Class Facing Complex, Lengthy and
Expensive Litigation ............................................................**Error! Bookmark not defined.**

      3.   No Class Member Has Objected to Any of the Settlements ........ **Error! Bookmark not
defined.**

      4.   The Settlements Resulted from Hard-Fought Arm's-Length Negotiations and
Experienced Counsel Recommend Approval ....................................................................... 17

      5.   The Stage of the Proceedings and Amount of Discovery Supports Final Approval...... 18

IV.  CERTIFICATION OF SETTLMENT CLASSES IS APPROPRIATE......................... 19

V.   CONCLUSION ....................................................................................................... 20

## TABLE OF AUTHORITIES

Cases

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ............................................................................. 13

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 ........................................................................................................ 19

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................... 8, 9, 12

*Bynum v. Dist. of Columbia*,
   412 F. Supp. 2d 73 (D.D.C. 2006) ..................................................................... 17

*City of Greenville v. Syngenta Crop Prot., Inc.*,
   2012 WL 1948153 (S.D. Ill. May 30, 2012)...................................................... 10

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................. 9

*Depoister v. Mary M. Holloway Found.*,
   36 F.3d 582 (7th Cir. 1994) ............................................................................... 12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ............................................................................... 8

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ............................................................................... 9

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ............................................................................. 18

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ......................................................................... 19

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ................................................................. 13, 17

*Heekin v. Anthem, Inc.*,
   2012 WL 5472087 (S.D. Ind. Nov. 9, 2012)..................................................... 11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ......................................................................... 10

*In re Broiler Chicken Antitrust Litig.*,
   No. 1:16-cv-08637, ECF No. 5396 (N.D. Ill. Jan. 27, 2022)............................ 12

*In re Corrugated Container Antitrust Litig.*,
   1981 WL 2093 (S.D. Tex. June 22, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981)................ 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ........................................................ 17

*In re Domestic Airline Travel Antitrust Litig.*,
   378 F. Supp. 3d 10 (D.D.C. 2019) ........................................................................ 15

*In re Lawnmower Engineer Horsepower Mktg. & Sales Practices Litig.*,
   733 F. Supp. 2d 997 (E.D. Wis. 2010) ............................................................ 15, 16

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) .................................................................... 17

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................... 16

*In re Processed Egg. Prod. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012) ........................................................................... 15

*In re Turkey Antitrust Litig.*,
   No. 19-cv-08318, ECF No. 406 (N.D. Ill. Feb. 3, 2022) ........................................ 12

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ........................................................................... passim

*Kleen Prod. LLC v. Int'l Paper Co.*,
   2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) .......................................................... 18

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014) ......................................................... 16

*Lucas v. Vee Pak, Inc.*,
   2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ..................................................... 11, 15

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ........................................................................... 10

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
   834 F.2d 677 (7th Cir. 1987) ............................................................................... 12

*Pallas v. Pac. Bell*,
   1999 WL 1209495 (N.D. Cal. July 13, 1999) ........................................................ 17

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
   281 F.3d 629 (7th Cir. 2002) ............................................................................... 14

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ............................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................... 17

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................ 17, 18

*Summers v. UAL Corp. ESOP Comm.*,
  2005 WL 3159450 (N.D. Ill. Nov. 22, 2005).................................................... 11

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) .......................................................................................... 14

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) ............................................................................ 12

*United States v. Sinclair Broadcast Group, Inc. et al.*
  Case No. 18-cv-2609 (D.D.C) ............................................................................ 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................... 16

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)................................................................................ 10

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ...................................................................... 13, 14

## Other Authorities

4 Newberg and Rubenstein on Class Actions,
  § 13:43 Presumptions governing approval process—Generally (6th ed.)............................ 13, 17

4 Newberg and Rubenstein on Class Actions,
  §§ 13:39, *et seq*. Final Judicial Approval of Proposed Class Action Settlements (6th ed.)......... 9

## Rules

Fed. R. Civ. P. 23 .................................................................................. 3, 9, 10, 12

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 9, 10

Fed. R. Civ. P. 23(e) .......................................................................................... 9

Fed. R. Civ. P. 23(e)(1)................................................................................. 9, 10

Fed. R. Civ. P. 23(e)(1)................................................................................. 9, 10

Plaintiffs,[1] by and through their undersigned counsel, respectfully move this Court to enter final approval of the settlements with the Settling Defendants[2] CBS, Fox, the Cox Entities and ShareBuilders (collectively, "Settlements" or "Settlement Agreements").[3] The bases supporting Plaintiffs' motion are set forth below and in the accompanying Second Declaration of Megan E. Jones ("Second Jones Decl.") and Declaration of Gina M. Intrepido-Bowden in Support of Plaintiffs' Motion For Final Approval Of Settlements with Defendants Cbs, Fox, the Cox Entities, and Sharebuilders ("Second JND Decl.").

## I.    INTRODUCTION

The Settlements collectively provide $48,000,000 ("Settlement Amount") in relief to the Settlement Class Members[4] while eliminating the risk, uncertainty, and expense of continuing

---

[1]    "Plaintiffs" refers to One Source Heating & Cooling, LLC, ThoughtWorx, Inc. d/b/a MCM Services Group, Hunt Adkins, Inc., and Fish Furniture.

[2]    "Settling Defendants" refers to (1) CBS Corp. n/k/a Paramount Global ("CBS"); (2) Fox Corp. ("Fox"); (3) Cox Media Group, LLC ("CMG LLC"), Cox Enterprises, Inc. ("CEI"), CMG Media Corporation (f/k/a Terrier Media Buyer, Inc. and d/b/a Cox Media Group) ("CMG"), and Cox Reps, Inc. ("CoxReps") (CoxReps, CMG LLC, CEI, and CMG are collectively referred to herein as the "Cox Entities"); and (4) ShareBuilders, Inc. ("ShareBuilders").

[3]     The Settlement Agreements are attached as Exhibit 1 ("CBS Settlement"), Exhibit 2 ("Fox Settlement"), Exhibit 3 ("Cox Entities Settlement"), and Exhibit 4 ("ShareBuilders Settlement") to the Declaration of Megan E. Jones ("First Jones Decl.") submitted in support of Plaintiffs' Motion for Preliminary Approval. ECF No. 982-1.

[4]    Each of the four Settlements contains the same class definition:

All persons and entities in the United States who purchased broadcast television spot advertising directly from one or more Broadcaster Defendants in a designated market area ("DMA") within which two or more of the Broadcaster Defendants sold broadcast television spot advertisements on broadcast television stations, including anyone who directly paid one or more Defendants for all or a portion of the cost of such broadcast television spot advertisements from January 1, 2014 to and including December 31, 2018 (the "Settlement Class Period"). Excluded from the settlement Class are Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, family members, or co-conspirators; the court, court staff, defense counsel, all respective immediate family members of these excluded entities, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

As used throughout this document, "Settlement Classes" refers to the four classes as defined above. Unless otherwise stated, capitalized defined terms used herein have the same meanings ascribed in the Settlement

litigation, and preserving Plaintiffs' right to obtain additional settlements or judgments against the numerous remaining Non-Settling Defendants.[5] Additionally, all Settling Defendants will provide meaningful cooperation, which will assist Plaintiffs in the prosecution of their claims against the Non-Settling Defendants.[6]

In granting preliminary approval of these Settlements, the Court found they fell within the range of reasonableness and ordered notice to be provided to the Settlement Class Members. *See* Preliminary Approval Order at 2 (ECF No. 991; hereinafter, the "Preliminary Approval Order"). Since then, Settlement Class Counsel[7] and JND Legal Administration ("JND"), the Court-appointed claims administrator,[8] have executed the Notice Plan in accordance with the Court's Preliminary Approval Order and the subsequently agreed-to modifications.[9] *See* Preliminary Approval Order at 25; *see also* Decl. of Gina M. Intrepido-Bowden (ECF No. 988-1; hereinafter, the "First JND Decl."). This process has confirmed that the Settlements are fair, reasonable, and

---

Agreements.

[5]     Under the Settlements, Fox has agreed to $6,000,000 (six million dollars), CBS has agreed to pay $5,000,000 (five million dollars) and the Cox Entities have agreed to pay $37,000,000 (thirty-seven million dollars), collectively providing $48,000,000 (forty-eight million dollars) to the Settlement Classes before deducting any Court-approved fees and expenses. *See* First Jones Decl., ECF No. 982-1, ¶¶ 21, 23, 25.

[6]     "Non-Settling Defendants" refers to Raycom Media Inc. ("Raycom"), Meredith Corporation ("Meredith"), Griffin Communications, LLC ("Griffin"), Nexstar Media Group, Inc. ("Nexstar"), Dreamcatcher Broadcasting, LLC ("Dreamcatcher"), Sinclair Broadcasting Group, Inc. ("Sinclair"), Tribune Broadcasting Company, LLC ("Tribune Broadcasting") and Tribune Media Company ("Tribune Media") (collectively, "Tribune," and with Dreamcatcher and Nexstar, "Nexstar Group"), The E.W. Scripps Company ("Scripps"), and TEGNA Inc. ("TEGNA").

[7]     After serving as Interim Lead Counsel (ECF Nos. 170, 356), this Court appointed Megan Jones of Hausfeld LLP as Settlement Class Counsel in the Preliminary Approval Order.

[8]     Order Appointing Settlement Administrator, Approving Settlement Notice Program and Compelling Production of Customer Contact Information at 1 (ECF NO. 994; hereinafter the "Settlement Administration Order").

[9]     Pursuant to Non-Settling Defendants Motion to Reconsider, Vacate, and/or Stay Orders Regarding Preliminary Approval of Settlement and Notice (ECF No. 1000), the Court ordered the parties to meet and confer regarding modest changes to the Notice language (ECF No. 1010). Such agreed-to modifications were incorporated into the Notice. *See* Second JND Decl., ¶¶ 4-5.

adequate, and should be granted final approval by the Court. The reaction of the Settlement Class Members has been uniformly positive, with no member of the Settlement Class objecting to the Settlements as of the date of this filing, and only one member of the class requesting exclusion from the Settlement Class as of the filing of this motion.[10] *See* Second JND Decl., ¶¶ 30-31.

Plaintiffs therefore respectfully request that the Court grant final approval to the Settlements pursuant to Federal Rule of Civil Procedure 23(e); approve Plaintiffs' plan of allocation, which provides a fair and reasonable method of determining each class member's allocated share based upon each class member's purchases; and enter a Final Judgment and Order terminating the litigation between Class Members and the Settling Defendants.

## II.    BACKGROUND

### A.    <u>Litigation History</u>

The extensive history of this litigation was recited at length in Plaintiffs' Motion for Preliminary Approval of Settlements with Defendants CBS, Fox, the Cox Entities, and ShareBuilders (ECF No. 982, hereinafter the "Preliminary Approval Motion") and Motion for Interim Payment of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards (ECF No. 1080; hereinafter, the "Fee & Expense Motion"). Plaintiffs incorporate by reference the litigation history set forth in those briefs as if set forth fully herein.

Since the filing of the Preliminary Approval Motion, Plaintiffs have continued to vigorously prosecute this lawsuit, filing additional motions to compel, taking depositions, and reviewing documents. Second Jones Decl. ¶¶ 4-6. In addition, the Special Master, appointed to review challenged assertions of privilege, published his Report and Recommendation No. 1 regarding extensive claims of privilege over antitrust policies and manuals. ECF No. 1030. Based

---

[10]    Per the Notice schedule, Settlement Class Members have until October 26, 2023 to object or request exclusion.

on his *in camera* review of the withheld documents, he found most documents not privileged and recommended that the Court order their production. *Id.* at 55 & Exs. 1-6. Defendants filed an omnibus objection to the Report and Recommendation No. 1 (ECF No. 1030) to which Plaintiffs responded, pointing out that the parties provided the Special Master with all of the privilege logs, briefing, and well over 100 cases for his review. *See* ECF No. 1060. Finally, Plaintiffs have been working with Settling Defendants to ensure they provided the agreed upon cooperation and will continue to work with them to maximize the benefit for the Settlement Classes. *See* Second Jones Decl., ¶ 8. Plaintiffs have confirmed that each of the Settling Defendants timely fulfilled their Class Action Fairness Act ("CAFA") reporting obligations. *Id.*, ¶ 3.

### B.     Summary of the Settlement Negotiations and Terms

The Settlement Agreements: (1) are the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) were entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, are fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreements, Class Counsel believes the Settlement Agreements are in the best interests of the Settlement Class Members and should be approved by the Court. *See* Preliminary Approval Order, ECF No. 991 at 9.

#### 1.     The CBS, Fox, and Cox Entities Settlements

The Settlement Agreements with CBS, Fox, and Cox Entities were reached through confidential, protracted, and arm's-length settlement negotiations. *See* First Jones Decl., ECF No. 982-1, ¶¶ 18-25. The Settlements were the product of a negotiation process that commenced in the Summer of 2021 and in January of 2022 and included, at times, the assistance of skilled mediators. *Id.* Moreover, as this litigation has been pending for over five years, the parties have had ample opportunity to assess the merits of Plaintiffs' claims and CBS's, Fox's, and the Cox Entities'

defenses, through investigation, discovery, research, settlement discussions and contested motion practice. Plaintiffs were then able to balance the value of Settlement Class Members' claims against the substantial risks and expenses of continuing litigation. In 2021 and in 2022, the parties reached an agreement in principle to settle. *Id.*

The parties ultimately executed these Settlement Agreements in May of 2023. *See* First Jones Decl., ECF No. 982-1, Exs. 1-3. These three Settlements' core terms and the value to the Settlement Classes are substantially similar to each other, and the Settlement Amount reflects the size and other factors affecting these Settling Defendants. These Settlements provide a total of $48,000,000 in recovery to the Settlement Classes. *Id.*, ¶¶ 21, 23, 25. In addition to monetary relief, Defendants CBS, Fox and the Cox Entities agreed to provide Plaintiffs and the proposed Class with valuable cooperation in the continued prosecution of their claims against the Non-Settling Defendants.[11]

### 2.    *The ShareBuilders Settlement*

Plaintiffs also reached a Settlement Agreement with ShareBuilders through a confidential, arm's-length settlement negotiation. *See* First Jones Decl., ECF No. 982-1, ¶ 26. This Settlement

---

[11]    This includes Fox's and CBS's providing Plaintiffs with the following: (1) all documents previously produced by CBS and Fox to the DOJ in connection with *United States v. Sinclair Broadcast Grp., Inc. et al.*, Case No. 18-cv-2609 (D.D.C. 2018); (2) documents responsive to Plaintiffs' First Set of Request for Documents, as limited by the parties' agreements regarding scope, custodians, search terms and privilege; (3) structured data for its stations for the time period from January 1, 2013 through December 31, 2020; (4) an attorney proffer regarding the broadcast television spot advertising industry and facts reasonably known to CBS and Fox that are relevant to the claims asserted in the Action; and (5) declarations, certifications, or affidavits regarding the authenticity and admissibility of documents. This also includes the Cox Entities providing Plaintiffs with: (1) documents responsive to Plaintiffs' Rule 45 subpoena served on CoxReps; (2) assistance with respect to questions about the transactional data that CMG produced; (3) attorney proffers related to Cox Reps and CMG, including a description of facts reasonably known to CoxReps and CMG that are relevant to the claims asserted in the Action; (4) declarations, certifications, or affidavits, regarding the authenticity and admissibility of documents; (5) witnesses for one 30(b)(6) deposition each of CMG and CoxReps; and (6) up to five witnesses at the trial against the remaining Defendants. *See* Preliminary Approval Order, ECF No. 991 at 12-15.

was the product of a negotiation process that commenced prior to the filing of Plaintiffs' Third Amended Complaint, which added ShareBuilders as a Defendant. *See* Preliminary Approval Order, ECF No. 991 at 16. As this litigation has been pending for over five years (one and half years against ShareBuilders), the parties have had sufficient opportunity to assess the merits of Plaintiffs' claims and ShareBuilder's defenses, through investigation, discovery, research, settlement discussions and contested motion practice. Following a mediation session with an experienced mediator, the parties reached an agreement in principle to settle for cooperation only. *See* First Jones Decl., ECF No. 982-1, ¶ 26.[12]

### 3. The Release

In exchange for the settlement payments and cooperation, Plaintiffs agreed to release the Settling Defendants from all claims from any members of the Settling Classes who do not opt-out concerning the purchase of Broadcast Television Spot Advertisements based in whole or in part on the facts, occurrences, transactions, or matters alleged in this Action, or which could have been alleged in this Action. *See* Settlement Agreements, First Jones Decl., ECF No. 982-1, Ex. 1 at ¶ 4, Ex. 2 at ¶ 4, Ex. 3 at ¶ 4, Ex. 4 at ¶ 4. The releases do not extend to other Defendants or to unrelated claims that are not the subject matter of the lawsuit.

---

[12] ShareBuilders' valuable cooperation includes providing Plaintiffs' with the following: (1) documents responsive to Plaintiffs' First Set of Requests for Production of Documents served on ShareBuilders; (2) a demonstration of how it uses its algorithm(s) and related electronic code and an ability to inspect the algorithm(s) under mutually agreed terms; (3) assistance with respect to questions about the algorithm(s); (4) attorney proffers regarding the broadcast television spot advertising industry and facts known to ShareBuilders that are relevant to the claims asserted in the Action; (5) up to four witnesses, including Erin Koller and Austin Locke, for witness interviews (the "ShareBuilders Witnesses"); (6) up to four of the ShareBuilders Witnesses for depositions; (7) up to four of the ShareBuilders Witnesses to testify at trial; (8) a 30(b)(6) deposition with up to ten (10) topics; and (9) declarations, certifications, or affidavits regarding the authentication and admissibility of ShareBuilders' documents. *See* First Jones Decl., ECF No. 982-1. The parties ultimately executed the Settlement Agreement on May 10, 2023. *Id.*, Ex. 4.

### 4. *Payment of Taxes, Notice & Administration Costs, Fees, Expenses, and Service Awards*

Pursuant to the terms of the Settlement Agreements, notice costs, claims administration, and processing and distribution may be deducted directly from the Settlement Amount. *See* First Jones Decl., ECF No. 982-1, Ex. 1 at ¶ 9, Ex. 2 at ¶ 9, Ex. 3 at ¶ 9. JND believes that notice and administration of these settlements can be completed for no more than $800,000.00. *See* ECF No. 1080-1, ¶ 76.[13]

Subject to the approval and direction of the Court, the Settlement Amount (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration and distribution of the Settlements; (2) pay taxes and tax-related costs associated with the escrow account for proceeds from the Settlements;[14] (3) make a distribution to Settlement Class Members in accordance with a plan of distribution to be filed in the future; (4) pay attorneys' fees and costs to Settlement Class Counsel; and (5) pay modest service awards to named Plaintiffs for their valuable contribution to achieving this significant result for the Settlement Classes.

### C. The Notice Program

The Notice Plan was implemented by the Court-appointed settlement administrator, JND (*See* Order Appointing Settlement Administrator and Approving Settlement Notice Program, ECF No. 994 at 1). Using customer information obtained from Defendants, JND mailed 88,863 print notices and emailed electronic notices to 25,711 unique Class Members as of the filing of this motion. Second JND Decl., ¶¶ 10-14. A very high percentage of both physical and electronic mail addresses– over 80% in both instances – were delivered and not returned. JND also published notice through the

---

[13]    Any notice and administration costs above $800,000 will only be paid from the Settlement Funds subject to further application by Class Counsel and Court approval.

[14]    Plaintiffs request that the payment of any taxes and notice costs up to $800,000 be made from the settlement funds without further order of the court.

following digital banner advertisements: LinkedIn, the Google Display Network and key industry websites (*e.g.*, AdAge.com, AdWeek.com, MarketingWeek.com, MediaPost.com, TVNewsCheck.com) through the digital trade desk ("OMtd"). *Id.*, ¶¶ 16-17. JND is working with Class Counsel to deliver Reminder Notices via mail and multiple rounds of email to Settlement Class Members who have yet to file a claim or request exclusion from the Settlement. This reminder effort will continue up to the October 26, 2023 claims deadline. *Id.*, ¶ 32.

In addition, JND continues to maintain the case website (viewed over 34,000 times), where Settlement Class Members can view and print important documents and obtain other information related to the litigation. Second JND Decl., ¶¶ 18, 22, 24. The Settlement Notice documents informed Settlement Class Members regarding the attorneys' fees, costs, and service awards that would be sought by the class representatives and Settlement Class Counsel at a later date. *Id.*, ¶ 22.

JND also continues to maintain a toll-free call-in number to answer Class Members' questions. Second JND Decl., ¶¶ 22, 25-26. JND has fielded hundreds of calls to this number from Settlement Class Members or other individuals. *Id.*, ¶ 26. JND will continue to maintain the toll-free number throughout the administration process. *Id.*

The Settlement Administrator reviewed and processed the sole request for exclusion to date. Second JND Decl., ¶ 31. This process included determining the timeliness and validity of the request for exclusion and identifying the entity that fell within the scope of valid request for exclusion. *Id.*

## III. THE SETTLEMENTS SATISFY THE STANDARD FOR FINAL APPROVAL

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985) (noting that there is a "general policy favoring voluntary settlements of

class action disputes"); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements "minimize[] the litigation expenses of the parties and also reduce the strain such litigation imposes upon already scarce judicial resources." *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). However, a class action may be settled only with court approval. Fed. R. Civ. P. 23(e).

Any dismissal, compromise, or settlement of a class action is subject to court approval. Rule 23 jurisprudence has led to a defined procedure and specific criteria for class action settlement approval, namely: certification of a settlement class and preliminary approval of the proposed settlement; dissemination of notice of the settlement to all affected class members, including an opportunity to object to the proposed settlement; and a fairness hearing at which class members may be heard regarding the settlement, and counsel may present evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 Newberg and Rubenstein on Class Actions, §§ 13:39, *et seq.* Final Judicial Approval of Proposed Class Action Settlements (6th ed.). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See id*.

A.     **The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented.**

"[U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [ ] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a

proposed settlement. A settlement notice is a summary, not a complete source, of information. *See, e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001); . The Court-approved Notice Program related to the Settlements has been successfully implemented and Settlement Class Members have been notified of the Settlements. *See generally* Second JND Decl.

For all the reasons set forth in the Court's Preliminary Approval and Notice Order, the Notice Program and forms of notice used here satisfy these requirements. The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1) and informs the Classes about (1) the settlement terms, (2) the right to object and the manner for objecting to the settlement and Class Counsel's request for fees, expenses, and service awards, (3) the general terms of the proposed Plan of Allocation and that Class Members can find more information about the proposed Plan of Allocation on the settlement website, and (4) the requirements regarding the filing of a claim to share in the proceeds of the Settlement Fund in accordance with the Plan of Allocation. Class Members were also advised that they could obtain a Claim Form by contacting the claims administrator or from the website dedicated to this litigation.

### 1. The Approved Notice Program Satisfies Due Process and the Rules

The Notice Program approved by this Court (*see* Preliminary Approval Order, ECF No. 991 at 1, as modified at ECF Nos. 1036 & 1067) was composed of direct notice to Settlement Class Members as well as digital and print publication notice in order to maximize the likelihood of actual notice. This notice program is commonly used in class actions like this one. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (finding sufficient notice sent through monthly bill and text message to current customers, email to former customers, and publication); *City of Greenville v. Syngenta Crop Prot., Inc.*, 2012 WL 1948153, at *4 (S.D.

Ill. May 30, 2012) (finding direct mail and publication sufficient); Fed. R. Civ. P. 23(c)(2)(B). It constitutes valid, due, and sufficient notice to Settlement Class Members, and in many instances is the best notice practicable under the circumstances. Second JND Decl., ¶¶ 34-35.

> **2.    The Content of the Approved Notice Satisfies Due Process and the Rules**

The content of the Court-approved notices complies with the requirements of Rule 23(c)(2)(b). Both the email and long-form notice clearly and concisely explain in plain English the nature of the action and the terms of the Settlements. Second JND Decl., ¶¶ 10, 23. The notices provided a clear description of who is a member of the Settlement Classes and the binding effects of Settlement Class membership. *Id*. They also explain how to exclude oneself from the Settlement Classes, how to object to the Settlements, and how to contact Settlement Class Counsel. *Id*. The notices also explain that they provided only a summary of the Settlements, and that the Settlement Agreements, as well as other important documents related to the litigation, are available online at www.tvadssettlement.com. *See* First JND Decl., ECF No. 988-1, Exs. B, F.

## B.    The Court Should Approve the Plan of Allocation.

The Court preliminarily approved the proposed Plan of Allocation in its Preliminary Approval Order. ECF No. 991.  "As with all aspects of class action settlements, [the court] must ensure that any allocation plan is reasonable and equitable to all class members." *Summers v. UAL Corp. ESOP Comm*., 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005); *Heekin v. Anthem, Inc.*, 2012 WL 5472087, at *3 (S.D. Ind. Nov. 9, 2012) ("As with the approval of a settlement, courts must determine whether the plan for allocation of settlement funds is fair, reasonable, and adequate."). "Federal courts have held that an allocation plan that reimburses class members based on the extent of their injuries is generally reasonable." *Lucas v. Vee Pak, Inc*., 2017 WL 6733688, at *13 (N.D. Ill. Dec. 20, 2017) (collecting cases).  Here, Plaintiffs proposed that the Settlement

Amount would be distributed *pro rata*. Courts generally find that distributing settlement funds on a *pro rata* basis to class members is fair and reasonable. *See e.g.*, *Summers*, 2005 WL 3159450, at *2 ("Given that the settlement funds in the instant action will be disbursed on a *pro rata* basis to all class members, we find that the allocation plan is reasonable[.]").

### C.   The Settlements Are Fair, Reasonable, and Adequate, and Should Be Granted Final Approval.

The standard for final approval of a class action settlement is whether the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23; *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99; *see also* *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, ECF No. 5396 at ¶ 6 (N.D. Ill. Jan. 27, 2022) (finding Settlement Agreements to be fair, reasonable and adequate to the Settlement Class and granting final approval); *In re Turkey Antitrust Litig.*, No. 19-cv-08318, ECF No. 406 at ¶ 6 (N.D. Ill. Feb. 3, 2022) (same). There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See* *Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *See* *Armstrong*, 616 F.2d at 313.

Evaluation and approval of a class action settlement are committed to the sound discretion of the Court. *See* *Isby*, 75 F.3d at 1196-97. The proper focus "is upon 'the general principles governing approval of class action settlements' and not upon the 'substantive law governing the claims asserted in the litigation.'" *Id.* at 1197 (quoting *Armstrong*, 616 F.2d at 315). As part of the Court having wide latitude in making its determination, there is "no requirement that an evidentiary hearing be conducted as a precondition to approving a settlement in a class action suit." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). *See* *Mars Steel Corp. v. Cont'l*

*Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (holding "there is no ironclad requirement of [an evidentiary] hearing").

In evaluating the fairness of a proposed class action settlement, the Seventh Circuit set forth a list of six factors for courts to evaluate in deciding whether a settlement warrants final approval: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) an assessment of the likely complexity, length and expense of the litigation; (3) an evaluation of the amount of opposition to settlement among affected parties; (4) the reaction of the class members; (5) the opinion of competent counsel; and, (6) the stage of the proceedings and the amount of discovery completed at the time of settlement. *See Isby*, 75 F.3d at 1198-99; *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). These factors satisfy the standard for settlements that both allow the Plaintiffs to continue their prosecution against the remaining Defendants and will enable the Plaintiffs to maximize their recovery from the remaining Defendants. As the Seventh Circuit has recognized, "[i]n complex litigation with a plaintiff class, partial settlements often play a vital role in resolving class actions." *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (cleaned up).

In addition, there is an initial presumption that a proposed class action settlement is fair, reasonable, and adequate when the settlement was the result of arm's-length negotiations. *See* 4 Newberg and Rubenstein on Class Actions, § 13:43 Presumptions Governing Approval Process—Generally (6th ed.); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

As demonstrated below, consideration of the relevant factors further supports final approval of the Settlement Agreement.

1.      *The Strength of Plaintiffs' Case Compared to the Terms of the Settlement*

a.      *The Settlements Provide a Substantial Recovery to the Settlement Class*

The Seventh Circuit "deemed the first factor to be the most important" *Isby*, 75 F.3d at 1199 ("The district court properly recognized that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration."). When there are no "suspicious circumstances" surrounding a settlement reached through arms' length negotiations by experienced counsel after the parties have sufficiently explored the merits of the case, a court may approve a settlement without quantifying the value of continued litigation." *Wong*, 773 F.3d at 863-64.

As the Court is aware, the parties have explored the merits of the case by extensive discovery before reaching the Settlement. As noted herein and in Plaintiffs' prior submissions in support of preliminary approval of this Settlement, ECF No. 982, and for attorneys' fees, ECF No. 1080, the Settlement was reached many years into litigation.  Further, the negotiations leading to the Settlement were engaged in at arm's length by highly experienced counsel. No "suspicious circumstances" are present.

The consideration from CBS, Fox, the Cox Entities and ShareBuilders for the Settlements (*i.e.*, "the amount of defendants' settlement offer," *Isby*, 75 F.3d at 1199) is significant—totaling $48,000,000—and provides considerable benefits to the Settlement Classes, including but not limited to meaningful cooperation. The proposed Settlements do not affect the potential full recovery of damages for the Settlement Classes under the antitrust laws; the remaining Defendants will be jointly and severally liable for injuries incurred because of the conspiracy Plaintiffs allege. *See Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output.") (citing

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)).

In addition, the cooperation component of each Settlement will provide Plaintiffs with strategic advantages and increase the value of this case to the absent class members as Plaintiffs continue to litigate against the Non-Settling Defendants. For decades, courts around the country have recognized the benefit of cooperation in settlements in antitrust class actions, including cooperation-only settlements.[15]

### 2. The Complexity, Length and Expense of the Continuing Litigation

When settlement enables the parties to avoid the costs and risks of litigating complex issues, this factor weighs in favor of final approval. *Isby*, 75 F.3d at 1199-1200. While Plaintiffs believe their case is strong, the Settlements eliminate significant risks they would face if the action were to proceed against Settling Defendants, including the complexity, length, and expense of this type of litigation. Indeed, as reflected in the extensive docket, Plaintiffs have been vigorously prosecuting this case for five years and have expended significant effort to defeat motions to dismiss, conduct extensive discovery, engage in motion practice (which remains ongoing), prepare for class certification, and plan and prepare for trial. The Settlements allow Settlement Class Members to recover a significant sum and cooperation, which will undoubtedly allow Plaintiffs to

---

[15] *See, e.g.*, *Vee Pak, Inc.*, 2017 WL 6733688, at *10, *12 ("[T]he [settlement's] cooperation agreement [will] save the plaintiffs from trying to determine the right questions to ask the right people, a challenge plaintiffs often face in civil discovery ….[and] will serve to minimize the costs and challenges the plaintiffs face in their case…."); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, at *16 (S.D. Tex. June 22, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (noting that the cooperating provisions in the settling parties' agreements "constituted a substantial benefit to the class"); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting that the cooperation provisions of the settling parties' agreement weigh in favor of court approval); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) ("[T]he Court recognizes that [settling Defendant's] agreement to cooperate with Plaintiffs throughout the course of pre-trial proceedings and trial is a valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants."); *In re Lawnmower Engineer Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wis. 2010) (recognizing the value of and approving a cooperating only settlement).

maximize future recoveries from the remaining Non-Settling Defendants. Absent the Settlements, Plaintiffs would need to successfully obtain class certification, go to trial, and bear the burden of establishing liability, impact, and damages before obtaining any recovery from the Settling Defendants. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)). Continued litigation against the remaining Defendants, absent future settlements, will involve significant additional expenses and protracted legal battles. Therefore, the complexity, length, and expense of further litigation, which the Settlements mitigate at least as to the Settling Defendants, also favor final approval. *See Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources.... Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement.") (cited authority omitted); *In re Lawnmower*, 733 F. Supp. 2d at 1008 ("The 'complexity, length and expense of further litigation' factor strongly favors this settlement . . ..").

### 3. *The Amount of Opposition to the Settlement and Reaction of Class Members*

The positive reaction of Settlement Class Members to the Settlements supports final approval.

Pursuant to the Court's Preliminary Approval Order, 101,442 notices were sent directly and deemed delivered to potential Settlement Class Members as of the filing of this motion (79,414 via mail, 22,028 via email), which was in addition to giving publication notice in industry trade press (print and digital) and JND maintaining both an informational website and toll-free call-in

center. Second JND Decl., ¶¶ 10-29. After this outreach, no Settlement Class Member has yet to object to any of the Settlements. *Id.*, ¶ 30. As of the filing of this motion, there was only one opt-out request. *Id.*

The above supports finding that the Settlements are fair, reasonable, and adequate. *See Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt-outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("A very small percentage of affected parties have opposed the settlement. . . . [O]nly 342 [of more than 100,000] Class Members excluded themselves from the settlement and only 15 Class Members submitted documents that could be considered objections."); *Pallas v. Pac. Bell*, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) ("The small percentage—less than 1%—of persons raising objections is a factor weighing in favor of approval of the settlement."). In fact, the absence of objections to and limited opt-outs from the Settlements especially favor approval when, as here, "much of the class consists of sophisticated business entities." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015) (citing *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004)).

### 4. *Experienced Counsel Recommend Approval*

The fact that the Settlements are the product of arm's-length negotiations strongly supports a presumption that the Settlements are fair, reasonable, and adequate. *See* 4 Newberg and Rubenstein on Class Actions, § 13:43 Presumptions governing approval process—Generally (6th ed.); *Great Neck*, 212 F.R.D. at 410; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]").

17

As detailed above and in the Preliminary Approval Motion, each of the Settlements was the product of extensive and hard-fought negotiations that took place over several months. *See* First Jones Decl., ECF No. 982-1. These negotiations necessitated numerous conferences as well as written exchanges between counsel during which they negotiated the material terms of the Settlements, as well as the final terms of the Settlement Agreements. *Id.* In engaging in these settlement discussions, Class Counsel was focused on obtaining the best possible result for the Settlement Class Members.

Moreover, it is well established that the judgment and opinion of experienced and competent counsel should be taken into account when assessing whether a settlement is fair, reasonable and adequate. The Court is "entitled to rely heavily on the opinion of competent counsel" to evaluate whether the Settlement is appropriate for final approval. *Gautreaux v. Pierce,* *690 F.2d 616, 631 (7th Cir. 1982)*; *see also Isby*, 75 F.3d at 1200 ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."); *Kleen Prod. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017) ("The Settlement was negotiated by highly skilled and experienced antitrust and class action lawyers, who have held leadership positions in some of the largest class actions around the country."). Here, Lead Counsel and the Plaintiffs' Steering Committee, who have significant experience in class action and complex litigation, particularly antitrust class actions, believe that the Settlements are fair and in the best interests of the Classes. Therefore, the endorsement of the Settlements by Class Counsel for the Settlement Classes (which the Court knows to have handled several major antitrust class actions), is yet another factor that supports final approval.

     **5.**     ***The Stage of the Proceedings and Amount of Discovery Supports Final Approval***

While the case has been pending for some time, the stage of the case strongly supports

granting final approval to the Settlements. Namely, the Settlements have been entered into prior to filing motions for class certification and summary judgment, and trial on the merits. *See, e.g.*, *Schulte*, 805 F. Supp. 2d at 582 ("While Plaintiffs maintain that their claims would ultimately succeed, . . . [a]bsent settlement, Class Members would face the real risk that they would win little or no recovery."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 229 (N.D. Ill. 2016) ("In light of Chase's potential defenses, the legal uncertainty concerning the application of the TCPA, and the time and expense inherent to litigation, proceeding to trial, and obtaining relief posed risks to Plaintiffs, and a possibility existed that they would have recovered nothing.").While Plaintiffs are confident in their case, each of these important hurdles presents time, expense, and risk, which supports the security offered by the $48,000,000 in settlement proceeds provided by the Settlements.

Moreover, the amount of discovery and the investigation performed before the Settlements were entered ensured that Plaintiffs and their counsel made informed decisions to approve and recommend the Settlements to the Classes and the Court. As set forth herein, the Settlements were entered into after Plaintiffs had the opportunity to take dozens of depositions, analyze millions of documents, and engage in extensive written discovery. *See generally* First Jones Decl., ECF No. 982-1. Therefore, the procedural posture and status of the case support granting final approval to the Settlements.

## IV. CERTIFICATION OF SETTLMENT CLASSES IS APPROPRIATE

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements. ECF No. 991 at ¶¶ 4-5. It is well established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591. The Settlements meet the requirements of Rule 23(a) as well as the requirements of

23(b)(3) for settlement purposes as discussed more fully in the Motion for Preliminary Approval, ECF No. 982 at 21-27.

## V.    CONCLUSION

For these reasons, Class Counsel respectfully request that the Court grant final approval to the CBS, Fox, the Cox Entities, and ShareBuilders Settlement Agreements.

Dated: October 11, 2023

*Respectfully submitted,*

/s/ Megan E. Jones
Megan E. Jones
**HAUSFELD LLP**
600 Montgomery St. #3200
San Francisco, CA 94111
(415) 633-1908
mjones@hausfeld.com

Hilary K. Scherrer
Nathaniel C. Giddings
Farhad Mirzadeh
In Kyung "Jane" Shin
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 540-7200
hscherrer@hausfeld.com
ngiddings@hausfeld.com
fmirzadeh@hausfeld.com
jshin@hausfeld.com

*Lead Counsel*

Meegan Hollywood*
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite
3600 New York, NY
10022
Tel: (212) 980-740
mhollywood@robinskaplan.com

Kimberly A. Justice
**FREED KANNER LONDON &
MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
kjustice@fklmlaw.com

*Plaintiffs' Steering Committee*

Robert J. Wozniak
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128

20

Lincolnshire, IL 60069
Tel: (224) 632-4500
rwozniak@fklmlaw.com

*Liaison Counsel*