**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION**<br><br>*This document applies to all actions* | Master Docket No. 18-06785<br><br>MDL No. 2867<br><br>The Honorable Judge Virginia M. Kendall |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' OBJECTIONS TO REPORT & RECOMMENDATION NO. 3**

# TABLE OF CONTENTS


**I. INTRODUCTION ..... 1**

**II. BACKGROUND ..... 2**

**A. Defendants Refused to Substantiate Privilege Assertions Not Directly Involving an Attorney. ..... 3**

**B. Judge Levie's Considerable Work as Special Master ..... 5**

**C. Defendants Have Been Vocal About Moving this Case Forward, Except for the Resolution of Their Privilege Challenges. ..... 5**

**III. LEGAL STANDARDS ..... 6**

**IV. ARGUMENT ..... 6**

**A. Defendants' Objection Distorts R&R No. 3 And The Facts ..... 6**

1. Defendants' Distortions of R&R No. 3 ..... 7

*2.* Defendants' Distortions of Fact. ..... 8

**B. Judge Levie Properly Applied Rule 26(b)(5) ..... 10**

1. Defendants Failed to Satisfy Their Rule 26(b)(5) Burden. ..... 11

2. Judge Levie Correctly Understood the Parties' Negotiations About Defendants' Privilege Claims ..... 16

**C. Judge Levie's Work Product Findings Should Be Adopted ..... 16**

1. Because Defendants Presented No Facts or Law to Support Their Claim of Work Product, the Mention of a Cutoff Date is Not Error. ..... 17

2. Judge Levie Did Not Require Identification of Specific Litigation. ..... 20

3. Judge Levie Did Not Require Extensive Factual Information to Establish the Work Product Protection. ..... 20

**D. Judge Levie's Did Not Abuse His Discretion In Ordering Production Without Conducting an *In Camera* Review ..... 21**

1. R&R No. 3 is Not a "Blanket Waiver" or a "Sanction." ..... 21

2. Judge Levie Did Not Abuse His Discretion in Declining to Conduct In Camera Review. ..... 23

3. Defendants Are Not Entitled to In Camera Review of Their Cherry-Picked Documents. ..... 25

4. While Not Required to Adopt R&R No. 3, Judge Levie Made Findings of Facts That Supported a Finding of Willfullness ..... 28

**V. CONCLUSION ..... 30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Target Corp.*,
281 F.R.D. 314 (N.D. Ill. 2012) .......... 14

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) .......... 16

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
152 F.R.D. 132 (N.D. Ill. 1993) .......... 11, 19

*Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.*,
1993 WL 20164 (N.D. Ill. Jan. 27, 1993) .......... 5

*Am. Motors Corp. v. Great Am. Surplus Lines Ins. Co.*,
1988 WL 2788 (N.D. Ill. Jan. 8, 1988) .......... 28

*Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*,
2024 WL 3963505 (D. Colo. Aug. 16, 2024) .......... 23

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
408 F.3d 1142 (9th Cir. 2005) .......... 29

*Cho v. DePaul Univ.*,
2020 WL 2526486 (N.D. Ill. May 17, 2020) .......... 22

*Coltec Indus., Inc. v. Am. Motorists Ins. Co.*,
197 F.R.D. 368 (N.D. Ill. 2000) .......... 17

*Crabtree v. Experian Info. Sols., Inc.*,
2017 WL 4740662 (N.D. Ill. Oct. 20, 2017) .......... 13, 14

*Creek v. Vill. of Westhaven*,
144 F3d 441 (7th Cir. 1998) .......... 14

*DeLeon-Reyes v. Guevara*,
2020 WL 3050230 (N.D. Ill. June 8, 2020) .......... 20

*Energy Creates Energy, LLC. v. Brinks Gilson Lione, P.C.*,
2020 WL 3087019 (W.D. Mo. June 10, 2020) .......... 22

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
180 F. Supp. 3d 1 (D.D.C. 2016) .......... 13

*In re Gen. Instrument Corp. Sec. Litig.*,
190 F.R.D. 527 (N.D. Ill. 2000)....................24, 25

*Gerba v. Nat'l Hellenic Museum*,
351 F. Supp. 3d 1097 (N.D. Ill. 2018)....................2, 15, 16

*United States ex rel. Gill v. CVS Health Corp.*,
2024 WL 406510 (N.D. Ill. Feb. 2, 2024)....................19

*Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs., Inc.*,
739 F. Supp. 2d 1089 (N.D. Ill. 2010) (Kendall, J.)....................27

*In re Grand Jury Proceedings*,
220 F.3d 568 (7th Cir. 2000)....................12

*Hartmann v. Prudential Ins. Co. of Am.*,
9 F.3d 1207 (7th Cir. 1993)....................5

*Jorling v. Anthem, Inc.*,
2011 WL 3759189 (S.D. Ind. Aug. 25, 2011)....................15, 23, 30

*Kramer v. Am. Bank & Tr. Co., N.A.*,
2015 WL 13735745 (N.D. Ill. Aug. 17, 2015)....................23

*In re Loc. TV Advert. Antitrust Litig.*,
2023 WL 5956851 (N.D. Ill. July 28, 2023).................... *passim*

*In re Loc. TV Advert. Antitrust Litig.*,
2024 WL 165207 (N.D. Ill. Jan. 16, 2024)....................2

*In re Loc. TV Advert. Antitrust Litig.*,
2024 WL 1956255 (N.D. Ill. Apr. 16, 2024)....................1, 3

*In re Loc. TV Advert. Antitrust Litig.*,
2025 WL 681193 (N.D. Ill. Feb. 21, 2025).................... *passim*

*United States ex rel. McGee v. IBM Corp.*,
2017 WL 1232616 (N.D. Ill. Apr. 4, 2017)....................23

*Miller v. Chi. Transit. Auth.*,
20 F.4th 1148 (7th Cir. 2020)....................21

*Mold-Masters Ltd. v. Husky Injection Molding Sys Ltd.*,
2001 WL 1558303 (N.D. Ill. 2001)....................24

*Nilssen v. Motorola, Inc.*,
2002 WL 206007 (N.D. Ill. Feb. 8, 2002)....................27

*Oleksy v. Gen. Elec. Co.*,
2013 WL 3944174 (N.D. Ill. July 31, 2013) (Kendall, J.)....................15, 28

*Olson Rug Co. v. NLRB.*,
304 F.2d 710 (7th Cir. 1962) ....................28

*Petrovic v. City of Chicago*,
2007 WL 2410336 (N.D. Ill. Aug. 21, 2007) ....................24

*Platten v. Smith & Nephew Inc.*,
2023 WL 4763203 (E.D. Wis. July 26, 2023) ....................13

*Procaps S.A. v. Patheon Inc.*,
2015 WL 11202476 (S.D. Fla. July 22, 2015)....................13

*Pryor v. Target Corp.*,
2020 WL 6149569 (N.D. Ill. Oct. 20, 2020)....................23

*Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*,
762 F.2d 557 (7th Cir. 1985) ....................27

*Rabushka ex rel. United States. v. Crane Co.*,
122 F.3d 559, 565 (8th Cir. 1997) ....................13

*SmithKline v. Beecham Corp. v. Apotex Corp.*,
2000 WL 1310669 (N.D. Ill. Sept. 13, 2000) ....................14, 15

*St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*,
2022 WL 1642311 (N.D. Ill. Mar. 30, 2022)....................24

*Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*,
317 F.R.D. 620 (N.D. Ill. 2016)....................25

*Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*,
284 F. Supp. 3d 889 (N.D. Ill. 2018) ....................6

*Tully v. Okeson*,
78 F.4th 377 (7th Cir. 2023) ....................14

*United States v. CVS Health Corp.*,
2023 WL 2771166 ....................14, 21

*Washtenaw Cnty. Emps' Ret. Sys. v. Walgreen Co.*,
2020 WL 3977944 (N.D. Ill. July 14, 2020)....................13, 23

*Weeks v. Samsung Heavy Indus. Co.*,
126 F.3d 926 (7th Cir. 1997) ....................15

*Wier v. United Airlines, Inc.*,
2021 WL 1517975 (N.D. Ill. Apr. 16, 2021) ....................13

**Other Authorities**

Fed. R. Civ. P. 26(b)(5).................... *passim*

Fed. R. Civ. P. 26(b)(5)(A) ....................12

Fed. R. Civ. P. 37(a)(5)(A) ....................5

Plaintiffs, by and through their undersigned counsel, respectfully submit this Response to Defendants' Objection to Special Master Levie's Report & Recommendation No. 3 (ECF No. 1184; the "Objection" or "Obj."). For the reasons set forth below, this Court should reject Defendants' arguments and affirm Judge Levie's R&R No. 3,[1] which finds that Defendants failed to substantiate their assertions of privilege, as required by Federal Rules of Civil Procedure 26(b)(5), for 6,877 documents. *See id.* at Table 2.[2]

## I. INTRODUCTION

R&R No. 3 centers on Defendants' assertions of privilege over thousands of documents that did not, according to Defendants' privilege logs, directly involve an attorney. Plaintiffs repeatedly requested that Defendants further substantiate their assertions of privilege over these documents, *see* Part II-A, *infra*, and Defendants repeatedly refused. Indeed, more than two years ago, Defendants doubled down on their refusal, telling the Court: "Let's see that [privilege] motion. . . . ***If we lose, we lose; if we win, we win.***" Hr'g Tr. 19:25-20:3 (Aug. 29, 2022), ECF No. 751 (emphasis added).

Now, having lost, Defendants attack Judge Levie's work in R&R No. 3 as "cursory," "unfounded," "unreasonable," and "ridiculous" (despite it being based on the law set forth in R&R No. 1 and R&R No. 2),[3] *see* Obj. at 11, 18, 26, 27, and ask this Court to remand all the issues to Special Master Andersen to start over. *See Id.* at 30. Defendants' Objection does so by grossly

---

1 As this Court is aware, Judge Levie has issued three reports and recommendations: *In re Loc. TV Advert. Antitrust Litig.*, 2023 WL 5956851 (N.D. Ill. July 28, 2023) ("R&R No. 1"); *In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 1956255 (N.D. Ill. Apr. 16, 2024) ("R&R No. 2"); and *In re Loc. TV Advert. Antitrust Litig.*, 2025 WL 681193, at *1 (N.D. Ill. Feb. 21, 2025) ("R&R No. 3").

2 In support of this Response, Plaintiffs have attached the Declaration of Nathaniel C. Giddings, and Exhibit A thereto (the "Giddings Declaration").

3 *See* R&R No. 3 at 4 ("For the purposes of this Report and Recommendation No. 3, the Special Master incorporates and relies on the interpretations of law, findings of fact, and recommendations as stated in [R&R] Nos. 1 and 2, which the Court accepted in full on Jan. 16, 2024 and Feb. 2, 2025.").

mischaracterizing R&R No. 3 and the facts as well as the law. Defendants' distortions can neither serve as a basis for rejecting R&R No. 3, nor do they entitle Defendants to a do-over.

Defendants now regret their actions to date, wanting this Court to reject both the conclusions of law and fact in R&R No. 3 so they can be litigated *again*. Obj. at 30. However, this Court previously rejected Defendants' request for a "second bite at the apple to supplement their assertions" of privilege, *See In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 165207, at *3 (N.D. Ill. Jan. 16, 2024) ("Order R&R No. 1"), and Defendants have offered no reason, let alone a compelling one, for the Court to depart from its prior rulings. If Defendants were not entitled to a second bite at the apple, they certainly are not entitled to a third. Defendants emphatically told this Court that they were willing to accept this result on August 29, 2022, and they should be compelled to do so now. Defendants' Objection should be rejected.

Finally, Defendants' Objection, if granted, would delay this case for months, if not years, and would likely result in Plaintiffs incurring hundreds of thousands of dollars (if not millions of dollars), in additional time and expenses relitigating issues of fact and law that were already appropriately resolved. Plaintiffs should not be forced to pay for Defendants' desire to reverse course and now, after all this time, shore up their privilege claims. As noted in R&R No. 3 at 26, "[b]y filing these motions, Plaintiffs did not limit the issue solely to the privilege logs. Plaintiffs made clear that they sought production of the withheld documents." Defendants knew what was at stake. As Magistrate Judge Cole has previously advised, Defendants should have wheeled out "all [their] artillery in the first go round, rather than waiting for a do-over that will likely never come." *Gerba v. Nat'l Hellenic Museum*, 351 F. Supp. 3d 1097, 1099-100 (N.D. Ill. 2018) (cleaned up).

## II. BACKGROUND

The factual background and the parties' arguments are laid out in detail in the Special

Master's Report & Recommendations. *See* R&R No. 1, at *3-9; R&R No. 2, at *2-3; R&R No. 3 at 3-10. However, Defendants' Objection glosses over (or altogether omits) facts that are relevant to Judge Levie's recommendations in R&R No. 3. Plaintiffs briefly sets forth these facts below.

### A. Defendants Refused to Substantiate Privilege Assertions Not Directly Involving an Attorney.

The record establishes that Defendants repeatedly declined to provide sufficient information to support their assertions of privilege over documents that did not—at least according to Defendants' privilege logs—appear to directly involve an attorney. *See*, *e.g.*, Decl. of Heather T. Rankie in Supp. of Pls.' Discovery Mot. Nos. 9-15 (Sept. 2, 2022) ECF No. 744 ("Rankie Declaration"):

- Ex. 13 at 5-6 (**Meredith**: "It is not necessary . . . to identify the specific attorney involved to assess a claim of privilege");
- Ex. 24 at 3 (**Nexstar** refusing to amend its privilege log to identify specific attorneys involved or to provide greater specificity regarding "law firms" or "corporate legal teams");
- Ex. 34 at 6-7 (**Raycom** asserting its "privilege log entries sufficiently describe the attorney's role in the communication" and "[i]t is not necessary . . . to identify the specific attorney involved to assess a claim of privilege");
- Ex, 40 at 3-4 (**Scripps** asserting that it "will not account for the role of the lawyer(s) involved");
- Ex. 59 at 2 (**TEGNA** stating it "will not amend the descriptions to clarify the role of the attorneys involved");

*see also* R&R No. 3 at Table 3 (cataloguing the parties' exchanges in connection with Defendants' privilege log deficiencies); *id*. at 76 (noting "the exchange of over 80, multi-paged letters").

Defendants could have provided supporting information during the meet and confer process or in connection with motion to compel practice. *See* R&R No. 3 at 22 ("A privilege log may be the first, but not necessarily the last, step to support an assertion of a privilege. The choice to begin the process with a privilege log, does not preclude the privilege claimant from supplementing its privilege log with other information in other formats."); *id*. at 80 ("Defendants had ample opportunity to provide information about attorney involvement at three critical

junctures, which occurred over seven months: • with or in their privilege logs provided to Plaintiffs on Jan. 31, 2022; • during the meet and confer process between Jan. 31 and Sept. 1, 2022; and • in their oppositions to Plaintiffs' motions to compel filed Sept. 22, 2022."). They did not. Instead, Defendants cutoff further discussion when Plaintiffs explicitly sought a deadline extension so that they could continue to meet and confer regarding Defendants' privilege logs. *See* Part IV-A-2, *infra*. Based on the record before him, Judge Levie correctly found, "Defendants responded, not with the requested factual information, but with citations to case law to justify their opinions and responses that they need not provide additional information about attorney involvement." R&R No. 3 at 5. As Judge Levie aptly summarized Defendants' stonewalling strategy:

> For seven months, Defendants . . . provided Plaintiffs with little or no additional information. The record shows that Defendants did not operate as if their privilege logs were the beginning of an iterative process designed to allow the parties to resolve their privilege disputes without judicial intervention. . . . Defendants easily could have provided this information and, had they done so, so much time could have been saved by the parties, the Court, and parties waiting in line . . . .

R&R No. 3 at 25.[4] And this is not the first time Defendants were on notice of the opportunity to supplement their privilege logs with additional information. As this Court previously concluded, "[T]he Special Master did not abuse his discretion by reviewing the records as presented by the parties, such as lists of identifying attorneys, the documents themselves, briefs, and the privilege logs," and "[i]n any event, the Defendants failed to provide further extrinsic evidence, period." Order R&R No. 1 at *3. Thus, it is not error that Judge Levie did not evaluate what was not before him. As Magistrate Judge Bobrick observed, "[I]t is not the court's task to formulate legal

---

[4] Defendants take issue with Judge Levie's suggestion that offering additional factual detail could have been a relatively easy task. Obj. at 7 n.2. But beyond misconstruing the R&R, they do not actually explain why it would have been difficult for them to provide additional factual information to support their assertions of privilege. Examples of the bare-bones entries are provided throughout the R&R. *See, e.g.*, R&R No. 3 at 37. Defendants desire to do the bare minimum and, for example, "rotate among a collection of generic subject matter phrases to describe the documents in their privilege log entries" did not suffice to establish that the documents were privileged. *See id*. at 47.

arguments necessary to establish the applicability of a privilege." *See Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.*, 1993 WL 20164, at *1 (N.D. Ill. Jan. 27, 1993); *see also Hartmann v. Prudential Ins. Co. of Am.*, 9 F.3d 1207, 1214-15 (7th Cir. 1993) ("Our system . . . is not geared to having judges take over the function of lawyers, even when the result would be to rescue clients from their lawyers' mistakes."); R&R No. 3 at 77 n. 211 (collecting cases).

### B. Judge Levie's Considerable Work as Special Master.

Defendants' criticism of R&R No. 3 ignores the care and time that was spent by the Special Master. Indeed, Judge Levie's work in this matter has been both substantial and striking. Based on Plaintiffs' review of invoices issued, Judge Levie, together with his clerk, Ms. Wendy Anderson, have spent more than 1,700 hours in this matter, at a cost of more than $750,000 to the parties (of which Plaintiffs have paid half), on this matter. *See* Giddings Decl., ¶ 2.[5] Defendants' claims that R&R No. 3 is "cursory" or "unfounded" are simply not supported by these facts.

### C. Defendants Have Been Vocal About Moving this Case Forward, Except for the Resolution of Their Privilege Challenges.

Defendants have been vocal proponents of pushing this case forward quickly except when advocating about what process should be used to resolve privilege claims. *Compare* Hr'g Tr. at 20:25-21:6 (Aug. 29, 2022), ECF No. 751 ("Yeah. Let's go. They've had a year and a half now to get things done. We have four months left. This is going to make us work fast and hard. So let's get going."); Mar. 22, 2023 Hr'g Tr. at 36:2-9 (Mar. 22, 2023) ("There is a desire to move quickly and we share that desire. We have no interest in moving slowly here. It costs us money too. Our clients are paying for this as well. And we have no interest in extending this."); Hr'g Tr. at 22:24-25 (Dec. 12, 2024), ECF 1164 ("I think we don't even need to wait until March to get going on

[5] Plaintiffs reserve the right to seek reimbursement of these costs (as well as other costs associated with the privilege dispute in this matter), as well as their attorneys' fees, at an appropriate date in the future. *See* Fed. R. Civ. P. 37(a)(5)(A).

depositions.") *with* Defs.' Omnibus Obj. to the Special Master Rep. & Recommendation No. 1 at 22-23 (ECF No. 1052) (requesting the right to supplement assertions of privilege after Judge Levie found Defendants' assertions of privilege to be without merit); Obj. at 26-27 (requesting *in camera* review of thousands of documents after Judge Levie found Defendants had failed to satisfy their burden to sustain their assertions of privilege, as well as asking this Court to set aside all conclusions of fact *and* law in R&R No. 3 so that they can be once again be decided by Judge Andersen). As Judge Levie noted, however:

> Granting do-overs here would thwart the purposes of Rule 26(b)(5) to require the parties to reduce their privilege disputes among themselves in order to reduce the burden on the court, reduce the use of judicial resources and, hopefully, expedite the litigation. A do-over would also run counter to the purpose of Rule 1 to secure a 'speedy and inexpensive' determination of every proceeding.

R&R No. 3 at *40; *see also* *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 901 (N.D. Ill. 2018) (noting that improper assertions of privilege "sap the necessarily limited time of judges," which creates "a significant problem on which the Seventh Circuit in other contexts has spoken") (citations omitted).

## III. LEGAL STANDARDS

The parties agree that this Court "review[s] the Special Master's findings of fact for clear error, rulings on procedural matters for abuse of discretion, and findings of law *de novo*." Order R&R No. 1 at *2; *see also* Obj. at 4.

## IV. ARGUMENT

As set forth below, Defendants' objections are based on distortions of R&R No. 3, the facts, and a fundamental misunderstanding of the law. Defendants fail to provide this Court with any basis on which it could overturn R&R No. 3, and their Objection should be denied.

### A. Defendants' Objection Distorts R&R No. 3 and the Facts.

Defendants' Objection takes numerous liberties with the facts, both in characterization of

Judge Levie's work regarding R&R No. 3 and as to the factual history underpinning the conclusions in R&R No. 3. While Plaintiffs will not quibble with each of Defendants' inaccurate statements, some are so obviously incorrect that they require correction.

**1. *Defendants' Distortions of R&R No. 3.***

Defendants misrepresent the substantial work undertaken by Judge Levie in connection with R&R No. 3. First, Defendants assert that Judge Levie did not individually review each of the privilege log entries at issue in R&R No. 3. Obj. at 17-18. However, R&R No. 3 unequivocally states that "the Special Master also considered: **6,893** privilege log entries in the privilege logs of six Defendants," among other materials. R&R No. 3 at 10 (emphasis added). Indeed, Defendants' assertion makes no sense given the considerable amount of time invested by Judge Levie on this matter, as reflected in the invoices sent to and paid by the parties. *See* Part II-B, *supra*.

Second, Defendants assert that Judge Levie "adopt[ed] Plaintiffs' categorical approach because an entry-specific review 'is neither reasonable nor feasible' given the number of entries in dispute." Obj. at 17 (quoting R&R No. 3 at 18 n.48). However, the footnote quoted by Defendants for this assertion is actually a rejection of two Defendants' argument that Plaintiffs had not lodged their objections to the privilege log entries with sufficient specificity, not (as Defendants would have this Court believe) a description of Judge Levie's process. Indeed, Judge Levie goes on later in the footnote to reiterate that he reviewed each of the log entries at issue in R&R No. 3. *See* R&R No. 3 at 18 n.48 ("The Special Master finds Plaintiffs' use of categories streamlined ***his review of the thousands of log entries*** at issue here.") (emphasis added).

Finally, Defendants assert that Judge Levie's conclusions in R&R No. 3 were "based solely on allegedly deficient privilege log entries . . . ." Obj. at 24. This directly contradicts Judge Levie's explanation that in addition to log entries, he reviewed, *inter alia*, the parties' "briefs, which included voluminous exhibits of materials the parties exchanged during the meet-and-confer-

process," attorney lists provided by Meredith, Nexstar, Raycom, and Scripps, and the "annotated privilege logs that Plaintiffs provided to Defendants during the meet-and-confer process." R&R No. 3 at 10. In any event, Defendants' complaint is one of their own making; Defendants refused to provide enough additional information to substantiate their assertions of privilege over these entries. *See* Part II-A, *supra*. As Judge Levie wrote, "Defendants functioned as self-appointed gatekeepers assessing the merits of Plaintiffs' complaints about the sufficiency of their log entries. . . . Defendants could have, but did not, supplement their . . . entries with additional information . . . For reasons known to Defendants, they elected not to do so." R&R No. 3 at 25-26.

### 2. *Defendants' Distortions of Fact.*

Defendants make two misstatements of fact: (1) that "Plaintiffs never identified alleged deficiencies on an entry-specific basis . . ." and (2) that "Defendants provided additional information at Plaintiffs' request, who subsequently declared an impasse without providing entry-specific explanations for why they were unable to assess the claims of privilege and largely without conferring about Defendants' amended logs." Obj. at 13, 15. Both are demonstrably false.

As to Defendants' first misstatement of fact, Plaintiffs painstakingly, repeatedly, and ***in writing*** identified, on an entry-by-entry basis, the specific issue(s) they had with each of Defendants' entries, if any. *See* Pls.' Resp. to Objections to R&R No. 1 at 2-3 (ECF 1060) (describing how Defendants insisted that "Plaintiffs enumerate each deficiency, forcing Plaintiffs not only to identify the error . . . but also to identify every time the error occurred on the log for each privilege log entry individually").[6] But Plaintiffs' efforts did not end there: Plaintiffs again

---

[6] *See also* Rankie Decl., Exs. 10-11, 13-16 (Meredith); Exs. 20-28, 30 (Nexstar); Exs. 32-36 (Raycom); Exs. 39-41, 43-44 (Scripps); Exs. 46-54 (Sinclair); Exs. 56-67 (TEGNA). As this record demonstrates, for each Defendant, Plaintiffs either provided Excel spreadsheets identifying the challenged entries' deficiencies (*see, e.g.*, *id.*, Ex. 10 & ¶ 15), or for the shorter logs, identified the challenged entries in letters (*see, e.g.*, *id.*, Ex. 39).

meticulously identified defendants' privilege log deficiencies on an "entry-specific basis" in a supporting declaration with attached spreadsheets. *See* Rankie Decl., Exs. 1-7 (listing in spreadsheet form each Defendants' log deficiencies on an entry specific basis).[7] And if Plaintiffs' description of their efforts is not enough, Defendants' own words are telling. *See* R&R No. 3 at 72-73 ("[O]nly if and when there is a *judicial determination* that Defendants' logs are deficient . . . would [it] make sense for Defendants to undertake the additional burden of supplementing or amending their log entries beyond what they have already provided.") (quoting Defs.' Reply to Pls.' Proposed Protocol for Privilege Review, at 2 (submitted to the Special Master, Mar. 20, 2023)) (emphasis in original).[8]

Lastly, Defendants' claim is undercut by the fact that Parties recently conferred in June and July 2024 to reach an agreement as to the precise log entries in dispute for R&R No. 3. "Once they reached their agreements, the parties submitted to the Special Master on July 29, 2024, 'an excel document containing the parties' **agreed** R&R No. 3 logs.'" R&R No. 3 at 10 (emphasis added). Defendants stipulated to every entry that Judge Levie addressed in R&R No. 3 in July 2024,

---

[7] As Judge Levie noted, this provided Defendants with yet another opportunity to substantiate their assertions of privilege in a way that would satisfy their Rule 26(b)(5) obligations. *See* R&R No. 3 at 8 ("Although all Defendants filed opposition briefs, none of them submitted factual information in any form addressing the issues raised by Plaintiffs during the meet-and-confer process or in Plaintiffs' motions to compel"); *id*. at 25 ("Defendants could have, but did not, supplement their privilege log entries with additional information through lists, narratives, affidavits, explanations of relationships, etc. It bears emphasizing that Defendants are in sole possession of the facts related to their withheld documents; neither the Plaintiffs nor the Special Master have access to any of this information.").

[8] Defendants provide descriptions of what they, apparently, are claiming occurred between Plaintiffs and each of the Defendants. *See* Obj. at 13-15. While the record developed in connection with Plaintiffs' motions—which Judge Levie exhaustively reviewed—speaks for itself, Plaintiffs are surprised that Defendants are attempting to claim credit for basic things like identifying the attorneys in their logs, which some did not even do until "several months after producing their privilege logs." R&R No. 1 at *21. For example, while Nexstar boasts that it provided "substantial additional information" during the conferral process, it merely capitulated in identifying who on its log was an attorney and who sent and received withheld email chains—without doing so in the log itself. Nexstar ultimately withdrew privilege claims on less than 2% of its logged documents and otherwise did not revise a single description for the 10,487 documents for which it maintained privilege. *See* ECF No. 828 (Behti Decl.), Ex. 2.

without raising the argument presented in their Objection that Plaintiffs failed to identify specific entries. Since the parties stipulated to the entries to be addressed in R&R No. 3, there is no merit to Defendants' claim that R&R No. 3 relies on an incorrect understanding of the parties' negotiations about Defendants' privilege claims. *See* Obj. at 13.

As to Defendants' second misstatement of fact, this Court was present when Defendants (not Plaintiffs) declared impasse. When the deadline for motions to compel neared, Plaintiffs inquired whether the Defendants were willing to extend that deadline to meet and confer further. ECF No. 1060 at 3. Defendants refused, asserting that "their privilege logs and supplemental privilege logs fully comply with Rule 26 and the ESI order." ECF No. 744, Ex. 8. Thereafter Defendants doubled down at the August 29, 2022 hearing with this Court: "***Let's see that motion.*** We want to get this going, right? ***That's why we said "no" to their request for an extension of that***. We are ready to litigate this. If we lose, we lose; if we win, we win." Hr'g Tr. at 19:25-20:3 (Aug. 29, 2022), ECF 751 (emphasis added). Motion practice, at Defendants' insistence, thereafter commenced. In short, Defendants must live with their "litigation decisions regarding efforts to establish the attorney-client privilege." R&R No. 1 at *21. Defendants omit these facts from their Objection, but the Court should not ignore them.

### B. Judge Levie Properly Applied Rule 26(b)(5).

Notwithstanding this Court's earlier recognition that "[t]here is no mystery to what information is necessary to meet the burden of asserting privilege," Order R&R No. 1 at *3, Defendants suggest that Judge Levie somehow set a new, higher standard for the information needed to satisfy their burden under Rule 26(b)(5). As set forth below, this is incorrect, and Defendants' argument should be rejected.[9]

---

[9] For example, Defendants argue that Judge Levie somehow created a requirement for "substantial factual detail" and "ample factual evidence," which they contend would be "extraordinarily burdensome"

### 1. *Defendants Failed to Satisfy Their Rule 26(b)(5) Burden.*

"Defendants do not dispute that they, as the parties asserting privilege, bear the burden of establishing that privilege applies." Obj. at 5. Rather, Defendants challenge Judge Levie's conclusion about what Defendants ***could*** have provided (but did not) in order to satisfy their Rule 26(b)(5) burden. *See* Obj. at 5-18. As shown below, Judge Levie's determinations were wholly consistent with Rule 26(b)(5) and this Circuit's law.[10]

First, Plaintiffs are unaware of any case, and Defendants do not point to one, that holds that a party satisfies its Rule 26(b)(5) burden when it fails to provide information establishing a necessary element of privilege. R&R No. 3 concerns the thousands of documents Defendants claimed to be privileged but failed to disclose the direct involvement of a specific attorney. Defendants do not contest that they neglected to provide such basic information, yet they now ask this Court to find that they nonetheless satisfied their burden. For example, Plaintiffs challenged 1,493 privilege claims because these entries fail to identify any individual attorney involved in the communication for which Defendants claim privilege. Defendants "do not contest Plaintiffs' assertion that these 1,493 entries do not contain the name of an attorney." *Id* at 27. This is just an example of Defendants' failure to provide ***sufficient*** information to establish an essential element

---

for them to satisfy. *See* Obj. at 7; *see also* *id.* at 16 ("exhaustively describe" and "substantial evidence"). But not once in the entirety of R&R No. 3's near 150-pages do these phrases appear. Rather, as described in detail herein, Judge Levie faithfully and truly applied Rule 26(b)(5) and this Circuit's precedent in correctly concluding that the "privilege claimant bears the burden to establish each element of the claimed privilege for each document," R&R No. 3 at 4, and should present "specific, not generalized or conclusory" allegations to support the underlying facts giving rise to privilege. *Id*. at 21; *see also* *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("[A]ny party claiming a privilege must present for each document 'a specific explanation of why the document is privileged or immune from discovery,' such that [the court] . . . can determine whether the discovery opponent has discharged its burden."). That is, Defendants confuse their decision to hold themselves to a lower standard than required with Judge Levie's decision to hold them to the standard set by the Rules and this Circuit's law.

[10] Notably, prior to this point, Defendants had steadfastly insisted that "Plaintiffs bear the burden of identifying specific issues with [Defendants'] entries and explaining why Plaintiffs are unable to assess the privilege claims." *See, e.g.*, R&R No. 3 at 18, n.48.

of the claimed privilege. *See* R&R No. 3 at 79. It was not error for Judge Levie to determine this was fatal to Defendants' assertions of privilege over the documents at issue.

Indeed, not only is Defendants' request unmoored from precedent, it is also directly contradictory. Specifically, it is blackletter law (and law of the case) that the attorney-client privilege and work product protection are to be narrowly construed, *see* Order R&R No. 1 at *5, and involve (among other things) legal advice provided by an attorney to their client. *See* *id.* at *4. Consistent with precedent in this District and others, Judge Levie found that Defendants' "log entries . . . provide *no* information from which the Special Master can find that the communication at issue was between an attorney and client." *See* R&R No. 3 at 35-36 (emphasis in original); *see also* *id*. at 36 n.106 (citing cases).

Second, Defendants cannot take issue with Judge Levie's determination that "[c]ompliance with Rule 26(b)(5)(A) may be accomplished by providing a privilege log, although it may be necessary to supplement the privilege log with affidavits or declarations if the basis for the claim of privilege cannot be adequately assessed from the privilege log." R&R No. 3 at 21;[11] *see also* *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (noting that determining whether a privilege or protection applies is a "highly fact specific" inquiry); Order Re R&R No. 1 at *5 (noting Judge Levie's observation that Defendant's treatment of "legal advice" on privilege logs was "insufficient to back their assertions of privilege").[12] Instead, Defendants creatively construct a laundry list of items they claim "R&R No. 3 requires them to provide." Obj. at 6-7.

Defendants' intrepretation of R&R No. 3 does not withstand scrutiny. To start, Judge Levie

---

[11] For example, as Judge Levie notes, the privilege log "may be sufficient to communicate such details as the names of the authors, the recipients, the date the document was created, and the title or subject of the document," which may be enough to satisfy Rule 26(b)(5). *Id.* at 21.

[12] Indeed, Defendants previously agreed to the ESI Order, which requires, in relevant part, the party asserting privilege to "provide additional information reasonably necessary for the Receiving Party to determine if the Document has been properly withheld or redacted." ESI Order ¶ 9.71 (ECF No. 442).

explicitly acknowledges that "Rule 26(b)(5) does not itemize the information a privilege claimant should provide the opposing parties." R&R No. 3 at 24. Rather, what is required is that "[t]he party asserting an attorney-client privilege must provide some factual information that an attorney and client communicated on a legal subject," and "the facts may appear in the log entry and/or in supplemental information the claimant provides to the 'opposing parties.'" *Id*. at 39. Judge Levie—faced with Defendants' refusal to provide ***any*** information, beyond their insufficient logs, to substantiate their assertions of privilege over the thousands of documents that do not directly involve an attorney—then goes on to identify the material issues with Defendants' log entries and what Defendants could have done to address these issues (but did not). *Id*. at 70-86. The fact that Defendants made virtually no effort to satisfy their burden under Rule 26(b)(5) does not mean that Judge Levie erred by offering them suggestions for how they could have done so.[13]

Third, Defendants' reliance on cases that inappropriately shifted the burden to the challenging party is misplaced.[14] As Judge Levie points out in R&R No. 3, "For Defendants to interpret Rule 26(b)(5) as limiting the information they need to provide to Plaintiffs, they arguably resurrect the very discovery abuses [Rule 26(b)(5)] sought to eliminate." R&R No. 3 at 25.

---

[13] Defendants find no support from their cited cases. In *Rabushka ex rel. United States. v. Crane Co.*, the withholding party, unlike Defendants here, provided "a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel." *Rabushka*, 122 F.3d 559, 565 (8th Cir. 1997). And in *Slaughter v. McDonough*, the court invoked the same principle articulated by Judge Levie: "The party asserting a privilege meets this burden by adduc[ing] competent evidence in support of its claims, [that amounts to] something beyond conclusory statements, generalized assertions, and unsworn averments of its counsel." *Slaughter*, 2022 WL 2817836, at *2 (D.D.C. July 19, 2022) (emphasis added) (quoting *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016). It thereafter noted that the withholding party had submitted a declaration from an attorney to further substantiate its assertion of privilege. *Id*. at *4.

[14] *See* *Washtenaw Cnty. Emps' Ret. Sys. v. Walgreen Co.*, 2020 WL 3977944, at *4 (N.D. Ill. July 14, 2020) (characterizing the plaintiff's challenges as "speculation"); *see also* *Wier v. United Airlines, Inc.*, 2021 WL 1517975, at *7 (N.D. Ill. Apr. 16, 2021); *Crabtree v. Experian Info. Sols., Inc.*, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017); *Procaps S.A. v. Patheon Inc.*, 2015 WL 11202476, at *2 (S.D. Fla. July 22, 2015); *Platten v. Smith & Nephew Inc.*, 2023 WL 4763203, at *1 (E.D. Wis. July 26, 2023).

Regardless, this Court has already rejected Defendants attempt to shift their burden to Plaintiffs in this case, *see* Order R&R No. 1 at *5, and Defendants have failed to offer any reason for this Court to deviate from the law of the case. *See* *Tully v. Okeson*, 78 F.4th 377, 380 (7th Cir. 2023) ("The law of the case doctrine 'is a rule of practice, based on [the] sound policy . . . that, when an issue is once litigated and decided, that should be the end of the matter.'" (alteration in original) (quoting *Creek v. Vill. of Westhaven*, 144 F3d 441, 445 (7th Cir. 1998))).

Defendants also take issue with Judge Levie's determinations regarding documents that primarily concern business as opposed to legal issues. Defendants insist that their *ipse dixit* statements were sufficient to substantiate those privilege claims, despite this Court's prior ruling that "saying so doesn't make it so." Order R&R No. 1 at *5; *see also* *id*. (agreeing that the repeated use of the phrase "legal advice" in their log entries was insufficient, standing alone, to show the claimed privilege exists); *United States v. CVS Health Corp.*, 2023 WL 2771166 at *7, n.6 ("So, it's a bit of a stretch to say, as the defendants do [] that the court is bound to take an attorney's word that something is privileged"). Defendants again cite *Crabtree*, 2017 WL 4740662, at *2, for support. But in *Crabtree*, the "[p]laintiff failed to establish a well-founded basis for challenging Defendant's privilege designations." *Id*., at *3. That is not the case here. *See, e.g.*, R&R No. 3 at 4-6 (detailing the parties' efforts to discuss privilege disputes). And, in any event, the provision of additional information to substantiate assertions of privilege in place of *ipse dixit* assertions is a common practice in this Circuit. *See* *SmithKline v. Beecham Corp. v. Apotex Corp.*, 2000 WL 1310669, at *3 (N.D. Ill. Sept. 13, 2000) (discussing the submission of an affidavit to meet the burden of proof for privilege claims); *Acosta v. Target Corp.*, 281 F.R.D. 314, 323-25 (N.D. Ill. 2012) (ordering production of documents where privilege claimant failed to offer supporting factual material showing the documents were created and maintained as confidential legal advice);

*Jorling v. Anthem, Inc.*, 2011 WL 3759189, at *2 (S.D. Ind. Aug. 25, 2011) (finding waiver where the defendants descriptions of privilege log entries did not establish the essential elements of attorney-client privilege).

Fourth, Defendants' reliance on what other courts did in other cases under different facts found to be sufficient in a log entry is a red herring.[15] As an initial matter, Judge Levie's conclusion that the minimal information provided by Defendants failed to satisfy their Rule 26(b)(5) burden is subject to clear error review. *See Oleksy v. Gen. Elec. Co.*, 2013 WL 3944174, at *8 (N.D. Ill. July 31, 2013) (Kendall, J.) (applying clearly erroneous standard and affirming Magistrate Judge's determination that litigation hold policies were not privileged).[16] And Defendants do not argue that this Court should conclude with "definite and firm conviction" that Judge Levie erred in finding that Defendants' failure to assert the direct involvement of an attorney in withheld documents, without more, failed to satisfy their burden under Rule 26(b)(5). *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

Magistrate Judge Cole's decision in *Gerba v. National Hellenic Museum*, 351 F. Supp. 3d 1097 (N.D. Ill. 2018), is instructive. There, the defendant (like Defendants here) asserted that "the mere fact that it included these documents in its privilege log and described them as 'legal advice'" was enough, and that it was error for the court to order their production without first conducting an *in camera* review. *Id.* at 1099. Rejecting this argument, Judge Cole wrote:

> [O]bviously, every document that an attorney includes in a privilege log and claims is privileged is not beyond challenge. The principle is so fundamental that it scarcely needs any restatement. Indeed, the Rule requiring a privilege log exists so that a

[15] For example, in *Heartland Consumer Products LLC v. DineEquity, Inc.*, the court evaluated documents that involved, among other things, direct communications between lawyers and their clients, 2018 WL 3574737, at *3 (S.D. Ind. July 25, 2018), which is not the case with the documents at issue in R&R No. 3. And in *Fiskars Finland Oy Ab v. Woodlands Tool Inc.*, the plaintiff, unlike Plaintiffs here, failed to "explain how [the privilege logs were] deficient," instead asserting "the entirety of the two logs 'generally'" was deficient. 2024 WL 3841603, at *2 (W.D. Wis. Aug. 14, 2024).

[16] *See also SmithKline Beecham Corp.*, 2000 WL 1310669, at *5.

> court and opposing counsel determine *if* it should be deemed privileged – not to blindly conclude it is. Even a cursory search for cases involving discovery disputes over claims of attorney-client privilege – which, of course, are legion – proves that stance is a non-starter. If what the Museum asserts were the law, there would be no challenges to privilege claims allowed, and simply including a document in a log would end the inquiry. But, "saying so doesn't make it so."

*Id.* (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 679 (7th Cir. 2016) (emphasis in original). The Court should similarly reject Defendants' argument here.

#### 2. *Judge Levie Correctly Understood the Parties' Negotiations About Defendants' Privilege Claims.*

In what appears to be legal gas-lighting, Defendants attempt to blame Judge Levie's poor comprehension of the record for the decisions that Defendants themselves made, claiming he misunderstood what they did resulting in reversible error. Obj. at 13-15. Defendants claim this misunderstanding of the parties' negotiations supports their claim that Judge Levie's application of Fed. R. Civ. P. 26(b)(5) was incorrect because Defendants did, in fact, provide "additional information." The record evidence is voluminous, however, that for ***more than two years***, Plaintiffs—through letters, phone calls, emails, and 750 pages of briefing and more than 2,000 pages of declarations and supporting materials —repeatedly told Defendants that the information provided was insufficient for Plaintiffs to assess assertions of privilege that did not appear to directly involve an attorney. *See* Part IV-A-2, *supra*. *See also* R&R No. 3 at 4-10. Through it all, Defendants (not Plaintiffs and certainly not Judge Levie) largely chose to stand on the limited information provided. Part IV-A-2, *supra*. R&R No. 3 makes clear that Judge Levie fully understood the record upon which he made his decision.

### C. Judge Levie's Work Product Findings Should Be Adopted.

Contrary to Defendants' argument (Obj. at 18-23), Special Master Levie did not hold select

Defendants' work product privilege log entries to a unique or incorrect standard.[17] This, of course, makes sense, as Judge Levie's earlier findings regarding the work product protection are law of the case. *See* Order R&R No. 1 at *3; *see also* R&R No. 3 at 3 n.4.

Nor was it error for Judge Levie, like other judges have done in this District for decades, to hold that "describing a document as 'legal advice' or 'work product' is not the same as *establishing* that the documents are immune from discovery." *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000) (emphasis in original); *see also id*. ("Such descriptions . . . are insufficient to carry [the party's] burden . . . ."). Consistent with this Circuit's law, and after reviewing each entry and looking beyond Defendants' platitudes, Judge Levie held that "the[] necessary foundation[] for upholding claims of work product protection are almost completely lacking here in the presentations by the Defendants in both the privilege logs and in opposing the motions." R&R No. 3 at 54. That decision was correct.[18]

**1. *Because Defendants Presented No Facts or Law to Support Their Claim of Work Product, the Mention of a Cutoff Date is Not Error.***

Judge Levie's cutoff date (July 27, 2018) does not present a novel theory of law or application of facts. Even accepting Defendants' position that public disclosure of the DOJ investigation should not be a hard and fast date, Judge Levie explained that Defendants made no

---

[17] R&R No. 3 addresses Nexstar, Raycom, Sinclair and TEGNA's work product assertions for 783 documents. *See* R&R No. 3 at Part III.C-D.

[18] Defendants cite *Ruan Transport Corp. v. Central Steel & Wire Co.*, in attempting to persuade this Court that Judge Levie erred in evaluating their entries, but there (unlike here) the plaintiffs provided an "index that explains the full name and title or role for each individual referenced in the log." *Compare Ruan*, 2017 WL 11886030, at *3 (N.D. Ill. Oct. 23, 2017) *with* R&R No. 3 at *13 ("Nor did they provide information such as the full job titles and roles of Defendants' employees listed on the privilege logs."). Defendants similarly rely on *Trustees of Chicago Regional Council of Carpenters Pension Fund v. Drive Construction, Inc.*, which in fact cites the kind of evidence Judge Levie found Defendants had not provided: anticipation of litigation (*e.g.*, a witness "***testified*** that the completed questionnaires were submitted directly to 'legal counsel for analysis'"). *Trustee of Chi.*, 2022 WL 2341290, at *3 (N.D. Ill. June 29, 2022) (emphasis added). There is no such testimony here. None.

showing to as ***when*** this protection should apply, thereby making any date he chose irrelevant. *See* R&R No. 3 at 55 (emphasis added) ("The Special Master ***finds no information in the privilege logs*** or in Defendants' briefs showing ***that any Defendant even asserted, let alone established, an earlier date*** as to when the Defendant 'anticipated this current class action' or the 'related DOJ investigation.') (emphasis added). Indeed, not one Defendant submitted an affidavit to substantiate that they anticipated litigation before, during or after July 27, 2018. Defendants apparently hope this Court will ignore this fact, but it should not.

Even now, Sinclair does not show how **763** documents from 2013-2018 (only one of which is dated after July 27, 2018) were connected to future litigation. As Judge Levie noted, Sinclair's assertion of work product protection under these facts is "dramatic and represents a troubling lack of attention to the law of work product protection in the Seventh Circuit and the ESI Order in the case." R&R No. 3 at 58; *see also id*. at 55 n.142 (noting that while the ESI Order allowed for an earlier cut-off date where a CID had been received by the Defendant, Defendants "did not provide the Special Master any information that they received CIDs from the DOJ related to the investigations that the DOJ announced on July 27, 2018").

Defendants also complain that Judge Levie and Plaintiffs did not ask them to provide information showing the DOJ investigation began before the cutoff date. However, this argument inappropriately shifts Defendants' burden to show anticipation of litigation to Plaintiffs and the Court. *See* R&R No. 1 at *18. Judge Levie demonstrated that regardless of any date he chose, Defendants had an obligation to carry their burden. *See* R&R No. 3 at 57, n.152 (emphasis added) ("Defendants had the opportunity to overcome any such presumption with a factual showing . . . but ***they presented nothing and offered no explanation*** as to whether, and how, those early dated documents relate to the present class action or the 'related DOJ investigation.' Defendants also ***did***

***not make arguments or supply case law*** as to why earlier-produced documents (pre-July 27, 2018) may have related to the instant action ***or any subsequent litigation***.").[19] Any argument Defendants now make about the use of the July 27, 2018 cutoff date is a poorly concealed attempt to re-do their nonspecific log entries and briefs, which this Court previously denied. *See* Order Re R&R No. 1 at *3 ("Defendants desire a second bite at the apple to supplement their assertions. The Court sees no compelling reason to allow blanket supplementation at this juncture."). Defendants' skeletal work product entries simply fail to establish that these documents related to the instant action or any other litigation. The cut-off date in R&R No. 3 is thus not reversible error.

Defendants also argue that R&R No. 3 "erroneously imposes an absolute time limitation for the application of the doctrine by suggesting that *no* material can be work product unless prepared in anticipation of *this* litigation." Obj. at 23 (citing R&R No. 3 at 55-56). Judge Levie, however, never reached this conclusion. Instead, despite an agreement by the parties that they do not have to log documents "created for or in anticipation of the litigation or the related DOJ investigation" (*see* ESI Order at 9.8, ECF No. 442), Defendants now contend that "Defendants' logs did contain work product and privileged communications regarding the DOJ investigation." Obj. at 23. Judge Levie did not have sufficient facts in the record before him, which is his entire point. Defendants could have easily informed him of this and chose not to do so. It is not up to Judge Levie or this Court to "hunt[]for truffles buried in briefs." R&R No. 3 at 75 (cleaned up). Lastly, Judge Levie clearly notes that he was looking for a showing that documents "may have related to the instant action ***or*** any subsequent litigation." R&R No. 3 at 57 n.152.

---

[19] It is well established that "the burden [of establishing all the required elements] is always on the party seeking to invoke the privilege to establish that it applies." *United States ex rel. Gill v. CVS Health Corp.*, 2024 WL 406510, at *8 (N.D. Ill. Feb. 2, 2024). Indeed, "any party claiming a privilege must present for each document 'a specific explanation of why the document is privileged or immune from discovery,' such that [the court] . . . can determine whether the discovery opponent has discharged its burden." *Allendale Mut. Ins. Co.*, 152 F.R.D. at 137.

**2. *Judge Levie Did Not Require Identification of Specific Litigation.***

Defendants agree that Judge Levie did not require specific litigation to be identified. *See* Opp. at 19 ("As R&R No. 3 acknowledges, parties are not required to identify specific litigation in their privilege log entries."). Rather Judge Levie relied on the Seventh Circuit law in concluding that the test should be whether a document can fairly be said to have been prepared or obtained because of the prospect of litigation, and the materials were prepared because of some articulable claim likely to lead to litigation. R&R No. 3 at 53-57. Judge Levie held that these "necessary foundations for upholding claims of work product are almost completely lacking here." *Id*. at 54. But nowhere in R&R No. 3 does Judge Levie state that work product protection does not apply where a party fails to cite to a "specific litigation."

**3. *Judge Levie Did Not Require Extensive Factual Information to Establish the Work Product Protection.***

What Defendants characterize as improper "extensive factual requirements" are rather a reasonable request for ***any*** indicia that the logged documents do, in fact, constitute work product.[20] As Special Master Levie explained in citing this Court's Order Re R&R No. 1, the Court will look to "the factual context" surrounding a document listed on a privilege log. R&R No. 3 at 13 n.29 (citing R&R No. 1 at *11).[21] Defendants provided this Court and Judge Levie with nothing to

---

[20] Defendants resort to taking phrases from Judge Levie's recommendation out of context. This is exemplified by Defendants' mischaracterization of Judge Levie's use of the word "presumption." Obj. at 20. However, nowhere in R&R No. 3 does Judge Levie suggest that there is a generalized presumption that documents were not created in anticipation of litigation absent evidence to the contrary. Rather, he notes that although some district courts apply certain presumptions to communications by in-house counsel, the party asserting the privilege ultimately has "the opportunity, indeed the burden, to show the presence of legal advice rendering unnecessary to even consider whether a presumption exists." R&R No. 3 at 14 (cleaned up).

[21] Contrary to Defendants' assertion that Judge Levie relied on *DeLeon-Reyes v. Guevara*, 2020 WL 3050230 (N.D. Ill. June 8, 2020), *see* Obj. at 12, n.5; *see also id*. at 20, that case does not appear in R&R No. 3. Defendants' discussion of that case thus appears to be an attempt to relitigate R&R No. 1, which is now law of the case. *See* Order R&R No. 1 at *3 ("In sum, the Special Master did not abuse his discretion by reviewing the records as presented by the parties, such as lists of identifying attorneys, the documents themselves, briefs, and the privilege logs. In any event, the Defendants failed to provide further extrinsic

support their conclusory categorization of thousands of documents, rendering their log entries with minimal factual information insufficient for protection under their legal burden. R&R No. 3 fairly ensures that the type of "rote, conclusory, boilerplate assertion that has left courts unimpressed for years" will not be permitted. *United States ex rel. Gill v. CVS Health Corp.*, 2023 WL 2771166, at *6 (N.D. Ill. Apr. 4, 2023) (citing cases). Defendants' effort to impermissibly shift this burden to Plaintiffs by contending that their nonspecific privilege log entries should be given deference by the Court is plainly flawed and contrary to the black letter law of the Seventh Circuit.

### D. Judge Levie Did Not Abuse His Discretion In Ordering Production Without Conducting an In Camera Review.

Notwithstanding the fact that Defendants agree that the abuse of discretion standard applies to Judge Levie's decision to forego *in camera* review of the thousands of documents appearing on their privilege logs that did not directly involve an attorney, *see* Obj. 24, Defendants still argue that he should have conducted such a review. *Id.* at 24-25. Yet, abuse of discretion is an incredibly deferential standard. *See* Order R&R No. 1 at *2 ("The abuse of discretion standard is highly deferential; the Court will only disturb the Special Master's decision if he has 'acted unreasonably' or is 'fundamentally wrong . . . clearly unreasonable, arbitrary, or fanciful.'") (quoting *Miller v. Chi. Transit. Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2020)). As set forth in greater detail below, Defendants cannot satisfy it because Judge Levie did not abuse his discretion.

#### 1. *R&R No. 3 is Not a "Blanket Waiver" or a "Sanction."*

Defendants' abuse of discretion argument is grounded on the incorrect premise that R&R No. 3 compels a "blanket waiver" or functions as a "sanction." Obj. at 25-26. But R&R No. 3 is not a "blanket waiver"; it finds—after exhaustively reviewing each entry at issue as well as the voluminous record—that Defendants waived the specific asserted privilege(s) as to specific

---

evidence, period."). The Court should reject Defendants' apparent attempt to overturn R&R No. 1.

challenged documents (to the extent the documents were even privileged in the first instance). Judge Levie reviewed each entry and found each insufficient. Nor is R&R No. 3 a sanction by its express terms. Judge Levie unequivocally states that he "makes no findings or recommendations concerning sanctions in this Report and Recommendation."[22] Rather, Judge Levie made clear that the relief in R&R No. 3 is "based upon the insufficiency of each privilege log entry challenged by Plaintiffs," and recommends the production of documents. R&R No. 3 at 84-86.

The cases primarily relied on by Defendants demonstrate that R&R No. 3 is not a "blanket waiver" or a "sanction." Unlike here (with thousands of entries remaining unresolved), in *Muro v. Target Corp.*, the court noted that the Magistrate Judge had "order[ed] that Target has waived privilege with respect to ***all documents*** listed in its revised log" and that "Target argue[d] that the sanction of a blanket waiver of privilege is excessive." 250 F.R.D. 350, 361 (N.D. Ill. 2007), *aff'd,* 580 F.3d 485 (7th Cir. 2009) (emphasis added). Distinguishable from here because Judge Levie reviewed each entry at issue, in *American National Bank & Trust Co of Chicago v. Equitable Life Assurance Society of the United States*, the Magistrate Judge ordered the production of ***all documents*** withheld as privileged (more than 400 documents) based on his review of a sample. 406 F.3d 867, 877-80 (7th Cir. 2005).[23] In *Hobley v. Burge*, the District Court had ordered the production of ***all documents*** that had been withheld as privileged but not logged. 433 F.3d 946, 949 (7th Cir. 2006).[24]

---

[22] While Defendants disagree with Judge Levie's conclusion, *see* Obj. at 29, a review of the applicable caselaw establishes that Judge Levie is correct.

[23] Moreover, unlike the "manageable quantity of [roughly 400] documents at issue" in *American National*, 406 F.3d at 881, there are more than 6,000 documents here, further supporting Judge Levie's exercise of discretion to forego *in camera* review.

[24] The other cases cited by Defendants are inapposite. *Cho v. DePaul Univ.*, 2020 WL 2526486, at *1 (N.D. Ill. May 17, 2020), neither mentions a "blanket waiver," nor provides the information necessary to determine whether the party seeking waiver was arguing that all privileges as to all withheld documents had been waived, and *Energy Creates Energy, LLC. v. Brinks Gilson Lione, P.C.*, 2020 WL 3087019, at *4 (W.D. Mo. June 10, 2020) involved the application of Eighth Circuit law to the joint-client exception.

Here, in comparison, Judge Levie, reviewing each entry, found that Defendants had waived specific privileges as to specific documents. This is not a "blanket waiver." *See* *Pryor v. Target Corp.*, 2020 WL 6149569, at *8 (N.D. Ill. Oct. 20, 2020) (declining to impose a "blanket waiver" and instead evaluating the party's "privilege assertions on a claim by claim basis" and compelling production of all but a handful of documents based on the privilege log entries alone); *Jorling*, 2011 WL 3759189, at *3 (noting that the magistrate judge did not engage in "blanket waiver," but instead ordered production "based on the inadequate descriptions in Defendants' privilege log . . . limited to the sections of the privilege log that the Court actually examined and found inadequate."); *see also cf.*, *Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, 2024 WL 3963505, at *4 (D. Colo. Aug. 16, 2024) ("[T]he Court points out that neither the undersigned, nor any other court (as best the Court can tell), has held that a bad faith showing is *necessary* to uphold a finding of waiver under Rule 26.") (emphasis in original).

**2. *Judge Levie Did Not Abuse His Discretion in Declining to Conduct In Camera Review.***

"[T]he question of whether to engage in an in camera review lies within the Court's discretion." *Washtenaw Cnty.*, 2020 WL 3977944, at *1. In exercising this discretion, courts in this District have cautioned that "[a]n *in camera* inspection is not a substitute for compliance with the Federal Rules of Civil Procedure, nor is it a convenient vehicle that allows a shifting of the burden of discovery from the parties and their lawyers to the court . . . ." *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *3 (N.D. Ill. Apr. 4, 2017).

Exercising this discretion, courts in this District agree that *in camera* review is ***not*** a prerequisite to compelling production of specific documents appearing on inadequate privilege logs. *See* *Pryor*, WL 6149569, at *8; *Jorling*, 2011 WL 3759189, at *3; *Kramer v. Am. Bank & Tr. Co., N.A.*, 2015 WL 13735745, at *2 (N.D. Ill. Aug. 17, 2015), *report and recommendation*

*adopted*, 2016 WL 1238172 (N.D. Ill. Mar. 30, 2016) ("[M]anifestly inadequate privilege logs continue to be submitted even though a court can declare a waiver and is not obligated to allow a party a series of do overs of the privilege log.") (citing cases); *Petrovic v. City of Chicago*, 2007 WL 2410336, at *2 (N.D. Ill. Aug. 21, 2007) ("Generally, the result of an inadequate privilege log is disclosure.") (citing *Mold-Masters Ltd. v. Husky Injection Molding Sys Ltd.*, 2001 WL 1558303, at *2 (N.D. Ill. 2001)); *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 2022 WL 1642311, at *3 (N.D. Ill. Mar. 30, 2022) (finding no abuse of discretion where the Magistrate Judge compelled production of documents withheld as privileged "based primarily on the insufficiency of the log entry descriptions"); *see also* R&R No. 3 at 78 n.214 (collecting cases).

Consistent with these authorities, Judge Levie's decision to forego *in camera* review of these documents and order their production (*see* R&R No. 3 at 83) was not an abuse of discretion. As Magistrate Judge Bobrick concluded in similar circumstances:

> Case law, and [Rule] 26(b)(5) should have made it clear to defendant, at some point over the last three years, that its privilege log was woefully deficient. When the plaintiff pointed out obvious flaws in the log, however, the defendant stridently refused to provide required information. It is apparent from review of the privilege log that defendants are under the mistaken impression either that plaintiffs must prove documents are not privileged, or that it is the court's burden to establish the applicability of the privilege as to defendant's documents. This is all the more clear now that defendant, in the eleventh hour, asks for an *in camera* inspection of the documents. Defendants have had all the opportunity afforded by the last three years to support their claims of attorney-client privilege. Even if we were to reject the application of the fiduciary exception to the attorney-client privilege, upon a close and studied review of the materials submitted by defendant, which includes defendant's privileged log, we would not grant an *in camera* inspection in this case. Defendant has had ample opportunity to carry its burden as to establishing the privilege and has failed. Accordingly, the plaintiff's motion to compel production is GRANTED. Defendant is to provide plaintiff with subject documents within three working days of this order.

*In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 532 (N.D. Ill. 2000) (cleaned up). Defendants' "eleventh hour request" for *in camera* review here should similarly be rejected, and

Judge Levie's decision not to do so was not an abuse of discretion.[25]

### 3. *Defendants Are Not Entitled to __In Camera__ Review of Their Cherry-Picked Documents.*

Because Judge Levie was well within his discretion to find that Defendants had waived the asserted privilege(s) over the documents at issue in R&R No. 3 without conducting an *in camera* review, Defendants' request that they be permitted to submit ten "[o]bviously [p]rivileged" documents for *in camera* review to this Court, *see* Obj. at 27-28, should be rejected.[26]

First, Defendants' request is an end-run on Judge Levie's proper exercise of his discretion. As Magistrate Judge Cole recently noted, "where discretion is involved, two judges can reach two correct yet contrary conclusions based on identical fact patterns." *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 629 (N.D. Ill. 2016). Put differently, even if this Court would have exercised its discretion to conduct an *in camera* review of the documents at issue in R&R No. 3, it was not error for Judge Levie to decline to do so, and Plaintiffs respectfully submit that this Court's *in camera* review of these documents would be an unnecessary and unwarranted infringement on Judge Levie's appropriate exercise of his discretion.

Second, the additional information provided by Defendants is frequently (and materially) inconsistent with the information provided by Defendants in their privilege logs. For example:

- Nexstar-Privilege-Log-000139: Defendants now claim that this document is an email that "provides instructions to Tribune employees" and copies "Tribune's outside counsel at Covington & Burling LLP." Obj. at 28. However, Nexstar previously described this document as "providing confidential information needed to obtain legal

[25] Defendants take issue with R&R No. 3's observation that "*in camera* review will further delay the progress of this case and arguably reward Defendants for their conduct in this case." R&R No. 3 at 83; *see also* Obj. at 26 (complaining that Judge Levie declined to undertake an *in camera* review for reasons of "efficiency"). But, as the court noted in *In re General Instrument Corp. Securities Litigation* in rejecting a similar argument, "Defendant has had ample opportunity to carry its burden as to establishing the privilege and has failed." 190 F.R.D. at 532. Defendants are not entitled to infinite do-overs.

[26] For ease of reference, Plaintiffs have attached as Exhibit A to the Giddings Declaration a document that contains the privilege log entries for each of these documents as they were submitted to the Court in connection with Plaintiffs' motions to compel.

advice" (rather than ***providing*** legal advice), and Covington & Burling attorneys do not appear in the objective metadata provided by Nexstar for this document on its log. Giddings Decl., Ex. A.

- MDLSBGTV-029204: Defendants now claim that this is "an email chain in which Sinclair employees forward deposition materials prepared by outside counsel." Obj. at 28. However, Sinclair previously described this document as an "[e]mail prepared in the course of litigation reflecting legal advice" by outside counsel, makes no mention of it attaching any documents prepared by outside counsel, and no attorneys appear in the objective metadata provided by Sinclair for this document on its log. Giddings Decl., Ex. A.

- MDLSBGTV-031339: Defendants now claim that "[t]he initial email in the chain includes outside counsel at Hughes Hubbard on the communication and discusses the content of outside counsel's request for information from Sinclair employees." Obj. at 28. However, Sinclair previously described the document as "Email reflecting legal advice with Barry Faber ESQ regarding government investigations," and no Hughes Hubbard attorneys appear in the objective metadata provided by Sinclair for this document on its log. Giddings Decl., Ex. A.

- MDLSBGTV-026443: Defendants now claim that this document is "an email chain forwarding a request from Sinclair in-house counsel's paralegal to provide documents to support outside counsel's response to the DOJ investigation." Obj. at 28. However, Sinclair previously described this document as an "[e]mail containing an attorney-client communication for the purpose of providing legal advice with Sam Cowin ESQ regarding proposed transaction regulatory compliance issues," and no attorneys appear in the objective metadata provided by Sinclair for this document on its log. Giddings Decl., Ex. A.

- MDLSBGTV-025502: Defendants now claim that this document is "an email chain among Sinclair employees forwarding a communication with outside counsel regarding the Department of Justice investigation" and that "[t]he first email in the chain includes multiple substantive questions from a Hughes Hubbard attorney regarding the DOJ investigation and factual arguments in support of Sinclair's position." Obj. at 28. However, Sinclair previously described this document the exact same as the immediately-above document: "Email containing an attorney-client communication for the purpose of providing legal advice with Sam Cowin ESQ regarding proposed transaction regulatory compliance issues," and no attorneys appear in the objective metadata provided by Sinclair for this document on its log.

As is evident from the above, Defendants are describing these documents in materially different ways than how they did in 2023 to Judge Levie. These discrepancies—while calling into question the quality of the information on Defendants' privilege logs—cannot serve as a basis on

which to second guess Judge Levie's proper exercise of his discretion. They also cannot serve as the basis on which to challenge R&R No. 3. *See* *Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089, 1116-17 (N.D. Ill. 2010) (Kendall, J.) (rejecting attempt to raise new theories in objections to the Special Master's conclusions that were not previously raised).[27]

Third, even if the Court were to credit Defendants newly provided information, there are still serious questions of whether such information actually supports Defendants' assertion of privilege. For instance, in their Objection TEGNA complains that one of its documents subject to production (TEGNA-000133982) contains redlines from outside counsel but fails to tell the Court that an earlier description of the document indicated that it was "sent to DOJ," Giddings Decl., Ex. A, raising third-party waiver questions. As a further example, Defendants disclosed (in connection with Nexstar-Privilege-Log-003532) for the first time, "Christy Burrow of Cooley LLP" was "outside counsel for Nexstar predecessor Media General." Obj. at 28; however, Defendants never provided information necessary to assess the assertion of privilege as to this document inasmuch as Cooley LLP appears on ***four*** Defendants' privilege logs, and "Defendants provide no information to illuminate which law firm represented which Defendant, when and for what type of legal expertise." R&R No. 3 at 40-41 & Table 4. Put differently, Defendants' request for *in camera* review of these ten documents is unlikely to fully resolve every issue with Defendants' assertions of privilege, and the Court should reject Defendants' invitation to unnecessarily prolong the parties' dispute over these documents at this late juncture.[28]

---

[27] *See also* *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 560–61 (7th Cir. 1985) ("[T]he evidence on which [defendant's] new arguments rest was available to it at the time it responded to plaintiff's . . . motion and [defendant] was obligated to make these arguments at that time."); *Nilssen v. Motorola, Inc.*, 2002 WL 206007, at *6 (N.D. Ill. Feb. 8, 2002) ("It is not proper to raise a new theory in objections to the findings of the Special Master after the motions have been fully briefed and the material issues joined.").

[28] Similarly, Defendants assert that "TEGNA-005755089, TEGNA-005400329, TEGNA-005448699 are copies of TEGNA's 2018 litigation holds" and are therefore privileged. Obj. at 27. Defendants,

Finally, assuming *arguendo* that the descriptions provided by Defendants in their brief are accurate and would satisfy Defendants' obligations under Rule 26(b)(5), Defendants' decision to provide this information at this late stage begs the question: if they could do it today, why did they not do it years ago when Plaintiffs asked Defendants (repeatedly) to substantiate their assertions of privilege over these documents and others? As Judge Levie noted (R&R No. 3 at 82):

> Defendants had ample notice of the law and ample opportunity to amend their privilege log entries. They elected not to do so over the course of many months, including during the motions' briefing process. Granting do-overs here would thwart the purposes of Rule 26(b)(5) to require the parties to reduce their privilege disputes among themselves in order to reduce the burden on the court, reduce the use of judicial resources and, hopefully, expedite the litigation.

Defendants could have, but did not, offer this information at any point. As much as they want to not live with these decisions, such regret does not provide grounds for reversible error.

#### 4. ***While Not Required to Adopt R&R No. 3, Judge Levie Made Findings of Facts That Support a Finding of Willfulness, Bad Faith or Fault***

It has long been held in this Circuit that a Special Master's findings of fact are not to be set aside unless clearly erroneous. *Olson Rug Co. v. NLRB.*, 304 F.2d 710, 712 (7th Cir. 1962). "Ordinarily, under clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view." *See, e.g., Am. Motors Corp. v. Great Am. Surplus Lines Ins. Co.*, 1988 WL 2788, at *1 (N.D. Ill. Jan. 8, 1988). Defendants' alternative explanations do not rise to the level of clear error.

Because R&R No. 3 is neither a "sanction" nor a "blanket waiver," it was not necessary, as Defendants incorrectly contend, *see* Obj. at 25-27, for Judge Levie to find that Defendants acted with "bad faith, willfulness, or fault." However, Judge Levie did make specific findings that more

---

however, do not attempt to argue that Judge Levie's determination that these documents, based on the information provided, was "clearly erroneous." *See Oleksy*, 2013 WL 3944174, at *8 (finding that the determination that a defendants' litigation hold policies were not privileged was not clearly erroneous).

than meet this standard.

Here, he found that Defendants responded to Plaintiffs' request "not with the requested factual information, but with citations to case law to justify their opinions and responses that they need not provide additional information about attorney involvement." R&R No. 3 at 5; *see also id.* at 81 n.219 ("[T]he six Defendants each elected not to provide basic, necessary information about the identity and role of their attorneys in the log entries challenged here at any of several possible junctures."). He found that "Defendants appear to have engaged in the meet and confer process, but they provided Plaintiffs with little or no additional information." *Id.* at 25. His analysis of the record showed "that Defendants did not operate as if their privilege logs were the beginning of an iterative process designed to allow the parties to resolve their privilege disputes without judicial intervention." *Id.* His analysis was so thorough that he even noticed that Nexstar's "inappropriate" behavior when it tried "condition[ing] production of this attorney list on Plaintiffs' agreement not to insist Nexstar revise its privilege log to identify attorneys" (*i.e.*, bargaining to provide "less information than it is required to do to satisfy its burden"). *Id.* at 39 n.113. Courts have not hesitated to order production of documents claimed to be privileged when the withholding party is similarly recalcitrant. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1150 (9th Cir. 2005) (finding production appropriate where the defendant repeatedly failed to cure noted deficiencies).

Judge Levie has also found that Defendants' privilege logs were "woefully deficient," R&R No. 3 at 80, and that Defendants repeatedly refused to further substantiate their assertions of privilege. *See Id.* at 19 ("The gravity of the problem is magnified where, as here, the most basic elements of the attorney-client privilege—the requisite involvement of an attorney—is not supported in the privilege log entry."); *id*. at 82 ("Defendants did little more than offer assurances

that the withheld documents were privileged. That was Defendants' choice. . . . Discovery is not poker where the cards are turned up one at a time.") (cleaned up).[29] *Accord* R&R No. 1 at *20 ("Throughout the meet and confer process, in the submission of privilege logs and in the briefing process here, Defendants did little more than offer assurances that the withheld documents are privileged."). His attention to detail was also evident when he noted that he was "particularly troubled to discover that at least some Defendants claim to be in an attorney-client relationship with counsel hired by a trade association, yet they did not provide information in their log entries, in their Attorney Lists, or in any other material, as to the nature of the representation or make any attempt to establish that an attorney-client relationship existed with the trade associations' counsel." R&R No. 3. at 41-42. Courts have not hesitated to order production of documents claimed to be privileged when the withholding party provides insufficient logs. *See Jorling*, 2011 WL 3759189, at *3 (ordering production based on inadequate descriptions in the defendants' privilege log).

## V. CONCLUSION

For the foregoing reasons, the Court should reject Defendants' Objections, affirm R&R No. 3 in its entirety, and order Defendants to produce the 6,877 documents recommended by Judge Levie to be produced to Plaintiffs within seven (7) working days of entry of the Court's Order.

Dated: March 14, 2025

*Respectfully submitted,*

*/s/ Megan E. Jones*

Megan E. Jones*
HAUSFELD LLP
580 California Street
12th Floor
San Francisco, CA 94111

---

[29] *See also* R&R No. 1 at *20 ("Throughout the meet and confer process, in the submission of privilege logs and in the briefing process here, Defendants did little more than offer assurances that the withheld documents are privileged.").

(415) 633-1908
mjones@hausfeld.com

Michael D. Hausfeld*
Hilary K. Scherrer*
Nathaniel C. Giddings*
Farhad Mirzadeh*
Jane Shin*
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeld.com
hscherrer@hausfeld.com
ngiddings@hausfeld.com
fmirzadeh@hausfeld.com
jshin@hausfeld.com

***Lead Counsel***

Meegan Hollywood*
Shinder Cantor Lerner LLP
14 Penn Plaza
Ste 19th Floor
New York, NY 10122
(646) 960-8601
meegan@scl-llp.com

Kimberly A. Justice
FREED KANNER LONDON & MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Fax: (224) 632-4521
kjustice@fklmlaw.com

Robert J. Wozniak
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Fax: (224) 632-4521
rwozniak@fklmlaw.com

***Liaison Counsel***