**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|   |   |
|---|---|
| IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION | )<br>)  MDL No. 2867<br>)  No. 18 C 6785<br>)<br>)  Chief Judge Virginia M. Kendall<br>) |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Special Master Richard Levie's Report and Recommendation No. 3 ("R&R No. 3" or "the Report"), (Dkt. 1174), and the Objection to R&R No. 3 filed by Defendants (Dkt. 1184). For the reasons, below the Court adopts the Special Master's Report and Recommendation No. 3 [1174] and overrules Defendants' Objection [1184].

## BACKGROUND

The Court assumes familiarity with R&R No. 3, (Dkt. 1174), and the facts of this case as set forth in prior rulings. *See, e.g.*, *In re Local TV Advertising Antitrust Litig.*, 2022 WL 3716202 (N.D. Ill. Aug. 29, 2022). The Court previously adopted Special Master Richard Levie's Report & Recommendation No. 1 in its January 2024 Memorandum Order & Opinion, and as well as Report & Recommendation No. 2 in February 2025, overruling Defendants' Objections in both cases. *See In re Local TV Advert. Antitrust Litig.*, 2024 WL 165207 (N.D. Ill. Jan. 16, 2024) (Dkt. 1100); *see also In re Local TV Advert. Antitrust Litig.*, 2025 WL 681155 (N.D. Ill. Feb. 4, 2025) (Dkt. 1171).

R&R No. 3 is the latest discovery dispute in this litigation. Plaintiffs challenged log entries in the privilege logs of Defendants Meredith Corporation, Nexstar Media Group, Inc., Raycom Media, Inc., E.W. Scripps Company, Sinclair Broadcast Group, Inc., and TEGNA, Inc. (Dkt. 1174 at 1). The Report streamlined Plaintiffs' contentions into three categories: (1) No Attorney in Log

1

Entry, (2) Non-Specific Attorney Only in Description, (3) Attorney Only in Description Not in To/From Category. (*Id.* at 2). The vast majority of the challenged documents were Sinclair's.[1]

Ultimately, the Special Master recommended that the Court order Defendants to produce "virtually all" of the "6,893 withheld documents in which Defendants assert attorney-client privilege but supply no information or insufficient information about attorney involvement." (*Id.* at 2–3). The R&R delineates which of Plaintiffs' motions to compel production of documents withheld as privileged should be granted, as well as which additional documents should be ordered produced. (*Id.* at 86). The Special Master found that no Defendant satisfied their assertion of work product protection. (*Id.* at 3).

The Special Master's findings and recommendations were based on: (1) 6,893 entries in the privilege logs of the six Defendants; (2) an *in camera* review of 70 documents; (3) history of the parties' meet-and-confer activities; (4) lists identifying attorneys who appear in Defendants' privilege logs; (5) the August 29, 2022, status hearing transcript; (6) the ESI Stipulation and Order (Dkt. 442); (7) briefs submitted by the parties; and (8) the interpretations of law stated in R&R Nos. 1 and 2, which were adopted in full by this Court. (*See* Dkt. 1174 at 2 n.3, 4–10). In doing so, the Special Master found that judging by "the number of privilege claims asserted and the number of such claims ultimately challenged by way of motion to compel, the clear conclusion is that the meet-and-confer process here was unsuccessful." (*Id.* at 76).

As such, the Special Master recommended that the Court order production of the "documents that correspond to log entries the Special Master found to be insufficient, which are all 6,893 with 16 exceptions." (*Id.* at 83). Those 16 documents came from an *in camera* review in which the Special Master determined whether the Joint Attorney exception to waiver applied to

---

[1] Sinclair had 6,326 of the 6,893 challenged documents. (Dkt. 1174 at 2). Raycom had 283, Meredith had 183, TEGNA had 56, Nexstar had 27, and Scripps had 18. (*Id.*)

2

communications with third party trade organizations. (*Id.* at 84). The 86-page R&R and accompanying exhibits lay out the findings in detail. (*Id.*) Additionally, the Special Master recommended that the Court not allow Defendants to cure deficient log entries on the basis that Defendants had ample opportunity to do so already, including 1) with or in their privilege logs provided to Plaintiffs on Jan. 31, 2022; 2) during the meet and confer process between Jan. 31 and Sept. 1, 2022; and 3) in their oppositions to Plaintiffs' motions to compel filed Sept. 22, 2022. (*Id.* at 80). On similar grounds, he noted that additional *in camera* review would be "fruitless" and would "arguably reward Defendants for their conduct in this case." (*Id.* at 83). Nonetheless, the Special Master made "no findings or recommendations concerning sanctions." (*Id.* at 83).

Defendants raise three general objections to R&R No. 3. They claim first that the Report operates on an incorrect interpretation and application of Federal Rule of Civil Procedure 26(b)(5) by requiring an allegedly unprecedented level of detail; second, that the Report erroneously applies the work-product doctrine; and third, that it functionally and erroneously orders "sanctions" against Defendants by rejecting nearly all of their privilege claims in this batch of documents. (Dkt. 1184 at 1–4). The parties agreed that the Court would review the Special Master's findings of fact for clear error, rulings on procedural matters for abuse of discretion, and findings of law de novo. (Dkt. 1186 at 6, 21).

## DISCUSSION

### I. Rule 26(b)(5)

The Federal Rules of Civil Procedure require that "when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties

3

to assess the claim." Fed. R. Civ. P. 26(b)(5). While the methodology of this proof is not explicit on the face of the rules, "[a]n attorney asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld." *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir.2006).

As extensively detailed in prior R&Rs and adopting opinions in this case, a party seeking to invoke the attorney-client privilege bears the burden of proof as to the following elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The privilege "applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). In the corporate context, the attorney-client privilege can be complicated by the fact that the provider of information and the person who acts on the lawyer's advice may be distinct sets of employees. *See* Upjohn Co. v. United States, 449 U.S. 383, 391 (1981).

The 6,893 documents at issue in R&R No. 3 came in front of Special Master Levie because of a fundamental dispute about whether they even involved an attorney giving legal advice.[2] Specifically, the Special Master identified 323 documents that referenced a non-specific attorney only in the description, 5,075 documents that referenced at attorney in the description but not in the to/from category, and 1,495 log entries that did not reference an attorney at all. (Dkt. 1174 at 2).

---

[2] In circumstances where a lawyer is not directly involved, a lawyer must still have "some relationship to the communication such that the communication(s) between the non-lawyer employees would reveal, directly or indirectly, the substance of a confidential attorney-client communication." *See, e.g.*, *Crabtree v. Experian Info. Sols., Inc.*, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017).

4

Defendants now argue that Special Master Levie held them to a higher standard than Rule 26(b)(5) and circuit case law permit. (Dkt. 1184 at 5–18). Their contention primarily rests on the general idea that Special Master Levie "demand[ed]" an "extraordinarily burdensome" level of detail. (*Id.* at 6, 9). This contention, however, results from the dramatization of the language contained within R&R No. 3. What the Report actually demanded was "some factual information that an attorney and client communicated on a legal subject." (1174 at 39). That information could "appear in the log entry and/or in supplemental information the claimant provides." (*Id.*) The various examples of this allegedly unprecedented ask are not "must[s]," as Defendants suggest, (Dkt. 1184 at 6), but rather a nonexhaustive menu of methods by which Defendants could have met their factual burden.

Defendants take this list of missing information to its furthest interpretation. They contend that the Report more or less concludes that "a privilege log is never able to stand on its own." (Dkt. 1193 at 14; Dkt. 1184 at 11). But the Court finds it necessary to level set with Defendants: R&R No. 3 exists *because* these particular privilege logs could not stand on their own. As Special Master Levie noted at the top of his analysis, assessing the viability of a privilege claim becomes all the more complex where, as here, "the most basic elements of the attorney-client privilege—the requisite involvement of an attorney—is not supported in the privilege log entry." (Dkt. 1174 at 19). Where a cursory log fails, the asserting party needs to "provide the facts and context to tether the privilege claim." *In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 165207, at *5 (N.D. Ill. Jan. 16, 2024). All of Special Master Levie's observations regarding unavailable details exist only to emphasize this point. (Dkt. 1174 at 39–41). Once again, "Defendants incorrectly conflate the Special Master's language opining on the deficiencies of their submission with his espousing a standard." *In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 165207, at *3.

5

In sum, the Special Master appropriately articulated and applied the law governing privileged information, did not abuse his discretion by reviewing the records as presented by the parties, and did not commit clear error in his factual assessment of the privilege logs.

## II. Work Product Doctrine

R&R No. 1 set forth the legal standard for work product doctrine in this jurisdiction, which R&R No. 3 incorporates by reference. (Dkt. 1030 at 21–37; Dkt. 1174 at 53). That standard—adopted in full by this Court—governs here, as does the ESI Order in this case specifying that "work product created for or in anticipation of this litigation or the related DOJ investigation" are "presumptively excluded from the privilege logs." (Dkt. 442, Dkt. 1174 at 55). Because the DOJ investigation was publicly announced on July 27, 2018, Special Master Levie utilized that date to establish the presumption that work done (and dated) before that date would not be subject to work product protection. (Dkt. 1174 at 55).

Despite the R&R's clear and repeated use of the word "presumption," Defendants suggest that Special Master Levie "misapplie[d]" the work product doctrine by "concluding" that documents generated prior to the above date "must be produced." (Dkt. 1184 at 18). To be clear, there is no question that Defendants likely began preparing for the DOJ investigation prior to public disclosure—that is the nature of such an inquiry. But the burden was always on Defendants to show that work product doctrine applies. *See, e.g.*, *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 899 (N.D. Ill. 2018) (citing *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003)). The Report's use of the July 2018 date amounts to nothing more than a reference point from which the privilege analysis unfolds.

Defendants contend that Special Master Levie could have picked an earlier date for his review given that they were likely preparing for the DOJ's investigation prior to the announcement. (Dkt. 1184 at 22). This statement is as true as it is beside the point. No matter what date the Report

6

utilized, Defendants' burden remained the same: to demonstrate that each document could "fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) (emphasis in original). R&R No. 3, correctly, does not suggest otherwise.

Special Master Levie found that "neither the log entries nor any supplemental information provided [] contain factual information to support an assertion that the [pre-July 27, 2018] withheld documents were created 'because of litigation' or because 'some articulable claim, likely to lead to litigation, [has] arisen.' " (Dkt. 1174 at 59). For example, there were instances where Special Master Levie found specific logs' references to regulatory action "too speculative," or another example where a 2014 document's description did not sufficiently explain how the document was related in anticipation of any litigation. (Dkt. 1174, Exhibit B, Chart 1; Exhibit C, Chart 4). This Court adopts these findings.

Defendants nonetheless argue that Special Master Levie misconstrued and misapplied work product doctrine. But despite Defendants' assertions, he did not require identification of which specific litigation each privilege log entry related to. Instead, he noted that this information could be one (non-exhaustive) route for Defendants to successfully demonstrate the evidentiary minimum indicating the privilege's necessity. (*Id.* at 58). Put simply: one way or another, Defendants must provide "the factual context" necessary to justify the assertion of the privilege. *Logan*, 96 F.3d at 977 ("[I]t is important to distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared because some articulable claim, *likely* to lead to litigation ... has arisen.") (citations omitted); *see also Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109 (7th Cir.1983). After a careful review, the Special Master determined they did not meet that burden.

7

### III. *In Camera* Review

Finally, Defendants contend that the "Special Master abused his discretion in recommending production of all challenged documents without first conducting any *in camera* review of the challenged documents." (Dkt. 1184 at 24). They assert that the findings, which they describe as insufficiently "individualized," amount to an unwarranted sanction. (*Id.* at 29). While Special Master Levie considered all 6,893 privilege logs at issue here, (Dkt. 1174 at 10), Defendants suggest that each document that was unsupported by an adequate privilege description should have subsequently received *in camera* review, akin to the process Special Master Levie put forth in R&R No. 1. (Dkt. 1184 at 24).

The Court reviews objections to process for abuse of discretion. The abuse of discretion standard is highly deferential; the Court will only disturb the Special Maser's decision if he has "acted unreasonably" or is "fundamentally wrong . . . clearly unreasonable, arbitrary, or fanciful." *Miller v. Chi. Transit. Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2020); *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d, 867, 878 (7th Cir. 2005).

*In camera* review is not an entitlement. Rather, "whether to conduct an *in camera* review to determine the validity of privilege claims is a matter for the Court's discretion." *See Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, 2020 WL 3977944, at *1 (N.D. Ill. July 14, 2020); *see also United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *3 (N.D. Ill. Apr. 4, 2017); *Crabtree v. Experian Inf. Sols., Inc.*, No. 16 C 10706, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017) ("Plaintiff is not entitled to an *in camera* review simply because he requested one"). In R&R No. 3, Special Master Levie's approach was naturally informed by the drawn-out nature of this litigation's discovery process, and in particular, the fact that "Defendants easily could have supplied [missing information] in or with the privilege logs or, significantly, during the meet-and-confer process." (Dkt. 1174 at 80). It is the privileged party's duty to make the necessary factual

8

showing to support a privilege, and the district court's discretionary determination whether to assess that showing through a "time-consuming and costly" *in camera* review. *In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 165207, at *2.

Defendants point to the Seventh Circuit's holding in *American National Bank & Trust* for their contention that R&R No. 3 amounts to an abuse of discretion in its discovery determinations. (Dkt. 1184 at 24). In that case, after nine months of back-and-forth about privilege logs, the magistrate judge directed the plaintiff to choose "any 20 documents" from the privilege log of about 465 remaining documents. *Am. Nat. Bank & Tr. Co. of Chicago*, 406 F.3d at 878. The magistrate then declared that if four or more of those 20 were deemed non-privileged, the Court would find the entire privilege log tainted, even though there might be "good faith differences of opinion." *Id.* at 878.

The Court of Appeals noted the inherently arbitrary nature of this process, including both the "four documents" inflection point as well as the fact that the plaintiff had "every incentive to cherry-pick the most vulnerable documents." *Id.* at 879. Further, in that case, the defendant had "exhibited good faith throughout the privilege log proceedings," including conceding the need to revise its initial log; cooperating with the plaintiff to resolve outstanding disputes, waiving the privilege for two documents to help close the matter, and promptly complying with the magistrate judge's orders for the disclosure of documents and for amended logs." *Id.* at 879. The Seventh Circuit chastised the magistrate for not reviewing more than forty-four documents *in camera* over the span of multiple discovery rulings, noting that a more involved process would have better fit the circumstances of the case. *Id.* at 880–881.

In the present circumstances, however, defendants have had years to support their claims of privilege and have not done so. R&R No. 3 notes that Plaintiffs "promptly asked Defendants to

9

cure their log entries in which the attorney-client privilege was asserted but no attorney was named or insufficient information about the attorney's involvement in the communication was provided" and received in return Defendants' assertion that they need not provide additional information. (Dkt. 1174 at 4). Indeed, the Report also notes that Defendants told the Special Master that "only if and when there is a judicial determination that Defendants' log are deficient, that it would make sense to undertake additional burden of supplementing or amending their log entries beyond what they have already provided." (*Id.* at 8). The Court need not make any determination regarding the merits of this behavior beyond noting it does not seem to hew to the type of good faith approach heralded in *American National Bank.*

More crucially: Special Master Levie has reviewed hundreds of documents *in camera* through the span of these discovery disputes, and in his discretion, determined that reviewing thousands more at this point in the process would be "fruitless" given the present circumstances of this case. (Dkt. 1174 at 83). At no point did he hand the wheels to Plaintiffs, as the magistrate did in *American National Bank*, nor did he impose an arbitrary error rate based on any unrepresentative sample. Defendants point out that this Court noted that value of reviewing the documents themselves in its adoption of R&R No. 1. *In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 165207, at *2. But this Court also noted that the Special Master is making determinations with "a vast amount of information" at his disposal "years into the process." *Id* at. *2. That expertise in this case only increased in the year between that Opinion and the issuance of R&R No. 3.

It goes without saying that the most basic element of the attorney-client privilege is a demonstration of the involvement of an attorney. That is the heart of R&R No. 3. Defendants are the only party with the ability to supply the particularized facts to support their privilege assertions, and they had the opportunity to do so again and again. When it came down to it, Special Master

10

Levie reviewed the information available to him—as contained in the privilege logs—and made the determinations that these Parties enabled him to make through his appointment as Special Master. In his discretion, he determined that additional *in camera* review would not assist him in evaluating this particular tranche of documents where it was not clear that an attorney was involved. It was not "fundamentally wrong" or "clearly unreasonable" to do so.[3]

## CONCLUSION

For the reasons above, the Court adopts Special Master Richard Levie's Report and Recommendation No. 3 [1174] in full and overrules Defendants' Objection [1184].

Virginia M. Kendall
United States District Judge

Date: October 20, 2025

---

[3] To the extent that the Parties are concerned that this affirmation be construed otherwise, to be explicit: Special Master Andersen's discretion to utilize *in camera* review as he determines appropriate remains as laid out in Dkt. 1153. (Dkt. 1200; Dkt. 1201).