**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | MDL No. 2867 |
| IN RE: LOCAL TV ADVERTISING | ) | No. 18 C 6785 |
| ANTITRUST LITIGATION | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |

**<u>OPINION & ORDER</u>**

Pending before the Court is a Motion brought by Plaintiffs[1] for a Protective Order Precluding Downstream Discovery regarding the scope of 30(b)(6) depositions. (Dkt. 1330). For the reasons below, Plaintiffs' Motion is denied.

This dispute derives from the Rule 30(b)(6) deposition notices that Defendants served throughout November 2025. (Dkts. 1330 at 3; 1348 at 2). Plaintiffs contend that some of the included topics amount to downstream discovery categorically barred by an earlier Order under law of the case doctrine.[2] (Dkt. 1330 at 2 (discussing *In re Loc. TV Advert. Antitrust Litig.*, 2023 WL 1863046 (N.D. Ill. Feb. 9, 2023) (also referred to as Dkt. 921)). Defendants, for their part, argue that Plaintiffs have failed to demonstrate the good cause necessary to affirmatively restrict Defendants' 30(b)(6) deposition testimony, which as a baseline includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). They further contend that Plaintiffs' request for a protective order extends to topics that are entirely unrelated to downstream information, and thus could not be subject to the terms of this Motion even if the Court were to grant it. (Dkt. 1348 at 7).

Contrary to Plaintiffs' framing of the matter, this Court's prior ruling focused on the specific request for additional document production, related discovery pursuant to two interrogatories and a custodial issue. *In re Loc. TV Advert. Antitrust Litig.*, 2023 WL 1863046, at *1. The fact that the Court has repeatedly had to weigh in on these matters undermines, rather than underscores, Plaintiffs' arguments that the proposed topics have long since been settled. (Dkt. 1330 at 5 n.1 (collecting examples of argument and rulings from the docket); *see also* Dkt. 1377 at 28). The earlier Order spoke specifically to the burden-benefit balancing at play based on the discovery then provided as of February 2023 and made a specific ruling on specific document requests. *In re Loc. TV Advert. Antitrust Litig.*, 2023 WL 1863046, at *3. Law of the case does not govern here.

---

[1] "Plaintiffs" refers collectively to Thoughtworx, Inc. d/b/a MCM Services Group ("Thoughtworx"); One Source Heating & Cooling LLC ("One Source"); Hunt Adkins, Inc.; and Fish Furniture.

[2] Plaintiffs define their reference to "downstream discovery" to include "Plaintiffs' business operations, revenue, sales, prices, and profits, and (2) their relationship with customers and advertising agencies, if any, including the agreements, sales, and pricing structures of their transactions involving broadcast television advertising." (Dkt. 1330 at 1, 7).

It is of course true that recovery for antitrust damages is concentrated in the hands of the direct purchaser, with no available pass-through defense, leading courts to infrequently require direct purchaser plaintiffs to produce downstream discovery on related matters. *See In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at *1 (N.D. Ill. July 12, 2018) (collecting cases). Indeed, the Court extensively detailed the implications of *Hanover Shoe* and *Illinois Brick* in its prior ruling. *In re Loc. TV Advert. Antitrust Litig.*, No. 18 C 6785, 2023 WL 1863046, at *1–2 (discussing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)). That includes expressing skepticism about Defendants' potential pursuit of the *Illinois Brick* "control exception," which set a "high bar for relevancy to issues at stake in this case," though leaving the argument open to be argued on the merits in later substantive briefing. *Id.* at *3–5.

Now, three years later, and transitioning from additional document production to straightforward 30(b)(6) testimony, the balancing tilts the other way. The analysis starts from the principle that parties are entitled to pursue 30(b)(6) testimony "regarding any nonprivileged matter that is relevant to any . . . claim or defense and proportional to the needs of the case." *See Holwill v. AbbVie, Inc.*, 2023 WL 12175580, at *2 (N.D. Ill. June 26, 2023) (discussing Rule 26). Accordingly, "there is a strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). In limited circumstances, however, Rule 26(c)(1) allows district courts, for good cause, to issue a protective order limiting discovery to protect a party from oppression, undue burden or expense. FED. R. CIV. P. 26(c)(1).

"Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson*, 281 F.3d at 681. "The party seeking protection from discovery bears the burden of presenting 'a particular and specific demonstration of fact' as to the need for that protection." *See, e.g.City of Rockford v. Mallinckrodt ARD, Inc.*, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020) (discussing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)); *see also, e.g.*, *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017).

At oral argument, Defendants emphasized that the crux of their proposed questioning is to elucidate the distinctions between Plaintiffs' direct buyer-to-seller ad sale transactions, transactions involving a hands-off facilitator, and transactions where a middleman bought ad slots in bulk and resold them to subsequent purchasers. (Dkt. 1377 41–45). Defendants anticipate that 30(b)(6) deposition testimony on these issues will prove useful to their arguments on class certification, particularly on typicality and adequacy. (Dkt. 1377 at 48). Typicality requires plaintiffs' claims to "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members," whereas an adequacy problem can arrive with a plaintiff "who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 866 (7th Cir. 2018) (internal citations omitted). Parties are set to submit class certification briefing this summer. (Dkt. 1344).

Plaintiffs' arguments as to the need for a protective order primarily focus on the burdens related to prepping their 30(b)(6) witnesses on issues of "limited utility." (Dkt. 1357 at 15). Specifically, Plaintiffs note that inclusion of Defendants' proposed topics would require extensive

coordination across multiple corporate departments, a review of financial and operational documents, a disruption of normal business operations, and attorney resources. (Dkt. 1357 at 14). The issue is that this list of purported troubles sounds like standard preparation for any 30(b)(6) testimony. Further, while the Court did not find Defendants' pursuit of the "control exception" worth forcing Plaintiffs to expand their document discovery beyond what they had already provided as of 2023, the Court is not persuaded by the idea that the proposed 30(b)(6) prep is so onerous as to disallow Defendants from asking questions regarding that theory. Indeed, Plaintiffs suggest that documentary discovery has already "established . . . Plaintiffs' status as direct purchasers," (Dkt. 1357 at 11),[3] which would suggest that any additional preparation is not quite so burdensome as they would suggest. At the least, Defendants are entitled to ask questions relating to Plaintiffs' provided discovery, inclusive of their interrogatory responses on this issue.

The governing standard for a protective order is "*undue* burden or expense," and Plaintiffs offer no more than conclusory sentences in their attempt to show that the task would be especially onerous or expensive. *See, e.g.*, *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 2021 WL 601672, at *2 (N.D. Ill. Feb. 16, 2021) (finding the same). Of course, the Federal Rules do not envision a limitless discovery; indeed, this litigation has been cabined repeatedly under both the relevance and undue burden standards of Rule 26 as well as antitrust-specific principles. The issue for Plaintiffs is that the relative burden of this preparation—both in comparison to Defendants' 2023 request for additional document discovery, and in comparison to Defendants' right to explore relevant topics like when the named Plaintiffs purchased airtime directly from a station and when they purchased airtime through an advertising agency—does not justify the significant intervention of a protective order.

This decision does not erode the Court's earlier decision on additional document discovery. For example, deposition testimony can include discussion of agreements between the named Plaintiffs and any advertisers, including what purchasing factors are considered and who makes the ultimate decision to buy or not buy, but this Order does not permit additional document discovery on any physical agreements themselves. Ultimately, though, Plaintiffs have not made the requisite showing for a different resolution of this Motion. The aforementioned balancing, paired with the "truthseeking function" of discovery, *Patterson*, 281 F.3d at 681, compels only one result.

---

[3] Plaintiffs emphasized this point on the record at oral argument, suggesting that because Defendants already had transactional data and verified interrogatories establishing Plaintiffs as direct purchasers, the proposed 30(b)(6) topics would not be relevant. (Dkt. 1377 at 30–31). These arguments, however, speak as much to burden as to relevance at this point in the case, because these same records should facilitate Plaintiffs' required preparation. Further, if the records have been provided, it suggests that their contents were deemed relevant, from which it follows that Defendants' related line of questioning would be relevant. Thus, this line of reasoning does not help Plaintiffs.

**CONCLUSION**

Having reviewed the parties' briefing and the supporting exhibits, the Court concludes that Plaintiffs have not established good cause necessary for a protective order to bar the Defendants' proposed 30(b)(6) deposition topics. As a result, Plaintiffs' Motion for a Protective Order on their deposition testimony is denied. [1330]

_____
Virginia M. Kendall
United States District Judge

Date: March 10, 2026