THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | MDL No. 2867 |
| IN RE: LOCAL TV ADVERTISING | ) | No. 18 C 6785 |
| ANTITRUST LITIGATION | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |

**OPINION & ORDER**

Pending before the Court is a motion brought by Plaintiffs[1] to exclude belatedly produced evidence, or in the alternative, extend time to file class certification motion and assess cost sanctions.[2] (Dkt. 1449). For the reasons below, Plaintiffs' Motion is granted in part and denied in part.

Plaintiffs argue that the Court should exclude data from non-party Comscore, Inc. ("Comscore") from this litigation through its inherent authority to manage discovery. Their argument is not grounded in any particular Federal Rule. Rather, the heart of this Motion is Plaintiffs' concerns about receiving a large sum of data[3] from Comscore—the product of Defendants' 2023 Rule 45 subpoena to the third-party company—at the twilight of a multi-year-long discovery period, with the final tranche arriving approximately one week after that deadline.

---

[1] "Plaintiffs" refers collectively to Fish Furniture, Hunt Adkins, Inc., One Source Heating & Cooling, LLC, Thoughtworx, Inc. d/b/a MCM Services Group.

[2] Defendants dispute that a meet-and-confer ever occurred regarding the request for a six-month extension or sanctions, as required by Local Rule 37.2. (Dkt. 1455 at 12). Plaintiffs, for their part, hardly substantiate their gesture at sanctions, instead concluding only that if "the Court is inclined to grant Plaintiffs an extension for their class certification papers and an opportunity to pursue follow-on discovery, Defendants—rather than Plaintiffs—should bear the cost of that discovery given their egregious conduct." (Dkt. 1449 at 10). The Court declines to invent argument where it does not exist, especially in light of the potential Local Rule violation.

[3] Plaintiffs note that at the date of filing, "the Comscore data produced totals approximately 18 terabytes of data with potentially another 9 terabytes of data anticipated in the coming weeks—magnitudes more than Defendants' own data productions." (Dkt. 1449 at 4).

1

Comscore, like Nielsen (relied on by both sides), is a third-party media measurement company that provides ratings and demographic impression data—in other words, the bread and butter of the tv advertisement sales upon which Plaintiffs' allegations are founded. Yet the two companies are distinct. Whereas century-old Nielsen is credited with inventing the concept of market share, Comscore was founded in the internet age. Nielsen's methodology involves extrapolating from samples rather than actual viewership; Comscore's assessments come from directly tracking 75 million TVs and 40 million households across all relevant DMAs. (Dkt. 1455 at 4). These two different approaches to measuring broadcast viewing offer respective pros and cons in audience management. That means that they each offer different data sets that could provide insights into the core claims in this MDL.

This last point is why Defendants argue the motion to exclude the Comscore data is ungrounded. Defendants assert that the data is highly relevant because during the relevant period, some buyers and stations used only Comscore for audience management, some used only Nielsen, and some used both. (*Id.* at 3–4). Comscore came up in numerous depositions, often in reference to the fact that Nielsen dominates the market but sometimes to highlight a station's use of Comscore alongside or instead of Nielsen. (*See generally* Defendants' exhibits at Dkts. 1455 and 1456). Defendants assert that by 2017 "700 stations and '83 station groups' including 'ABC, CBS, FOX, Sinclair, Tribune, Raycom, Graham and Hubbard' relied on Comscore ratings for spot negotiations." (Dkt. 1455 at 7). Defendants further note that on the buyer side, some Plaintiffs used Comscore to negotiate their ad buys. (*Id.*)

While Plaintiffs now seek to exclude the Comscore data, they sought it out earlier in discovery. Both parties served a Rule 45 subpoena on Comscore in the summer of 2023. (Dkt. 1449 at 2 n.2; Dkt. 1455 at 1). While the parties successfully negotiated the production and scope

of the Nielsen data after serving Nielsen with Rule 45 subpoenas, (Dkt. 1449 at 2 n.3), they did not do the same regarding the subpoenas to Comscore. Comscore was not responsive to Plaintiffs' 2023 attempts to discuss its subpoena, and Plaintiffs "ultimately decided not to pursue the data." (*Id.* at 2 n.2). Defendants took a different approach. In March of this year, after this Court's January order that fact discovery would close on June 1, 2026, Defendants reached out to Comscore about the pending June 28, 2023, subpoena. (Dkt. 1455 at 5); (Dkt. 1449-1). Before that, it appears that neither side had a conversation with the other regarding their Rule 45 subpoenas to Comscore over the course of several years. (Dkt. 1449 at 2 ("Defendants have not informed Plaintiffs or the Court of any ongoing negotiations with Comscore about responsive documents that could impact class certification and the schedule in this case."); Dkt. 1455 at 5 ("Plaintiffs never updated Defendants on their negotiations with Comscore or on whether they withdrew their subpoena.")).

By the end of March 2026, Defendants and Comscore agreed that Defendants would pay $18,213 for the production. (*Id.* at 6). They also agreed on a service order for Comscore to provide data from August 1, 2016, to December 27, 2020, within six weeks of the agreement's effective date of April 17, 2026; a copy of this agreement was produced to Plaintiffs on May 22, 2026. (Dkt. 1449-1); (Dkt. 1450); (Dkt. 1455-4).[4] On April 28, Comscore delivered its first of the agreed-upon "rolling deliveries," followed by deliveries on May 4 and May 19.[5] (*Id.*) Defendants provided hard drive copies of these productions to Plaintiffs on May 4, May 7, and May 21, 2026. (*Id.*) On May 5, 2026, Plaintiffs issued a Rule 45 subpoena to Comscore asking about their communications with Defendants. (Dkt. 1449 at 3). Comscore objected to much of this subpoena, though it produced the April Service Order it provided to Defendants. (Dkt. 144-1).

---

[4] The agreement states the effective date is the date of the final signature. Plaintiffs' copy only has the April 14 signature; Defendants' copy indicates that Comscore did not sign until April 17.

[5] At the status hearing on June 9, 2026, parties indicated that the final tranche was delivered and forwarded to Plaintiffs that week.

Plaintiffs ask the Court to exclude the Comscore data through its inherent authority to manage the discovery dispute. Plaintiffs do not cite to a Federal Rule as a mechanism to resolve this issue because Rule 45 does not contain the same language as Rule 37, which provides for the exclusion of evidence where a party fails to make timely disclosures or supplements. *Compare* F.R.C.P. 45 *with* 37. Rather, Rule 45(g) provides that a non-party served with a subpoena may be held in contempt for failing to obey the subpoena or an order related to it, but it does not speak to the role of the seeking party or any downstream evidentiary implications. Plaintiffs acknowledge this gap between the remedy they seek and the fact that Comscore is a non-party, observing that Rule 45 "does not appear to contemplate the circumstances here" and urging the Court to rely on its inherent discovery management powers and borrow caselaw from the Rule 37 context to exclude the Comscore data from this litigation. (Dkt. 1449 at 5 n.4). Yet Plaintiffs provide no caselaw indicating that the Rule 37 standard can be applied in the Rule 45 context. Instead, they offer examples of Rule 37's application in and of itself. *See, e.g.*, *Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 616 (N.D. Ill. 2010) (holding that a party's "failure to submit the information about the experts' backgrounds and compensation was not an oversight" and excluding in the Rule 37 context).

Nonetheless, district courts have broad discretion in managing the discovery process. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir.2013); *see also Hill v. Porter Mem'l Hosp.*, 90 F.3d 220, 224 (7th Cir. 1996) ("In the absence of a compelling excuse, a district court is well within its discretion to exclude untimely proffered evidence or testimony."). With this discretion, the Court orders that the Comscore data from the relevant period to this litigation (2014-2018) may be admitted, while data from outside this period must be excluded.

Neither party offers much clarity on why they appear to have had little follow up on either side's pending Rule 45 subpoena to Comscore between 2023 and 2026. Regardless, the Court cannot ignore prejudicial effect of the late arrival of a bounty of data, regardless of the fact that it was a third party, and not the Defendants, who held the keys. It is of course true that Plaintiffs once sought that same data themselves, and it is true that references to Comscore came up in depositions throughout this litigation just as Nielsen did. That does not make it less true that class certification is Plaintiffs' case to make, and to do so quickly, given the fast-approaching briefing deadlines on that issue. Additionally, the Court must balance the utility of the Comccore data with the impact that reviewing the data will have on Plaintiffs' briefing deadlines. Limiting the scope of which data can be admitted achieves this balance.

The Court, in its discretion, will also give Plaintiffs a two-month extension on its June 15 briefing deadlines. Defendants, in turn, will receive only a three-week extension on their Response given that their Rule 45 subpoena caused the delay, and that they, too, will at least nominally benefit from the additional time given to the Plaintiffs at the outset. Through tailing off these extensions through the rest of the calendar year, the Court anticipates that the governing trial date—currently set for 17 months away—can stand uninterrupted. This determination rests in part on the fact that Comscore has apparently since delivered a data dictionary to both parties that should assist in the processing of raw data. (Dkt. 1455 at 12). Should this understanding be proven incorrect, parties must meet-and-confer regarding potential next steps for this data to continue to be usable by both sides.

5

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion is granted in part and denied in part. [1449]. The Court declines to exclude the Comscore data in its entirety. Given the sheer scale and late timeline of the production, though, the Court restricts use of the data to the confines of the relevant period to this litigation (2014-2018). Any Comscore data for after this period is excluded. Further, the Court will extend the current briefing schedule in a subsequent order.

_____
Virginia M. Kendall
United States District Judge

Date: June 11, 2026